IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| David G. Feinberg,<br>    Tampa, Florida<br><br>and all others similarly situated,<br><br>                    Plaintiffs,<br>v.<br><br>T. Rowe Price Group, Inc., T. Rowe Price<br>Associates, Inc., T. Rowe Price Trust<br>Company, T. Rowe Price Group, Inc.<br>Management Committee, T. Rowe Price<br>Group, Inc. Management Compensation<br>Committee, Christopher D. Alderson, Edward<br>C. Bernard, Michael C. Gitlin, James A. C.<br>Kennedy, John D. Linehan, Brian C. Rogers,<br>William J. Stromberg, Eric L. Veiel, Edward<br>A. Wiese, T. Rowe Price U.S. Retirement<br>Program Trustee Does 1-40, and Does 1-30,<br>    c/o T. Rowe Price Group Inc.<br>    100 East Pratt Street<br>    Baltimore County<br>    Baltimore, MD 21202<br><br>                    Defendants. | Civil Action File No.:<br>1:17-cv-427<br><br>**CLASS<br>ACTION COMPLAINT** |

# TABLE OF CONTENTS

I.   NATURE OF THE ACTION ............................................................................. 1

II.  JURISDICTION AND VENUE ....................................................................... 5

III. PARTIES ......................................................................................................... 5

   A.  Plaintiff ...................................................................................................... 5

   B.  Defendants ................................................................................................. 6

IV.  FACTUAL BACKGROUND ........................................................................... 9

   A.  The 401(K) Plan, its Fiduciaries, and its Investments ............................. 9

   B.  DEFENDANTS BREACHED THEIR FIDUCIARY DUTIES OF PRUDENCE
      AND LOYALTY AND COMMITTED  TRANSACTIONS PROHIBITED BY
      ERISA ....................................................................................................... 17

        1.   401(k) Plan Trustees Failed to Correct the Breaches of Predecessor
             Fiduciaries ...................................................................................... 17

        2.   The Trustees' Imprudent and Disloyal Selection of 401(k) Plan
             Investment Options ........................................................................ 18

        3.   The Trustees' Imprudent and Disloyal Investment Monitoring ............. 19

        4.   The Defendant TRP Investment Affiliates' Fiduciary Breaches ........... 20

        5.   The Appointing Fiduciary Defendants' Fiduciary Breaches ................. 20

V.      CLASS ACTION ALLEGATIONS ................................................................. 21

VI.     CLAIMS FOR RELIEF ......................................................................... 24

        COUNT I
        Breach of Duties of Loyalty and Prudence for Imprudent and Disloyal Monitoring and
        Selection of 401(k) Plan Investments during the Class Period, which Caused Losses to
        the 401(k) Plan (Violation of ERISA, 29 U.S.C. §1104 by the 401(k) Plan Trustees) .... 24

        COUNT II
        The Appointing Fiduciary Defendants Breached their ERISA Fiduciary Duties by
        Failing to Remove and Prudently Monitor the 401(k) Plan Trustees ............................. 25

        COUNT III
        Breach of Duties of Loyalty and Prudence by Providing Imprudent and Self-Interested
        Investment Advice to Committee Defendants (Violation of ERISA, 29 U.S.C. §1104
        by Defendant TRP Investment Affiliates) ....................................................... 26

        COUNT IV
        Liability for Breach of Co-Fiduciary (Liability Pursuant to ERISA, 29 U.S.C. §1105 of
        the Appointing Fiduciary Defendants and the TRP Investment Affiliates)..................... 27

        COUNT V
        Liability for Failing to Remedy Breach of Predecessor Fiduciaries (ERISA Violation
        Against the 401(k) Plan Trustees).............................................................. 28

        COUNT VI
        Liability for Committing Prohibited Transactions in Violation of ERISA, 29 U.S.C.
        §1106 (Against the 401(k) Plan Trustees and the TRP Investment Affiliates) ............... 29

# I.   NATURE OF THE ACTION

1.      This is a civil enforcement action brought pursuant to the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. §1132(a)(2), for violations of ERISA's fiduciary duty and prohibited transaction provisions.  It is brought as a class action by David G. Feinberg, a participant in the T. Rowe Price U.S. Retirement Program ("401(k) Plan" or "Plan"), a defined contribution 401(k) Plan, on behalf of the 401(k) Plan and all similarly situated Plan participants and beneficiaries (henceforth, collectively, "participants"), and all predecessor plans.

2.      This suit is about corporate self-dealing at the expense of the retirement savings of company employees.  Defendants are all fiduciaries of the 401(k) Plan who are required by ERISA to act prudently and solely in the interest of the Plan's participants when making decisions with respect to 401(k) Plan investments.

3.      Defendants, rather than fulfilling their ERISA fiduciary duties ("the highest known to law"[1]), favored the economic interests of T. Rowe Price Group, Inc. ("T. Rowe Price" or the "company") and its affiliates over the interests of their employees in saving for their retirement.  Defendants did so by offering, during the Class Period (February 14, 2011 through judgment in this case), only T. Rowe Price's own in-house investment funds in its 401(k) Plan. This exclusive relationship provided a windfall to T. Rowe Price affiliates T. Rowe Price Associates, Inc. ("TRP Associates") and T. Rowe Price Trust Company ("TRP Trust"; collectively these entities are the "TRP Investment Affiliates").  The Defendant TRP Investment

---

[1] Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc., 793 F.2d 1456, 1468 (5th Cir.1986) (*quoting* Donovan v. Bierwirth, 680 F.2d 263, 272 n. 8 (2d Cir.1982)).

Affiliates serve as the investment advisor for those funds and collect the fees charged to investors in those funds.

4.     T. Rowe Price's asset management business is one of the most profitable businesses in the world.  During the Class Period, its annual profit margin reached a remarkable 30.9%.  In contrast, one of the most profitable large tech companies, Apple Computer, had a profit margin of 21.7%.

5.     T. Rowe Price's stock has been one of the best performing in the S&P 500 over the last 25 years.  Its value has increased 7,668%, virtually the same as the 7,682% gain of Apple Computer.  This reflects a saying in the investment business that if an investor really wants to earn big money in mutual funds, they should invest in the stocks of mutual fund companies, rather than the funds themselves.

6.     Offering only its own in-house funds in its 401(k) Plan earned T. Rowe Price and its affiliates windfall profits.  This was because of the enormous profitability of T. Rowe Price's asset management business, and because virtually no additional expenditure or overhead was required to offer its own funds in its own plan.  But these profits came at the expense of the retirement savings of T. Rowe Price employees.

7.     Defendants did not, as required by ERISA, select or retain the in-house funds in the 401(k) Plan as a result of a prudent or loyal process that considered non-proprietary alternatives and whether those alternatives might better serve Plan participants.  Instead, because of the financial benefit to T. Rowe Price, Defendants simply chose and retained their in-house funds for the 401(k) Plan because of the financial benefit to the company.

8.      Defendants also failed to loyally and prudently monitor the fees and performance of 401(k) Plan investment options.  Instead, they simply retained the in-house funds to enrich T. Rowe Price.

9.      It is axiomatic in the financial services industry that no single company is the best at managing every asset class or type of investment fund; they all have their strengths and weaknesses.  Despite this fact, Defendants refused to consider offering funds from other companies in the 401(k) Plan.

