**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

_____ )
DAVID G. FEINBERG, and all others similarly )
situated,                                    )
                                             )
                Plaintiffs,                  )
                                             )      Civil Action No. 1:17-cv-00427-MJG
vs.                                          )
                                             )
T. ROWE PRICE GROUP, INC. et al.,            )
                                             )
                Defendants.                  )
_____ )

**MEMORANDUM IN SUPPORT OF DEFENDANTS T. ROWE PRICE
<u>GROUP, INC. ET AL.'S MOTION TO DISMISS</u>**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 3

LEGAL STANDARD............................................................................................. 6

ARGUMENT ......................................................................................................... 7

I.  PLAINTIFF DOES NOT HAVE CONSTITUTIONAL STANDING TO
    ASSERT CLAIMS AS TO FUNDS IN WHICH HE DID NOT INVEST ..................... 7

II. COUNT I FAILS BECAUSE PLAINTIFF HAS FAILED TO SUFFICIENTLY
    ALLEGE THAT ANY OF THE FUNDS IN WHICH HE INVESTED WAS
    IMPROPERLY RETAINED IN THE PLAN LINEUP.................................................. 11

    A.  Particularly In Light Of The Restrictive Plan Document, The Mere Fact
        That The Plan Offered An All-T. Rowe Price Fund Lineup Does Not
        Support An Inference Of Imprudence Or Disloyalty........................................... 12

    B.  Plaintiff Has Failed To Plausibly Allege That Defendants Violated Their
        Fiduciary Duties By Failing To Remove Any Particular Fund From The
        Plan Lineup ...................................................................................................... 18

III. PLAINTIFF HAS NOT ADEQUATELY ALLEGED THAT THE TRUSTEES
     FAILED TO REMEDY BREACHES COMMITTED BY PREDECESSOR
     FIDUCIARIES (COUNT V) .................................................................................. 20

IV. THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE A FIDUCIARY
    BREACH BY T. ROWE PRICE ASSOCIATES OR T. ROWE PRICE TRUST
    (COUNT III) ........................................................................................................ 21

V.  PLAINTIFF'S DERIVATIVE MONITORING (COUNT II) AND CO-
    FIDUCIARY LIABILITY (COUNT IV) CLAIMS FAIL, AMONG OTHER
    REASONS, BECAUSE PLAINTIFF HAS NOT PLAUSIBLY ALLEGED ANY
    UNDERLYING BREACH ...................................................................................... 23

VI. PLAINTIFF'S PROHIBITED TRANSACTION CLAIMS MUST ALSO BE
    DISMISSED ......................................................................................................... 25

    A.  The Complaint Does Not State Any Valid Prohibited Transaction Claims......... 26

    B.  Plaintiff's Prohibited Transaction Claims Are Barred By ERISA's Six-
        Year Statute Of Repose...................................................................................... 30

CONCLUSION..................................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Allen v. GreatBanc Trust Co.,
835 F.3d 670 (7th Cir. 2016) ...................................................................... 26, 28

Ashcroft v. Iqbal,
556 U.S. 662 (2009) .................................................................................... 7, 23

Beck v. PACE Int'l Union,
551 U.S. 96 (2007) ........................................................................................ 14

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ........................................................................................ 7

Bendaoud v. Hodgson,
578 F. Supp. 2d 257 (D. Mass. 2008) ............................................................. 8

Braden v. Wal-Mart Stores, Inc.,
588 F.3d 585 (8th Cir. 2009) ......................................................................... 28

Broussard v. Meineke Discount Muffler Shops, Inc.,
155 F.3d 331 (4th Cir. 1998) ......................................................................... 21

Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.,
472 U.S. 559 (1985) ...................................................................................... 15

Chao v. Ballista,
630 F. Supp. 2d 170 (D. Mass. 2009) ........................................................... 27

Coulter v. Morgan Stanley & Co.,
753 F.3d 361 (2d Cir. 2014) .......................................................................... 24

David v. Alphin,
704 F.3d 327 (4th Cir. 2013) ..................................................................... 8, 30

David v. Alphin,
817 F. Supp. 2d 764 (W.D.N.C. 2011) .......................................................... 8, 9

Difelice v. U.S. Airways, Inc.,
497 F.3d 410 (4th Cir. 2007) ......................................................................... 16

Donovan v. Bierwirth,
680 F.2d 263 (2d Cir. 1982) .......................................................................... 15

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Donovan v. Cunningham,*
716 F.2d 1455 (5th Cir. 1983) ........................................................................... 25, 26

*Dupree v. Prudential Ins. Co. of Am.,*
2007 WL 2263892 (S.D. Fla. Aug. 7, 2007) ................................................... 14, 26

*Dzinglski v. Weirton Steel Corp.,*
875 F.2d 1075 (4th Cir. 1989) ................................................................................ 14

*Edwards v. City of Goldsboro,*
178 F.3d 231 (4th Cir. 1999) ................................................................................... 7

*Fifth Third Bancorp v. Dudenhoeffer,*
134 S. Ct. 2459 (2014) ..................................................................................... 17, 27

*Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.,*
530 U.S. 238 (2000) ................................................................................................ 26

*Hecker v. Deere & Co.,*
556 F.3d 575 (7th Cir. 2009) ............................................................. 14, 15, 18, 22

*Hughes Aircraft Co. v. Jacobson,*
525 U.S. 432 (1999) .......................................................................................... 14, 16

*In re Constellation Energy Grp., Inc. ERISA Litig.,*
738 F. Supp. 2d 602 (D. Md. 2010) ....................................................................... 23

*In re Duke Energy ERISA Litig.,*
281 F. Supp. 2d 786 (W.D.N.C. 2003) ................................................................... 23

*In re McKesson HBOC, Inc. ERISA Litig.,*
391 F. Supp. 2d 812 (N.D. Cal. 2005) .................................................................... 16

*In re Meridian Funds Grp. Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.,*
917 F. Supp. 2d 231 (S.D.N.Y. 2013) ...................................................................... 9

*In re Mut. Funds Inv. Litig.,*
529 F.3d 207 (4th Cir. 2008) ................................................................................... 8

*LaRue v. DeWolff, Boberg & Assocs.,*
552 U.S. 248 (2008) .................................................................................................. 8

*Leber v. Citigroup Inc.,*
2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ......................................................... 27

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Lewis v. Casey*,
  518 U.S. 343 (1996)..................................................................................................... 9

*Luitgaren v. Sun Life Assurance Co. of Can.*,
  765 F.3d 59 (1st Cir. 2014) ...................................................................................... 16

*Mehling v. N.Y. Life Ins. Co.*,
  163 F. Supp. 2d 502 (E.D. Pa. 2001) ....................................................................... 27

*Morse v. Stanley*,
  732 F.2d 1139 (2d Cir. 1984) ................................................................................... 16

*Philips v. Pitt Cty. Mem'l Hosp.*,
  572 F.3d 176 (4th Cir. 2009) ...................................................................................... 4

*Renfro v. Unisys Corp.*,
  671 F.3d 314 (3d Cir. 2011) ........................................................................... 15, 21, 25

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*,
  945 F.2d 765 (4th Cir. 1991) ...................................................................................... 6

*Rufus El v. Ocwen Loan Servicing, LLC*,
  2014 WL 994342 (D. Md. Mar. 13, 2014) ................................................................. 6

*Sengpiel v. B.F. Goodrich Co.*,
  156 F.3d 660 (6th Cir. 1998) .................................................................................... 19

*Stegall v. Ladner*,
  394 F. Supp. 2d 358 (D. Mass. 2005) ........................................................................ 9

*Tatum v. RJR Pension Inv. Comm.*,
  761 F.3d 346 (4th Cir. 2014) .................................................................................... 17

*Tavernas v. UBS AG*,
  612 F. App'x 27 (2d Cir. 2015) .................................................................................. 8

*Taylor v. United Techs. Corp.*,
  2009 WL 535779 (D. Conn. Mar. 3, 2009) .............................................................. 18

*U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*,
  745 F.3d 131 (4th Cir. 2014) ...................................................................................... 4

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996).................................................................................................. 20

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens,*
   529 U.S. 765 (2000)...................................................................................... 8

*White v. Chevron Corp.,*
   2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ....................................... 19

*Wilmington Shipping Co. v. New England Life Ins. Co.,*
   496 F.3d 326 (4th Cir. 2007) .................................................................... 8

