# Exhibit 1

1 | William G. Bertain, Esq. (Cal. Bar No. 70163)
2 | Law Offices of William G. Bertain
  | 1310 Sixth Street
3 | Eureka, CA 95501
  | Tel: (707) 443-5078
4 | Fax: (707) 443-4998
  | bbertain@cox.net
5 |
6 | Attorney for Plaintiff Elena M. David

RECEIVED

AUG 0 4 2006

McTigue Law Firm

**E-Filing**

COPY

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

9 | Elena M. David                                    Case No.: C 06 4763

         Plaintiff,

              v.                                      COMPLAINT

J. Steele Alphin; Amy Woods Brinkley; Edward J.
Brown, III; Charles J. Cooley; Richard M. DeMartini;
Barbara J. Desoer; James H. Hance: Liam E. McGee;
Eugene M. McQuade; Alvaro G. de Molina; Michael E.
O'Neill; Owen G. Shell, Jr.; R. Eugene Taylor; F.
William Vandiver, Jr.; Bradford H. Warner; William
Barnet, III; Charles W. Coker; John T. Collins; Gary L.
Countryman; Paul Fulton; Charles K. Gifford; Steven
Jones; Kenneth D. Lewis; Walter E. Massey; Thomas J.
May; Patricia E. Mitchell; Edward L. Romero; Thomas
M. Ryan; O. Temple Sloan, Jr.; Meredith R. Spangler;
Robert L. Tillman; Jackie M. M'ard; Bank of America
Corporation: Bank of America Corporation Corporate
Benefits Committee; Bank of America Corporation
Board of Directors; and DOES 1-20

         Defendants.

24
25
26
27

1    This action involves two pension plans sponsored by Bank of America Corporation: the

2    Bank of America 401(k) Plan (the "401(k) Plan") and the Bank of America Pension Plan (the

3    formal name of which is the "Pension Plan") (and all predecessor and successor plans)

4    (collectively the "Plans").

5    Plaintiff Elena M. David alleges the following based on information and belief and an

6    investigation by her counsel, which included reviewing: Forms 5500 ("Form 5500") for Plans

7    filed with the United States Department of Labor ("DOL"); filings with the Securities and

8    Exchange Commission, including Forms 11-K; documents related to the Plans provided by Bank

9    of America Corporation ("BoA" or the "Company") to Plaintiff David in connection with her

10   employment by BoA and her participation in the Plans (including a Summary Plan Description

11   ("SPD") for the Plans); and documents related to investment funds sold or managed by BoA

12   Subsidiaries and Affiliates such as publicly available prospectuses and Statements of Additional

13   Information.

14                    <u>NATURE OF THE ACTION</u>

15   1.    This case is about corporate self-dealing at the expense of the corporation's own

16   employee pension plans  BoA employees, officers, and directors—who were responsible for

17   directing the investment of the Plans—were required by the Employee Retirement income

18   Security Act ("ERISA"), 39 U.S.C. §§ 1001, *et seq.*, to act solely in the interest of the Plans'

19   participants and beneficiaries when selecting and monitoring the Plans' investments. Rather than

20   fulfilling their fiduciary duties (the "highest duties known to the law"), which call for selecting

21   prudent investments at reasonable cost, the defendants selected BoA funds, which generated

22   substantiel fees for BoA. There were, and are, many better-performing, lower-fee funds that

23   defendants could have chosen. instead, the defendants chose investments to benefit BoA, the

24   sponsor of the Plans, not the Plans.

25   2.    This is a civil enforcement action under the ERISA, and in particular under

26   ERISA §§ 404, 406, and 409, 29 U.S.C. §§ 1104, 1106 and 1109, for losses to the Plans caused

27   by Defendants' breaches of fiduciary duty and violations of ERISA's prohibited transactions

28   provisions.

3.     The 401(k) Plan and the Pension Plan are retirement plans established and sponsored by BoA and its predecessors and successors.

4.     Affiliates and subsidiaries of BoA include: Bank of America N.A. ("BoA Trust"), a Trustee for the Plans; Banc of America Capital Management LLC ("BACAP Management"); BACAP Distributors LLC ("BACAP Distributors"); Marsico Capital Management, LLC ("MCM"); Columbia Management Advisors ("CMA"); Columbia Fund Distributors, Inc. ("Columbia Distributors"); Columbia Management Group ("Columbia Management"); and FleetBoston Financial Corp. ("Fleet").

