IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID G. FEINBERG, and all     *
others similarly situated

                                *

      Plaintiffs

                                *

      vs.                        CIVIL ACTION NO. MJG-17-0427

                                *

T. ROWE PRICE GROUP, INC. et al.

                                *

      Defendants

                                *

*     *     *     *     *     *     *     *     *     *     *     *     *

MEMORANDUM

The Court has before it Defendants T. Rowe Price Group, Inc. et al's Motion to Dismiss Plaintiffs' First Amended Complaint [ECF No. 35], Plaintiffs' Motion to Exclude Exhibits 1 to 15 Attached to Defendants' Motion to Dismiss [ECF No. 38], and the materials relating thereto submitted by the parties. The Court has also reviewed a recording of a hearing held before the Honorable Marvin J. Garbis on April 5, 2018, just before he retired from judicial service, and just before the matter was transferred to the undersigned.

I.      BACKGROUND[1]

Defendant T. Rowe Price Group, Inc. ("T. Rowe Price") is a large mutual fund and financial services organization that provides a broad range of services to consumers and corporate customers.

_____

[1]      The "facts" herein are as alleged by Plaintiff and are not necessarily agreed upon by Defendants.

Plaintiffs[2] are, or were during the relevant time period,[3] employees of Defendant T. Rowe Price and participated in the T. Rowe Price U.S. Retirement Program ("401(k) Plan" or "Plan"), which is a defined contribution 401(k) Plan. Plaintiffs have filed this purported class action pursuant to the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and (a)(3), for violations of ERISA's fiduciary duty and prohibited transaction provisions.

T. Rowe Price is the sponsor, a fiduciary of the 401(k) Plan, and a party-in-interest to the Plan under 29 U.S.C. § 1002(14). Defendant T. Rowe Price Associates, Inc. ("T. Rowe Price Associates") is a wholly-owned subsidiary of T. Rowe Price and provides investment advisory services to all of T. Rowe Price's in-house mutual funds. Defendant T. Rowe Price Trust Company ("T. Rowe Price Trust") is also a wholly-owned subsidiary of T. Rowe Price. It offers trustee services and is the investment manager of the T. Rowe Price Collective Investment Trust funds in the 401(k) Plan. Plaintiffs refer to T. Rowe Price Associates and T. Rowe Price Trust collectively as T. Rowe Price Investment Affiliates.

Plaintiffs also name as Defendants T. Rowe Price U.S. Retirement Program Trustee Does 1-40 ("Trustees").[4] The Trustees are named Plan fiduciaries and had the authority and responsibility to select, monitor, and remove or replace investments offered in the 401(k) Plan. Plaintiffs name two committees as responsible for appointing and removing Trustees: T. Rowe Price Management Committee ("Management Committee") and T. Rowe Price Management

---

[2] David G. Feinberg, Regina Widderich, Jitesh Jani, Sital Jani, James Collins, Farrah Qureshi, Daniel Newman, Maria Stanton, Daniel Fialkoff, Michelle Bourque, and Thomas Henry, on behalf of themselves, individually and on behalf of all others similarly situated.
[3] The relevant time period alleged is February 14, 2011 to time of judgment.
[4] Plaintiffs do not currently know the names of the individual Trustees.

Compensation Committee ("Management Compensation Committee").[5]  At some point during the relevant time period, the Management Compensation Committee assumed the responsibility from the Management Committee for appointing and removing Trustees.  Plaintiffs refer to the "Appointing Fiduciary Defendants" as the group of Defendants T. Rowe Price, the Management Committee and its individual members, and the Management Compensation Committee and its individual members.

By the First Amended Complaint ("FAC") [ECF No. 32], Plaintiffs allege violations of ERISA's fiduciary duties and prohibited transactions in seven Counts:

- Count I - Breach of Duties of Loyalty and Prudence for Imprudent and Disloyal Monitoring and Selection of 401(k) Plan Investments during the Class Period, which Caused Losses to the 401(k) Plan (Violation of ERISA, 29 U.S.C. § 1104)

  o Against Trustees (Does 1-40)

- Count II - Breached of ERISA Fiduciary Duties by Failing to Remove and Prudently Monitor the 401(k) Plan Trustees

  o Against the Appointing Fiduciary Defendants (T. Rowe Price, the Management Committee and its individual named members, the Management Compensation Committee and its unknown individual members Defendant Does 1-40)

