# McTigue Law LLP

4530 Wisconsin Avenue, NW
Suite 300
Washington, D.C. 20016
(202) 364-6900
Fax: (202) 364-9900

May 23, 2019

<u>**Via ECF**</u>
Hon. J. Mark Coulson
Magistrate Judge
U.S. District Court, District of Maryland
101 West Lombard Street
Chambers 8D
Baltimore, MD 21201

      **Re:** *Feinberg v. T. Rowe Price Group, Inc.* **(1:17-cv-427)**

Dear Judge Coulson,

      I am one of the counsel representing Plaintiffs and the class in this action.  Pursuant to the Local Rules, Appx. A, Guideline 1, §§f-g, I bring to the Court's attention a discovery dispute concerning which the parties are at an impasse — despite Plaintiffs' repeated attempts to engage Defendants in negotiations.  I am addressing this letter to you because Judge Bredar has referred to you disputes regarding "all discovery and related scheduling matters."  (Dkt. No. 75).

      The dispute concerns disagreement on terms for ESI searches.  The principal difficulty is that Defendants (i) have not complied with Principle 1.02 of this Court's "Principles for the Discovery of Electronically Stored Information in Civil Cases," requiring cooperation and exchange of information; and (ii) at the same time, have attempted to unilaterally impose their hand-picked search parameters for documents responsive to Plaintiffs' RFPs.  Defendants' strategy to achieve the latter goal has been to proceed with their document search while ignoring Plaintiffs' request for information and the Parties' disagreements, and then contend that, now that their search is done, it is impractical to redo it, so there is nothing to negotiate about.  They thus are attempting to sandbag Plaintiffs and refusing to negotiate in good faith.  Plaintiffs seek a court conference to assist in resolving the dispute.

      Plaintiffs also note that there are related disputes between the parties that are not yet resolved, though the parties have not yet reached an impasse.  These include whether there is a need for an extension of the discovery deadline given that the parties have not yet reached agreement on search terms, and that Defendants have only recently begun their production of ESI, (with modest productions on April 12 and May 20), and Plaintiffs have yet to receive many non-ESI documents that they have requested.

<u>Case Background</u>

      This lawsuit is an ERISA civil enforcement action brought pursuant to 29 U.S.C. §1132(a)(2)-(3) to remedy Defendants' self-dealing and fiduciary breaches.  Plaintiffs are participants in the T. Rowe Price U.S. Retirement Program ("Plan"), a 401(k) plan.  The

individual Defendants are high-level executives at T. Rowe Price Group, Inc. ("TRP"), and all Defendants are alleged to be Plan fiduciaries.  Pursuant to ERISA, Plaintiffs bring this action on behalf of the Plan, to recover losses to the Plan, and for other equitable relief; it is also brought as a class action.

Plaintiffs allege that TRP and its affiliates, acting through its officers and employees, engaged in illicit self-dealing by loading the Plan with 100% in-house funds despite being aware of many lower cost and better performing alternatives.  By doing so, TRP reaped millions of dollars in windfall profits, but cost its employees millions of dollars in high fees, and deprived them of millions more in retirement savings that they would have earned if the Plan offered better performing funds.  Plaintiffs also allege that Defendants failed to use the lowest cost versions of their own funds in the Plan, which further enriched TRP and depleted participants' retirement savings.  Defendants' conduct breached the strict fiduciary duties imposed on them by ERISA, which are "the highest known to the law."  Tatum v. RJR Pension Inv. Comm., 761 F.3d 346, 356 (4th Cir. 2014).

Plaintiffs are eleven Plan participants.  (Second Am. Compl., Dkt. No. 84, ("SAC") ¶¶19-29, 39).  Plaintiffs' claims include breach of fiduciary duties by the Plan Trustees, breach of fiduciary duties by those who were responsible for appointing and monitoring the performance of the Trustees, and breach of fiduciary duties by the investment managers of the TRP funds for providing disloyal and imprudent investment advice to the Trustees.  Plaintiffs seek disgorgement of over $50 million in fees and profits Defendants have reaped as the result of their self-dealing, (SAC ¶74), as well as over $120 million in losses incurred by participants from underperforming T. Rowe Price funds, (SAC ¶90).

