UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
J. MARK COULSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
Phone: (410) 962-4953
Fax: (410) 962-4953

June 17, 2019

LETTER TO ALL COUNSEL OF RECORD

Re:   *Feinberg v. T. Rowe Price Group, Inc. et al*.
      Civil No. 1:17-cv-00427-JKB

Dear Counsel:

This matter has been referred to me for discovery and all related scheduling. Presently before the Court is ECF No. 85, Plaintiffs' request for conference regarding certain electronic discovery ("ESI") issues. The Court has also reviewed Defendants' response (ECF No. 93), held a telephone conference on June 14, 2016, and memorializes its direction to the parties below.

The parties disagree regarding the methodology undertaken by Defendants in searching for responsive ESI. Plaintiffs contend that Defendants refused to negotiate search terms, unilaterally selected their own search terms, and then failed to provide adequate transparency about what they had done. Defendants counter that their starting point was, in fact, the list of terms proposed by Plaintiffs. As to that list, Defendants assert that they performed modest modifications so as to minimize unresponsive information, and that they provided the revised search criteria to Plaintiffs, along with an explanation for what modifications were made and why. Additionally, Defendants state that they provided information about the "rejected" documents by statistically sampling them so verify that no meaningful number of responsive documents had been left behind.

The correspondence attached to Plaintiffs' filing, and the narratives provided by both sides demonstrate that the parties were actively negotiating the scope of electronic discovery for several months, including overall scope parameters, the number of potential ESI custodians, and search terms beginning in January of 2019. They had at least two meet and confer conferences in January and February. (ECF No. 85-2 at 2; ECF No 85-3 at 2; ECF No. 93 at 2). March 11, 2019, Defendants alerted Plaintiffs of potential issues with the proposed search terms resulting in over-inclusiveness. (ECF No. 85-5). On April 8, 2019, Defendants alerted Plaintiffs to some modifications to the search terms in light of their potential for over-inclusiveness, providing a full list of the revisions and the reasoning behind them. (ECF No. 85-6). Plaintiffs raised some objections to the search modification by letter the next day. (ECF No. 85-7). On April 12, Defendants again responded, reiterated their reasoning, and verified that based on statistical sampling, those documents not produced had only a .02% to 5% chance of being otherwise responsive. Defendants also stated:

> As has been our approach at every stage of this process, we are more than willing to discuss any specific concerns you have regarding the revised search terms we are using. Indeed, we are unaware of a single question you have that we have not responded to with respect to the searching process. But we are unable to formulate a tailored counter-proposal without further explanation from you as to your position.

(ECF No. 85-8 at 3).

Plaintiffs remain unsatisfied with Defendants efforts and are mistrustful of their production. They question whether their original list of search terms was run according to the correct search syntax and want it re-run with a syntax of their own drafting. They seek a "hit report" (i.e., a report of how many times a particular search term is found within a given universe of documents) to make their own judgment about whether the terms they proposed were over-inclusive (or perhaps even under-inclusive). If necessary, they seek an order from the Court whereby Defendants would essentially re-do their production to Plaintiffs' liking.

Both sides have been spirited in their advocacy surrounding the scope and parameters of discovery in the case. Additionally, as with most things, each side has a preferred methodology for the mechanics of how the e-discovery should be conducted and verified as compliant with obligations under the Federal Rules of Civil Procedure. Ideally, the parties would have agreement on a methodology. But the absence of such an agreement does not, without more, indicate that Defendants' efforts are deficient. The Court disagrees with Plaintiffs' characterization of Defendants' efforts here as completely unilateral and, as the above correspondence demonstrates, Defendants have been clear about how they went about fulfilling their discovery obligations and why. Importantly to the Court, Defendants starting point was the terms first proposed by Plaintiffs. While it is true that those terms then had to be put into the proper search syntax for Defendants' search platform (Relativity™), given the straightforward nature of the terms, the Court has not been convinced by Plaintiffs' arguments that there is a meaningful difference between the syntax chosen and that now proposed by Plaintiffs. Moreover, Defendants' explanation of how this original search was modified to account for over-inclusiveness demonstrate that the modifications had legitimacy. Since providing that modification in April, Defendants have been willing to revisit it with Plaintiffs should Plaintiffs make the case that it was somehow deficient.

The Defendants have also provided statistical evidence showing that their modified search criteria, while no doubt reducing the number of documents to be reviewed, was not leaving behind any meaningful number of otherwise responsive documents. While a "hit report" might be some indirect evidence of the same thing, the statistical evidence provided by Defendants is a more precise measure and the Court will not order a "hit" report. A similar issue arose in *Freedman v. Weatherford Intern.*, 2014 WL 3767034 (S.D.N.Y. July 25, 2014). There, Judge Francis ruled that, absent circumstances indicating a failure of a respondent to fulfill its e-discovery obligations, such a request was beyond Rule 26, stating:

> Here, in essence, the plaintiffs seek discovery on discovery, on the asserted basis that they are "entitled to test the reasonableness and adequacy of [the][d]efendants' production." [internal citations omitted.] There are circumstances where such collateral discovery is warranted. Here, however, the plaintiffs have not proffered an adequate factual basis for their belief that the current production is deficient.

Similarly, Plaintiffs here are suspicious of the production because in other litigation against other defendants under an apparently similar theory, more documents were produced. The Court does not find that to be sufficient reason, especially in light of the statistical verification provided by Defendants.

That said, the Court is willing to provide some additional verification to Plaintiffs. To that end, Defendants will provide a sample of the "delta" document set (i.e., the difference between the original

search results and the results from the modified search which the court understands to be approximately 64,000 documents). Defendants have suggested that a statistically meaningful sample would be approximately 300 documents. The Court will order Defendants to produce twice that number for Plaintiffs' review. Defendants should advise both Plaintiffs and the Court as to a reasonable timeframe for doing so.

Further, the parties are ordered to confer within the next ten days regarding their disagreement regarding the syntax of the search to see if there is a mutually-agreeable way to satisfy Plaintiffs' remaining concerns without creating undue expense for Defendants. Despite the informal nature of this letter, it is an Order of the Court and will be docketed as such.

                                              Sincerely yours,

                                              /s/
                                            J. Mark Coulson
                                            United States Magistrate Judge

cc: Chief Judge James K. Bredar