10.     In addition, Defendants frequently offer or offered the higher cost retail class versions of their mutual funds in the 401(k) Plan.  They did so despite the fact that significantly cheaper versions of these funds were available, including institutional share classes, Collective Investment Trusts, and Separately Managed Accounts.[2]  These were managed in the same way by the same persons as the higher cost versions but are lower cost because they are only offered to higher net worth investors, such as retirement plans.  Offering higher cost versions to Plan participants enriched T. Rowe Price and its subsidiaries at participants' expense.

11.     In those instances when cheaper alternatives to certain retail class mutual funds did not exist, Defendants could have used the fact that the 401(k) Plan was a large institutional investor as leverage in negotiations to create cheaper alternatives.  In failing to take these steps, Defendants enriched T. Rowe Price and its subsidiaries at the expense of Plan participants.

---

[2] A "**retail class**" version of a mutual fund is a share class designed to be offered for sale to the average individual investor.  A "**Collective Investment Trust**" refers to an investment vehicle, other than a mutual fund governed by the Investment Company Act of 1940, that is offered for investment to more than one investor.  Such funds are typically offered by financial institutions such as banks, are usually cheaper than mutual funds, and are only available to high net worth investors such as institutional investors or retirement plans.  A "**Separately Managed Account**" refers to a professionally managed investment account offered by, e.g., a broker-dealer typically for a single entity in which the entity directly owns the securities in the account.

3

12.     Defendants also enriched themselves by offering to 401(k) Plan participants more expensive versions of the other type of investment vehicle in the Plan (i.e. apart from mutual funds) during the latter part of the Class Period — Collective Investment Trusts.  As discussed further below, they offered more expensive classes of these trusts to 401(k) Plan participants than they made available to their commercial customers.

13.     Additionally, Defendants offered investment management services for some of their Collective Investment Trusts and Institutional Mutual Funds to commercial customers as a sub-advisor for less cost than charged to the Plan.  In so doing, Defendants provided the identical services to 401(k) Plan participants while using their role as fiduciaries to collect higher fees than they otherwise could from third-parties.  Accordingly, in this way as well as those discussed *supra,* Defendants used Plan assets for their own benefit.

14.     As a result of Defendants' fiduciary breaches and prohibited transactions, 401(k) Plan participants were deprived of millions of dollars in retirement savings that they would have earned if funds had been selected irrespective of their affiliation.  For example, as discussed further below, if funds from other established fund companies, such as Vanguard Investments, had been used instead, participants would have paid over **$27 million *less* in fees** during the Class Period.  If such funds had instead been offered to participants in those asset classes and investment fund categories in which T. Rowe Price performance is weak, participants would have earned over **$123 million *more***.  And since Plaintiff currently lacks full performance information for several of the T. Rowe Price funds, the latter figure may increase materially once that information is obtained.

15.     The class is all participants in the 401(k) Plan (and their beneficiaries) from February 14, 2011 to the time of judgment ("Class Period").

4

16.     Plaintiff seeks relief including disgorgement of all investment advisory fees paid to T. Rowe Price and/or its subsidiaries from 401(k) Plan assets, as well as the difference in performance between readily available and better performing non-proprietary funds that could have been offered in the 401(k) Plan.  During the Class Period, 401(k) Plan participants paid TRP Associates in excess of **$50 million in fees**.

17.     The allegations in this complaint are based upon Plaintiff's counsel's investigation of public documents, including filings with the U.S. Department of Labor, U.S. Securities and Exchange Commission, fund prospectuses and certain other documents provided to Plaintiff because of his status as a Plan participant.  Allegations regarding Defendants' conduct are made on information and belief as Plaintiff has no internal documents at this stage of this litigation.  As many facts are still within Defendants' exclusive possession, Plaintiff may make further changes to his claims after discovery.

## II.     JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1).

19.     Venue is proper in this district pursuant to ERISA, 29 U.S.C. §1132(e)(2) because many of the breaches complained of occurred in this District, the Plan is administered in this District, and one or more of the Defendants reside or may be found in this District.

## III.     PARTIES

### A.  Plaintiff

20.     **Plaintiff David G. Feinberg**.  Plaintiff Feinberg is a resident of Tampa, Florida and a participant in the 401(k) Plan since 1995.  He worked for T. Rowe Price out of their Florida office for 16 years as a technical support specialist for T. Rowe Price's international

offices.  During the Class Period, he invested in several of the in-house T. Rowe Price funds through his 401(k) Plan account.

**B.  Defendants**

21.  **Defendant T. Rowe Price Group, Inc. ("T. Rowe Price").**  T. Rowe Price is the sponsor, a fiduciary of the 401(k) Plan, and a party in interest to the Plan under 29 U.S.C. § 1002(14). T. Rowe Price is a large mutual fund and financial services organization that provides a broad range of services to consumers and corporate customers.  T. Rowe Price's corporate headquarters are in Baltimore, Maryland.

22.  **Defendant T. Rowe Price Associates, Inc. ("TRP Associates").**  TRP Associates is a wholly-owned subsidiary of T. Rowe Price, is a party in interest to the 401(k) Plan under 29 U.S.C. § 1002(14), and provides investment advisory services to all the in-house mutual funds.

23.  **Defendant T. Rowe Price Trust Company ("TRP Trust"; collectively with TRP Associates, the "TRP Investment Affiliates").**  TRP Trust is a wholly-owned subsidiary of T. Rowe Price, and is a Maryland-chartered, limited-purpose trust company established in 1983.  In addition to offering trustee services, TRP Trust is the investment manager for the in-house Collective Investment Trust funds in the 401(k) Plan.  Many of the investment manager employees of TRP Trust are also employees of TRP Associates; moreover, these same individuals manage mutual fund and Collective Investment Trust versions of the same funds.

24.  **Defendants "T. Rowe Price U.S. Retirement Program Trustee Does 1-40" ("Trustees").**  The Trustees are named 401(k) Plan fiduciaries and had the authority and responsibility to select, monitor, and remove or replace investments offered in the 401(k) Plan. The names of the individual Trustees are currently unknown to Plaintiff.

6

25.     **Defendant T. Rowe Price Group, Inc. Management Committee**

("Management Committee").  The Management Committee was responsible for day-to-day

management of the company.  The Management Committee was part of T. Rowe Price; it is

separately named as a Defendant for clarity.  During the Class Period until some time in the last

half of 2015 or 2016, the Management Committee served as a 401(k) Plan fiduciary and had

responsibility under the 401(k) Plan Document for appointing and removing Trustees.  The

following individuals were members of the Management Committee during that time:

A.     **Defendant Christopher D. Alderson**.  Defendant Alderson has been a

member of the Management Committee since at least 2010.  At the company, he has been Head

of International Equity since 2009, and a Vice President since 2002.

B.     **Defendant Edward C. Bernard**.  Defendant Bernard has been a member

of the Management Committee since at least 2010.  He has been Vice Chairman of the company

since 2007, and a Vice President since 1989.

C.     **Defendant Michael C. Gitlin**.  Defendant Gitlin was a member of the

Management Committee from at least 2010 through 2013.  At the company, he was head of fixed

income since 2010, and a Vice President since 2007.