*Wright v. Or. Metallurgical Corp.,*
   360 F.3d 1090 (9th Cir. 2004) ................................................................ 30

*Zeno v. Chevy Chase Bank,*
   2009 WL 4738077 (D. Md. Dec. 4, 2009)............................................. 20

## STATUTES

29 U.S.C. § 1104(a)(1).................................................................... 5, 12, 15, 27

29 U.S.C. § 1105(a) ................................................................................... 24

29 U.S.C. § 1105(a)(3)................................................................................ 21

29 U.S.C. § 1106 ......................................................................................... 26

29 U.S.C. § 1108(b)(8) .............................................................................. 29

29 U.S.C. § 1113(a) .................................................................................... 30

## REGULATIONS

42 Fed. Reg. 18,734 (Mar. 31, 1977)........................................................ 28

Notice of Proposed Rulemaking, Participant Directed Individual Account Plans,
   56 Fed. Reg. 10,724 (Mar. 13, 1991)...................................................... 14

## LEGISLATIVE MATERIALS

H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), *reprinted in* 1974 U.S.C.C.A.N.
   5038 .................................................................................................. 14, 25

## OTHER AUTHORITIES

Investment Company Institute, *2016 Investment Company Fact Book* (56th ed.) ...................... 18

## INTRODUCTION

Plaintiff's complaint mounts a sweeping attack on more than 140 investment options made available to participants in the T. Rowe Price U.S. Retirement Program (the "Plan") over a six-year period, claiming that the inclusion of those funds in the Plan lineup violated the Employee Retirement Income Security Act of 1974 ("ERISA"), in part because an unspecified subset of those funds fall "in those asset classes and investment fund categories in which T. Rowe Price performance is weak." Complaint ("Compl.") ¶ 14 (ECF No. 1). Plaintiff himself, however, invested in only *three* of those funds during that period, and plaintiff therefore lacks Article III standing to assert most of his claims. The Court should enter an order pursuant to Rule 12(b)(1) dismissing all claims that plaintiff lacks Article III standing to raise, including (but not limited to) all claims relating to funds in which plaintiff did not invest.

All remaining claims should be dismissed pursuant to Rule 12(b)(6) because the Complaint fails to state a claim as to any of the funds in which plaintiff actually invested. Plaintiff's core claim is that the Plan's fiduciaries improperly limited the Plan's investment lineup to T. Rowe Price funds in order to generate fee income for the T. Rowe Price subsidiaries that managed them. That allegation cannot be sustained because it ignores the crucial fact that the Plan document itself *required* the Plan to offer T. Rowe Price funds exclusively. The Plan's fiduciaries had a duty under ERISA § 404(a)(1)(D) to comply with all of the Plan's terms, including its directive to use only T. Rowe Price funds, unless doing so would violate ERISA. Thus, to state a claim in these circumstances, plaintiff must plausibly allege that any prudent fiduciary in defendants' position would have concluded that ERISA required them to override the Plan's investment limitation. It is firmly established that ERISA permits in-house investment lineups, however, and the Complaint does not come close to identifying any circumstances unique to the T. Rowe Price Plan that would have caused any prudent fiduciary to conclude that

1

ERISA required a Plan-document override as to any particular fund; indeed, the Complaint fails even to acknowledge the Plan's express investment limitation, or the high legal threshold for overriding it.  ERISA does not permit either imprudence or disloyalty to be inferred from a plan fiduciary's adherence to such an investment limitation, and plaintiff's core claim must therefore be dismissed.

Plaintiff's attack on the Plan's investment lineup also fails for additional, independent reasons.  Plaintiff offers absolutely no specifics to support his claim that some unidentified funds offered in the Plan performed poorly relative to others available in the marketplace.  And while plaintiff does identify a variety of non-T. Rowe Price funds that he labels "lower-cost alternatives" to the funds in the Plan's investment lineup, the Complaint makes no showing that the identified funds were truly comparable to the T. Rowe Price funds available to Plan participants, and in any event the mere existence of less expensive funds does not establish a fiduciary breach, as it is well established that ERISA does not require a fiduciary to select the least expensive option.

Plaintiff's separate allegation that the Plan fiduciaries breached their duties by "not selecting the lowest cost available version" of some (but not all) of the Plan's investment options is equally infirm.  The Complaint does not identify a *single* specific fund to which this allegation applies.  And there is zero legal support for plaintiff's fanciful assertion that where lower-cost alternatives did not exist, the Plan fiduciaries violated ERISA by failing to ask the Plan's sponsor to *create* lower-cost investment options for the Plan—options that it did not provide to any other investors.

Plaintiff's other claims are similarly flawed.  Absent allegations plausibly suggesting that any particular fund was not proper for investment by Plan participants—either before or during

the asserted class period—plaintiff's claim that the Plan fiduciaries failed to correct breaches committed by their predecessors cannot survive.  Plaintiff's claim that the subsidiaries that managed T. Rowe Price's mutual funds and collective trusts provided imprudent and self-interested "investment advice" to the fiduciaries responsible for overseeing the Plan's lineup of investment options is impermissibly vague and conclusory.  Plaintiff's failure-to-monitor and co-fiduciary liability claims are wholly derivative of his primary fiduciary-breach claims and therefore fail along with them.  And plaintiff's prohibited transaction claims are doubly deficient:  The Complaint fails to adequately allege that ERISA's prohibited transaction provisions required an override of the Plan language requiring the use of T. Rowe Price investment products, and the claims are in any event barred by ERISA's six-year statute of repose.

The Complaint should be dismissed in its entirety.

## BACKGROUND

Defendant T. Rowe Price Group, Inc. ("T. Rowe Price") is a "financial services organization that provides a broad range of services to consumers and corporate customers." Compl. ¶ 21.  Employers are not required to offer retirement plans, and when they do they are not required to financially contribute to them.  T. Rowe Price, however, has chosen to sponsor a defined contribution 401(k) plan for its eligible employees that is particularly generous.  *See* Compl. ¶ 21.  Not only may participating employees elect to contribute a percentage of their compensation to the Plan, *see* Declaration of Clay Bowers in Support of Defendants T. Rowe Price Group, Inc. et al.'s Motion to Dismiss ("Bowers Decl."), Exs. A-D (2006, 2012, 2015, and 2017 Plan Documents) § 4.1, but T. Rowe Price itself makes several types of contributions to the Plan on participants' behalf, including fixed contributions that are made even if a participant decides not to contribute herself, matching contributions, and a discretionary additional year-end

contribution, Bowers Decl., Exs. A-D (2006, 2012, 2015, and 2017 Plan Documents) §§ 4.3-4.5.

Publicly available documents filed with the Department of Labor show that these T. Rowe Price

contributions have dwarfed participants' own contributions during the relevant period.  *See*

Declaration of Shannon M. Barrett in Support of Defendants T. Rowe Price Group, Inc. et al.'s

Motion to Dismiss ("Barrett Decl."), Exs. 2-6 (2011-2015 Form 5500s), Schedule H, Part II

(showing total Plan contributions by employer and employees).[1]

At the outset of the proposed class period, the Plan document gave the T. Rowe Price

Management Committee responsibility for appointing and removing Plan Trustees, Compl.

¶ 25—a responsibility that was later assumed by the T. Rowe Price Management Compensation

Committee sometime in 2015 or 2016, Compl. ¶ 26.  The Trustees, in turn, were responsible for

overseeing the Plan's lineup of investment options, as permitted and directed by applicable

provisions of the Plan documents.  Compl. ¶ 24.