5.     BACAP Management, BACAP Distributors, MCM, CMA, and Columbia Distributors are part of Columbia Management, BoA's primary asset management division.

6.     BoA is the direct or indirect parent of Columbia Management.

7.     According to Forms 5500 and SEC Forms 11-K, the assets of the Plans have been heavily invested in investment funds offered or managed by BoA Subsidiaries and Affiliates: including, but not limited to. Columbia Management.  For example, the Form 11-K for FY 2004 shows that the 401(k) Plan invested approximately $2.271 billion in investment funds managed or offered by BoA Subsidiaries and Affiliates.  The Form 5500 for FY 3001 shows that the Pension Plan invested approximately $2.923 billion in investment funds managed or offered by BoA Subsidiaries and Affiliates.  Collectively, the Plans' investments in funds managed by BoA Affiliates and Subsidiaries generated tens of millions of dollars in fees for BoA.  In addition, the Plans paid other fees, such as trustee, custodial and record-keeping fees, to BoA Subsidiaries and Affiliates.

8.     This action is brought on behalf of the Pension Plan and the 401(k) Plan and their respective 208,000 and 174,000 participants for losses to the Plans caused by the improper payment of fees to BoA Subsidiaries and Affiliates.

9.     Plaintiff Elena M. David is a participant in the Plans under ERISA § 3(7), 29 U.S.C. § 1002(7).

10.    Plaintiff alleges that Defendants, who are fiduciaries of the Plans, violated ERISA by causing the Plans to purchase and pay for investment management and other products and

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and ERISA § 502(e)(1), 29 U.S.C.§ 1132(e)(1).

15. This Court has personal jurisdiction over the Defendants because the Court has subject matter jurisdiction under ERISA.

16. Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). Defendants are found here because BoA maintains numerous offices in this district.

## II. **PARTIES**

**A.    Plaintiff.**

17. **Plaintiff Elena M. David.** Plaintiff David, age 63, is a resident of Arcata, California. Plaintiff worked for Bank of America for forty-four years. Plaintiff David is a participant in the Pension Plan. Plaintiff David is a participant in the 401(k) Plan where she is a former employee who may become eligible to receive a benefit from the 401(k) Plan because a judgment for David on behalf of the 401(k) Plan would increase the amount of the benefit distribution she received from the 401(k) Plan.

**B.    Defendants.**

18. **Defendant Bank of America Corporation.** BoA is the sponsor of the Plans and, thus, by definition, a party in interest to the Plans under ERISA. BoA also was the Plans' Administrator and Named Fiduciary.

19. **Defendant The Bank of America Corporation Corporate Benefits Committee (the "Committee").** Under the Plans' governing documents, the Committee and its individual members ("Committee Members") are responsible for administering the Plans and are fiduciaries under ERISA. The following individuals have served as Committee Members during the period relevant to this lawsuit: J. Steele Alphin; Amy Woods Brinkley; Edward J. Brown, III; Charles J. Cooley; Richard M. DeMartini; Barbara J. Desoer; James H. Hance; Kenneth D. Lewis, Jr.; Liam E. McGee; Eugene M. McQuade; Alvaro G. de Molina; Michael E. O'Neill; Owen G. Shell, Jr.; R. Eugene Taylor; F. William Vandiver, Jr.; and Bradford H. Warner.

20.     Defendant Bank of America Corporation Board of Directors (the "Board"). Under the Plans' operative documents, the Board and its individual members ("Board Members") are charged with responsibility to select the Committee Members. Thus, the Board exercised authority to select, monitor. retain: and remove the Committee Members by virtue of its power to appoint the Committee Members. The following individuals currently serve as Board Members: William Barnet, III; Frank P. Bramble, Sr.; Charles W. Coker; John T. Collins; Gary L. Countryman; Tommy R. Franks; Paul Fulton; Charles K. Gifford; Steven Jones; Kenneth D. Lewis; Walter E. Massey; Thomas J. May; Patricia E. Mitchell: Edward L. Romero; Thomas M. Ryan; O. Temple Sloan, Jr.; Meredith R. Spangler; Robert L. Tillman; and Jackie M. Ward.