- Count III - Breach of Duties of Loyalty and Prudence by Providing Imprudent and Self-Interested Investment Advice to [Plan Trustees][6] (Violation of ERISA, 29 U.S.C. § 1104)

  o Against T. Rowe Price Investment Affiliates (T. Rowe Price Associates and T. Rowe Price Trust)

_____

[5]     Plaintiffs have named the following individual members of the Management Committee: Christopher D. Alderson, Edward C. Bernard, Michael C. Gitlin, James A.C. Kennedy, John D. Linehan, Brian C. Rogers, William J. Stromberg, Eric L. Veiel, and Edward A. Weise. Plaintiffs do not currently know the names of the individual members of the Management Compensation Committee.  Plaintiffs have identified Defendant Does 1-40 to include the individual members of the Management Compensation Committee as well as any other unknown Plan fiduciaries.

[6]     See Opp'n 6 n. 2, ECF No. 37 ("Due to typographical error, this Count's heading refers to the provision of investment advice to 'Committee Defendants,' when it should refer to the Plan Trustees.").

- Count IV - Liability for Breach of Co-Fiduciary (Pursuant to ERISA, 29 U.S.C. § 1105)

  - Against the Appointing Fiduciary Defendants (T. Rowe Price, the Management Committee and its individual named members, the Management Compensation Committee and its unknown individual members Defendant Does 1-40), and T. Rowe Price Investment Affiliates (T. Rowe Price Associates and T. Rowe Price Trust)

- Count V - Liability for Failing to Remedy Breach of Predecessor Fiduciaries

  - Against Trustees (Does 1-40)

- Count VI - Liability for Committing Prohibited Transactions (Violation of ERISA, 29 U.S.C. § 1106)

  - Against Trustees (Does 1-40) and T. Rowe Price Investment Affiliates (T. Rowe Price Associates and T. Rowe Price Trust)

- Count VII - Other Equitable Relief Based on Ill-Gotten Proceeds (Violation of ERISA, 29 U.S.C. § 1132(a)(3))

  - Against T. Rowe Price and T. Rowe Price Investment Affiliates (T. Rowe Price Associates and T. Rowe Price Trust)

For reference, the following summarizes which Counts are asserted against each Defendant:

- T. Rowe Price – Counts II, IV, and VII

- T. Rowe Price Investment Affiliates (T. Rowe Price Associates and T. Rowe Price Trust) – Counts III, IV, VI, and VII

- Trustees (Does 1-40) – Counts I, V, and VI

- The Management Committee and its individual named members, and the Management Compensation Committee and its unknown individual members Defendant Does 1-40 – Counts II and IV

Generally, Plaintiffs allege that Defendants favored the economic interests of T. Rowe Price and its affiliates over the interests of their employees and the 401(k) Plan. Defendants offered only their own in-house investment funds in the 401(k) Plan, thereby collecting windfall profits through excessive fees. Additionally, the funds performed poorly in comparison to other

non-proprietary investment funds that a prudent investor, who was acting on behalf of the Plan's participants' interests, would have selected. In other words, Plaintiffs allege that Defendants chose their own funds for the 401(k) Plan because of the financial benefit to the company regardless of the detriment to the Plan's participants. Plaintiffs allege that in some cases, Defendants selected the retail versions of in-house funds that charged higher fees to the Plan than identical in-house funds (those offered to higher net worth investors such as retirement funds) that would have been less expensive.

By the instant motion, Defendants seek dismissal of all Counts in Plaintiffs' FAC for failure to allege plausible claims pursuant to Rule[7] 12(b)(6) of the Federal Rules of Civil Procedure. Defendants also assert that Count VI is substantially time-barred by ERISA's six-year limitations period.

## II. DISMISSAL STANDARD

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint. A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted). When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff. However, conclusory statements or "a formulaic recitation of the elements of a cause of action will not [suffice]." Id. A complaint must allege sufficient facts "to

---

[7]     All Rule references herein refer to the Federal Rules of Civil Procedure.

cross 'the line between possibility and plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557)).

Inquiry into whether a complaint states a plausible claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). Thus, if "the well-pleaded facts [contained within a complaint] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. (quoting Iqbal, 556 U.S. at 679 (alteration in original)).