The Plan has over 8,200 participants and nearly $2 billion in assets.  (SAC ¶40).  During the Class Period (February 14, 2011 through the present), the Plan offered between 80 and 95 investment options per year (a total of 146 funds have been offered during some point in the Class Period), all of which were TRP-managed in-house funds.  (SAC ¶¶45-46).  The Class is defined as "All participants and beneficiaries in the T. Rowe Price U.S. Retirement Program from February 14, 2011 through the date of judgment…."  (SAC ¶111).

Judge Bredar certified this action as a class action May 17, 2019.  (Dkt. No. 83).

Dispute Background

Since the denial of Defendants' motion to dismiss, (Dkt. No. 58), the parties have made considerable progress in amicably resolving numerous disputes.  As your Honor is likely aware, the parties recently stipulated to class certification, to dismissing without prejudice certain named defendants, to filing a second amended complaint, (Dkt. No. 77); and they were also able to resolve their disagreements regarding all but two of Plaintiffs' 40 document requests, (Dkt. No. 74-12 at 1).  The parties have also engaged in negotiations regarding three aspects of ESI: an ESI protocol, ESI custodians, and ESI search terms.  The latter negotiations involve different defense counsel, and it has been difficult to make progress due to their limited flexibility and shifting promises and positions.  The parties still have not agreed on ESI protocol., They have

agreed on document custodians but only after that issue was bundled with non-ESI issues in the case.  And the parties have of course not agreed on the subject of this letter, ESI search terms.

A simplified chronology of key events that are background for this dispute is as follows:

12/18/18:       The discovery period in this case commences when the Court issues its scheduling order, (Dkt. No. 65).

12/19/18:       Plaintiffs serve their first request for production of documents to all Defendants, requesting production within 30 days of service.  (Dkt. No. 74-5).

1/4/19:         **Plaintiffs send Defendants a letter with a proposed ESI protocol, proposed ESI search terms, and a list and description of proposed ESI custodians.**  (Ex. 1).

1/10/19:        The parties hold an ESI conference by telephone.  **During the conference, Defendants refused to discuss, despite Plaintiffs' protests, Plaintiffs' proposed custodians or search terms, contending that such discussion would only be productive after the parties had resolved differences regarding Plaintiffs' document requests.**  (Exs. 2 (1/10/19 3:37 PM JAM email to defense counsel) -3 (1/10/19 7:11 PM Kopczynski email to plaintiffs counsel with Ex. 2 as part of chain).  The parties did discuss Plaintiffs' proposed ESI protocol at length.  Among the subjects of disagreement are a requirement that Defendants provide plaintiffs with information regarding their search syntax; Defendants refuse to agree to provide this information.

2/25/19:        Defendants' send to Plaintiffs a letter that is their first proposal regarding ESI custodians.  (Ex. 4).  The letter ignores Plaintiffs' January 4 proposal to have approximately 21 custodians, and simply proposes 6 custodians without commenting on the others Plaintiffs have proposed.

3/11/19:        Defendants' send to Plaintiffs a letter that is their first substantive communication regarding search terms.  (Ex. 5).  It indicates Defendants have been conducting preliminary testing and **once "we've completed our testing we'll make a complete counterproposal to you for use of these terms."**  (Ex. 5 at 1 (emphasis added)).

4/8/19:         Defendants' letter following up on their 3/11/19 letter.  (Ex. 6).  However, **contrary to the promise of that letter, it makes no "complete counterproposal" on ESI search terms that is offered for Plaintiffs' acceptance or rejection.**  It simply recites numerous changes Defendants have unilaterally made to Plaintiffs' proposed search and states "we will proactively notify you if further substantive modifications are necessary."  *Id.* at 3.

4/9/19:         Plaintiffs' letter response to Defendants' 4/8/19 letter.  (Ex. 7).  **Plaintiffs unequivocally reject Defendants' unilateral modifications** to their search

3

proposal because Defendants (i) have still not provided any information regarding their vendor's search syntax, (ii) provide no specific data regarding hit counts that resulted from Plaintiffs' proposed search that would require modifications, and (iii) as a result, Plaintiffs have no verifiable basis for determining whether the search needs to be modified, and, if so, how best to modify it.  To attempt to break an apparent impasse, Plaintiffs propose that they be given the opportunity to discuss these matters with a representative of Defendants' ESI vendor.

4/12/19:        Defendants send a letter demanding an explanation as to why Plaintiffs want to speak to their ESI vendor, and misleadingly state that "we are unaware of a single question you have asked that we have not responded to with respect to the searching process." (Ex. 8 at 2).  Defendants simply ignore the fact that they have never provided the search syntax information Plaintiffs have repeatedly requested, nor the hit count data.  Moreover, Defendants also ignore the fact that the parties have an obligation to *negotiate* the search terms — there is no burden on Plaintiffs to "ask questions" regarding what Defendants are doing without Plaintiffs' agreement.