D.     **Defendant James A. C. Kennedy**.  Defendant Kennedy was a member of

the Management Committee from at least 2010 through 2014.  He was Chief Executive Officer

and President of the company from on or about 2007 through 2015.

E.     **Defendant John D. Linehan**.  Defendant Linehan was a member of the

Management Committee from at least 2010 through 2013.  At the company, he was head of U.S.

Equity since 2010, and a Vice President since 2001.

F.     **Defendant Brian C. Rogers**.  Defendant Rogers has been a member of the Management Committee since at least 2010.  At the company, he has been chairman since 2007, Chief Investment Officer since 2004, and a Vice President since 1985.

G.     **Defendant William J. Stromberg**.  Defendant Stromberg has been a member of the Management Committee since at least 2010.  At the company, he has been President and Chief Executive Officer since 2016.  Previously, he was Head of Equity from 2010 to 2015 and a Vice President from 1990 to 2015.

H.     **Defendant Eric L. Veiel**.  Defendant Veiel has been a member of the Management Committee since at least 2015.  At the company, he has been head of U.S. Equity since 2016, and a Vice President since 2006.

I.     **Defendant Edward A. Weise**.  Defendant Weise has been a member of the Management Committee since at least 2014.  At the company, he has been head of Fixed Income since January 2015, and a Vice President since 2001.

26.     **Defendant T. Rowe Price Group, Inc. Management Compensation Committee** ("Management Compensation Committee").  The Management Compensation Committee was part of T. Rowe Price; it is named as a Defendant for clarity.  During the Class Period, beginning some time after the last half of 2015 or 2016, the Management Compensation Committee served as a 401(k) Plan fiduciary.  It assumed from the Management Committee the responsibility for appointing and removing Trustees.  Plaintiff currently has no knowledge of the identities of the members of the Management Compensation Committee.  Henceforth, T. Rowe Price, the Management Committee and its individual members, and the Management Compensation Committee and its individual members, will be referred to collectively as the "**Appointing Fiduciary Defendants**."

8

27.   **Defendant Does 1-40.**  Plaintiff does not currently know the identity of all of the Plan's fiduciaries, in particular the identities of the persons who served on the Management Compensation Committee during the Class Period.  Once the identities of those not currently named are ascertained, Plaintiff will seek leave to join them under their true names.

## IV.   FACTUAL BACKGROUND

### A.  The 401(K) Plan, its Fiduciaries, and its Investments

28.   At all relevant times, the 401(k) Plan was an "employee pension benefit plan" within the meaning of ERISA, 29 U.S.C. §1002(2)(A), and was established to provide retirement income to T. Rowe Price employees.  T. Rowe Price is the sponsor of the Plan.  The 401(k) Plan is a defined contribution plan.

29.   In 2015, the 401(k) Plan had over 8,200 participants, and total assets in excess of $1.7 billion, ranking it among the largest plans, in terms of assets, in the United States.

30.   Every employee benefit plan must provide for one or more named fiduciaries that jointly or severally possess the authority to control and manage the operation and administration of the plan.  ERISA, 29 U.S.C. §1102(a)(1).  Further, a person who functions as a fiduciary is a fiduciary, even if he or she is not named as such, so long as the person exercises any discretionary authority or control over the operation or administration of the plan or any authority or control over the disposition of plan assets.  ERISA, 29 U.S.C. §1001(21)(A).  Each of the Defendants was named as a fiduciary and/or functioned as one.

31.   T. Rowe Price is an ERISA fiduciary and the sponsor of the 401(k) Plan.  T. Rowe Price had, at all applicable times, effective control over the activities of its directors, officers and employees, including over their 401(k) Plan-related activities.  T. Rowe Price, acting

through its Management Committee and its Management Compensation Committee, had the authority and discretion to appoint, monitor, and remove the 401(k) Plan Trustees.

32.     The Trustees are a named fiduciary of the 401(k) Plan under the plan document. The Trustees had the authority, discretion, and responsibility to select, monitor, and remove or replace the 401(k) Plan's investment funds.  Their specific responsibilities included, but were not limited to:

> A.     Selecting and making decisions with respect to removing or replacing investment vehicles for the 401(k) Plan.

> B.     Monitoring the performance of the 401(k) Plan's investment funds and approving investment changes.

33.     The TRP Investment Affiliates are T. Rowe Price subsidiaries and the investment advisor to the in-house funds.  The TRP Investment Affiliates, and their subsidiaries, receive millions of dollars each year in fees from 401(k) Plan assets for those services.  The TRP Investment Affiliates are 401(k) Plan fiduciaries in that they regularly Dispensed investment advice to the 401(k) Plan Trustees, and TRP Trust directly manages Plan assets held in the Collective Investment Trusts in the 401(k) Plan.

34.     During the Class Period, the 401(k) Plan offered between 80 and 95 investment funds to participants each year.  All of these were in-house funds.

35.     Because some funds were added and removed during the Class Period, a total of some 146 different funds were offered in the 401(k) Plan during the Class Period.

36.     At the inception of the Class Period, the funds offered through the 401(k) Plan to participants were almost exclusively retail-class shares of mutual funds, which are the most

expensive type of investment fund offered in 401(k) plans.[3]  In 2012, likely in response to

lawsuits filed against other 401(k) Plan fiduciaries, less costly Collective Investment Trust

versions of these funds were also added to the 401(k) Plan.  In 2014, institutional-class shares of

mutual funds, which were less costly, were also added to the Plan.  Nevertheless, the most

expensive share class, the retail-class shares, are still offered for some of the funds in the 401(k)

Plan.

      37.    Regardless of the type of fund, there were comparable lower-cost alternatives for

all the funds offered through the 401(k) Plan.  The following table compares the expense ratios[4]

of the 96 funds in the 401(k) Plan at the end of 2016.  The table compares expense ratios as

reported by T. Rowe Price with the expense ratios of comparable funds offered by other mutual

fund companies, e.g. the Vanguard Group, Inc., who have funds suitable for use in large 401(k)

plans.[5]  The expense ratios of all of the comparable funds are lower than those of the T. Rowe

Price funds, in many cases by a substantial margin.

---

[3] In this complaint, "mutual fund" refers to an investment fund governed by the Investment
Company Act of 1940.

[4] The "expense ratio" of an investment fund represents the ratio of the operating fee taken
annually from fund assets to the total amount of assets under management in the fund.  Hence, if
the expense ratio is 1.00%, $100 would be taken from a $10,000 investment each year as an
operating fee.  Expenses such as trading costs are not included in the expense ratio.