Throughout the proposed class period, Plan participants had a broad range of investment

options to choose from—80 to 95 funds each year.  Compl. ¶ 34.  The Plan document at all

relevant times required the Plan to use investment products offered by T. Rowe Price and its

subsidiaries to the investing public.  Until 2014, the Plan document required the fiduciaries to

offer an exclusive lineup of T. Rowe Price options unless they concluded it would be imprudent

to do so—*i.e.*, that ERISA effectively required them to consider non-T. Rowe Price alternatives

for particular strategies.  *See* Bowers Decl., Ex. A (2006 Plan Document), Amendment No. 5

§ 11.4(d) (effective Feb. 18, 2010).  After a clarifying amendment in 2014, the Plan document

---

[1] On a motion to dismiss, the court may consider "documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quotations and citation omitted).  The court may also "properly take judicial notice of matters of public record." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

afforded the Trustees no explicit authority to consider non-T. Rowe Price options at all,
confirming that the *only* circumstance in which the fiduciaries could override the Plan
document's directive to use T. Rowe Price funds was where complying with that directive would
violate ERISA. *See* Bowers Decl., Ex. B (2012 Plan Document), Amendment No. 2 §§ 6.5(a),
11.4(d) (effective July 1, 2014); *see also id.* § 1.1 (amendment was intended "to eliminate
Trustee discretion with respect to the investment menu, and to mandate the investment options to
be offered under the Plan"). The decision to impose a requirement that the Plan offer
participants only affiliated funds was motivated by T. Rowe Price's interest in reinforcing its
employees' commitment to create and support high-quality investment products for all of the
Company's investing clients, and to avoid "potential conflicts of interest that could result from
allowing investment in individual securities or non-proprietary funds or trusts." Bowers Decl.,
Ex. B (2012 Plan Document), Amendment No. 2 § 1.1. Because ERISA requires fiduciaries to
follow the Plan's governing documents to the extent doing so is consistent with ERISA's other
provisions, *see* 29 U.S.C. § 1104(a)(1)(D), the upshot was that at all relevant times the
fiduciaries were required to offer an exclusive T. Rowe Price lineup unless they judged that
lineup imprudent or otherwise inconsistent with ERISA's requirements.

Consistent with the Plan document's directive, at all relevant times the Plan's lineup of
investment options consisted of a comprehensive array of T. Rowe Price funds. *See* Compl.
¶¶ 3, 6, 34. T. Rowe Price Associates, Inc., a subsidiary of T. Rowe Price, provided investment
advisory services to the in-house mutual funds in the Plan's lineup, Compl. ¶ 22, meaning that it
selected the underlying securities in which the respective mutual funds invested. Similarly, T.
Rowe Price Trust Company, a separate T. Rowe Price subsidiary, acted as the investment
manager for the in-house collective trusts. Compl. ¶ 23. The Plan's lineup changed over the

proposed class period as T. Rowe Price's fund offerings to the market changed, and as Plan amendments altered the kinds of funds that the Trustees were directed to include in the Plan. *See* Compl. ¶¶ 35 ("some funds were added and removed during the Class Period"), 45 ("During the Class Period, the Defendant Trustees added many investment funds to the 401(k) Plan."); *see also* Bowers Decl., Ex. B (2012 Plan Document), Amendment No. 2. The Plan also transitioned the investment menu to lower-cost mutual-fund share classes and collective trusts as the Plan document required. *See* Compl. ¶ 36 (collective trusts were added to the Plan in 2012, and lower-cost share classes of mutual funds were introduced in 2014); *see also* Bowers Decl., Ex. B (2012 Plan Document), Amendment No. 2.

Plaintiff David Feinberg is a former T. Rowe Price employee and has been a participant in the Plan since 1995. Compl. ¶ 20. Since the beginning of 2011, he has allocated his Plan account to just three of the Plan's many investment options: the Spectrum Income Fund and the New Era Fund (both mutual funds), and the Stable Value Fund (a collective trust). *See* Bowers Decl., Ex. E (Quarterly Account Statements). On February 14, 2017, he brought suit against various T. Rowe Price-related defendants, including the Plan Trustees, alleging that they breached their fiduciary duties and engaged in prohibited transactions under ERISA by permitting the inclusion of funds managed by T. Rowe Price subsidiaries in the Plan lineup. Plaintiff purports to bring his claims on behalf of "all participants in the 401(k) Plan (and their beneficiaries) from February 14, 2011 to the time of judgment." Compl. ¶ 15.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(1) "challenges whether the parties have standing to sue." *Rufus El v. Ocwen Loan Servicing, LLC*, 2014 WL 994342, at *2 (D. Md. Mar. 13, 2014). On a Rule 12(b)(1) motion, the plaintiff bears the burden of proving jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.

1991).  "In determining whether jurisdiction exists, the district court is to regard the pleadings'

allegations as mere evidence on the issue, and may consider evidence outside the pleadings

without converting the proceeding to one for summary judgment."  *Id.*

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the allegations in

the complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The "sheer possibility that a

defendant has acted unlawfully" is not enough; a claim "has facial plausibility" only "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.*  A plaintiff must offer "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555.

## ARGUMENT

### I.      PLAINTIFF DOES NOT HAVE CONSTITUTIONAL STANDING TO ASSERT CLAIMS AS TO FUNDS IN WHICH HE DID NOT INVEST

As an initial matter, plaintiff lacks constitutional standing to assert any claims with

respect to the vast majority of the funds he challenges.  Although the Complaint challenges each

and every one of the 146 investment options offered in the Plan during the proposed class period,

plaintiff himself invested in only *three* funds during that time: the Stable Value Fund, the

Spectrum Income Fund, and the New Era Fund.  *See* Bowers Decl., Ex. E (Quarterly Account

Statements).  Plaintiff has not established, and cannot possibly establish, injury to his own

account related to any of the other funds in the Plan's lineup, and he therefore does not have

constitutional standing to maintain claims respecting those funds.

7

As the Fourth Circuit has repeatedly held, participants suing under ERISA must establish that they have both statutory and constitutional standing.  *See David v. Alphin,* 704 F.3d 327, 333 (4th Cir. 2013); *In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 216 (4th Cir. 2008); *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 333-34 (4th Cir. 2007).  And to have constitutional standing, a participant must show not only a harm to the plan, but also a cognizable harm to him or herself.  *See Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) ("Art. III judicial power exists only to redress or otherwise to protect against injury *to the complaining party*." (emphasis added)).  This is true even if a plaintiff purports to be advancing claims on behalf of a plan under ERISA.  *See David v. Alphin*, 817 F. Supp. 2d 764, 781 (W.D.N.C. 2011) ("participants suing under ERISA have the burden of showing that they *personally* suffered some actual or threatened injury as a result of the allegedly unlawful conduct complained of" (emphasis added)), *aff'd*, 704 F.3d 327 (4th Cir. 2013); *see also Tavernas v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015) ("An ERISA plan participant lacks standing to sue for ERISA violations that cause injury to a plan but not individualized injury to the plan participant.").  Here, plaintiff cannot claim to have been harmed in any way by the vast majority of the Plan's investment options since he has not allocated his account to those options. He therefore lacks constitutional standing to bring claims challenging those funds.

In a participant-directed defined contribution plan, losses incurred by a particular fund are isolated to those participants who have chosen to invest in that fund.  *See, e.g.*, *Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 264 (D. Mass. 2008) ("[I]f an asset in a defined contribution plan is harmed, the loss is not spread.  It is visited entirely on the participant or participants who hold the impaired asset."); *see also LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 (2008) (ERISA "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a

participant's individual account").  Courts therefore routinely dismiss claims related to funds in which an ERISA plaintiff did not invest.  *See, e.g.*, *David*, 817 F. Supp. 2d at 781-82 (plaintiffs lacked Article III standing to challenge selection of bank-affiliated fund in which none of them had participated); *In re Meridian Funds Grp. Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 917 F. Supp. 2d 231, 234-35 (S.D.N.Y. 2013) (dismissing claims regarding seven funds in which the plaintiff did not invest); *cf. Stegall v. Ladner*, 394 F. Supp. 2d 358, 363 (D. Mass. 2005) (plaintiff lacked standing to pursue Investment Company Act claims concerning mutual funds in which he never invested).

It is immaterial that plaintiff brings this suit as a putative class action.  "[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quotations and citations omitted).  Accordingly, plaintiff's claims challenging all funds other than the three in which he invested during the relevant period must be dismissed for want of Article III standing.

Furthermore, as to the vast majority of his attacks on the Plan's investment lineup, plaintiff has failed to plead facts sufficient to establish that he suffered any constitutionally cognizable injury even with respect to the three funds in which he did invest.  For example, plaintiff has not met (and cannot meet) his burden to establish performance-based injury with respect to any of those three funds.  The Complaint omits any mention of the Stable Value Fund, and for good reason:  according to official fund fact sheets periodically made available to Plan participants, that fund had markedly higher-than-average returns compared to other stable value funds during the relevant period.  *See* Bowers Decl., Ex. F (December 31, 2016 Morningstar Stable Value Common Trust Fund-D Fact Sheet) (showing superior fund performance against

funds in stable value category during prior 3- and 5-year periods).  The two mutual funds to which plaintiff allocated his account during the relevant period likewise cannot reasonably be said to have provided "weak" performance during that time.  The Spectrum Income Fund has had a three-star rating from Morningstar and has outperformed both its benchmark and the average performance of funds in its category on a 3- and 5-year basis.  Bowers Decl., Ex. G (March 31, 2017 Morningstar Spectrum Income Fund Fact Sheet); *see* Barrett Decl., Ex. 7 (May 1, 2017 Spectrum Income Fund Prospectus) at 5.  The New Era Fund has also had a three-star Morningstar rating over the past several years, and although its performance has at times trailed that of the S&P 500, the fund has outperformed, on both a 5- and 10-year basis, the more relevant Lipper benchmark for funds that specialize in natural-resources securities.[2]  Barrett Decl., Ex. 8 (May 1, 2017 New Era Fund Prospectus) at 5; *see* Bowers Decl., Ex. H (March 31, 2017 Morningstar New Era I Fund Fact Sheet) (showing performance in excess of benchmark and category average), Ex. I (December 31, 2015 Morningstar New Era Fund Fact Sheet) (same).