21.     Defendants DOES 1-20 are fiduciaries of the Plans, including the individuals who served on the Committee and the Board during the period relevant to this lawsuit, whose exact identities will be ascertained through discovery.

## III. FACTUAL BACKGROUND

A.     The Plans.

1.     The Bank of America 401(k) Plan.

22.     On information and belief, the 401(k) Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and a defined contribution plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). Pursuant to ERISA, the relief requested in this action is for the benefit of the 401(k) Plan.

23.     BoA is the sponsor and plan administrator of the 401(k) Plan.

24.     The Committee and Committee Members are responsible For the overall operation and administration of the 401(k) Plan, including the selection of 401(k) Plan investment options.

25.     The Board is responsible for appointing, monitoring, and removing Committee Members, which includes the responsibility to monitor Committee about the 401(k) Plan's investments.

Complaint

26.    BoA Trust is the Trustee for the 401(k) Plan's assets other than company matching contributions, which are held in a separate trust that invests primarily in BoA common and preferred stock.

37.    The 401(k) Plan pays various fees directly to service-providers, some of which are BoA Subsidiaries and Affiliates.  Such fees include, for example, fees paid to BoA Trust for trustee and custodial services.

28.    The 401(k) Plan also invests, pursuant to the direction of the Committee, billions of dollars in mutual funds offered or managed by BoA Subsidiaries and Affiliates, which investments have generated millions of dollars of investment advisory and other fees for BoA. The 401(k) Plan contains several investment options: all selected by the Defendants. According to the Form 11-K and the Form 5500 for the year 3003, for example, the 401(k) Plan contained nineteen investment funds, a stable capital fund, a BoA common stock fund, and seventeen mutual funds. Of the seventeen mutual funds, ten are from the Nations Funds and Columbia Funds mutual fund families, which are administered and advised by BoA affiliates, including BACAP Management, MCM, and CMA ("Affiliated Funds"). The Affiliated Funds offered in 2003 were:  the Nations Value Fund, the Nations Bond Fund, the Nations LargeCap Index Fund, the Nations International Equity Fund, the Nations Marsico Focused Equities Fund, the Narions SmallCap Index Fund, the Nations MidCap Index Fund, the Nations LifeGoal Income and Growth Portfolio, the Nations LifeGoal Balanced Growth Portfolio. and the Nations LifeGoal Growth Portfolio. Before 2003, the Affiliated Funds were the only mutual funds contained in the 401(k) Plan.

2.    The Rank of America Pension Plan.

29.    On information and belief, the Pension Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35). Pursuant to ERISA, the relief requested in this action is for the benefit of the Pension Plan.

30.    BoA is the sponsor and plan administrator of the Pension Plan.

Complaint

31.    The Committee and the Committee Members are responsible for the overall operation and administration of the Pension Plan, including the selection of Pension Plan investment options.

32.    The Board is responsible for appointing, monitoring: and removing Committee Members, which includes the responsibility to monitor decisions with respect to the selection of investment options for the Pension Plan.

33.    BoA Trust is the Trustee for the Pension Plan's assets.

34.    The Pension Plan pays various fees directly to service-providers, some of which are BoA Subsidiaries and Affiliates. Such fees include, for example, fees paid to BoA Trust for trustee and custodial services and Investment management fees paid to BACAP Management.

35.    The Pension Plan's assets are invested and monitored by the Committee with the assistance of several portfolio managers, some of whom are BoA Subsidiaries and Affiliates. On information and belief, the Pension Plan pays certain investment management fees directly to the BoA portfolio managers who assist the Committee.

36.    The Pension Plan also invests, pursuant to the direction of the Committee and the advice of the BoA portfolio managers that assist it, billions of dollars in Affiliated Funds, which investments have generated millions of dollars of investment advisory and other fees for BoA. For example) in 3002 and 3001, Pension Plan assets totaling $3,469,192,423 and $4,580,682,827 respectively were managed by BACAP Management. In 2001, $2,923,355,774 of Pension Plan assets managed by BACAP Management were invested in Affiliated Funds, including: the Nations Prime Fund, the Nations Cash Reserves. the Nations Short-Intermediate Government Fund, the Nations Capital Growth Fund, the Nations MidCap Growth Fund, the Nations SmallCap Index Fund, the Nations International Equity Fund, the Nations Managed Index Fund; the Nations LargeCap Index Fund, the Nations Small Company Fund, the Wations Value Fund, the Nations Jnrernational Value Fund, the Nations Aggressive Growth Fund. the Nations MidCap Index Fund.