III.    MOTION TO EXCLUDE

In its Memorandum in support of the instant motion, Defendants requested that the Court take judicial notice of various documents that were attached as exhibits. Mot. Mem. 4 n. 1, ECF No. 35-1. Plaintiffs take no issue with certain exhibits that related to the 401(k) Plan, i.e., Declaration of Clay Bowers, Exs. A-O [ECF Nos. 35-4 to 35-18]. However, Plaintiffs move to exclude exhibits consisting of various Securities and Exchange filings, excerpts of Department of Labor Form 5500 filings, and a T. Rowe Price-drafted "Financial Services Fund Fact Sheet," i.e., Declaration of Deanna M. Rice, Exs. 1-15 [ECF Nos. 35-20 to 35-34]. Plaintiffs assert that the Rice exhibits are inappropriate for the Court's consideration under a Rule 12(b)(6) motion, because they were not relied upon nor referenced in the FAC (except generally), and they are being offered for the truth of their contents in order to contradict factual assertions advanced in the FAC.

In considering a Rule 12(b)(6) motion, the court may take judicial notice of public records, including statutes, and "may also 'consider documents incorporated into the complaint

by reference,' 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" <u>United States ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency</u>, 745 F.3d 131, 136 (4th Cir. 2014) (citations omitted).

Accordingly, the Court will take judicial notice of the Plan documents and statements attached to the Declaration of Clay Bowers, Exs. A-O [ECF Nos. 35-4 to 35-18]. The Court will also take judicial notice, to the limited extent relevant,[8] of public documents filed with the Securities and Exchange Commission and the Department of Labor, Declaration of Deanna M. Rice, Exs. 1-11, 13-15 [ECF Nos. 35-20 to 35-30, 35-32 to 35-34]. The Court does not take judicial notice of the truth of the underlying facts in such public documents, and shall not consider the content of the documents to the extent that Defendants seek to use them to provide factual evidence of, for example, T. Rowe Price's contributions to participants' accounts, or to contradict Plaintiffs' allegations regarding performance.

The Court will not take judicial notice of the T. Rowe Price Fact Sheet, Declaration of Deanna M. Rice, Ex. 12 [ECF No. 35-31]. This document is not referenced in the Complaint and is offered only for the purpose of contradicting Plaintiffs' allegations. Of course, at this stage of the proceedings all facts will be viewed in a light most favorable to Plaintiffs.

---

[8]     "Judicial notice is appropriate of the content of S.E.C. filings, to the extent that this establishes that the statements therein were made, and the fact that these documents were filed with the agency. . . . The Court does not take judicial notice of the truth of the underlying facts in such public documents." <u>In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.</u>, 876 F. Supp. 2d 616, 653 n.7 (D. Md. 2012).

IV.   DISCUSSION

   A.   General Principles

The parties agree that the 401(k) Plan at issue herein was, at all relevant times, an "employee pension benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(2)(A), and was established to provide retirement income to T. Rowe Price employees. T. Rowe Price is the sponsor of the Plan and is an ERISA fiduciary.

ERISA imposes certain duties upon plan fiduciaries, breaches of which are actionable by any plan participant. 29 U.S.C. §§ 1104, 1109(a), 1132(a)(2).

> A review of cases discussing the policies and purposes of the ERISA statutory scheme reveals several recurring themes. ERISA was enacted, first and foremost, to protect employees and to secure promised benefits. ERISA aspires to preserve the financial integrity of plan funds for the benefit of equitable distribution to all plan participants; it favors a uniform body of federal law applicable to all employee benefits plans; it seeks to avoid confusion over the terms of benefits plans by compelling fiduciaries to establish and maintain plans pursuant to one official written document; it endorses full disclosure to plan participants; and it holds plan fiduciaries to the highest standards of care in the management of employee benefits plans.

Elmore v. Cone Mills Corp., 6 F.3d 1028, 1046 (4th Cir. 1993), reh'g granted and opinion vacated (Dec. 13, 1993), on reh'g en banc sub nom. Elmore v. Cone Mills Corp, 23 F.3d 855 (4th Cir. 1994)(citations omitted).

"ERISA imposes high standards of fiduciary duty on those responsible for the administration of employee benefit plans and the investment and disposal of plan assets." Tatum v. RJR Pension Inv. Comm., 761 F.3d 346, 355 (4th Cir. 2014). Section 1104(a)(1) requires a fiduciary to act "solely in the interest of the participants and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like

character and with like aims." 29 U.S.C. § 1104 (a). Fiduciaries must "diversify[ ] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." Id. Finally, fiduciaries are required to discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [other provisions of ERISA]." Id.