4/15/19:        In response to Defendants 4/12/19 letter, Plaintiffs explain by email that they would like to speak to Defendants' ESI vendor because they can give no weight to conclusory representations by defense attorneys in the case regarding what is reasonable, and believe the "quickest way to make progress would be to give us access to your vendor representative, as well as specific hit count data once we agree to custodians." (Ex. 9).

5/1/19:         Plaintiffs send a confirmatory email to defense counsel indicating that, in conjunction with the parties' agreements to dismiss certain defendants without prejudice and to stipulate to class certification, they have also agreed to 12 specific document custodians for purposes of ESI searches.  (Ex. 10).  The latter agreement is the conclusion of months of negotiation, most of the details of which are omitted above for simplicity.

5/10/19:        Plaintiffs, having finally agreed to document custodians with different defense counsel, and having had no response to their April 15 explanatory email on their need for more information on ESI, send yet another letter attempting to engage the defense counsel in charge of ESI in negotiations.  (Ex. 11).  Plaintiffs drop their request to speak to an ESI representative and that Defendants provide search syntax information, and instead ask defense counsel to simply confirm that they are employing the search syntax described in PDF documents they attach.  Plaintiffs obtained these PDFs, which describe the search syntax for a version of the Relativity document management database, independently.  (Plaintiffs used Relativity because Defendants had previously made vague oral representations that they were using Relativity, though they ignored Plaintiffs' repeated requests to provide specific information in writing).  Plaintiffs also propose a search revised to comport with this syntax.

5/17/19:        Defendants respond to Plaintiffs' 5/10/19 letter.  (Ex. 12).  Defendants' response
                flatly rejects, yet again, Plaintiffs' attempt to engage them in negotiations,
                contending that Plaintiffs "attempt to reboot the negotiation at this late stage is
                unworkable."  *Id.* at 1.  Defendants' letter also contains numerous
                mischaracterizations and misleading statements regarding what Plaintiffs have
                represented and the parties' past communications.  Defendants also ignore the fact
                that there is nothing "late" about this stage of ESI production, as the parties only
                agreed on document custodians on May 1.  Defendants also finally provide hit
                count data — but it is only for *their* unilaterally modified searches, not the
                searches that Plaintiffs have proposed.  So it provides no basis for negotiation as
                to how to, or whether to, modify Plaintiffs' proposal.

        Plaintiffs' Position

        Plaintiffs' experience in past cases is that negotiation regarding search terms for
production of Defendants' documents can and should be a simple and straightforward process
involving the following steps:

        (i) Defendants provide information regarding their search syntax;

        (ii) Plaintiffs propose search terms in accordance with that syntax;

        (iii) Once the parties have agreed on document custodians, Defendants run the proposed
        search and provide Plaintiffs with hit count data for specific terms;

        (iv) If either party is dissatisfied with the number of documents produced, they may
        exchange proposals regarding search modifications, and provide hit count data to
        demonstrate the results of the modifications; and

        (v) If either party remains dissatisfied, they ask the court to resolve the dispute.

In this case, this process could never get off the ground because Defendants have played "hide
the ball":  refusing to even disclose their search syntax, and then refusing to disclose specific hit
count data for Plaintiffs' proposed search.  Instead, Defendants have sought to unilaterally
control every stage of the process.  They begin the process with the tremendous advantage over
Plaintiffs of knowing what documents exist, but they also want to unilaterally determine what
searches will be run, which enables them to construct searches that will avoid locating damaging
documents.  The only guard against a blatantly one-sided process is to require genuine
negotiations and Plaintiffs' consent (or a court order) to the search terms that are run.  Here, as
noted above, Defendants have simply ignored Plaintiffs' repeated requests for additional
information and rejection of their unilateral modifications.

        Accordingly, Plaintiffs seek a Court conference, the goal of which, from their
perspective, would be to persuade Defendants to comply with the process Plaintiffs outline
above.  As Plaintiffs believe they have already presented the proposed search complying with
Defendants' search syntax in Exhibit 11, the process should proceed expeditiously if Defendants
can be persuaded to comply with it.

Sincerely,

/s/James A. Moore

Counsel for Plaintiffs
McTigue Law LLP

/

cc:     Counsel of record (via ECF)