[5] The funds identified as being comparable in this complaint are examples of comparable funds,
but Plaintiff is not asserting that they are the only comparable funds or necessarily the most
similar funds.  Plaintiff may determine that other funds, or other fund share classes, are
appropriate benchmark funds for purposes of different or future analyses.

| T.Rowe Price Fund | Ticker Symbol | T. Rowe Price Expense Ratio | Comparable Vanguard or other Fund (*= non-Vanguard fund) | Expense Ratio | Excess Over Vanguard or Other Fund |
|---|---|---|---|---|---|
| **MUTUAL FUNDS** | | | | | |
| Africa & Middle East Fund, Instl | TRIAX | 1.19% | GILVX* | 0.84% | 42% |
| Asia Opportunities Fund | TRAOX | 2.29% | VPKIX | 0.09% | 2444% |
| Balanced Fund | RPBAX | 0.72% | VWENX | 0.18% | 300% |
| Concentrated International Equity Fund, Instl | RPICX | 0.79% | VTSNX | 0.10% | 690% |
| Core Plus Fund, Instl | TICPX | 0.45% | VCOBX | 0.15% | 200% |
| Corporate Income Fund | PRPIX | 0.73% | VWETX | 0.12% | 508% |
| Credit Opportunities Fund, Instl | TRXPX | 0.67% | VWEAX | 0.13% | 415% |
| Diversified Mid-Cap Growth Fund | PRDMX | 0.87% | VHCAX | 0.38% | 129% |
| Diversified Small-Cap Growth Fund (n/k/a QM U.S. Small-Cap Growth Equity Fund) | PRDSX | 0.66% | VEXRX | 0.34% | 94% |
| Dividend Growth Fund | PRDGX | 0.79% | VGIAX | 0.23% | 243% |
| Emerging Europe and Mediterranean Fund (n/k/a Emerging Europe Fund) | TREMX | 1.76% | GILVX* | 0.84% | 110% |
| Emerging Markets Bond Fund, Instl | TREBX | 0.70% | VEMBX | 0.60% | 17% |
| Emerging Markets Corporate Bond Fund | TRECX | 1.36% | VEMBX | 0.60% | 127% |
| Emerging Markets Local Currency Bond Fund | PRELX | 1.24% | VEMBX | 0.60% | 107% |
| Emerging Markets Value Stock | PRIJX | 5.06% | GILVX* | 0.84% | 502% |
| European Stock Fund | PRESX | 0.95% | VESIX | 0.08% | 1088% |
| Extended Equity Market Index Fund | PEXMX | 0.35% | VIEIX | 0.07% | 400% |
| Financial Services Fund | PRISX | 0.95% | VFAIX | 0.10% | 850% |
| Floating Rate Fund, Instl | RPIFX | 0.56% | IFRPX* | 0.12% | 367% |
| Frontier Markets Equity Fund, Instl | PRFFX | 1.84% | GILVX* | 0.84% | 119% |
| Global Allocation Fund | RPGAX | 1.25% | RIRGX* | 0.30% | 317% |

12

| T.Rowe Price Fund | Ticker Symbol | T. Rowe Price Expense Ratio | Comparable Vanguard or other Fund (*= non-Vanguard fund) | Expense Ratio | Excess Over Vanguard or Other Fund |
|---|---|---|---|---|---|
| Global Focused Growth Equity Fund, Instl | TRGSX | 0.96% | VHGEX | 0.57% | 68% |
| Global Growth Equity Fund, Instl | RPIGX | 0.77% | VHGEX | 0.57% | 35% |
| Global High Income Bond I | RPIHX | 0.85% | VWEAX | 0.13% | 554% |
| Global Industrials Fund | RPGIX | 2.39% | VINAX | 0.10% | 2290% |
| Global Multi-Sector Bond Fund, Instl | RPGMX | 0.50% | VTIFX | 0.07% | 614% |
| Global Real Estate Fund | TRGRX | 1.05% | VGRNX | 0.13% | 708% |
| Global Technology Fund | PRGTX | 0.91% | VITAX | 0.10% | 810% |
| Global Unconstrained Bond I | RPIEX | 0.75% | VTIFX | 0.07% | 971% |
| Global Value Equity Fund, Instl | PRIGX | 3.68% | VHGEX | 0.57% | 546% |
| GNMA Fund | PRGMX | 0.59% | VFIJX | 0.11% | 436% |
| Health Sciences Fund | PRHSX | 0.69% | VGHAX | 0.29% | 138% |
| High Yield Fund, Instl | TRHYX | 0.55% | VWEAX | 0.13% | 323% |
| Inflation Protected Bond Fund | PRIPX | 0.97% | VIPIX | 0.08% | 1113% |
| International Bond Fund, Instl | RPIIX | 0.55% | VTIFX | 0.07% | 686% |
| International Equity Index Fund | PIEQX | 0.45% | VTMGX | 0.09% | 400% |
| Japan Fund | PRJPX | 1.05% | VPKIX | 0.09% | 1067% |
| Large-Cap Growth Fund, Instl | TRLGX | 0.56% | VPMAX | 0.33% | 70% |
| Large-Cap Value Fund, Instl | TILCX | 0.57% | VUVLX | 0.26% | 119% |
| Latin America Fund | PRLAX | 1.37% | GILVX* | 0.84% | 63% |
| Long Duration Credit Fund, Instl | RPLCX | 0.45% | VWETX | 0.12% | 275% |
| Media & Telecommunications Fund | PRMTX | 0.69% | VTCAX | 0.10% | 590% |
| Mid-Cap Equity Growth Fund, Instl | PMEGX | 0.61% | VHCAX | 0.38% | 61% |
| New America Growth Fund | PRWAX | 0.95% | VPMAX | 0.33% | 188% |
| New Asia Fund | PRASX | 0.82% | VPKIX | 0.09% | 811% |

13

| T.Rowe Price Fund | Ticker Symbol | T. Rowe Price Expense Ratio | Comparable Vanguard or other Fund (*= non-Vanguard fund) | Expense Ratio | Excess Over Vanguard or Other Fund |
|---|---|---|---|---|---|
| New Era Fund | PRNEX | 0.58% | VMIAX | 0.10% | 480% |
| Personal Strategy Balanced Fund | TRPBX | 0.75% | VWENX | 0.18% | 317% |
| Personal Strategy Growth Fund | TRSGX | 0.79% | VASGX | 0.15% | 427% |
| Personal Strategy Income Fund | PRSIX | 0.65% | VWIAX | 0.15% | 333% |
| Real Estate Fund | TRREX | 0.85% | VGSNX | 0.10% | 750% |
| Science & Technology Fund | PRSCX | 0.66% | VITAX | 0.10% | 560% |
| Short-Term Bond Fund | PRWBX | 0.36% | VFSIX | 0.07% | 414% |
| Small-Cap Stock Fund, Instl | TRSSX | 0.67% | VSTCX | 0.34% | 97% |
| Spectrum Growth Fund | PRSGX | 0.79% | VPMAX | 0.33% | 139% |
| Spectrum Income Fund | RPSIX | 0.69% | VWIAX | 0.15% | 360% |
| Spectrum International Fund | PSILX | 0.94% | VTSNX | 0.09% | 944% |
| Summit Cash Reserves Fund | TSCXX | 0.41% | VMRXX | 0.10% | 310% |
| Total Equity Market Index Fund | POMIX | 0.30% | VINIX | 0.04% | 650% |
| U.S. Large Cap Core Fund | TRULX | 0.91% | VGIAX | 0.23% | 296% |
| U.S. Treasury Intermediate Fund | PRTIX | 0.51% | VFIUX | 0.10% | 410% |
| U.S. Treasury Long-Term Fund | PRULX | 0.52% | VLGSX | 0.10% | 420% |
| Ultra Short-Term Bond Fund | TRBUX | 0.40% | VUSFX | 0.12% | 233% |
| *COLLECTIVE INVESTMENT TRUSTS* | | | | | |
| Blue Chip Growth Trust T1 | ` | 0.55% | VPMAX | 0.33% | 67% |
| Bond Trust I, T5 | - | 0.44% | VCOBX | 0.15% | 193% |
| Capital Appreciation Trust A | - | 0.57% | VWENX | 0.18% | 217% |
| Emerging Markets Equity Trust A | - | 1.00% | GILVX* | 0.84% | 19% |
| Equity Income Trust A | - | 0.50% | VUVLX | 0.26% | 92% |
| Equity Index Trust Class C | | 1.00% | VINIX | 0.04% | 2400% |