Plaintiff's claim that the Plan offered more expensive retail-class shares of mutual funds, rather than less costly share classes or collective trusts, likewise does not apply to the two mutual funds in which he invested.  Only a single share class of the Spectrum Income Fund existed during the period plaintiff was invested in that fund, and T. Rowe Price did not offer a lower-cost collective trust with the same mandate.  Bowers Decl. ¶¶ 4-5.  Similarly, the New Era Fund contained only a single share class at the time it was added to the Plan lineup, and, as with Spectrum, the strategy was not offered through a collective trust.  Bowers Decl. ¶¶ 6, 9.  To be sure, a lower-cost share class, the "I Class," was created for the New Era Fund in December

---

[2] The New Era Fund is benchmarked against the Lipper Global Natural Resources Funds Index.  Barrett Decl., Ex. 8 (May 1, 2017 New Era Fund Prospectus) at 5.

2015.  Bowers Decl. ¶ 7; *see also* Barrett Decl., Ex. 8 (May 1, 2017 New Era Fund Prospectus) at 5.  But the Trustees followed the Plan document's directions by shifting the Plan's investments to the new share class promptly after its inception—a fact the Complaint fails to acknowledge.  Bowers Decl. ¶ 8; *see* Bowers Decl., Ex. C (2015 Plan Document) § 6.5(f) (requiring Trustees to shift to lower-cost share classes as soon as practicable after the next scheduled Trustee meeting following the new class's creation).  Plaintiff's balance in the New Era Fund was automatically transferred to the new share class when it was introduced to the Plan.  *See* Bowers Decl., Ex. E (Quarterly Account Statements) at 70 (4Q 2016 statement reflecting transfer).  The Complaint's general contention that the Plan invested in higher-cost share classes for unspecified mutual funds when lower-cost share classes were available thus has no application to the two mutual funds in which plaintiff was invested, and plaintiff therefore lacks standing to raise any such claim.[3]

The remainder of the brief addresses in turn why each of the Complaint's counts fails to state a claim on which relief may be granted with respect to the funds in which plaintiff was invested, thus requiring dismissal of the entire Complaint under Rule 12(b)(6).

## II.   COUNT I FAILS BECAUSE PLAINTIFF HAS FAILED TO SUFFICIENTLY ALLEGE THAT ANY OF THE FUNDS IN WHICH HE INVESTED WAS IMPROPERLY RETAINED IN THE PLAN LINEUP

Plaintiff's primary challenge is to the Trustees' adherence to the Plan document's requirement that the Plan offer an all-T. Rowe Price fund lineup.  Plaintiff alleges that some (though not all) of the funds offered to participants were in "asset classes and investment fund

---

[3] Similarly, during the relevant period, based on its level of stable value assets, the Plan qualified for and was invested in the lowest-cost class of units of participation in the Stable Value Common Trust Fund.  Bowers Decl. ¶ 10.  As that is the only Plan collective trust plaintiff invested in, he is without standing to raise the Complaint's claims that the Plan received less favorable pricing on unspecified collective trust investments than other T. Rowe Price clients received.

categories in which T. Rowe Price performance is weak," Compl. ¶ 14, that their fees were

higher than those of supposedly comparable funds available in the market, and that those

allegations establish that the Plan fiduciaries violated their duties of prudence and loyalty by

permitting the T. Rowe Price funds to be offered in the Plan.  Plaintiff's theory does not state a

claim under ERISA.

> **A.    Particularly In Light Of The Restrictive Plan Document, The Mere Fact That The Plan Offered An All-T. Rowe Price Fund Lineup Does Not Support An Inference Of Imprudence Or Disloyalty**

ERISA requires that fiduciaries act "with the care, skill, prudence, and diligence under

the circumstances then prevailing that a prudent man acting in a like capacity and familiar with

such matters would use in the conduct of an enterprise of a like character and with like aims."  29

U.S.C. § 1104(a)(1)(B).  It also requires that fiduciaries discharge their duties "solely in the

interest of the participants and beneficiaries."  *Id.* § 1104(a)(1).  Those obligations are commonly

known as the duties of prudence and loyalty.  ERISA also imposes an express fiduciary

obligation to act "in accordance with the documents and instruments governing the plan insofar

as such documents and instruments are consistent with" ERISA's other requirements.  *Id.*

§ 1104(a)(1)(D).

Here, plaintiff attempts to draw inferences of imprudence and disloyalty from the mere

fact that the Plan's lineup consisted solely of T. Rowe Price investment products, contending that

the fiduciaries must have selected the lineup because "doing so financially benefitted T. Rowe

Price and its subsidiaries," which collected fees for the services they provided to those funds.

Compl. ¶ 45; *see id.* ¶¶ 7-8.  The allegations in the Complaint, however, do not plausibly support

the inference plaintiff proposes.

First, plaintiff's Complaint completely ignores the fact that the Plan's limitation to T.

Rowe Price funds was established by the Plan document itself, and was not the product of

selection decisions by the Plan fiduciaries.  The Plan's governing document expressly *required*

the Plan to offer an exclusive lineup of T. Rowe Price funds to participants so long as it was

consistent with ERISA's other requirements to do so, and permitted the Trustees to deviate from

that requirement only insofar as was necessary to avoid violating ERISA.[4]  T. Rowe Price's

decision as a plan sponsor to structure its plan in this manner was a settlor function not subject to

---

[4] The Plan included such a requirement throughout the proposed class period.  At the beginning of that period, the Plan provided:

> The Trustees shall determine and monitor the investment options under the Plan among any investment company registered under the Investment Company Act of 1940 sponsored by T. Rowe Price Associates, Inc. or an affiliate or (provided that the applicable trust criteria is met) any common, collective or group trust the adviser of which is any affiliate of the Company, except where such funds do not meet the investment needs of Plan participants as determined by the Trustees pursuant to the requirements of the Plan.

Bowers Decl., Ex. A (2006 Plan Document), Amendment No. 5 § 11.4(d) (effective Feb. 18, 2010).  The Plan was later amended to include even clearer language establishing the same limitation:

> The Plan shall offer as investment options each of the following, and only the following:
>
> (i)  The Retirement Active Trusts;
>
> (ii)  All other Common Trusts that allow investment by participant-directed defined contribution plans (regardless of whether the Plan meets the Common Trust's investment minimums), excluding (1) any target date Common Trust; and (2) any such Common Trust that has an investment objective substantially similar to an Institutional Mutual Fund described in paragraph (iii) below but a higher total expense ratio than such fund;
>
> (iii)  All Institutional Mutual Funds, excluding (1) any target date fund; and (2) any such fund that has an investment objective substantially similar to that of a Common Trust described in paragraph (ii) above.
>
> (iv)  All Mutual Funds other than target date funds, provided that such fund's investment objective is not substantially similar to that of any investment option described in paragraph (ii) or (iii) above.

Bowers Decl., Ex. B (2012 Plan Document), Amendment No. 2 § 6.5(a) (effective July 1, 2014); *see id.* § 11.4(d) ("The Trustees shall have the responsibility for identifying the investment options that are to be made available under the Plan as described in Section 6.5, but shall have no discretionary authority or control with respect to the selection of investment options to be made available under the Plan pursuant to Section 6.5."); *see also* Bowers Decl., Exs. C-D (2015 and 2017 Plan Documents) §§ 6.5(a), 11.4(d) (same).