Complaint

B.      The Fiduciaries of the Plans Named as Defendants.

37.      ERISA requires every plan to provide for one or more named fiduciaries of the Plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A).

38.      ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact perform fiduciary functions. ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) (stating that a person is a fiduciary "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets . . ..").

39.      Each of the Defendants is a fiduciary to the Plans and owes fiduciary duties to the Plans and their participants under ERISA in the manner and to the extent set forth in the documents governing the Plans, through their conduct, and under ERISA.

40.      Defendant BoA is the administrator of the Plans and a Named Fiduciary of the Plans pursuant to ERISA § 402(a)(2), 29 U.S.C. § 1029(a)(2), and the documents governing the Plans. BoA exercises broad responsibility for management and administration of the Plans and, among its other duties, is responsible for oversight of the Plans' investments, policies, and the performance, as well as of other fiduciaries to the Plans.

41.      The Committee is charged with administering and maintaining the Plans. The Committee's duties include selecting, monitoring, and deleting the Plans' investments. The Committee exercises broad responsibility for management and administration of the Plans, including oversight of the Plans' investment options, policies, and the performance of the Plans' Investments. as well as the review of investment managers. In its capacity to select and monitor investments for the Plans. the Committee has the discretion and authority to suspend. eliminate, or reduce any of the Plans' investment, including investments managed or offered by BoA Subsidiaries and Affiliates.

42.      The Board exercises authority to select, monitor, retain, and remove the Committee Members and, accordingly, exercises authority and oversight over the Committee Members, who report to the Board regarding the Plans.

**C.** **The Defendants Caused The Plans To Engage In Prohibited Transactions And Defendants Breached Their Fiduciary Duties Of Prudence And Loyalty By Causing Or Allowing The Plans To Invest In Affiliated Funds That Paid Excessive Fees And To Pay Other Excessive Fees Directly And Indirectly To BoA.**

43.     The Plans pay fees for investment management and other services. Some of these fees are paid indirectly by the Plans through the Plans' investments in Affiliated Funds. Other fees are paid directly by the Plans to service providers such as actuaries, accountants, and investment managers, many of which are BoA Subsidiaries and Affiliates.

44.     Among other things, Defendants are responsible for selecting investments and service-providers for the Plans, which sele tions must be made prudently and solely in the interest of the Plans' participants and beneficiaries.

45.     The Defendants had the sole discretion to select the investments available under the 401(k) Plan and to direct the investment of Pension Plan assets. Over many years, Defendants used that discretion to direct billions of dollars in the Plans' assets into Affiliated Funds. In 2003, the 401(k) Plan's investments in the Affiliated Funds totaled $2,145,078,181 In 2001, the Pension Plan's investments in the Affiliated Funds totaled $2,923,355,774.

46.     The Affiliated Funds paid BoA Subsidiaries and Affiliates tens of millions of dollars in annual fees for investment advisory, custodial, trust, administrative and other services, which fees were passed on to investors in the Affiliated Funds, including the Plans. by deducting such fees from the Affiliated Funds.

47.     Defendants knew or should have known that the fees paid by the Affiliated Funds to BoA Subsidiaries and Affiliates were excessive. Defendants knew or should have known that similar investment-style funds that paid substantially lower fees to investment advisors and other service providers were available from unaffiliated investment managers and fund families.

48.     On information and belief, the Plans' investments in Affiliated Funds constituted the majority of the investments in the institutional share classes of most of the Affiliated Funds in which the Plans invested.

Complaint

49.     Without the "critical mass" or "seed money" provided by the Plans' investments in Affiliated Funds: BoA would not have been able to attract other investors to its Affiliated Funds and maintain an investment management business.

50.     For each year in which the Plans invested in Affiliated Funds, BoA Subsidiaries and Affiliates received millions of dollars in investment advisory and other fees for investment management and other services provided to the Affiliated Funds, which was paid indirectly by the Plans and which inured to the benefit of BoA.

51.     The Plans' investments in the Affiliated Funds were prohibited transactions under ERISA, as were the direct payment of investment management and other fees to BoA.