B.    Count I – Trustees' Breach of Duties

Plaintiffs allege that the Trustees breached their duties of loyalty and prudence in their selection and monitoring of investments for the 401(k) Plan, which is a violation of 29 U.S.C. § 1104.

A claim alleging a breach of fiduciary duty may survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably "infer from what is alleged that the process was flawed." Braden v. Wal–Mart Stores, Inc., 588 F.3d 585, 596 (8th Cir. 2009). Alleged facts need not "directly address[ ] the process by which the Plan was managed." Id. Indeed, "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." Id. at 598. However, a plaintiff cannot avoid a motion to dismiss by simply alleging that better or cheaper investment opportunities were available at the time of the relevant decisions. See id. at 596 n.7. Further, in order to state a claim for breach of fiduciary duty, a plaintiff must plausibly allege that the breach caused a loss to the Plan. See Pegram v. Herdrich, 530 U.S. 211, 225-26 (2000); 29 U.S.C. § 1109(a). Also, "participants suing under ERISA have the burden of showing that they personally suffered some

actual or threatened injury as a result of the allegedly unlawful conduct complained of." David v. Alphin, 817 F. Supp. 2d 764, 781 (W.D.N.C. 2011), aff'd, 704 F.3d 327 (4th Cir. 2013).[9]

Plaintiffs allege that the Plan Trustees breached their duties of prudence and loyalty by giving "preferential treatment to the in-house funds because maintaining those funds in the 401(k) Plan financially benefited T. Rowe Price and its subsidiaries." FAC ¶ 121; § IV.B. Plaintiffs provide detailed examples of comparable funds showing that the Plan's funds'[10] expense ratios ranged from 16% to 2,500% higher than the comparable funds. FAC ¶ 50. Several of the examples showed expense ratios more than 1,000% higher than comparable funds. Id.

Plaintiffs also allege that the Trustees breached their duties by "selecting and/or failing to replace higher cost retail versions of the in-house funds, when lower-cost versions, specifically either institutional share classes or collective trusts, were available." FAC ¶ 122, § IV.C. Plaintiffs cite several examples of retail-class versions of in-house mutual funds being offered despite there being less expensive versions of the same funds available to T. Rowe Price's commercial customers. FAC ¶¶ 52-68. Plaintiffs add that Plan assets were used to seed T. Rowe Price's newly created funds, and Plan assets were only moved to the less expensive, identical versions once the new funds achieved marketability to attract outside investors. FAC ¶ 71, § IV.E.

---

[9] Note that Defendants make a standing argument based on examples of individual Plaintiffs not alleging personal harm. For example, in some cases, the examples of funds with poor performance were funds that the individual(s) had not selected for his/her portfolio. In David, the plaintiffs had statutory standing to assert claims on behalf of the defined-benefit plan, but they did not have constitutional standing because their interest was in fixed future payments only, not the assets of the plan. 704 F.3d at 333-38. The Plan at issue herein is not a defined-benefit plan but a defined contribution 401(k) plan.

[10] As at the end of 2016.

Plaintiffs add specific examples of investments that the Trustees retained in the Plan despite chronic underperformance, including examples of two funds that were retained in the Plan until the funds themselves were forced to close. FAC ¶¶ 73-84.

Additionally, Plaintiffs allege that the Plan suffered losses as a result of the Trustees' breach of fiduciary duty. FAC ¶¶ 72, 88, 123. Plaintiffs also allege that they, and other Plan participants, suffered losses indirectly as a result of the Plan losses. FAC ¶ 123. Plaintiffs' claims are brought on behalf of the Plan and liability is determined based on Defendants' decisions. See Moreno v. Deutsche Bank Americas Holding Corp., No. 15 CIV. 9936 (LGS), 2017 WL 3868803, at *5 (S.D.N.Y. Sept. 5, 2017) ("Whether a certain proprietary fund was imprudently retained or whether the recordkeeping expenses were excessive will be resolved with respect to the Plan as a whole."), leave to appeal denied, No. 17-2911, 2017 WL 6506349 (2d Cir. Dec. 19, 2017)).