14

| T.Rowe Price Fund | Ticker Symbol | T. Rowe Price Expense Ratio | Comparable Vanguard or other Fund (*= non-Vanguard fund) | Expense Ratio | Excess Over Vanguard or Other Fund |
|---|---|---|---|---|---|
| Equity Index Trust Fund | - | 1.04% | VINIX | 0.04% | 2500% |
| Growth & Income Trust D | - | 0.60% | VGIAX | 0.23% | 161% |
| Growth Stock Trust D | - | 0.52% | VPMAX | 0.33% | 58% |
| International Core Equity Trust D | - | 0.65% | VTSNX | 0.10% | 550% |
| International Growth Equity Trust D | - | 0.65% | VWIGX | 0.46% | 41% |
| International Small-Cap Equity Trust D | - | 1.04% | VINEX | 0.41% | 154% |
| International Value Equity Trust D | - | 0.65% | VTRIX | 0.46% | 41% |
| New Horizons Trust A | - | 0.65% | VSTCX | 0.34% | 91% |
| Real Assets Trust I D | - | 0.65% | VMIAX | 0.10% | 550% |
| Retirement 2005 Active Trust A | - | 0.49% | VIRTX | 0.10% | 390% |
| Retirement 2010 Active Trust A | - | 0.49% | VIRTX | 0.10% | 390% |
| Retirement 2015 Active Trust A | - | 0.49% | VITVX | 0.10% | 390% |
| Retirement 2020 Active Trust A | - | 0.49% | VITWX | 0.10% | 390% |
| Retirement 2025 Active Trust A | - | 0.49% | VRIVX | 0.10% | 390% |
| Retirement 2030 Active Trust A | - | 0.49% | VTTWX | 0.10% | 390% |
| Retirement 2035 Active Trust A | - | 0.49% | VITFX | 0.10% | 390% |
| Retirement 2040 Active Trust A | - | 0.49% | VIRSX | 0.10% | 390% |
| Retirement 2045 Active Trust A | - | 0.49% | VITLX | 0.10% | 390% |
| Retirement 2050 Active Trust A | - | 0.49% | VTRLX | 0.10% | 390% |
| Retirement 2055 Active Trust A | - | 0.49% | VIVLX | 0.10% | 390% |
| Retirement 2060 Active Trust A | | 0.49% | VILVX | 0.10% | 390% |
| Retirement Balanced Trust B | | 0.49% | VITRX | 0.10% | 390% |

15

| T.Rowe Price Fund | Ticker Symbol | T. Rowe Price Expense Ratio | Comparable Vanguard or other Fund (*= non-Vanguard fund) | Expense Ratio | Excess Over Vanguard or Other Fund |
|---|---|---|---|---|---|
| Structured Research Trust B | - | 0.45% | VGIAX | 0.23% | 96% |
| U.S. Bond Enhanced Index Trust B | - | 0.15% | VBTIX | 0.05% | 200% |
| U.S. Mid-Cap Value Equity Trust D | - | 0.64% | VASVX | 0.39% | 64% |
| U.S. Small-Cap Value Equity Trust D | - | 0.66% | VEVFX | 0.57% | 16% |
| U.S. Treasury MM Trust B | - | 0.12% | VUSXX | 0.09% | 33% |
| U.S. Value Equity Trust D | - | 0.64% | VUVLX | 0.26% | 146% |

38.     A recent study by the Investment Company Institute ("ICI"), an association of regulated investment companies, and a company specializing in analysis of 401(k) Plan investments, Brightscope, Inc., compiled comparative data with respect to the average cost of mutual funds for 401(k) plans of various sizes.[6]  (The study only compiled data with respect to mutual funds; collective trust funds were not assessed).  The largest category was 401(k) plans exceeding $1 billion in assets, such as the 401(k) Plan here.  The expenses for virtually all of the in-house mutual funds in the table above are *above average* for 401(k) plans of this size.

39.     The in-house funds offered in the 401(k) Plan were expensive not only compared to funds offered by other investment companies, but also compared to other funds offered by T. Rowe Price itself.  During the Class Period, retail class versions of in-house mutual funds were offered to 401(k) Plan participants despite the fact that less expensive versions of the same funds were available and offered to T. Rowe Price's commercial customers.  The same is true with

---

[6] *The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans* (December 2016).

respect to the in-house Collective Investment Trusts offered in the 401(k) Plan; less expensive classes of many of these were available to T. Rowe Price's commercial customers.

40.     As noted above, during the Class Period, 401(k) Plan participants were required to pay in excess of **$50 million** in fees to TRP Associates as a result of their 401(k) Plan investments.  Plaintiff has determined that if alternative comparable funds such as those listed in the above table had been used in the 401(k) Plan, rather than the in-house funds, 401(k) Plan participants would have paid over **$27 million** *less* in fees during the Class Period.

41.     Moreover, if such funds had been used to replace funds in areas in which T. Rowe Price is weak, 401(k) Plan participants would have earned at least **$123 million** more for their retirement.  And this figure does not include comparisons for roughly two thirds of the in-house investment funds that are collective trust funds, since Plaintiff currently lacks detailed performance information for those funds.  The figure may increase materially once Plaintiff has access to that data.

**B.  Defendants Breached Their Fiduciary Duties of Prudence and Loyalty and Committed Transactions Prohibited by ERISA**

**1.  401(k) Plan Trustees Failed to Correct the Breaches of Predecessor Fiduciaries**

42.     At the inception of the Class Period, the 401(k) Plan exclusively held T. Rowe Price proprietary funds, and almost all of these were the expensive retail class versions of T. Rowe Price mutual funds.  The 401(k) Plan Trustees knew or should have known that their predecessor fiduciaries had breached their fiduciary duties of prudence and loyalty in selecting these funds for the 401(k) Plan.  The Trustees knew or should have known that, in many cases, alternative better performing and/or less costly non-proprietary investment funds were not

considered and would have been superior and prudent choices for the Plan instead of the in-house funds that were selected.

43.     The Trustees also knew or should have known that less costly versions of these proprietary funds were available, such as institutional share classes of mutual funds and lower cost classes of collective investment trusts.  Even where lower cost versions not available, the Trustees knew or should have known that they could have leveraged the Plan's size to negotiate the creation of Collective Investment Trusts or Separately Managed Accounts for the 401(k) Plan.  The Trustees also knew or should have known that their predecessor fiduciaries breached their duties by failing to sufficiently consider these alternatives and instead select them for the 401(k) Plan.

44.     Under ERISA, 401(k) Plan fiduciaries have an obligation to correct the breaches of predecessor fiduciaries.  Despite knowledge of the fiduciary breaches of their predecessors, the Defendant Trustees breached their fiduciary duties under ERISA by either failing to remedy these breaches, or, in a few cases of offering expensive retail class versions of proprietary mutual funds, waiting too long to act to shift into lower cost versions of the funds.