ERISA's fiduciary provisions.  *See Beck v. PACE Int'l Union*, 551 U.S. 96, 101 (2007)

(decisions regarding the form or structure of a plan are generally settlor functions, which are

immune from ERISA's fiduciary obligations); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432,

443-44 (1999) (ERISA fiduciary provisions are inapplicable to parties amending ERISA plans);

*see also Dzinglski v. Weirton Steel Corp.*, 875 F.2d 1075, 1078 (4th Cir. 1989) ("Congress left

employers much discretion in designing their plans under ERISA and in determining the level

and conditions of benefits." (quotation omitted)).  T. Rowe Price's settlor decision was also

perfectly consistent with ERISA, even assuming (contrary to fact) that the decision was subject

to fiduciary standards.  *See Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) (affirming

dismissal of claim that plan "improperly limited the investment options to Fidelity mutual

funds," noting that "many prudent investors limit themselves to funds offered by one company

and diversify within the available investment options").

In this connection, it bears particular emphasis that both Congress and the Department of

Labor have recognized that financial services companies like T. Rowe Price may justifiably

choose to use their own investment products and services in their in-house retirement plans.  *See,

e.g.*, H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5094

("[I]t would be contrary to normal business practice to require the plan of an insurance company

to purchase its insurance from another insurance company."); Notice of Proposed Rulemaking,

Participant Directed Individual Account Plans, 56 Fed. Reg. 10,724, 10,730 (Mar. 13, 1991)

(same).  There are many sound reasons for a financial services company to decide to offer

affiliated products in its in-house plan, including familiarity with the investment managers and

confidence in "their abilities and responsiveness."  *Dupree v. Prudential Ins. Co. of Am.*, 2007

WL 2263892, at *10 (S.D. Fla. Aug. 7, 2007), *as amended* (Aug. 10, 2007); *see Donovan v.*

14

*Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982) (an "incidental[] benefit[]" to the company does not preclude a "reasonabl[e] conclu[sion]" that a decision serves participants' best interests).  ERISA and its implementing regulations accordingly expressly authorize the use of affiliated products and services in retirement plans where certain conditions are met.  *See infra* at 26-30.

The Plan's investment limitation, of course, did not excuse the Trustees from their obligations to act prudently and loyally with respect to the Plan, but the Trustees also had a fiduciary obligation to adhere to the terms of Plan documents unless doing so would violate some other provision of ERISA.  29 U.S.C. § 1104(a)(1)(D); *see Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 568 (1985).  As noted above, the exclusive T. Rowe Price lineup did not in and of itself violate ERISA.  *Hecker*, 556 F.3d at 586.[5]  The Trustees accordingly had no discretion to reject T. Rowe Price funds in favor of non-T. Rowe Price alternatives unless a particular T. Rowe Price fund did not meet Plan participants' investment needs or was otherwise an objectively imprudent option for the Plan in the circumstances.  The Plan language expressly confining the Trustees to T. Rowe Price funds thus rebuts plaintiff's inferential theory that the all-T. Rowe Price lineup in the Plan must have been the result of imprudent and disloyal decision-making by the Trustees.  To the contrary, that is

---

[5] Plaintiff does not allege that the range of options offered was insufficient to allow Plan participants to construct a properly diversified portfolio, nor could he plausibly do so given the number and variety of funds offered to Plan participants throughout the relevant period.  *See Renfro v. Unisys Corp.*, 671 F.3d 314, 318, 327 (3d Cir. 2011) (affirming dismissal of claim that fiduciaries "inadequately selected a mix and range of investment options to include" in a defined-contribution plan where the plan offered participants 73 investment options, including company stock, commingled funds, and mutual funds); *see also* Barrett Decl., Exs. 2-6 (2011-2015 Form 5500s), Additional Information Required by ERISA, Schedule H, Line 4(i) - Schedule of Assets Held (listing Plan investment options); Bowers Decl., Ex. B (2012 Plan Document), Amendment No. 2 § 1.1 (T. Rowe Price "determined that a very broad range of T. Rowe Price managed investment options should be made available under the Plan to accommodate the breadth of investment sophistication among Plan Participants and Beneficiaries.").

exactly the type of lineup one would *expect* to see in a Plan that required the use of in-house funds to fulfill participants' investment needs.

Furthermore, the Complaint alleges no facts that even hint at disloyalty in the Trustees' ongoing evaluation of the Plan's investment options for consistency with ERISA.  To establish a breach of the duty of loyalty under ERISA, a plaintiff must show that a fiduciary acted with a purpose contrary to the interests of plan participants.  *See Difelice v. U.S. Airways, Inc.*, 497 F.3d 410, 421 (4th Cir. 2007).  Pointing out the mere existence of a possible conflict of interest is not enough.  *See In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 812, 834-35 (N.D. Cal. 2005) ("[T]he duty of loyalty requires fiduciaries to refrain from actual disloyal conduct, not simply the risk that such behavior will occur.").  Indeed, ERISA permits fiduciaries to use investment options that provide "incidental benefits" to themselves if the options otherwise promote the interests of plan participants.  *Hughes Aircraft*, 525 U.S. at 445-46; *see Luitgaren v. Sun Life Assurance Co. of Can.*, 765 F.3d 59, 65 (1st Cir. 2014); *Morse v. Stanley*, 732 F.2d 1139, 1146 (2d Cir. 1984).  Here, the Complaint does not allege any non-conclusory facts indicating that the Trustees made any decision for the purpose of benefitting someone other than Plan participants.  To the contrary, the Complaint acknowledges that the Plan introduced both lower-cost share classes of mutual funds and collective trusts over time (Compl. ¶ 36), an allegation at odds with plaintiff's overarching claim that the Trustees' decisions about the Plan's investment options were motivated by a desire to maximize fee revenue for T. Rowe Price subsidiaries at the expense of Plan participants.

Finally, the Complaint does not support a claim that the Trustees acted imprudently in their ongoing evaluation of the Plan's investment options for consistency with ERISA.  At bottom, to state an imprudence claim in these circumstances, plaintiff must plausibly allege that

16

no prudent fiduciary in defendants' position could have concluded that following the Plan's terms was consistent with his obligations under ERISA.  *See Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2473 (2014); *see also Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 367 n.16 (4th Cir. 2014) (although plan terms do not "trump the duty of prudence," they do "inform a court's inquiry as to how a prudent fiduciary would act under the circumstances").  Yet plaintiff has not pleaded facts suggesting that any of the funds in the Plan lineup were *per se* imprudent investment options.  This is for good reason:  judicially noticeable SEC filings not only establish that T. Rowe Price investment products have attracted nearly $300 billion in assets from institutional investors worldwide, and $100 billion in assets invested by U.S. retirement plan sponsors, *see* Barrett Decl., Ex. 10 (T. Rowe Price Group Inc. Form 10-K for FY 2016) at 4, but also more specifically show that the T. Rowe Price mutual funds in the Plan's lineup have been chosen by numerous other retirement plan sponsors to meet their employees' investment needs, *see* Barrett Decl., Ex. 9 (May 1, 2017 Statement of Additional Information for T. Rowe Price Mutual Funds), at 112-202 (listing shareholders of record that own more than 5% of each mutual fund's outstanding shares, including trusts and retirement plans), 237-41 (noting administrative fee payments made by each of the funds to retirement plans and their recordkeepers for shareholder services).

        In short, absent creditable allegations that a prudent fiduciary would be compelled to reject any of the Plan's T. Rowe Price funds as unsuitable for retirement investing—such that the Trustees were required to deviate from the Plan's mandate to rely exclusively on T. Rowe Price investment products—the mere fact that the Plan offered an all-T. Rowe Price fund lineup does not support an inference of imprudence or disloyalty.  And for the reasons that follow, the Complaint does not contain allegations sufficient to show that *any* fund offered in the Plan—let

alone those in which plaintiff actually invested—was imprudently or disloyally offered to Plan participants.