52.     Defendants also breached their fiduciary duties of prudence and loyalty under ERISA by causing or allowing the Plans to invest substantial portions of their assets in Affiliated Funds which paid investment management and other related fees to BoA Subsidiaries and Affiliates that were higher than fees available from unaffiliated funds and unaffiliated mutual funds or investment managers. Although these fees were paid directly by the mutual fund to the BoA Subsidiary or Affiliate: the fees were nevertheless paid indirectly by the Plan and the payment of such fees had a direct and detrimental impact on the value of the Plans' assets as earnings for the Affiliated Funds were passed on to investors net of fees. As United States Department of Labor studies have recognized, the

> [e]xpenses of operating and maintaining an investment portfolio that are debited against the participant's account constitute an opportunity cost in the form of foregone investments in every contribution period. The laws of compound interest dictate that these small reductions in investment are magnified greatly over the decades in which many employees will be 401 ik) plan participants. ...
> The effect of ... nigher levels of expenses would be to reduce the value of potential future account balances for these participants.

*Study of 401(k) Plan* Fees *and* Expenses (Apr. 13, 1998) ("Fee Study") (available at http://www.dol.gov/ebsa/pdf/401krept.pdf.) Applied to a multi-billion dollar portfolio over

several years, the compounded opportunity cost of excessive fees causes substantially reduced pension plan assets.

53.     Consider, for example, Table 1 below, which shows the excessive investment advisory fees extracted from the Plans on the Plans' investment (that is, the 401(k) Plan's and the Pension Plan's investments) of $1,536,537,179 in the Nations LargeCap Index Fund in 2001 as compared to similar index funds available from companies other than BoA.

Table 1

The Vanguard Index Fund is one sixth the cost of the Nations LargeCap Index Fund. A loyal, prudent, and unconflicted fiduciary would not have chosen to invest over $1.5 billion of the Plans' assets in a fund that charged six times that of a sound competitor with a sterling reputation. Compounded over several years, the annual $4.4 million in fees in excess of the Vanguard Fund results in substantially reduced plan assets over time. Moreover, the substantial value of the lost Investment opportunity inured directly to the benefit of BoA because BoA both collected the fees and earned profits thereon, sums which rightfully belonged to the Plans.

54.     Table 1 only tells part of the story. With over $1.5 billion to invest in a single fund, the Plans' fiduciaries likely could have negotiated a single client or separate account investment at rates below those charged by even the Vanguard Fund described in Table 1. "Very large plans can achieve even greater investment management savings by establishing separate accounts for their 401(k) assets." (*Fee Study*.)

55.     Similar excessive investment advisory fees and commensurate opportunity losses are found for many, if not all, of the Affiliated Funds in which the Plans invested. For example, in 2003, the 401(k) Plan paid excessive investment advisory fees on its investment in the Nations MidCap Index Fund. The Nations MidCap Index Fund charged 40 basis points whereas a Vanguard MidCap Index Fund paid only 8 basis points in investment advisory fees in 2003.

Complaint

capacity and familiar with such matters would use in the conduct

of an enterprise of like character and with like aims;

(C)    by diversifying the investments of the plan so as to minimize the

risk of large losses, unless under the circumstances it is clearly

prudent not to do so; and

(D)    in accordance with the documents and instruments governing the

plan insofar as such documents and instruments are consistent with

the provisions of this title and Title IV.

59.    ERISA also imposes explicit co-fiduciary duties on plan fiduciaries.  ERISA
§ 405, 29 U.S.C. § 1105, states, in relevant part, that:

In addition to any liability which he may have under any other provision

of this part, a fiduciary with respect to a plan shall be liable for a breach of

fiduciary responsibility of another fiduciary with respect to the same plan

in the following circumstances:

(1)    if he participates knowingly in, or knowingly undertakes to

conceal: an act or omission of such other fiduciary, knowing such

act or omission is a breach; or

(2)    if, by his failure to comply with section 404(a)(1) in the

administration of his specific responsibilities which give rise to his

status as a fiduciary, he has enabled such other fiduciary to commit

a breach; or

(3)    if he has knowledge of a breach by such other fiduciary, unless he

makes reasonable efforts under the circumstances to remedy the

breach.