Defendants argue that the Plan document required the Plan Trustees to select an exclusive line-up of T. Rowe Price funds. It was T. Rowe Price's decision as Plan sponsor to structure the Plan in this manner, and such a decision is a settlor function not subject to ERISA's fiduciary provisions. Mot. Mem. 9, ECF No, 35-1 (citing Hughes Aircraft Co. v. Jacobsen, 525 U.S. 432, 443-44 (1999).[11] ERISA permits financial services companies to offer employees proprietary funds for their 401(k) plans. See, e.g., Hecker v. Deere & Co., 556 F.3d 575, 586 (7th Cir. 2009)("[W]e find no statute or regulation prohibiting a fiduciary from selecting funds from one management company.").

---

[11] See also Elmore, 23 F.3d at 862 ("The fiduciary duty under 29 U.S.C.A. § 1104(a)(1) to discharge duties with respect to a plan solely in the interest of the participants and beneficiaries only applies to actions taken by a plan fiduciary in accordance with his duty to administer the employee benefit plan; it does not apply to actions taken by an employer in creating the plan."(citations omitted)).

In a New York case, the court stated that

> the fact that the Plan required investments in [the corporation's own] stock does not ipso facto relieve [Defendants] of their fiduciary obligations. All Defendants had discretionary authority over Plan investments. By force of statute, Defendants had the fiduciary responsibility to disregard the Plan and eliminate Plan investments in [the corporation's own] stock if the circumstances warranted. As such, to the extent [that the corporation's own] stock was an imprudent investment, Defendants possessed the authority as a matter of law to exclude []stock from the ESOP or as a 401(k) investment alternative, regardless of the Plan's dictates.

In re Polaroid ERISA Litig., 362 F. Supp. 2d 461, 474–75 (S.D.N.Y. 2005).

Regardless of the reasons that T. Rowe Price may have chosen to restrict the Trustees to investing only in in-house funds, it does not provide a blanket defense for the Plan Trustees. Plaintiffs' allegations that related to the use of the more expensive retail funds rather than commercial funds, the allegations that related to retaining chronic underperforming funds, and the allegations that related to seeding, remain plausible. Plaintiffs provide specific examples, not merely conclusory statements, and the Court is required to accept those factual allegations as true at this stage of the proceedings. Defendants argue with regard to each one of Plaintiffs' theories, that the allegations, standing alone, are insufficient. But Plaintiffs have alleged multiple grounds to support their claim; the allegations related to any one theory do not stand alone but must also be reviewed as a combined set.

The Court finds that Plaintiffs have produced sufficient allegations to raise a plausible inference that the Trustees breached their duties of loyalty and prudence in their selection and monitoring of investments for the 401(k) Plan.

C.      Count II – Failure to Remove and Monitor Trustees

Plaintiffs allege that the Appointing Fiduciary Defendants (T. Rowe Price, the Management Committee and its individual named members, the Management Compensation Committee and its unknown individual members Defendant Does 1-40) breached their ERISA fiduciary duties by failing to remove and prudently monitor the 401(k) Plan Trustees.

This cause of action is a derivative claim, which is dependent upon a finding that the Trustees breached their fiduciary duties. "[C]laims for failure to . . . monitor fiduciaries do not provide independent grounds for relief, but rather depend upon the establishment of an underlying breach of fiduciary duty cognizable under ERISA." In re Constellation Energy Grp., Inc., 738 F. Supp. 2d 602, 614 (D. Md. 2010)(citations omitted).

The Fourth Circuit has recognized a viable duty to monitor claim. See Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1466 n.10 (4th Cir. 1996). The court cited an Interpretive Bulletin issued by the Department of Labor stating:

> At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan.

Id. at 1465-66 (quoting 29 C.F.R. § 2509.75–8).

Plaintiffs have plausibly stated a claim for breach of the duties of loyalty and prudence by the Trustees. Plaintiffs have also alleged that the Appointing Fiduciary Defendants had the authority to appoint and remove the Trustees. FAC ¶ 126. Plaintiffs allege that the Appointing Fiduciary Defendants knew or should have known that the Trustees were failing to fulfill their ERISA fiduciary obligations. FAC ¶ 127. Plaintiffs allege loss to the Plan as a result of the breaches. FAC ¶ 128. And there is also a bare allegation of failure to monitor. FAC ¶ 127.