### 2. The Trustees' Imprudent and Disloyal Selection of 401(k) Plan Investment Options

45.     During the Class Period, the Defendant Trustees added many investment funds to the 401(k) Plan.  Without fail, all funds added were in-house T. Rowe Price funds.  In selecting and adding these funds, the Trustees failed to consider any non-proprietary alternatives.  Instead, they simply added in-house funds because doing so financially benefited T. Rowe Price and its subsidiaries.  The Trustees breached their duties of prudence and loyalty by failing to consider

any comparable non-proprietary investment funds.[7]  The Trustees also breached their duties by, in certain cases, not selecting the lowest cost available version of in-house funds for the 401(k) Plan.

### 3.  The Trustees' Imprudent and Disloyal Investment Monitoring

46.     The Trustees had a fiduciary duty to loyally and prudently monitor the 401(k) Plan investments' performance and fees, and the appropriateness of continuing to offer each investment in the 401(k) Plan.

47.     The Trustees met multiple times per year to discuss the affairs of T. Rowe Price employee benefit plans, including the 401(k) Plan.

48.     At these meetings, the appropriateness of the 401(k) Plan investment funds was reviewed and monitored.  However, the monitoring was both disloyal and imprudent.  The Trustees placed the financial interests of T. Rowe Price and its subsidiaries above those of 401(k)

---

[7] The in-house funds added during the Class Period are the following.  Retail class mutual funds: Global Allocation Fund, Global Industrials Fund, Asia Opportunities Fund, Ultra Short-Term Bond Fund, and Emerging Markets Corporate Bond Fund.  Institutional class mutual funds: Mid-Cap Equity Growth Fund, Frontier Markets Equity Fund, Global Value Equity Fund, Global Multi-sector Bond Fund, Concentrated International Equity Fund, Floating Rate Fund, Global Growth Equity Fund, International Bond Fund, Long Duration Credit Fund, Core Plus Fund, Large Cap Value Fund, Emerging Markets Bond Fund, Global Focused Growth Equity Fund, High Yield Fund, Africa & Middle East Fund, Large Cap Growth Fund, Small Cap Stock Fund, Credit Opportunities Fund.  Collective Investment Trusts:   Retirement 2010 Active Trust, Retirement 2015 Active Trust,  Retirement 2020 Active Trust,  Retirement 2025 Active Trust, Retirement 2030 Active Trust,  Retirement 2035 Active Trust,  Retirement 2040 Active Trust, Retirement 2045 Active Trust,  Retirement 2050 Active Trust,  Retirement 2055 Active Trust, Retirement 2060 Active Trust, Blue-Chip Growth Trust T1, U.S. Bond Enhanced Index Trust, New Horizons Trust, Bond Trust I, U.S. High-Yield Trust, Blue-Chip Growth Trust T5, Capital Appreciation Trust D, International Growth Equity Trust D, Equity Income Trust D, Growth Stock Trust D, Small Cap Core Equity Trust D, Mid-Cap Growth Equity Trust D, Mid-Cap Value Equity Trust D, Small Cap Value Equity Trust D, Value Equity Trust D, Retirement Income Active Trust, Capital Appreciation Trust A, Emerging Markets Equity Trust A, Equity Income Trust A, Growth & Income Trust D, International Small Cap Equity Trust D, International Value Equity Trust D, New Horizons Trust A, International Core Equity Trust D, Real Assets Trust I D, Structured Research Trust B, Retirement Balanced Active Trust.

Plan participants by favoring in-house funds, where the fees paid enriched T. Rowe Price affiliates, and failed to consider whether those funds should be replaced with lower cost non-proprietary funds.

### 4.  The Defendant TRP Investment Affiliates' Fiduciary Breaches

49.    The Defendant TRP Investment Affiliates, as fiduciaries and investment advisers to the 401(k) Plan and its Trustees, were obviously conflicted when it came to recommending or evaluating any of the in-house funds as 401(k) Plan investment vehicles since they also served as the investment advisor to those funds, and received fees proportional to the amount of assets invested in those funds.

50.    The TRP Investment Affiliates breached their duties of prudence and loyalty to participants by failing to give impartial investment advice to the Trustees in conjunction with monitoring, selection, and the appropriateness of continuing to offer in-house funds for the 401(k) Plan.

51.    The Trustees knew the TRP Investment Affiliates were conflicted but nevertheless relied on the TRP Investment Affiliates' advice.

### 5.  The Appointing Fiduciary Defendants' Fiduciary Breaches

52.    The Appointing Fiduciary Defendants knew or should have known that the Trustees were breaching their ERISA fiduciary duties in committing prohibited transactions with respect to the 401(k) Plan, as detailed herein.  Rather than taking steps to remedy these violations, the Appointing Fiduciary Defendants welcomed and participated in the Trustees' ERISA violations.

### 6.  Defendants' Violations of ERISA's Prohibited Transaction Provisions

20

53.     As is discussed further below, Defendants' self-dealing conduct in causing the

401(k) Plan to be invested in in-house funds violated ERISA's prohibited transaction provisions,

29 U.S.C. §1106.

### 7. **Other Facts Relevant to Defendants' Breaches**

54.     401(k) Plan participants, including the named Plaintiff, do not have access to

minutes or other information regarding the proceedings of the 401(k) Plan Trustees or any other

Defendant fiduciaries in making investment decisions with respect to the Plan.

## V.     **CLASS ACTION ALLEGATIONS**

55.     Plaintiff brings this action on behalf of:

> All participants and beneficiaries in the T. Rowe Price U.S. Retirement
> Program from February 14, 2011 through the date of judgment.  Any
> individual Defendants, their beneficiaries, and their immediate
> families are excluded from the class.

56.     Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1) and/or

(b)(3).

57.     The class satisfies the numerosity requirement because it is composed of

thousands of persons.  The 401(k) Plan has more than 8,000 participants.  The number of class

members is so large that joinder of all its members is impracticable.

58.     Common questions of law and fact include:

A.     Whether the Trustees were ERISA fiduciaries responsible for monitoring

401(k) Plan investments;

B.      Whether the Defendant TRP Investment Affiliates were ERISA

fiduciaries and investment advisers to the 401(k) Plan;

C.      Whether the Appointing Fiduciary Defendants were ERISA fiduciaries to the 401(k) Plan with the responsibility for monitoring the performance of the Trustees in managing Plan investments;

D.      Whether the Trustees and the TRP Investment Affiliates breached their ERISA fiduciary duties in monitoring the investment options in the 401(k) Plan;

E.      Whether the Trustees and the TRP Investment Affiliates breached their ERISA fiduciary duties in selecting investment options for the 401(k) Plan; and

F.      Whether the 401(k) Plan and its participants suffered losses as a result of the Defendants' fiduciary breaches.

59.     Plaintiff's claims are typical of the claims of the Class.  He has no interests that are antagonistic to the claims of the Class.  He understands that this matter cannot be settled without the Court's approval.