**B.      Plaintiff Has Failed To Plausibly Allege That Defendants Violated Their Fiduciary Duties By Failing To Remove Any Particular Fund From The Plan Lineup**

Plaintiff's Complaint does not contain allegations sufficient to support an inference that any of the funds in which he invested (or any other particular investment option) was unsuitable for 401(k) investment or otherwise imprudent.  The *only* portion of the Complaint that addresses any particular fund is a chart comparing the expense ratios of many—but not all—of the Plan's investment options to the expense ratio of a comparator fund, typically one offered by Vanguard. Compl. ¶ 37.  That comparison is flawed on its face, as many of the Vanguard funds plaintiff references are passive index funds that simply are not substitutes for actively managed T. Rowe Price funds, which aim to use portfolio management skills not just to replicate a broad market index, but to *outperform* it.  *See Taylor v. United Techs. Corp.*, 2009 WL 535779, at *10 (D. Conn. Mar. 3, 2009) (fiduciaries are not required to choose index funds instead of actively managed funds "so long as the fiduciary's decision meets the prudent person standard"), *aff'd*, 354 F. App'x 525 (2d Cir. 2009).[6]  Even assuming the investment styles and objectives for the paired funds were truly comparable, plaintiff's Vanguard comparison would still be inadequate to support an inference of disloyalty or imprudence, because ERISA does not require fiduciaries "to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)."  *Hecker*, 556 F.3d at 586.  Yet the Complaint offers no more than

---

[6] Actively managed mutual funds, moreover, are commonly offered as investment options in retirement plans.  *See* Investment Company Institute, *2016 Investment Company Fact Book*, 29 fig. 2.1, 124 (56th ed.), https://www.ici.org/pdf/2016_factbook.pdf (defined contribution plans and IRAs held $7.1 trillion of $15.7 trillion in total U.S. mutual fund assets at year-end 2015); *id.* at 44 ($2.2 trillion in index mutual fund assets as of year-end 2015).

the bald assertion that other funds had lower fees as the basis to supposedly establish that certain of the Plan's investment options were unacceptable choices.  Such thin pleading is inadequate as a matter of law to sustain a fiduciary breach claim.  *See White v. Chevron Corp.*, 2016 WL 4502808, at *10 (N.D. Cal. Aug. 29, 2016) (explaining, in dismissing similar claims, that "where … a plan offers a diversified array of investment options, the fact that some other funds might offer lower expense ratios is not relevant").

Further, plaintiff makes no effort to establish that the Complaint's core challenges apply to the three funds in which he invested—or, for that matter, to any other particular fund. Plaintiff's performance allegations, for example, are directed to a nebulous and unidentified subset of the Plan's investment options "in those asset classes and investment fund categories in which T. Rowe Price performance is weak."  Compl. ¶ 14.  And while plaintiff alleges that the Trustees "frequently" permitted "higher cost retail versions" of T. Rowe Price mutual funds to be used in the Plan, the Complaint acknowledges that they did not do so for *all* of the mutual funds, and, indeed, that lower-cost T. Rowe Price alternatives did not even *exist* for some funds. Compl. ¶¶ 10-11, 36; *see also supra* at 10.  Again, the Complaint does not specify any particular fund to which plaintiff's contention applies.

Plaintiff's theory that the Trustees were required to ask the Company to create new, lower-cost institutional investment products where lower-cost alternatives did not already exist (*see* Compl. ¶¶ 11, 43) finds absolutely no support in the law.  T. Rowe Price, as a business, had no fiduciary obligation to create new products for the Plan, as it was not acting as a Plan fiduciary when deciding on what products to bring to market.  *See, e.g.*, *Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 665 (6th Cir. 1998) ("[C]ourts have typically distinguished between employer actions that constitute 'managing' or 'administering' a plan and those that are said to

constitute merely 'business decisions' that have an effect on an ERISA plan; the former are deemed 'fiduciary acts' while the latter are not."); *see also Varity Corp. v. Howe*, 516 U.S. 489, 527-28 (1996) (explaining limits on fiduciary status under ERISA).   And the Complaint offers no reason at all to believe T. Rowe Price would have created brand-new investment products if only the Trustees had asked.   Plaintiff's suggestion that there was *always* some way the Trustees could have secured lower-cost versions of the Plan's investment options—and that failing to do so *always* amounted to a fiduciary breach—is implausible on its face.

In sum, the Complaint fails to identify which funds are the subject of which of plaintiff's allegations, or whether any of those allegations—apart from the Complaint's flawed and legally inadequate comparison to Vanguard funds and its legally unsustainable theory that the Trustees should have tried to negotiate for the creation of lower-cost investment products—actually applies to the funds in which plaintiff invested.   As a result, defendants are largely left to guess at the substance of the claims plaintiff is trying to assert in this case.   *Cf. Zeno v. Chevy Chase Bank*, 2009 WL 4738077, at *2 (D. Md. Dec. 4, 2009) ("Defendants are left to guess as to what the legal basis for such a claim might be, a clearly unacceptable state of affairs.").   Such vague allegations do not suffice to state a plausible claim for relief, and plaintiff has failed to allege any viable fiduciary-breach claim that he has standing to assert.

## III.   PLAINTIFF HAS NOT ADEQUATELY ALLEGED THAT THE TRUSTEES FAILED TO REMEDY BREACHES COMMITTED BY PREDECESSOR FIDUCIARIES (COUNT V)

Plaintiff's related claim that the Trustees failed to remedy breaches committed by their predecessors fails for essentially the same reasons as Count I:  plaintiff has failed to allege facts sufficient to support an inference that any fund was imprudently or disloyally included in the Plan lineup, either before or during the asserted class period.   If including the funds in the Plan lineup was neither imprudent nor disloyal to begin with, there was no prior "breach" for the

Trustees to "remedy." Thus, because plaintiff has failed to plead any plausible prior fiduciary breach, he has necessarily also failed to state a failure-to-remedy claim.[7]

## IV.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE A FIDUCIARY BREACH BY T. ROWE PRICE ASSOCIATES OR T. ROWE PRICE TRUST (COUNT III)

Plaintiff's vague claim that defendants T. Rowe Price Associates and T. Rowe Price Trust provided imprudent and disloyal investment advice to the Trustees fares no better.

The Complaint attempts to conflate two distinct entities—T. Rowe Price Associates, the mutual-fund investment adviser, and T. Rowe Price Trust, the trustee and manager for T. Rowe Price collective trust products—into a single fictional entity, "TRP Investment Affiliates." Compl. ¶¶ 3, 10, 49-50, 58(D), 58(E), 76-78. By continually addressing the two entities as if they were one, plaintiff makes it impossible to discern exactly what role he contends either played, and what it is that either or both entities did that supposedly amounted to a fiduciary breach. The pleading rules do not permit plaintiff to sustain allegations against *real and admittedly distinct entities* by offering purported facts about a *fictionally conjoined entity* he has made up out of whole cloth. *Cf. Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998) (noting "real risk" of a "composite case" litigated on behalf of an improperly certified class "being much stronger than any plaintiff's individual action would be").

---

[7] That critical failing dooms plaintiff's failure-to-remedy claim regardless of the particular legal theory underlying it. It warrants mention, however, that while plaintiff's Complaint identifies particular provisions of ERISA as the asserted basis for each of his other claims, plaintiff does not cite any particular provision he contends the Trustees violated by supposedly failing to remedy alleged breaches committed by their predecessors. *See* Compl. Count V (alleging general "ERISA Violation" by the Trustees). ERISA does provide for co-fiduciary liability where a fiduciary fails to remedy breaches committed by other fiduciaries of the same plan, *see* 29 U.S.C. § 1105(a)(3), but a fiduciary can only be held liable under that provision if it had *actual knowledge* of another's fiduciary breach—i.e., it not only knew the facts underlying the alleged breach, but also knew that those facts constituted a breach. *See Renfro*, 671 F.3d at 324; *see also infra* at 24-25. The Complaint does not include allegations plausibly supporting the conclusion that the Trustees had that knowledge here—and thus does not state a failure-to-remedy claim under ERISA § 405(a)(3).

21

In the absence of plausibly pleaded facts stating claims against both T. Rowe Price Associates and T. Rowe Price Trust, they must be dismissed as defendants.

The murkiness of plaintiff's claim against the "TRP Investment Affiliates" is exacerbated by the Complaint's complete failure to identify what improper "investment advice" T. Rowe Price Associates and T. Rowe Price Trust allegedly provided the Trustees. All that is clear from the face of the Complaint is that T. Rowe Price Associates and T. Rowe Price Trust played a role in offering T. Rowe Price funds to the retirement plan market, including the T. Rowe Price Plan. That is not enough to make those entities fiduciaries as to any plans that offer those funds to participants. *See Hecker*, 556 F.3d at 583-84 (an entity is not an ERISA fiduciary by virtue of having made investment products or services available to a plan if the entity lacks "final authority" over which funds are included). Plaintiff's allegation that the fictional "TRP Investment Affiliates" "advis[ed] … selection and retention of the in-house funds" (Compl. ¶ 84) appears to rest on nothing more than the observation that the Plan lineup included those funds. But the Plan's all-T. Rowe Price fund lineup is more naturally explained by the Plan document's requirement that the Plan offer only T. Rowe Price funds. The fact that the Trustees followed the Plan document's instruction to use funds offered by T. Rowe Price Associates and T. Rowe Price Trust in the Plan certainly does not establish that either of those entities provided "investment advice" of any kind to the Trustees—let alone support an inference that they provided imprudent or self-interested advice. And if plaintiff means to contend that either or both of those entities did something else that amounted to the provision of imprudent or self-interested investment advice, the Complaint says absolutely nothing to indicate what that is.