60.    Under ERISA, fiduciaries that exercise discretionary authority or control over the
selection of plan investments and the selection of plan service providers must act prudently and
solely in the interest of participants in the plan when selecting investments and retaining service
providers. Thus, "the duty to conduct an independent investigation into the merits of a particular

Complaint

investment" is "the most basic of ERISA's investment fiduciary duties." *In re Unisys Savings Plan Litig.*, 74 F.3d 420. 435 (3d Cir. 1996). As the Department of Labor explains:

> [T]o act prudently, a plan fiduciary must consider, among other factors, the availability, riskiness, and potential return of alternative investments for his or her plan. [Where an investment], if implemented, causes the Plan to forego other investment opportunities, such investments would not be prudent if they provided a plan with less return. in comparison to risk, than comparable investments available to the plan, or if they involved a greater risk to the security of plan assets than other investments offering a similar retuin.

DoL Ad. Op. No. 88-16A.

61.    Pursuant to these duties, fiduciaries must ensure that the services provided to the plan are necessary and that the fees are reasonable:

> Under section 404(a)(1) of ERISA, the responsible Plan fiduciaries must act prudently and solely in the interest of the Plan participants and beneficiaries both in deciding ... which investment options to utilize or make available to Plan participants or beneficiaries. In this regard, the responsible Plan fiduciaries must assure that the compensation paid directiy or indirectiy by the Plan to [service providers] is reasonable ... .

DoL Ad. Op. 97-15A; DoL Ad. Op. 97-16A

62.    A fiduciary's duty of loyalty requires a fiduciary to act solely in the interest of plan participants and beneficiaries. As the Department of Labor has repeatedly wai-ned:

> We have construed the requirements that a fiduciary act solely in the interest of. and for the exclusive purpose of providing benefits to, participants and beneficiaries as prohibiting a fiduciary from subordinating the interests of participants and beneficiaries in their retirement income to unrelated objectives. Thus, in deciding whether and to what extent to invest in a particular investment, a fiduciary must ordinarily consider only factors relating to the interests of plan participants and beneficial-ies in their- retirement income. A decision to make an

Complaint

1   investment may not be influenced by [other] factors unless the investment, when

2   judged solely on the basis of its economic value to the plan, would be equal or

3   superior to alternative investments available to the plan.

4   DoL Ad. Op. No. 98-04A; DoL Ad. Op. No. 88-16A.

5   63.   Department of Labor counsels that fiduciaries are responsible for ensuring that a

6   plan pays reasonable fees and expenses and that fiduciaries need to carefully evaluate differences

7   in fees and services between prospective service providers:

8   While the law does not specify a permissible level of fees, it does require that fees

9   charged to a plan be "reasonable." After careful evaluation during the initial

10   selection, the plan's fees and expenses should be monitored to determine whether

11   they continue to be reasonable.

12   In comparing estimates from prospective service providers, ask which services are

13   covered for the estimated fees and which are not. Some providers offer a number

14   of services for one fee, sometimes referred to as a "bundled" services

15
16   arrangement. Others charge separately for individual services. Compare all

17   services to be provided with the total cost for each provider. Consider whether the

18   estimate includes services you did not specify or want. Remember, all services

     have costs.

19   Some service providers may receive additional fees from investment vehicles:

20   such as mutual funds, that may be offered under an employer's plan. For example,

21   mutual funds often charge fees to pay brokers and other salespel-sons for

22   promoting the Fund and providing other services. There also may be sales and

23   other related charges for investments offered by a service provider. Employer-s

24   should ask prospective providers for a detailed explanation of all fees associated

25   with their investment options.

26   *Meeting Your Fiduciary Resporzsibilities* (May 2004) (available at

27   http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html).

28   In a separate publication: the Department of Labor writes:

Complaint

1   Plan fees and expenses are important considerations for all types of retirement

2   plans. As a plan fiduciary, you have an obligation under ERISA to prudently

3   select and monitor plan investments, investment options made available to the

4   plan's participants and beneficiaries, and the persons providing services to your

5   plan. Understanding and evaluating plan fees and expenses associated with plan

6   investments, investment options, and services are an important part of a

7   fiduciary's responsibility. This responsibility is ongoing. After careful evaluation

8   during the initial selection, you will want to monitor plan fees and expenses to

9   determine whether they continue to be reasonable in light of the services

10   provided.