The Court finds that the failure to monitor claim is plausible.  See Wildman v. Am. Century Servs., LLC, 237 F. Supp. 3d 902, 915 (W.D. Mo. 2017)(denying the dismissal of a claim for failure to monitor when plaintiffs had sufficiently stated a claim for breach of fiduciary duty); Krueger v. Ameriprise Fin., Inc., No. 11-CV-02781 SRN/JSM, 2012 WL 5873825, at *18 (D. Minn. Nov. 20, 2012) ("To state a claim for failure to monitor under ERISA, a plaintiff must allege facts that the (1) entity charged with the breach was responsible for appointing and removing fiduciaries responsible for [sic] fiduciary conduct in question; and (2) entity charged with this duty to monitor also had knowledge of or participated in fiduciary breaches by the appointees. '[C]ourts have been unwilling to delineate and probe the scope of defendants' monitoring duties on motions to dismiss, and have permitted such claims to proceed forward to discovery.'" (quoting In re ADC Telecommunications, Inc., ERISA Litig., No. 03-2989 ADM/FLN, 2004 WL 1683144, at *7 (D. Minn. July 26, 2004))).

D.      Count III – Imprudent Investment Advice

Plaintiffs allege that T. Rowe Price Investment Affiliates (T. Rowe Price Associates and T. Rowe Price Trust) breached their duties of loyalty and prudence by providing imprudent and self-interested investment advice to the Plan Trustees.

This cause of action requires alleging the same elements as in Count I but against different defendants.  Here, Plaintiffs allege that T. Rowe Price Affiliates were fiduciaries of the plan by providing investment advice to the Plan Trustees.  FAC ¶ 130.  Plaintiffs allege that the investment advice provided was self-interested because it benefited their own investment management business both financially and in terms of reputation.  FAC ¶ 132.  Plaintiffs also allege that the breach caused losses to the Plan.  FAC ¶ 133.  The specifics of these allegations

are the same as identified for the Plan Trustees on the basis that these Defendants provided the investment advice to the Plan Trustees. Since the specific allegations are adequate to support the cause of action against the Trustees, the Court finds they are also adequate to support the same claim against the investment advisors to the Trustees.

E.　　Count IV – Co-fiduciary Liability

Plaintiffs allege that the Appointing Fiduciary Defendants (T. Rowe Price, the Management Committee and its individual named members, the Management Compensation Committee and its unknown individual members Defendant Does 1-40), and T. Rowe Price Investment Affiliates (T. Rowe Price Associates and T. Rowe Price Trust) are liable for the Trustees' breach of fiduciary duties pursuant to 29 U.S.C. § 1105.

29 U.S.C. § 1105 states, in pertinent part:

> In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a). A "claim of co-fiduciary liability . . . must co-exist with some breach by a fiduciary of their duties under ERISA." In re Bausch & Lomb Inc. ERISA Litig., No. 06–CV–6297, 2008 WL 5234281, *11 (W.D.N.Y. Dec. 12, 2008)).

Plaintiffs have alleged that these Defendants knowingly participated in or concealed another fiduciary's breach of duty, or failed to remedy known breaches, and benefited financially, causing losses to the Plan. FAC ¶¶ 136-139. Plaintiffs have cited authority that states that specific facts are not required here in order to survive a motion to dismiss. See In re Polaroid ERISA Litig., 362 F. Supp. 2d at 479–80 ("Defendants argue that the Complaint does not sufficiently allege knowledge of co-fiduciary actions. However, the Complaint closely tracks the statutory language, which is sufficient. The Complaint need not allege specific facts buttressing those claims of knowledge to survive a motion to dismiss." (citations omitted))

The allegations on this Count are minimal, but they are sufficient because Plaintiffs have sufficiently pleaded Count I. Accordingly, the Court finds that Plaintiffs have stated a claim for co-fiduciary liability that is sufficient to survive this motion to dismiss.

F.     Count V – Failure to Remedy Predecessor Breaches

Plaintiffs allege that the current Trustees failed to remedy the fiduciary breaches of the predecessor fiduciaries. FAC ¶¶ 141-147. Plaintiffs assert that discovery is required to provide the names of these Trustees and any further specific details.

Plaintiffs' claim finds support in an opinion of the Department of Labor:

> Section 409(b) [29 U.S.C. § 1109(b)] provides that no fiduciary shall be liable with respect to a breach of fiduciary duty under Title I of the Act, if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary. Section 409(b) does not, however, exempt a fiduciary from carrying out his responsibilities to a plan imposed by various provisions of Part 4

of Title I of the Act. For example, although a fiduciary may not be liable under section 409 of the Act for the acts of predecessor fiduciaries, if he knows of a breach of fiduciary responsibility committed by a predecessor fiduciary, he would be obligated to take whatever action is reasonable and appropriate under the circumstances to remedy such breach. Failure to take such action would constitute a separate breach of fiduciary responsibility by the successor fiduciary.