60.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff is committed to the vigorous representation of the Class.  Plaintiff's counsel are McTigue Law LLP ("McTigue Law") and Cohen Milstein Sellers and Toll PLLC ("Cohen Milstein").  For almost two decades, McTigue Law has devoted its practice principally to protecting ERISA plan participants by litigating civil enforcement class actions alleging the mal-investment of ERISA plan assets.  It has been appointed lead or co-lead counsel in numerous such cases, many of which involved cutting edge legal issues.  Cohen Milstein's Employee Benefits Practice Group has been devoted exclusively to litigating complex ERISA class actions for over 15 years. The group, led by Karen L. Handorf, has played a significant role in the development of employee benefits law, and maintains a leading ERISA practice that successfully represents ERISA participants throughout the country.

22

61.     Plaintiff's counsel have agreed to advance the costs of the litigation contingent upon the outcome.  Counsel are aware that no fee can be awarded without the Court's approval.

62.     A class action is the superior method for the fair and efficient adjudication of this controversy.  Joinder of all members of the class is impracticable.  The losses suffered by some of the individual members of the class may be small, and it would therefore be impracticable for individual members to bear the expense and burden of individual litigation to enforce their rights.  Moreover, Defendants, as 401(k) Plan fiduciaries, were obligated to treat all class members similarly, i.e. as Plan participants governed by written plan documents and ERISA, which impose uniform standards of conduct on fiduciaries.  Individual proceedings, therefore, would pose the risk of inconsistent adjudications.  Plaintiff is unaware of any difficulty in the management of this action as a class action.

63.     This Class may be certified under Rule 23(b).

A.     23(b)(1).  As an ERISA breach of fiduciary duty action, this action is a classic 23(b)(1) class action.  Prosecution of separate actions by individual members would create the risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendants, or (B) adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

B.     23(b)(3).  This action is suitable to proceed as a class action under 23(b)(3) because questions of law and fact common to the members of the Class predominate over individual questions, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Given the nature of

the allegations, no class member has an interest in individually controlling the

prosecution of this matter.

## VI.   CLAIMS FOR RELIEF

### COUNT I

**Breach of Duties of Loyalty and Prudence for Imprudent and Disloyal Monitoring and Selection of 401(k) Plan Investments during the Class Period, which Caused Losses to the 401(k) Plan**
**(Violation of ERISA, 29 U.S.C. §1104 by the 401(k) Plan Trustees)**

64.     All previous averments are incorporated herein.

65.     At all relevant times, the 401(k) Plan Trustees were fiduciaries within the

meaning of ERISA, 29 U.S.C. §1002(21)(A), by exercising authority and control with respect to

the management of the 401(k) Plan and its assets.

66.     The Trustees had an ongoing duty to loyally and prudently monitor and select

401(k) Plan investments.

67.     The Trustees breached their duties of prudence and loyalty under ERISA, 29

U.S.C. §§1104(a)(1)(A), (B) by disloyally and imprudently monitoring and selecting 401(k) Plan

investment options during the Class Period.  The Trustees breached their duties by employing

disloyal and imprudent monitoring processes.  They gave preferential treatment to the in-house

funds because maintaining those funds in the 401(k) Plan financially benefited T. Rowe Price

and its subsidiaries, since it generated millions of dollars in fee income for the TRP Investment

Affiliates.

68.     The Trustees also breached their duties of prudence and loyalty by selecting

and/or failing to replace higher cost retail versions of the in-house funds, when lower cost

versions, specifically either institutional share classes or collective trusts, were available.  To the

24

extent the Trustees replaced retail share classes with lower cost versions with respect to some of the funds during the Class Period, they breached their duties by not doing so earlier.

69.     As a direct and proximate result of these breaches of duty, the Plan, and indirectly Plaintiff and the Plan's other participants, realized losses.

70.     Pursuant to ERISA, 29 U.S.C. §1132(a)(2) and 29 U.S.C. §1109(a), the Committee Defendants are liable to restore all losses suffered by the Plan caused by the Committee Defendants' breaches of fiduciary duty.

## COUNT II

### The Appointing Fiduciary Defendants Breached their ERISA Fiduciary Duties by Failing to Remove and Prudently Monitor the 401(k) Plan Trustees

71.     All previous averments are incorporated herein.

72.     At all relevant times the Appointing Fiduciary Defendants (T. Rowe Price, its Management and Management Compensation Committees and their individual members) were 401(k) Plan fiduciaries within the meaning of ERISA, 29 U.S.C. §1002(21)(A), by exercising authority and control with respect to appointment, removal (if necessary), and monitoring of the Trustees in the performance of their fiduciary duties.

73.     The Appointing Fiduciary Defendants violated their ERISA fiduciary duties of prudence and loyalty by failing to adequately monitor the performance of the Trustees when the Appointing Fiduciary Defendants knew or should have known that the Trustees were failing to fulfill their ERISA fiduciary obligations.  In particular, the Trustees were breaching their duties of loyalty and prudence by exclusively offering in-house funds in the 401(k) Plan, and failing to consider lower cost and better performing non-proprietary alternatives.

25

74.     As a direct and proximate result of these breaches of fiduciary duty, the 401(k)

Plan, and indirectly Plaintiff and the 401(k) Plan's other participants, lost tens of millions of

dollars in retirement savings.

## COUNT III

**Breach of Duties of Loyalty and Prudence by Providing Imprudent and Self-Interested
Investment Advice to Committee Defendants
(Violation of ERISA, 29 U.S.C. §1104 by Defendant TRP Investment Affiliates)**

75.     All previous averments are incorporated herein.

76.     At all relevant times, Defendant TRP Investment Affiliates were fiduciaries of the

401(k) Plan in that they regularly provided investment advice to the 401(k) Plan Trustees that

was a principal basis for the Trustees' investment decisions with respect to the 401(k) Plan.  The

TRP Investment Affiliates were indirectly compensated for this advice via the fees they received

on 401(k) Plan assets invested in the in-house funds.

77.     Defendant TRP Investment Affiliates were required by ERISA to provide prudent

and loyal advice to the Trustees regarding 401(k) Plan investment options that put the interests of

401(k) Plan participants first and foremost.

78.     Rather than providing such advice, Defendant TRP Investment Affiliates provided

self-interested and imprudent advice that benefited their own investment management business –

both financially and in terms of reputation.

79.     As a direct and proximate result of these breaches of duty, the 401(k) Plan, and

indirectly Plaintiff and the 401(k) Plan's other participants, realized losses.

80.     Pursuant to ERISA, 29 U.S.C. §1132(a)(2) and 29 U.S.C. §1109(a), Defendant

TRP Investment Affiliates are liable to restore all losses suffered by the 401(k) Plan caused by

their breaches of fiduciary duty, and to disgorge all fees paid to them as a result of investment 401(k) Plan assets in the in-house funds during the Class Period.

## COUNT IV

### Liability for Breach of Co-Fiduciary
### (Liability Pursuant to ERISA, 29 U.S.C. §1105 of the Appointing Fiduciary Defendants and the TRP Investment Affiliates)

81.     All previous averments are incorporated herein.

82.     As a fiduciary of the 401(k) Plan, the Appointing Fiduciary Defendants assumed a duty to protect the Plan from the improper actions of other Plan fiduciaries.  A co-fiduciary is liable for the breach of another co-fiduciary under ERISA, 29 U.S.C. §1105, if he either knowingly participates in or conceals another fiduciary's breach of duty, or fails to make reasonable efforts under the circumstances to remedy the breach of another fiduciary when he has knowledge of the breach.