In the end, plaintiff merely alleges, without any specificity, that the fictional "TRP Investment Affiliates" provided some form of investment advice in connection with the Plan, and

that that advice was in some way imprudent or biased.  Such a vague and conclusory assertion is insufficient to state a claim against either T. Rowe Price Associates or T. Rowe Price Trust.  *See Iqbal*, 556 U.S. at 678 ("complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face").

Count III also fails for essentially the same reasons as Count I:  plaintiff has not alleged facts sufficient to plausibly support the inference that the Trustees improperly followed the Plan document's express directive in offering participants the three funds in which he invested.  Thus, even assuming that the "TRP Investment Affiliates" provided the Trustees some unspecified encouragement to use T. Rowe Price investment options the Plan document already required the Trustees to use, the Complaint provides no basis for concluding that any such advice to follow the Plan document violated ERISA or was somehow imprudent or disloyal.

## V.   PLAINTIFF'S DERIVATIVE MONITORING (COUNT II) AND CO-FIDUCIARY LIABILITY (COUNT IV) CLAIMS FAIL, AMONG OTHER REASONS, BECAUSE PLAINTIFF HAS NOT PLAUSIBLY ALLEGED ANY UNDERLYING BREACH

In addition to his core fiduciary-breach claims, plaintiff also asserts that T. Rowe Price, its Management and Management Compensation Committees, and the Committees' individual members breached their duties of prudence and loyalty by failing to adequately monitor the Trustees, and that those same entities, along with the "TRP Investment Affiliates," are liable for the Trustees' breaches as co-fiduciaries.  Compl. ¶¶ 72-74, 82-85.  By their very nature, plaintiff's monitoring and co-fiduciary liability claims are derivative claims that depend on the existence of an underlying violation of a fiduciary duty.  *See In re Constellation Energy Grp., Inc. ERISA Litig.*, 738 F. Supp. 2d 602, 614 (D. Md. 2010) (failure-to-monitor and co-fiduciary liability claims "depend on a finding that the defendants breached the underlying duties of prudence and loyalty"); *In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786, 795 (W.D.N.C.

23

2003) (duty-to-monitor and co-fiduciary liability claims "do not provide independent grounds for relief"); *see also, e.g.*, *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 368 (2d Cir. 2014) (failure-to-monitor and co-fiduciary liability claims are "derivative" claims that fail along with underlying fiduciary-breach claims).  Accordingly, because plaintiff has failed to state a fiduciary-breach claim against the Trustees (or any other Plan fiduciary), *see supra* at 11-23, Counts II and IV necessarily fail as well.

Further, even if plaintiff's allegations were sufficient to state a claim against the Trustees—and they are not—plaintiff still has not alleged facts sufficient to support an inference of improper monitoring.  In particular, plaintiff alleges no facts to show how the Committees' monitoring processes were supposedly deficient, or how a hypothetical, prudent monitoring fiduciary would have uncovered the Trustees' alleged fiduciary breaches.  Indeed, the Complaint contains *no* allegations whatsoever concerning the process for monitoring the Trustees.

Plaintiff's co-fiduciary liability claim is also independently deficient.  ERISA's co-fiduciary liability provision provides:

> In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).  Thus, to state a claim for co-fiduciary liability under ERISA § 405(a)(1) or (a)(3), plaintiff must plausibly allege that the "Appointing Fiduciary Defendants" and "TRP Investment Affiliates" had knowledge of a fiduciary breach by the Trustees—meaning that they

not only knew the facts underlying the alleged breach, but also knew that those facts constituted

a breach.  *See Renfro*, 671 F.3d at 324 ("sections 1105(a)(1) and (3) require actual knowledge of

the breach," meaning that "'the fiduciary must know the other person is a fiduciary with respect

to the plan, must know that he participated in the act that constituted a breach, and must know

that it was a breach'" (quoting *Donovan v. Cunningham*, 716 F.2d 1455, 1475 (5th Cir. 1983)));

H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5080

(same).  Plaintiff's Complaint, however, provides no factual allegations to support its conclusory

assertion that the "Appointing Fiduciary Defendants" "were aware of" the Trustees' alleged

breaches.  Compl. ¶ 83.  And plaintiff bases his assertion that the "TRP Investment Affiliates"

"knowingly participated in and enabled" the Trustees' alleged violations solely on his

unsupported contention that the "TRP Investment Affiliates" provided imprudent and self-

interested investment advice to the Trustees (Compl. ¶ 84)—a theory he has not adequately pled.

*See supra* at 21-23.  The Complaint also fails to state a claim for co-fiduciary liability under

ERISA § 405(a)(2), as such a claim would require plaintiff to establish that the "Appointing

Fiduciary Defendants" and "TRP Investment Affiliates" violated their *own* fiduciary

responsibilities.  Plaintiff does not even bring a separate fiduciary-breach claim against the

"Appointing Fiduciary Defendants," *see* Compl. ¶ 52, and, as explained above, he has failed to

state a valid claim against the "TRP Investment Affiliates," *see supra* at 21-23.

## VI.   PLAINTIFF'S PROHIBITED TRANSACTION CLAIMS MUST ALSO BE DISMISSED

Finally, plaintiff alleges that by allowing the same T. Rowe Price funds available to the

investing public to be offered to Plan participants, defendants caused the Plan to engage in

prohibited transactions under ERISA §§ 406(a)(1)(A), (C), (D), and 406(b).  Compl. ¶ 97.  Those

claims, too, must be dismissed, both because plaintiff has not alleged facts showing that the use

25

of T. Rowe Price funds in the Plan violated ERISA—including facts showing that the relevant statutory and regulatory exemptions allowing plan investments in affiliated funds do not apply here—and because they are time-barred.

### A.    The Complaint Does Not State Any Valid Prohibited Transaction Claims

In addition to the general fiduciary duties imposed by ERISA § 404, "ERISA also incorporates a detailed list of specifically prohibited transactions," set forth in ERISA § 406. *Donovan*, 716 F.2d at 1464; *see* 29 U.S.C. § 1106.  "The object of Section 406 was to make illegal per se the types of transactions that experience had shown to entail a high potential for abuse."  *Donovan*, 716 F.2d at 1464-65; *see Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241-42 (2000) (ERISA § 406 "bar[s] certain transactions deemed likely to injure" retirement plans).  Congress, however, recognized that ERISA § 406's "prohibitions were overbroad because many of these transactions could, in fact, be beneficial to plans," and for that reason it "also enacted § 408(b), which contains statutory exemptions from the prohibitions, and § 408(a), which authorizes the Secretary of Labor to grant administrative exemptions on an individual or class basis."  *Dupree*, 2007 WL 2263892, at *38.  Accordingly, a transaction only works an actual violation of ERISA § 406 if it does not fall within any exemption.  While some decisions have excused plaintiffs from pleading the absence of an applicable ERISA exemption in stating a prohibited transaction claim on the ground that such exemptions are affirmative defenses, *see, e.g.*, *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 676 (7th Cir. 2016), in the unique circumstances of this case—where the transactions with T. Rowe Price investment products were compelled by the Plan document—plaintiff cannot state a plausible prohibited transaction claim without pleading facts showing that the transactions fell outside ERISA's exemptions.