11                                    ***

12   By far the largest component of plan fees and expenses is associated with

13   managing plan investments. Fees for investment management and other related

14   services generally are assessed as a percentage of assets invested. Employers

15   should pay attention to these fees. They are paid in the form of an indirect charge

16   against the participant's account or the plan because they are deducted directly

17   from investment returns. Net total return is the return after these fees have been

18   deducted. For this reason, these fees, which are not specifically identified on

19   statements of investments, may not be immediately apparent to employers.

20   *Understanding Retirement Plan Fees and Expenses* (May 2004) (available at

21   http://www.dol.gov/ebsa/publications/undrstndgrtrmnt.html.)

22       64.   A fiduciary's duty of loyalty and prudence require it to disregard plan documents

23   or directives that it knows or reasonably should know would lead to an imprudent result; or

24   would otherwise harm plan participants or beneficiaries. ERISA § 404(a)(1)(d), 29 U.S.C.

25   § 1104(a)(1)(D). Thus, a fiduciary may not blindly follow plan documents or directives that

26   would lead to an imprudent result or that would harm plan participants or beneficiaries, nor allow

27   others, including those whom they direct or who are directed by plan documents to do so.

28

65.     Under ERISA! a monitoring fiduciary must ensure that the other fiduciaries are performing their fiduciary obligations, including those with respect to the investment of plan assets, and take prompt and effective action to protect the plan and participants when they are not. In addition, a monitoring fiduciary must provide the other fiduciaries with accurate information in their possession that they know or reasonably should know that the other fiduciaries must have in order to prudently manage the plan and the plan assets.

66.     The general duties of loyalty and prudence imposed by § 404 of ERISA are supplemented by a detailed list of transactions that are expressly prohibited by § 406 of ERISA, 29 U.S.C. § 1106, and are considered "*per se*" violations because they entail a high potential for abuse. Section 406(a)(1) provides, in pertinent part, that:

> [A] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
>
> (Aj    sale or exchange, or leasing, of any property between the plan and a party in interest;
>
>                 * * *
>
> (C)    furnishing of goods, services, or facilities between the plan and a party in interest ... .

Section 406(b) provides, in pertinent part, that:

> [A] fiduciary with respect to a plan shall not—
>
> (1)    deal with the assets of the plan in his own interest or for his own account,
>
> (2)    in his individual or in any other capacity act in a transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries ...

67.     ERISA's prohibited transaction provisions thus prohibit fiduciaries, such as the Defendants here, from causing plans to engage In transactions with the plan sponsor, here BoA,

Complaint

1   including causing a plan to invest assets in investment management and other products offered

2   by a party in interest or plan fiduciary and the payment of investment management and other fees

3   in connection with such investments.

## V. <u>CLAIMS</u> FOR RELIEF

## <u>COUNT I</u>

**Engaging in Prohibited Transactions by Causing the Plans to**

**Invest in BoA Affiliated Funds and Pay for Other**

**Products and Services Provided by BoA Subsidiaries and Affiliates**

**(Violation of § 406 of ERISA, 29 U.S.C. § 1106 by Defendants)**

11      68.     Plaintiff incorporates the allegations contained in the previous paragraphs of this

12  Complaint as if fully set forth herein.

13      69.     At all relevant times, Defendants acted as fiduciaries within the meaning of

14  ERISA § 3(21)(A),  29 U.S.C.§ 1002(21)(A), by exercising authority and control with respect to

15  the management of the Plans and the Plans' assets.

16      70.     Defendants, by their actions and omissions in authorizing or causing the Plans to

17  invest in the Affiliated Funds and purchase BoA-affiliated products and services, and pay,

18  directly or indirectly, investment management and other fees in connection therewith. caused the

19  Plans to engage in transactions that Defendants knew or should have known constituted sales of

20  exchanges of pi-opei-ty between the Plans and parties in interest, the furnishing of services by

21  parties in interest to the Plans, and transactions with fiduciaries in violation of §§ 406(a)(1)(A),

22  (C), and 406(b), 25 U.S.C. §§ 1106(a)(1)(A), (C), and 406(b).

23      71.     As a direct and proximate result of these prohibited transaction violations, the

24  Plans, directly or indirectly, paid millions of dollars in investment management and other fees

25  that were prohibited by ERISA and suffered millions of dollars in losses annually.