DOL Opinion No. 76–95 (Sept. 30, 1976). This view, coming from the agency charged with enforcing ERISA, is "entitled to respect" to the extent that the agency's interpretation has the "power to persuade." See Christensen v. Harris County, 529 U.S. 576, 587 (2000). Also, this interpretation is consistent with the common law of trusts, "which imposes a duty on a successor trustee to remedy the breach of a prior trustee, and imposes liability for breach of this duty 'to the extent to which a loss results from [the successor trustee's] failure to take such [remedial] steps.'" Silverman v. Mutual Ben. Life Ins. Co., 138 F.3d 98, 104 (2d Cir. 1998)(quoting Restatement (Second) of Trusts § 223(2) and cmts. c. and d. (1959)).

Defendants argue primarily that Plaintiffs fail to state a failure-to-remedy claim because they failed to plead a plausible prior fiduciary breach, but they also argue that Plaintiffs failed to allege that the Trustees had actual knowledge. However, Plaintiffs have sufficiently alleged a prior fiduciary breach. Plaintiffs also allege that the "Successor Fiduciary Defendants were aware that their predecessor fiduciaries had breached their duties in selecting the in-house funds." FAC ¶ 145. The Court finds these allegations sufficient to survive this dismissal motion.


G.      Count VI – Prohibited Transactions

1.      Adequacy of Allegations

Plaintiffs allege that the Plan Trustees and T. Rowe Price Investment Affiliates (T. Rowe Price Associates and T. Rowe Price Trust) committed prohibited transactions. ERISA strictly

prohibits a number of transactions between a plan and a party in interest[12] with respect to the

plan. 29 U.S.C. § 1106. ERISA prohibits a fiduciary with respect to a plan from acting in any

transaction involving the plan on behalf of a party, or represent a party, whose interests are

adverse to the interests of the plan or of its participants and beneficiaries. Id. It protects

beneficiaries by prohibiting transactions tainted by a conflict of interest and thus highly

susceptible to self-dealing.

> To state a claim under this statute, a plaintiff must allege that (1)
> the defendant is a fiduciary, (2) the defendant caused the plan to
> engage in one of the prohibited transactions, (3) the transaction
> was between the plan and a party-in-interest or involved plan
> assets, and (4) the defendant knew or should have known that the
> transaction was prohibited.

Cassell v. Vanderbilt Univ., 285 F. Supp. 3d 1056, 1062 (M.D. Tenn. 2018)(citing Sacerdote v.

New York Univ., No. 16-CV-6284 (KBF), 2017 WL 3701482, at *4 (S.D.N.Y. Aug. 25, 2017)).

Plaintiffs allege that the Trustees and T. Rowe Price Investment Affiliates were

fiduciaries as well as parties-in-interest, and they engaged in self-dealing by acting together to

cause the Plan to be invested in T. Rowe Price funds, knowing that this would result in the Plan

paying investment management and other fees to T. Rowe Price Investment Affiliates on a

monthly basis for more than reasonable compensation. FAC ¶¶ 149-51. Plaintiffs further allege

that as a result of the prohibited transactions, the Plan paid millions of dollars in prohibited fees

and suffered losses. FAC ¶¶ 152-53.

Defendants argue that there are statutory exemptions that allow such transactions. A

defendant bears the burden of showing that an exemption to § 1106 applies because the

---

[12]     The term "party in interest" is defined in 29 U.S.C. § 1002(14). ERISA also prohibits
self-dealing in the form of acting on behalf of or representing a party whose interests are adverse
to that of the trust, its participants, or beneficiaries. The term "adverse party" is defined broadly
in cases such as Sandoval v. Simmons, which held that the term does not require that the
interests be antithetical, but only that they be different. 622 F. Supp. 1174 (C.D. Ill. 1985).

exemptions are treated as an affirmative defense.  See Braden, 588 F.3d at 601.[13]  The merits of

an affirmative defense are not considered on a motion to dismiss unless all the facts necessary to

establish the defense "clearly appear[] on the face of the complaint."  Goodman v. Praxair, Inc.,

494 F.3d 458, 464 (4th Cir. 2007)(citations omitted).  See also Elmore, 23 F.3d at 864  ("[I]n

order to avoid liability for a prohibited transaction under § 406, [Defendant] bears the burden of

proving the transaction was for adequate consideration in compliance with § 408(e).").