83.     The Appointing Fiduciary Defendants are liable as co-fiduciaries because they were aware of, participated in, enabled, concealed, and failed to remedy the Trustees' breaches of fiduciary duty, as described above, related to their monitoring, selection of, and failure to remove, the in-house funds as 401(k) Plan investments.

84.     Defendant TRP Investment Affiliates knowingly participated in and enabled the Trustees' breaches of fiduciary duty in monitoring and selecting the in-house funds by repeatedly advising, as discussed above, selection and retention of the in-house funds.  The TRP Investment Affiliates gave this advice because they benefited financially and in terms of promotion and reputation of their investment management business if the in-house funds were selected for, and were retained in, the 401(k) Plan.

27

85.     As a direct and proximate result of the Appointing Fiduciary Defendants and the

TRP Investment Affiliates' actions, the Plan and its participants lost tens of millions of dollars.

Pursuant to ERISA, 29 U.S.C. §§1132(a)(2) & 1109(a), the Appointing Fiduciary Defendants

and the TRP Investment Affiliates are liable to restore all losses to the Plan caused by the

breaches of their co-fiduciaries.

## COUNT V

### Liability for Failing to Remedy Breach of Predecessor Fiduciaries
### (ERISA Violation Against the 401(k) Plan Trustees)

86.     All previous averments are incorporated herein.

87.     A fiduciary has a continuing duty to remedy breaches of predecessor fiduciaries,

including breaches in the selection of investments.

88.     Prior to the inception of the Class Period, 401(k) Plan fiduciaries selected

numerous investment options for the 401(k) Plan, all of them were in-house funds, and almost all

of them were the most costly retail share class of those funds.

89.     Those funds were disloyally selected because, on information and belief, they

were chosen because their presence in the 401(k) Plan financially benefited T. Rowe Price and

its affiliates.  They were also chosen with no or inadequate consideration of alternatives.  401(k)

Plan fiduciaries thus breached their duties in selecting these funds for the 401(k) Plan.

90.     Plaintiff does not currently know the names of those Trustees who are successor

fiduciaries to those fiduciaries who selected in-house funds prior to the Class Period.  Their

names will be supplied through discovery.  Henceforth, they will be referred to as the "Successor

Fiduciary Defendants."

28

91.     The Successor Fiduciary Defendants were aware that their predecessor fiduciaries had breached their duties in selecting the in-house funds.

92.     The Successor Fiduciary Defendants breached their duties by failing to take adequate steps to remedy, within the Class Period, their predecessors' breaches in selecting the in-house funds.  Such steps could have included a full, unbiased, review of alternatives to the in-house funds for the Plan, and consideration of replacing them lower cost and/or better performing alternative investments.

93.     As a result of the Successor Fiduciary Defendants' breaches, the Plan and its participants lost tens of millions of dollars.

## COUNT VI

**Liability for Committing Prohibited Transactions
in Violation of ERISA, 29 U.S.C. §1106
(Against the 401(k) Plan Trustees and the TRP Investment Affiliates)**

94.     All previous averments are incorporated herein.

95.     ERISA's fundamental fiduciary duties of loyalty and prudence are supplemented by express prohibitions of categories of transactions specified in 29 U.S.C. §1106.  Engaging in such transactions is considered a *per se* violation because they entail a high risk for abuse.  The two main types of prohibited transactions are: (1) transactions between the plan and parties in interest to the plan, such as persons or entities affiliated with the Plan's fiduciaries, service providers, or associated parties,[8] and (2) transactions in which fiduciaries benefit themselves or a party with interests adverse to the plan.[9]

---

[8] *See* 29 U.S.C §1106(a)(1) which provides, in pertinent part: "a fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing, or any property between the plan and party in interest; … (C) furnishing of goods, services, or facilities between

96.     At all relevant times, Defendant 401(k) Plan Trustees and Defendant TRP Investment Affiliates were 401(k) Plan fiduciaries.  In addition, they were all parties in interest to the 401(k) Plan, as that term is defined in 29 U.S.C. §1002(14).

97.     The Trustee Defendants and Defendant TRP Investment Affiliates, by their actions and omissions, throughout the Class Period, in causing the 401(k) Plan to be invested in the in-house funds, and in causing the 401(k) Plan to pay, directly or indirectly, investment management and other fees to the TRP Investment Affiliates in connection therewith, caused the 401(k) Plan to engage in transactions that these Defendants knew or should have known constituted sales or exchanges of property between the 401(k) Plan and parties in interest, furnishing of services between the Plan and a party in interest, transfer of Plan assets to a party in interest, and transactions between a Plan and its fiduciaries in violation of 29 U.S.C. §§1106(a)(1)(A), (C), (D), and 1106(b).

98.     As a direct and proximate result of these prohibited transaction violations, the 401(k) Plan, directly or indirectly, paid millions of dollars in investment management and other fees that were prohibited by ERISA and suffered tens of millions of dollars in losses.

99.     Pursuant to 29 U.S.C. §§1109(a) and 1132(a)(2), these Defendants are liable to restore all losses suffered by the 40(k) Plans as a result of the prohibited transactions and

---

the plan and a party in interest; (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan…".

[9] *See* 29 U.S.C. §1106(b) which provides, in pertinent part: "a fiduciary with respect to the plan shall not (1) deal with the assets of the plan in his own interest or for his own account, (2) in his individual or in ay other capacity act in a transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

disgorge all revenues received and/or earned from the fees paid out of 401(k) Plan assets, as well as other appropriate equitable relief.

WHEREFORE, Plaintiff prays for relief as follows:

a) Certify this action as a class action pursuant to Fed. R. Civ. P. 23;

b) Issue an order removing Defendants from their positions of fiduciary responsibility with respect to the 401(k) Plan;

c) Issue an order compelling Defendants to make good to the Plan all losses to the Plan resulting from Defendants' fiduciary breaches and prohibited transactions, including lost return on investments and payment of high fees for investments;

d) Order equitable restitution, disgorgement of all fees paid, and other appropriate equitable monetary relief against Defendants;

e) Award Plaintiff and the class their attorneys' fees and costs pursuant to ERISA, 29 U.S.C. §1132(g) and/or the Common Fund doctrine; and

f) Award such other and further relief as the Court deems equitable and just.

Respectfully Submitted,

By /s/_Mikael S. Neville_____

J. Brian McTigue (*Pro Hac Vice* forthcoming)
James A. Moore (*Pro Hac Vice* forthcoming)
Mikael Neville (USDC D. of MD Bar No. 19855)
**MCTIGUE LAW LLP**
4530 Wisconsin Avenue, NW
Suite 300
Washington, DC  20016
Tel:  (202) 364-6900
Fax: (202) 364-9960
bmctigue@mctiguelaw.com
jmoore@mctiguelaw.com

31

mneville@mctiguelaw.com

**COHEN MILSTEIN SELLERS & TOLL, PLLC**
Karen L. Handorf (*Pro Hac Vice* forthcoming)
Scott M. Lempert (*Pro Hac Vice* forthcoming)
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
Tel: (202) 408-4600
Fax: (202) 408-4699
khandorf@cohenmilstein.com
slempert@cohenmilstein.com

*Counsel for Plaintiff*