As the Supreme Court has explained, a court's inquiry into whether an ERISA plaintiff plausibly states a fiduciary-breach claim is necessarily "context-specific." *Dudenhoeffer*, 134 S. Ct. at 2471; *see also Chao v. Ballista*, 630 F. Supp. 2d 170, 177 (D. Mass. 2009) ("Plausibility, as the Supreme Court's recent elaboration in *Ashcroft v. Iqbal* makes clear, is a highly contextual enterprise—dependent on the particular claims asserted, their elements, and the overall factual picture alleged in the complaint.").  Here, the important "context" that frames the Court's inquiry is the Plan document's requirement that the Plan's lineup of investment options include T. Rowe Price funds, and *only* T. Rowe Price funds.  *See supra* at 4-5, 12-13 & n.4.  As noted above, ERISA § 404(a)(1)(D) requires fiduciaries to act "in accordance with the documents and instruments governing the plan *insofar as such documents and instruments are consistent with the provisions of this subchapter.*"  29 U.S.C. § 1104(a)(1)(D) (emphasis added).  It plainly was "consistent with the provisions" of Subchapter I of ERISA for the Trustees to have honored the Plan document's directive—notwithstanding ERISA's prohibited-transaction provisions—where the same Subchapter (or a regulation promulgated under the authority of the same Subchapter) afforded them an explicit exemption from prohibited-transaction liability.  It follows that, to plausibly allege that the Trustees engaged in prohibited transactions by adhering to the Plan document's instructions on the composition of the Plan lineup, plaintiff must plead facts showing that no exemption applies.  *See Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502, 510 (E.D. Pa. 2001) (dismissing claim that investment of plan assets in in-house funds constituted prohibited transaction because the plaintiffs "d[id] not allege" that the transaction was "not in compliance" with an exemption); *see also Leber v. Citigroup Inc.*, 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010) ("[W]here the complaint does not allege any basis for presuming that a defendant's conduct fell outside a statutory exemption—and therefore that a defendant's conduct might

27

plausibly entitle plaintiff to relief—it is deficient.").[8]   The Complaint, however, does not even acknowledge the existence of ERISA's prohibited-transaction exemptions, much less put forward factual allegations explaining why prudent fiduciaries sworn to follow the terms of the Plan document would have concluded that doing so would involve non-exempt prohibited transactions.

For instance, the Complaint does not contain allegations indicating that either of the mutual funds in which plaintiff invested was offered to the Plan on terms less favorable than those actually made available to other shareholders, so as to render inapplicable Department of Labor Prohibited Transaction Exemption ("PTE") 77-3.  *See* 42 Fed. Reg. 18,734, 18,734-35 (Mar. 31, 1977) (class exemption allowing financial services companies to offer affiliated funds to in-house plan participants where, *inter alia*, the terms of participation are "no less favorable" than those provided to other "shareholders").  As the Complaint itself suggests (Compl. ¶ 11), some funds in the Plan lineup offer only one share class, meaning that the Plan necessarily offers the lowest-cost share class.[9]  *See supra* at 10.  This category includes the Spectrum Income Fund, one of the two mutual funds to which plaintiff allocated his account during the relevant period.

---

[8] While, as noted earlier, other courts have held that prohibited-transaction exemptions need not be anticipated by a plaintiff in alleging prohibited transaction claims, none of those cases involved a plan document that required the fiduciaries to rely exclusively on affiliated investment products to meet the plan's investment needs, which changes the focus of inquiry to whether ERISA required the fiduciaries to violate the plan document.  *See, e.g.*, *Allen*, 835 F.3d at 676 (holding that "section 408 exemptions are affirmative defenses" that need not be anticipated in a plaintiff's complaint; complaint did not involve plan document that constrained fiduciaries to challenged course of action unless ERISA preluded it); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 600-01 & n.10 (8th Cir. 2009) (same).

[9] Plaintiff's unsupported assertion that some mutual fund strategies were offered to other investors through less-expensive collective trusts or separate accounts (*see* Compl. ¶ 10) does not establish a non-exempt prohibited transaction.  PTE 77-3 requires only that, at the time of the transaction, shares of the *mutual fund* were not sold on more favorable expense or other terms to another shareholder.  *See* 42 Fed. Reg. at 18,734-35.

*See* Barrett Decl., Ex. 7 (May 1, 2017 Spectrum Income Fund Prospectus) at 5, 22; *see also*

*supra* at 10, 19.  And, as detailed earlier, while a lower-cost share class was created for the other

mutual fund in which plaintiff invested (the New Era Fund) in December 2015, promptly

thereafter the Plan was shifted to that new share class in accordance with the express

requirements of the Plan document.[10]  *See supra* at 10-11.

　　ERISA similarly includes a *statutory* exemption allowing financial services companies to

offer affiliated collective trust investments to their in-house plans, provided the Plan document

allows for such investments, and provided the compensation paid to the trust company is "not

more than reasonable."  29 U.S.C. § 1108(b)(8).  But the Complaint does not so much as mention

the Stable Value Fund—the only collective trust in which plaintiff invested during the relevant

period—much less include substantive allegations regarding that trust.  The Complaint certainly

does not allege that the Stable Value Fund bore unreasonable fees so as to make ERISA's

statutory prohibited-transaction exemption unavailable.  *See id.*  Although plaintiff attempts to

suggest that some of the Plan's collective trusts had unreasonable fees by comparing their

expense ratios to those of cherry-picked funds, he does not offer any such comparison for the

Stable Value Fund.  *See* Compl. ¶ 37.  Moreover, plaintiff acknowledges that his assertion that

lower-cost versions of collective trusts were offered to other investors applies only to *some* of the

Plan's collective trust options, Compl. ¶ 39, and plaintiff does not and—as detailed

earlier—*cannot* allege that it applies to the solitary collective trust in which he invested, as to

_____

[10] The Plan document provides that when a "lower cost class of shares" is introduced for any T. Rowe Price mutual fund, "such new class shall be added to the Plan and the higher cost class removed as soon as practicable after the first Trustees' meeting following such introduction, taking into account the time necessary to provide any required notice to Participants."  Bowers Decl., Ex. C (2015 Plan Document) § 6.5(e); *see* Bowers Decl., Ex. D (2017 Plan Document) § 6.5(e) (same).

which the Plan qualified for and enjoyed the lowest expense ratio offered to investors. *See supra*

at 11 n.3.

Without these essential allegations directed to showing that the relevant prohibited-

transaction exemptions do not apply, plaintiff's prohibited transaction claims are deficient and

must be dismissed.

**B.      Plaintiff's Prohibited Transaction Claims Are Barred By ERISA's Six-Year Statute Of Repose**

Independent of plaintiff's failure to plead facts sufficient to state a claim, plaintiff's

prohibited transaction claims are also barred by the statute of repose. ERISA's statute of repose

requires plaintiffs to file suit within six years of the date of the prohibited transaction violation

subject to challenge. 29 U.S.C. § 1113(a). In a participant-directed plan like this one, the only

"transaction" attributable to the Trustees (as opposed to the Plan participants themselves) is the

initial inclusion of a fund in the Plan lineup. *David*, 704 F.3d at 341 ("The only action that can

support an alleged prohibited transaction is the initial selection of the affiliated funds . . . .").

"[A] decision to continue certain investments, or a defendant's failure to act, cannot constitute a

'transaction' for purposes of section 406(a) or 406(b)." *Id.* at 340; *accord Wright v. Or.*

*Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) ("The decision by the Oremet

Defendants to continue to hold 15% of Plan assets in employer stock was not a 'transaction.' It

was merely a lawful decision to remain in full compliance with the explicit language of the

Plan's terms."). Accordingly, because the New Era Fund, Spectrum Income Fund, and Stable

Value Fund were all initially offered to Plan participants more than six years before the

Complaint was filed, and thus outside ERISA's six-year repose period (*see* Barrett Decl., Ex. 1

(2010 Form 5500), Additional Information Required by ERISA, Schedule H, Line 4(i) -

Schedule of Assets Held; *see also* Barrett Decl., Exs. 2-6 (2011-2015 Form 5500s), Additional

Information Required by ERISA, Schedule H, Line 4(i) - Schedule of Assets Held), plaintiff's prohibited transaction claims are time-barred.

## CONCLUSION

For the reasons stated, defendants respectfully request that the Court dismiss the Complaint in its entirety.

Dated:  May 15, 2017                    Respectfully submitted,

*/s/ Shannon M. Barrett*
Brian D. Boyle (*pro hac vice*)
Gregory F. Jacob (D. Md. Bar No. 06769)
Shannon M. Barrett (D. Md. Bar No. 16410)
Deanna M. Rice (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
bboyle@omm.com
gjacob@omm.com
sbarrett@omm.com
derice@omm.com

*Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I, Shannon M. Barrett, hereby certify that on May 15, 2017, I caused a copy of the

foregoing document to be served upon all counsel of record via the CM/ECF system for the

United States District Court for the District of Maryland.


*<u>/s/ Shannon M. Barrett</u>*
Shannon M. Barrett