26      72.     Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a),

27  Defendants are liable to restore all losses suffered by the Plans as a result of the prohibited

Complaint

1  transactions and all profits earned by Defendants on the fees paid by the Plans to BoA and its

2  Subsidiaries and Affiliates.

3                                    COUNT II

4            Breach of Duties of Loyalty and Prudence by Causing the Plans to

5              Invest in BoA Affiliated Funds, Through Which the Plans Indirectly

6     Incurred Excessive Investment Advisory and Other Fees Charged by BoA Subsidiaries,

7          and By Causing the Plans to Pay Excessive Direct Investment Management and

8                       Other Fees to BoA Subsidiaries and Affiliates

9              (Violation of § 404 of ERISA, 29 U.S.C. § 1104 by Defendants)

10          73.    Plaintiff incorporates the allegations contained in the previous paragraphs of this

11  Complaint as if fully set forth herein.

12          74.    At all relevant times, Defendants acted as fiduciaries within the meaning of

13  ERISA § 3(21)(A), 29 U.S.C.§ 1002(21)(A), by exercising authority and control with respect to

14  the management of the Plans and the Plans' assets.

15          75.    Defendants. by their actions and omissions in authorizing or causing the Plans to

16  invest in investment funds offered by BoA Subsidiaries and Affiliates and purchase products and)

17  services, and pay investment management and other fees in connection therewith, to BoA

18  Subsidiaries and Affiliates, caused the Plans to pay fees that were higher than the norm for such

19  products. The fact that the Plans' investments in fee-generating managed funds were

20  concentrated in funds managed by BoA Subsidiaries and Affiliates reflects a failure to consider

21  and obtain less expensive, alternative, unaffiliated funds and services at the expense and to the

22  detriment of the Plans and to the benefit of BoA Subsidiaries and Affiliates. Thus, Defendants

23  breached their duties of pi-udence and loyalty to the Plans under ERISA § 404(a)(1)(A). (B), 29

24  U.S.C. §§ 1104(a)(1)(A), (B).

25          76.    As a direct and proximate result of these breaches of duty, the Plans: and

26  indirectly Plaintiff and the Plans' other participants and beneficiaries, realized returns which

27  were lower due to the millions of dollars in excessive investment management and other fees

28

                                                                                        Complaint

charged by the Subsidiaries and Affiliates at the expense and to the detriment of the Plans and to the benefit of BoA Subsidiaries and Affiliates.

77.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), Defendants are liable to restore all losses suffered by the Plans caused by Defendants' breaches of fiduciary duty.

## VI. **PRAYER FOR RELIEF**

WHEREFORE. Plaintiff prays for relief as follows:

1.    Declare that the Defendants, and each of them, have violated ERISA's prohibited transactions provisions;

2.    Declare that the Defendants, and each of them, breached their fiduciary duties under ERISA;

3.    Issue an order compelling the Defendants to disgorge all fees paid and incurred, directly or indirectly, to BoA Subsidiaries and Affiliates by the Plans, including disgorgement of profits thereon;

4.    Order equitable restitution and other appropriate equitable monetary relief against the Defendants;

5.    Award such other equitable or remedial relief as may be appropriate, including the permanent removal of the Defendants from any positions of trust with respect to the Plans and the appointment of independent fiduciaries to administer the Plans;

6.    Enjoin Defendants collectively, and each of them individually, from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

7.    Award Plaintiff her attorneys' fees and costs pursuant to ERTSA § 502(g), 39 U.S.C. § 1132(g) and/or the Common Fund doctrine; and

8.    Award such other and further relief as the Court deems equitable and just.

1

## VII. CIVIL L.R. 3-16 CERTIFICATION

2        Pursuant to Civil L.R. 3-!6,  the undersigned certifies that as of this date, other than the

3   named parties, there is no interest to report.

4

5   DATED this *August 1,* 2006.           Respectfully submitted:

6

7                       By: _William G. Bertain_

8                        William G. Bertain, Esq.
                            Law Offices of William G. Bertain

9                        1310 Sixth Street
                        Eureka, CA  95501

10                     Tel:  (707) 443-5078
                       Fax: (707) 443-4998

11

12                   *Attorney for Plaintiff Elena M. David*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28