Defendants contend that Plaintiffs must plead facts showing that the transactions fell

outside ERISA's exemptions because the T. Rowe Price investment products were compelled by

the Plan document.  Mot. Mem. 31-33, ECF No. 35-1.  Defendants specifically point to 29

U.S.C. § 1108(b)(8), which includes a statutory exemption allowing financial services companies

to offer affiliated collective trust investments to their in-house plans, provided that the plan

document allows for such investments and the compensation paid to the trust company is "not

more than reasonable."  Plaintiffs' allegations, however, are challenging the payment of

unreasonable fees. FAC ¶¶ 50, 151-52.  Further, Plaintiffs include allegations under § 1106(b)

regarding transactions between the Plan and the fiduciary, which are not exempted under § 1108.

FAC ¶ 151.

2. Limitations

Defendants assert that Plaintiffs' Count VI claim for violation of 29 U.S.C. § 1106,

related to the Trustees and T. Rowe Price Investment Affiliates committing prohibited

---

[13]   Defendants note that there is a split of authority on this point.  Mot. Mem. 32-33, ECF
No. 35-1; Reply 17, ECF No. 42.    However, their point appears to be that all of the cases
holding that exemptions are affirmative defenses differ from this case because in this case, the
Plan document requires Trustees to select in-house funds exclusively, thus Plaintiffs have not
adequately pleaded a prohibited transaction.  Defendants also argue that the use of affiliated
investment products is a "normal business practice" that is acceptable.

transactions, is substantially barred by the statute of repose. ERISA's limitations statute requires suit to be filed within six years of the date of the prohibited transaction violation. 29 U.S.C. § 1113(1). Defendants argue that the only transaction attributable to the Trustees is the initial inclusion of a fund in the Plan. Therefore, any funds initially offered to Plan participants more than six years before the initial Complaint was filed (Feb. 14, 2017) are time-barred.

In response, Plaintiffs argue that the Supreme Court held that a plan fiduciary "has a continuing duty to monitor trust investments and remove imprudent ones. This continuing duty exists separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." Tibble v. Edison Int'l, 135 S. Ct. 1823, 1828 (2015). However, Tibble relates to § 1104's duty of prudence, not § 1106's prohibited transactions. And "[c]ourts have held that a decision to continue certain investments, or a defendant's failure to act, cannot constitute a "transaction" for purposes of section [1106]." David v. Alphin, 704 F.3d 327, 340 (4th Cir. 2013).

Plaintiffs note, however, that the prohibited transactions at issue are the monthly fees being paid to T. Rowe Price Investment Affiliates by the Trustees—not the initial selection of the investment for the Plan—and therefore, there are occurrences of the prohibited transactions within the past six years.

Defendants contend that the Trustees are not causing the monthly fee transactions to be paid from the Plan, but rather, the T. Rowe Price Investment Affiliates are charging the monthly fees to the assets of the mutual fund, so there is no direct transaction between the Plan or Trustees and the T. Rowe Price Investment Affiliates. However, Plaintiffs have alleged that the "Plan, directly or indirectly, paid millions of dollars in investment management and other fees . . . ." FAC ¶ 152 (emphasis added). Section 1106 covers transactions that constitute an "indirect .

. . furnishing of . . . services" or "indirect . . . transfer[s] to . . . a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(C),(D).

Accordingly, while Defendants may have viable defenses, they do not warrant dismissal at this time. The Court can infer a plausible claim of prohibited transactions that are not barred by limitations.

> H.      Count VII – Other Equitable Relief

Plaintiffs seek other equitable relief based on ill-gotten proceeds by T. Rowe Price and T. Rowe Price Investment Affiliates (T. Rowe Price Associates and T. Rowe Price Trust). This cause of action is based on a violation of 29 U.S.C. § 1132(a)(3), which states that a civil action may be brought

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Plaintiffs seek disgorgement from Defendants of monies received from the Plan's investments during the relevant period. Defendants make no arguments related to Count VII. If Plaintiffs are successful with this action, equitable relief is an available remedy, and this claim shall not be dismissed.

DATED this 20th day of August, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge