IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DAVID G. FEINBERG, et al., and all others similarly situated, | Civil Action File No.: 1:17-cv-427-JKB |
| Plaintiffs, | |
| v. | **PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S SEPTEMBER 9, 2019 ORDER REGARDING DEFENDANTS' REFUSAL TO PRODUCE CERTAIN ELECTRONICALLY STORED DOCUMENTS** |
| T. ROWE PRICE GROUP, INC., et al., | |
| Defendants. | |

TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND ............................................................................................. 2

        A.   Case Background ................................................................................... 2

        B.   Discovery to Date and What it has Revealed ........................................ 3

        C.   Relevant Procedural History of the Instant Discovery Dispute ................. 4

III.    LEGAL STANDARDS .................................................................................. 8

        Standard for Review of Objections to a Magistrate's Order .......................... 8

        Standard for Compelling Production of Documents ......................................... 9

IV.     ARGUMENT ................................................................................................ 10

        A.   Specific Objections to the Magistrate's Order .................................... 10

             1.    The Magistrate's Order Contains No Relevant Reasoning to Support its
                   Denial of the Relief Requested in Plaintiffs' Letter Motion ..................... 10

             2.    The Magistrate Ruled Peremptorily Before Plaintiffs had an Opportunity
                   to File the Reply Brief Permitted under Local Rules ................................ 12

             3.    The Magistrate's Order Contains Erroneous Statements of Fact
                   regarding the Procedural History and Plaintiffs' Claims ........................... 13

        B.   The Court Should Order that Defendants Search for and Produce Documents
             Pursuant to Plaintiffs' Reasonable and Carefully Crafted Compromise Proposal .... 15

             1.    The Number of Responsive Documents at Issue is Substantial ................ 15

             2.    Plaintiffs' Compromise Proposal Eliminates the Purported Undue
                   Burden on Defendants ............................................................................ 15

V.      CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

Digital Ally, Inc. v. TASER Int'l, Inc., 2018 WL 4334297 (D. Kan. 2018) ............................... 17

Federal Deposit Ins. Corp. v. Giannoulias, 2013 WL 5762397 (N.D.Ill., 2013)......................... 18

Fenerjian v. Nong Shim Co., Ltd, 2016 WL 1019669 (N.D. Cal. 2016)..................................... 17

Flynn v. FCA US LLC, 2019 WL 1746266 (S.D. Ill. 2019) ..................................................... 17

Hickman v. Taylor, 329 U.S. 495 (1947) ................................................................................. 9

Huggins v. Prince George's Cnty., 750 F. Supp. 2d 549 (D. Md. 2010)...................................... 9

In re Arby's Restaurant Group Inc. Litig., 2018 WL 8666473 (N.D. Ga., 2018) ....................... 17

Leigh v. Engle, 727 F.2d 113 (7th Cir.1984) .............................................................................. 4

Meyer v. Berkshire Life Ins. Co., 250 F. Supp. 2d 544, 567 (D. Md. 2003), aff'd, 372 F.3d 261
    (4th Cir. 2004) ....................................................................................................................... 3

MMI Prods. v. Long, 231 F.R.D. 215 (D. Md. 2005), aff'd, 885 F.3d 271 (4th Cir. 2018) .......... 9

Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., 967 F.2d 980
    (4th Cir. 1992) ....................................................................................................................... 9

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978) ......................................................... 9

Sky Angel U.S., LLC v. Discovery Commc'ns, LLC, 28 F. Supp. 3d 465
    (D. Md. 2014)............................................................................................................ 9, 11, 15

Tatum v. RJR Pension Inv. Comm., 761 F.3d 346 (4th Cir. 2014) .............................................. 2

Thomas v. Comm'r, Soc. Sec., No. CIV. WDQ-10-3070, 2012 WL 670522 (D. Md. Feb. 27,
    2012)...................................................................................................................................... 9

United States v. Performance Food Grp., No. CV MJG-13-1712, 2016 WL 1028019 (D. Md.
    Mar. 15, 2016) ....................................................................................................................... 8

Washington-St. Tammany Elec. Cooperative, Inc. v. La. Generating, L.L.C., 2019 WL
    1804849 (M.D. La. 2019)..................................................................................................... 17

Westdale Recap Properties, Ltd. v. NP/I & G Wakefield Commons, L.L.C., 2013 WL
    5424844 (E.D.N.C. 2013)..................................................................................................... 17

**Statutes**

28 U.S.C. § 636(b)(1)(A)........................................................................................................... 8

28 U.S.C. § 636(b)(1) ................................................................................................................. 9

29 U.S.C. §1132(a) (2)-(3).......................................................................................................... 2

**Rules**

Fed. R. Civ. P. 34 ................................................................................................................. 9

Fed. R. Civ. P. 37(a)(3)(B)(iv) ............................................................................................. 9

Fed. R. Civ. P. 72(a) ........................................................................................................ 1, 8

Local Rules (D. Md. 2016) ............................................................................................ 5, 8, 12

## I.   <u>INTRODUCTION</u>

On August 17, Plaintiffs filed, pursuant to prior conferences with Magistrate Judge Coulson, a letter motion asking the Court to order Defendants to produce documents in the form of Electronically Stored Information (ESI) that would be retrieved via a compromise proposal on search terms that Plaintiffs specified in their motion. (Dkt. No. 107). On September 9, the Magistrate denied Plaintiffs' motion. (Dkt. No. 111). Plaintiffs object, pursuant to Fed. R. Civ. P. 72(a), to the Magistrate's order as being clearly erroneous and contrary to law on the following grounds: (i) the order provides no reasoning to support denial of Plaintiffs' compromise proposal, nor does it even discuss the substance of the proposal, but only general features of the parties' dispute and prior proceedings that are not relevant to the relief Plaintiffs requested; (ii) the Magistrate ruled peremptorily before Plaintiffs had an opportunity to file the reply brief permitted under local rules that would have corrected material erroneous and misleading statements in Defendants' response that the Magistrate assumed were correct; and (iii) the Magistrate's order contains erroneous statements of fact regarding the procedural history and Plaintiffs' claims.

As is further discussed below, the compromise proposal set forth in Plaintiffs' letter motion should be granted. Defendants have thus far produced only 17,385 documents, roughly half the number typically produced in cases such as this. Based upon Plaintiffs' investigation to date, there are approximately 3000 additional responsive documents that were retrieved by Plaintiffs' ESI search terms that Defendants have refused to produce. Defendants sole basis for refusing to produce these additional documents has been an assertion of burden — that they would have to review approximately 60,000 documents to locate them. But Plaintiffs' compromise proposal should slash by well over 65% the number of documents Defendants

would need to review to locate the 3000, which eliminates the basis for Defendants' refusal to produce.  Under the circumstances, Defendants have clearly not met their burden of establishing that they would suffer an undue burden to produce these documents, and that is the only basis Defendants have asserted to resist the production.

## II.  BACKGROUND

### A.  Case Background

This class action lawsuit is an ERISA civil enforcement action brought pursuant to 29 U.S.C. §1132(a) (2)-(3) to remedy Defendants' self-dealing and fiduciary breaches.  Plaintiffs are participants in the T. Rowe Price U.S. Retirement Program ("Plan"), a 401(k) plan.  The individual Defendants are high-level executives at T. Rowe Price Group, Inc. ("TRP"), and all Defendants are alleged to be Plan fiduciaries.  Pursuant to ERISA, Plaintiffs bring this action on behalf of the Plan, to recover losses to the Plan.

Plaintiffs allege that TRP and its affiliates, acting through its officers and employees, engaged in illicit self-dealing by loading the Plan with its own in-house funds despite being aware of many lower cost and better performing alternatives.  By doing so, TRP reaped millions of dollars in windfall profits, but cost its employees millions of dollars in excess fees, and deprived them of millions more in retirement savings that they would have earned if the Plan offered better performing funds.  Plaintiffs also allege that Defendants failed to use the lowest cost versions of their own funds in the Plan, which further enriched TRP and depleted participants' retirement savings.  Defendants' conduct breached the strict fiduciary duties imposed on them by ERISA, which are "the highest known to the law."  Tatum v. RJR Pension Inv. Comm., 761 F.3d 346, 356 (4th Cir. 2014).

2

**B.**     **Discovery to Date and What it has Revealed**

To date, Defendants have produced 17,385 documents.[1]  This is half as many as were

produced to Plaintiffs' counsel in a similar recent ERISA case involving a similarly large,

sophisticated financial institution.  However, through this limited production, and Defendants'

interrogatory responses, Plaintiffs have established key facts to support their case.  These include

the fact that three members of the Plan Trustee committee, which had responsibility for making

Plan investment decisions, including the chair, were portfolio managers of some of the same

investment funds offered in the Plan to participants.  They thus labored under a direct conflict of

interest, making decisions regarding whether *their own funds* would be offered to participants as

investments.  Furthermore, contrary to ERISA fiduciary duties, Defendants made no effort to

mitigate this conflict of interest.[2]  For example, unlike virtually every other large 401(k) plan of

which Plaintiffs' counsel are aware, the Plan Trustees did not obtain any outside or independent

advice regarding Plan investments.  Failing to take appropriate steps to mitigate a clear conflict

of interest is a breach of fiduciary duties.  Meyer v. Berkshire Life Ins. Co., 250 F. Supp. 2d 544,

567 (D. Md. 2003), aff'd, 372 F.3d 261 (4th Cir. 2004) ("When fiduciaries have dual loyalties,

they are obliged at a minimum to engage in an intensive and scrupulous independent

---

[1] Defendants inaccurately claim in their opposition to Plaintiffs' letter motion that they "have produced over 41,000 documents to Plaintiffs."  (Dkt. No. 110 at 3).  But they explain in a footnote that this figure is pure fiction:  the "41,000 figure represents the non-de-duplicated, non-threaded number of documents *underlying* Defendants' production."  *Id.* n. 3 (emphasis added). In other words, 41,000 documents have *not* been produced to Plaintiffs — Defendants' figure simply represents, according to them, an intermediate total in their production process that resulted in the production of the 17,385 documents that Plaintiffs have actually received from Defendants.

[2] As this brief is in the nature of an appeal brief, Plaintiffs are not supplying in this filing support for the claims in this paragraph since that was not submitted to the Magistrate.  However, they would be happy to do so upon Court direction.

investigation of their options to insure that they act in the best interests of the plan beneficiaries"
(internal quotation marks omitted)); <u>Leigh v. Engle</u>, 727 F.2d 113, 126–6 (7th Cir.1984) (same).
Plaintiffs are seeking additional documents to further develop the evidence in support of these
facts.

C.      <u>**Relevant Procedural History of the Instant Discovery Dispute**</u>

        Plaintiffs have not previously asked the Court (including the Magistrate) for the relief
described in their Letter Motion, nor, in fact, to require Defendants to produce responsive
documents retrieved by *any* ESI search.

        However, Plaintiffs had previously asked the Magistrate to require Defendants to provide
more information regarding Defendants' ESI and ESI searches.  This request was prompted by
Defendants' refusal to provide written information regarding their search syntax (information
they have still not provided) and what is referred to as hit count data regarding Plaintiffs'
proposed ESI search terms.  Plaintiffs wanted this data before agreeing to Defendants' proposed
modifications of Plaintiffs' ESI search proposal; Plaintiffs had not (and as of the date of this
filing have not) agreed to Defendants' proposed changes.

        Plaintiffs made the request for additional information on May 23, 2019 via a letter
addressed to Magistrate Coulson "seek[ing] a court conference to assist in resolving" a discovery
dispute with Defendants regarding ESI.  (Dkt. No. 85 at 1).  This letter was expressly filed
pursuant to the Discovery Guidelines in this Court's Local Rules, which provide that:

>         ….  Counsel may bring [an] unresolved [discovery] dispute to the Court's
> attention by filing a letter, in lieu of a written motion, that briefly describes the
> dispute, unless otherwise directed by the Court.
>
>                 g.  Upon being notified by the parties of the unresolved discovery dispute,
> the Court will promptly schedule a conference call with counsel, or initiate other
> expedited procedures, to consider and resolve the discovery dispute.  If the Court

4

determines that the issue is too complicated to resolve informally, it may set an
expedited briefing schedule to ensure that the dispute can be resolved promptly.

Local Rules, Appx. A, Guideline 1, §§f-g.

The Magistrate granted Plaintiffs' request for conference, and on June 14 presided over a conference call with counsel for all parties. On June 17, the Magistrate issued an order denying Plaintiffs' request for the information they sought. (Dkt. No. 94). However, the Order indicated that Defendants would provide Plaintiffs with additional information of another sort. Defendants had run a modified version of an ESI search that Plaintiffs had proposed, but had contended that it had retrieved too many documents. To remedy this alleged difficulty, Defendants had unilaterally applied crude limiting expressions to all of Plaintiffs' search terms, e.g. requiring that certain unrelated words occur within 25 words of each other, to reduce the number of documents retrieved by the search. Defense counsel asserted that these changes eliminated approximately 60,000 documents, and that based upon their sampling methods, few of these documents were responsive. The Magistrate's order referred to these documents as the " **'delta' document set**," (henceforth "delta set" or "delta document set") presumably based upon the convention of using the greek letter delta as shorthand for "change in amount." The order required that Defendants produce to Plaintiffs a sample of this set, of at least 600 documents, so that Plaintiffs could make their own determinations regarding the responsiveness rate. The order also provided:

> Further, the parties are ordered to confer within the next 10 days regarding their
> disagreement regarding the syntax of the search to see if there is a mutually-
> agreeable way to satisfy Plaintiffs' remaining concerns without creating undue
> expense for Defendants.

(Dkt. No. 94 at 3).

The Magistrate's order also contained various *dicta*, consisting of what amounted to findings of fact regarding the negotiations between the parties.  Plaintiffs strongly disagree with many of these findings, which in many cases seem to accept Defendants' characterization of events at face value.[3]  For example, the Magistrate's contention that Defendants did not act unilaterally, (Dkt. No. 94 at 2), is not consistent with the facts established in the record that

>    (i) Defendants modified Plaintiffs' proposed search terms without consulting with Plaintiffs (Dkt. No. 85-6 at 2 (Defendants "have further modified [Plaintiffs'] proposed terms");
>
>    (ii) Plaintiffs rejected all those modifications because they had not been given any meaningful data upon which they could evaluate the changes and sought additional information as a basis for meaningful negotiations (Dkt. No. 85-7 at 2 ("Plaintiffs do not agree, and have not previously agreed, to any of Defendants' proposed modifications of our search term," and noting that "Defendants have previously refused our request to provide details regarding their vendor's search algorithms" and requesting to meet with a representative of Defendants' ESI vendor)); and
>
>    (iii) Defendants did not provide Plaintiffs with any of the information they requested, went ahead with the search they proposed over Plaintiffs' objections, and then claimed that negotiations had become moot because the search had already been done, (Dkt. No 85-12 at 1 (asserting that Plaintiffs' "attempt to reboot the negotiation at this late stage is unworkable….  Defendants' production of documents is nearly complete").

However, since Plaintiffs did not object to the substance of the order, i.e. that Defendants would provide to Plaintiffs a sample of the "delta set of documents" and the parties would continue conferring to attempt to reach a compromise regarding their disagreements on search syntax, Plaintiffs did not file objections to the Magistrate's June 14 order.[4]

---

[3] Plaintiffs were also surprised that the Magistrate made detailed findings of fact given that the only record before him was Plaintiffs' request for an informal conference and Defendants' response to that request.

[4] Another instance in which the Magistrate's order seems to simply accept Defendants' characterization of their own conduct is when it quotes the following passage from one of defense counsel's letters:

Pursuant to the Magistrate's order, the parties then met and conferred regarding search syntax and Defendants produced their sample set of documents to Plaintiffs.  In the course of these discussions, Plaintiffs proposed exactly the type of compromise suggested by the Magistrate's June 14 order, i.e. one that satisfied "Plaintiffs' remaining concerns without creating undue expense for Defendants."  As discussed further below, under Plaintiffs' proposal Defendants would perform Plaintiffs' proposed search on the "delta set" of documents; this search accepts many of Defendants unilaterally imposed limiting expressions and should slash the number of documents retrieved by at least 65%.[5]  Furthermore, the documents retrieved by Plaintiffs' search should have a considerably higher responsiveness rate than the delta set as a whole.  Plaintiffs also analyzed Defendants' document sample of the entire delta set.  That analysis revealed that Defendants had significantly understated the responsiveness rate of the sample, and accordingly their projection of the responsiveness rate of the delta set was similarly

---

As has been our approach at every stage of this process, we are more than willing to discuss any specific concerns you have regarding the revised search terms we are using.  Indeed, we are unaware of a single question you have that we have not responded to with respect to the searching process.  But we are unable to formulate a tailored counter-proposal without further explanation from you as to your position.

(Dkt. No. 94 at 1).  This statement is pure propaganda.  At this stage, Plaintiffs had already asked numerous questions, including repeatedly requesting information about Defendants' search process: hit count data for their searches, search syntax Defendants' employed, and requesting a meeting with a representative of their ESI vendor, so they could ask additional questions and obtain additional information.  *All these requests for information were flatly refused by Defendants*, whose clear goal at that stage was to starve Plaintiffs of meaningful information and then present them with a take it or leave it document production.  (*See* Dkt. No. 85 at 3-4).

[5] As is is explained below and in Plaintiffs' letter motion, the 65% figure is a projection based upon data Defendants ultimately provided regarding the number of document hits on their search strings.

understated.  This meant that the subset of documents to be retrieved under Plaintiffs' proposal should have an even higher responsiveness rate.

Despite the reasonableness of Plaintiffs' compromise proposal, Defendants rejected almost all of it out of hand without offering any substantive basis for doing so or any alternative proposal.  (Dkt. Nos. 110-7 & 110-6).  Plaintiffs filed their letter motion seeking approval of the compromise proposal on August 19.  (Dkt. No. 107).  (Plaintiffs filed a letter motion, rather than a formal motion, because the Magistrate had indicated during a July 1 conference call that he wanted to continue informal procedures for filings in this matter).  Defendants filed their opposition a full 14 days later on September 3, apparently following the deadline under the local rules for formal motions, and the Magistrate denied Plaintiffs' letter motion by order dated September 9.  Under local rules, Plaintiffs were permitted to file a reply brief no later than September 17.  (LR 105(2)(a)).  And, in fact, Plaintiffs had drafted and prepared a reply brief correcting numerous inaccurate and misleading statements in Defendants' opposition, which they had intended to file later on September 9.

### III.   LEGAL STANDARDS

Standard for Review of Objections to a Magistrate's Order

A district judge must consider timely objections to a magistrate judge's ruling on a nondispositive pretrial matter.  Fed. R. Civ. P. 72(a).  Discovery motions, such as the one at issue here, are "quintessential non-dispositive motions."  United States v. Performance Food Grp., No. CV MJG-13-1712, 2016 WL 1028019, at *1 (D. Md. Mar. 15, 2016). The reviewing judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); see also Local Rule 301.5(a) (D. Md. 2016); 28 U.S.C. § 636(b)(1)(A).  "The 'clearly erroneous' standard applies to factual findings, while legal conclusions will be rejected if

they are 'contrary to law'." <u>Sky Angel U.S., LLC v. Discovery Commc'ns, LLC</u>, 28 F. Supp. 3d 465, 479 (D. Md. 2014) (*quoting* <u>MMI Prods. v. Long</u>, 231 F.R.D. 215, 218 (D. Md. 2005)), *aff'd,* 885 F.3d 271 (4th Cir. 2018). Under the clearly erroneous standard, the Court is "only required to determine whether the magistrate judge's findings are reasonable and supported by the evidence." <u>Huggins v. Prince George's Cnty.</u>, 750 F. Supp. 2d 549, 559 (D. Md. 2010).

A reviewing "judge ... shall make a *de novo* determination of those portions of the [magistrate judge's] report ... to which objection is made." 28 U.S.C. § 636(b)(1); *see also* <u>Thomas v. Comm'r, Soc. Sec.</u>, No. CIV. WDQ-10-3070, 2012 WL 670522, at *4 (D. Md. Feb. 27, 2012). The judge "may accept, reject, or modify, in whole or in part, the findings or recommendations," and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

<u>Standard for Compelling Production of Documents</u>

A party that has propounded a request for production of documents under Fed. R. Civ. P. 34 may move to compel production where a party fails to produce the requested documents. Fed. R. Civ. P. 37(a)(3)(B)(iv). The discovery rules are construed liberally in favor of the party seeking discovery. <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978); see also *Nat'l* <u>Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co.</u>, 967 F.2d 980, 983 (4th Cir. 1992) ("the discovery rules are given 'a broad and liberal treatment' ") (quoting <u>Hickman v. Taylor</u>, 329 U.S. 495, 507 (1947)). "Generally, the burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules." <u>Sky Angel U.S., LLC v. Discovery Commc'ns, LLC</u>, 28 F. Supp. 3d 465, 482 (D. Md. 2014), *aff'd,* 885 F.3d 271 (4th Cir. 2018).

9

# IV.   ARGUMENT

## A.   Specific Objections to the Magistrate's Order

### 1.   The Magistrate's Order Contains No Relevant Reasoning to Support its Denial of the Relief Requested in Plaintiffs' Letter Motion

The Magistrate's September 9 order denying Plaintiffs' letter motion misses the point of that motion and misunderstands the procedural history of the dispute.

As discussed above, in Plaintiffs' request for conference, Plaintiffs had sought to have the Magistrate require Defendants to provide additional information about their ESI process.  The Magistrate's June 17 Order denied Plaintiffs' request for the specific information they sought, but also indicated that Defendants would provide Plaintiffs additional information of another kind.  Since that Order had resolved the issue regarding what additional information Defendants would provide, Plaintiffs next step was to determine what, if any, specific actions or additional production they would request from Defendants.

Plaintiffs' Letter Motion set out for the Magistrate, for the first time, the specific additional production Plaintiffs were requesting.  As discussed above and in the motion, far from asking Defendants to "redo" their process or any of their production, it simply spells out limited changes to Defendants' search terms that could be rerun on the c. 60,000 document delta document set Defendants had already identified, to produce a much smaller subset of documents — one that should be at least 65% smaller than the original delta document set.  Furthermore, for the reasons set out in the motion and further discussed below, that smaller subset would almost certainly have a significantly *higher* responsiveness rate than the much larger initial delta document set.  Defendants would then produce to Plaintiffs responsive documents within that document subset.

10

The Magistrate's order sets forth no relevant reasons to reject this proposal because all the responsiveness rate and other data it cites to *only concerns the much larger initial delta document set*, and the same is true for Defendants' opposition and other correspondence.  The Magistrate appears to have simply ignored the fact that what Plaintiffs seek to have produced is a much smaller body of documents than the initial delta set, and the fact that that smaller body of documents should have a significantly higher responsiveness rate.  Both these facts are obviously material to the issue before the Magistrate: whether Defendants had demonstrated an undue burden sufficient to justify their refusal to produce responsive documents.  *See, e.g.*, Sky Angel U.S., LLC v. Discovery Commc'ns, LLC, 28 F. Supp. 3d 465, 482 (D. Md. 2014), aff'd, 885 F.3d 271 (4th Cir. 2018), ("Generally, the burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules" (internal quotation marks and citations omitted)).

An example of the Magistrate's clear error in failing to consider what Plaintiffs had actually proposed is his unqualified statement, with no citation to the record, that "Plaintiffs proposed replacing the 'within 25 words of' limiter with 'and,' and dispensing with the limiters 'T.Rowe,' 'TRowe,' or 'TRP'."  (Dkt. No. 111 at 2).  This statement is materially inaccurate. The very heart of Plaintiffs' compromise proposal was that Plaintiffs were *not* proposing removing those limiting expressions on all the search strings.  As was carefully explained in Plaintiffs' letter motion, Plaintiffs sought to have those limiters removed *only* on a select group of search strings that (i) Defendants' own hit count data showed were retrieving relatively few documents to begin with, and (ii) contained words of uncommon occurrence that would be highly likely to occur only in responsive documents.  (Dkt. No. 107 at 4).  The data that the Magistrate then cites as "rebutting" Plaintiffs' proposal, (Dkt. No. 111 at 2), in fact only

addresses his misstatement of Plaintiffs' proposal since it concerns the entire delta set, and is not relevant to what Plaintiffs actually proposed.[6]

### 2.   *The Magistrate Ruled Peremptorily Before Plaintiffs had an Opportunity to File the Reply Brief Permitted under Local Rules*

Local Rules permit the moving party to file a reply brief in support of its motion "within fourteen (14) days after service of the opposition memoranda."  Rule 105(2)(a).  As noted above, the Magistrate allowed Defendants the full 14 days under the local rules to file their opposition to Plaintiffs' letter motion, but then ruled on the letter motion a full *eight* days before Plaintiffs' reply brief would have been due.  While this might have been understandable or acceptable in a situation in which the relief sought was routine, the law straightforward, and the facts simple or undisputed, none of those were the case here.  Under the circumstances, the Magistrate's action was unfair to Plaintiffs, and arguably a due process violation.

---

[6] The Magistrate's order also dismisses a small part of Plaintiffs' proposal as follows:

> Second, Plaintiffs sought to modify certain search strings by adding new search terms.  (ECF No. 110-6 at p. 3).  The Court views this as beyond the "syntax" discussion that it directed.

(Dkt. No. 111 at 2).  The Magistrate's description of this portion of Plaintiffs' proposal is misleading, and once again he cites to *Defendants'* brief as his source for what *Plaintiffs* are requesting.  The so-called new search terms simply add a few additional words to Defendants' pre-existing search strings to assist in locating documents relevant to whether Defendants employed, or considered employing, an independent investment consultant.  (Dkt. No. 107 at 5-6).  The only sense in which they are "new" is that they were not included in Plaintiffs' original January 2018 search term proposal, Dkt. No. 85-1, but that was only presented as a basis for negotiations and the parties have not come to an agreement since that time regarding search terms.  Further, the Magistrate once again offers no meaningful basis to reject the proposal.  He simply states it was beyond the scope of what he had previously directed.  But so what?  The issue should be, as noted above, whether Defendants have demonstrated an undue burden that excuses them from performing a reasonable search for responsive documents.

### 3. The Magistrate's Order Contains Erroneous Statements of Fact regarding the Procedural History and Plaintiffs' Claims

The Magistrate's September 9 Order makes several assertions regarding Plaintiffs' claims and the procedural history of this matter that are largely adopted from Defendants' Opposition. These assertions include numerous errors; some of these errors have been noted above, additional errors are noted below.

The order states "[w]hen this dispute first surfaced, Plaintiffs urged that Defendants should re-do their process largely because Defendants' modifications to Plaintiffs' proposed initial search terms left behind a meaningful number of responsive documents." (Dkt. No. 111 at 1). This statement, which has no citations to the record, is completely inaccurate. As described above in the procedural history section of this brief, what the Magistrate refers to as "this dispute" first arose via Plaintiffs' request for an informal discovery conference through which Plaintiffs sought to have the Court require Defendants to provide Plaintiffs additional information (hit count data on Plaintiffs' original search terms), so they could engage in meaningful negotiations with Defendants regarding search terms. Plaintiffs never took the position in their initial filings, or at the teleconference, that Defendants needed to "re-do their process" because what Plaintiffs were in fact seeking was additional information, and what additional actions or documents they might eventually seek from Defendants would depend on what the additional information dictated.

The Magistrate next states that in his June 17 order he "found Defendants' methodology to be compliant with the Federal Rules of Civil Procedure." (Dkt. No. 111 at 1). This is another inaccurate characterization adopted from Defendants' opposition. Plaintiffs' initial request for conference never mentions the Federal Rules of Civil Procedure – it only mentions electronic discovery guidelines of this Court's local rules. (Dkt. No. 85 at 1). The only mention of the

13

Federal Rules in the Magistrate's June 17 holding is in characterizing the holding of another

case.  The Magistrate contended that in that case the court had found that a request for

information similar to what Plaintiffs sought "was beyond Rule 26."  (Dkt. No. 94 at 2).  Hence,

while it is arguable that the Magistrate had found that Defendants' refusal to provide the

information Plaintiffs requested did not violate the Federal Rules, there is no support for the

Magistrate's contention that the order constituted a sweeping finding that Defendants' entire

"process" (whatever exactly that vague term encompasses) complied with the Federal Rules.

Furthermore, to the extent the Magistrate made such a finding, it would be *dictum* and

inappropriate since Plaintiffs had never brought that issue before the Magistrate, or even

mentioned or briefed it, in their request for conference.

       Further, regarding the responsiveness rate of the sample of documents from the original

delta set, the Magistrate states "Plaintiffs allege that 29 (rather than 4) of the documents in the

sample were responsive, for a responsiveness rate of 2.93% to 5.86%." (Dkt. No. 111 and 1).

This statement is erroneous and is also revealing of the Magistrate's process in coming to his

decision:  rather than citing Plaintiffs' letter motion to support a claim about what Plaintiffs

allege, it actually cites Defendants' opposition brief.  In any event, what Plaintiffs stated in their

letter motion was:

> … Defendants claim to have found only four responsive documents…while
> Plaintiffs review uncovered *an additional* 29.  (*See* Ex. B, which is a table listing
> Bates numbers of *additional* documents Plaintiffs found to be responsive…).

(Dkt. No. 107 at 3 n. 4 (first and third emphasis added)).  As can be seen, Plaintiffs plainly stated

that they had found an *additional* 29 documents, which would make for a total of 33 documents

together with the four Defendants had already identified.  The Magistrate's statement that

Plaintiffs allege they found only 29 responsive documents in the sample is thus clearly incorrect.

**B.      The Court Should Order that Defendants Search for and Produce Documents Pursuant to Plaintiffs' Reasonable and Carefully Crafted Compromise Proposal**

As set forth above, the Magistrate's opinion contains numerous errors.  However, that fact alone does not of course establish that the relief requested in Plaintiffs' letter motion should be granted.  The reasons it should be granted are summarized below and more fully set out in Plaintiffs' Letter Motion (Dkt. No. 107).

*1.      The Number of Responsive Documents at Issue is Substantial*

The number of responsive documents at issue is substantial.  As discussed in Plaintiffs' letter motion, Plaintiffs believe the number of responsive documents in the delta set to likely be between 1739 and 3481 based upon the sample Defendants provided to Plaintiffs.  (Dkt. No. 107 at 3).  Plaintiffs also expect, for reasons also set out in the Letter Motion, that most of these will be included in the subset of the delta set that would be identified under their compromise proposal.  As noted above, to date, Defendants have produced only 17,385 documents, so these additional documents would potentially constitute a 20% increase in the number of responsive documents Defendants have produced.

*2.      Plaintiffs' Compromise Proposal Eliminates the Purported Undue Burden on Defendants*

Second, there is no reasonable dispute that Defendants have an obligation to produce these responsive documents to Plaintiffs absent some valid objection, which they have the burden to establish.  *See, e.g.*, Sky Angel U.S., LLC v. Discovery Commc'ns, LLC, 28 F. Supp. 3d 465, 482 (D. Md. 2014) ("Generally, the burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules" (internal quotation marks and citations omitted)), aff'd, 885 F.3d 271 (4th Cir. 2018).   The only objection Defendants have raised is that it would be unduly

15

burdensome for them to produce these documents.  But this objection fails for the following reasons.

First, all the facts Defendants adduce to show undue burden concern the entire delta set of approximately 60,000 documents.  Plaintiffs have never sought to have Defendants review the entire delta set for responsive documents.  Plaintiffs' compromise proposal would, based on the hit count data that Defendants themselves have provided, slash the set of documents to be reviewed by at least 65% to approximately 20,000 documents.[7] (Dkt. No. 107 at 3-4).  The number of documents that would needed to be independently reviewed is likely much smaller still.  Defendants indicated in their opposition to the Letter Motion that the 17,385 documents produced to Plaintiffs to date is based on an "underlying" production of 41,000 documents that was reduced in number via the process known as de-duplication as well as threading.  (*See* n. 1, *supra*).  Further, based on Plaintiffs' review of Defendants' document sample from the entire delta set, discussed above, a substantial portion of the documents in the subset will likely be empty or dummy documents, which will not have to be reviewed at all.  This suggests that the number of documents that would need to be independently reviewed may be well under 10,000.

---

[7] Defendants' repeatedly make the misleading claim that Plaintiffs' compromise proposal seeks to have Defendants "redo 75% of their ESI searches." (Dkt. No. 110 at 4; *see also* Dkt. No. 110-6 at 1 (Plaintiffs are proposing "to reverse wholesale our edits to more than 75% of the search strings")).  This figure refers to a simplistic counting of the number of rows that would be affected in the spreadsheet Defendants' generated to summarize hit count data.  (See Dkt. No. 107-3).  This figure is misleading because it ignores the fact that (i) these rows vary dramatically in the number of documents they retrieve, e.g. row 115 produces 10,214 document hits, while seven search strings in other rows produce between zero and 25 documents, *see id.*; (ii) when weighted by number of documents, Plaintiffs' proposal removes limiters on search strings that constitute only 35% of the document hits in the spreadsheet, *see id.*, and (iii) these searches are of course performed electronically, and take only seconds to complete, so the percentage of search strings that are being modified is no indication of burden on Defendants.

Second, as noted above, the responsiveness rate of the documents in this smaller subset should be considerably higher than the delta set as a whole.  This is because, as explained in Plaintiffs' Letter Motion, under Plaintiffs' proposal, Defendants' limiting expressions will be retained on all those search strings with frequently occurring words that generate many hits on non-responsive documents, such as "option," "profit," "invest," "fund," "fee," "bond," and "asset."  (Dkt. No. 107 at 4).  On the other hand, Defendants' limiting expressions would be removed only from infrequently occurring words that are likely to retrieve a high proportion of responsive documents, these include words that Plaintiffs have already found being used by Defendants to discuss issues at the heart of this case, including "watchlist," "hardwire," "in-house," and "self-dealing."  *Id.*

Under these circumstances, where a relatively modest number of documents would need to be reviewed to retrieve numerous responsive documents that may go to the heart of this case, there is no undue burden on Defendants and they must produce the documents that would be retrieved via the methodology described in Plaintiffs' letter motion.  Courts frequently find such additional document production warranted in a variety of similar circumstances.[8]

---

[8] Washington-St. Tammany Elec. Cooperative, Inc. v. La. Generating, L.L.C., 2019 WL 1804849, at *11 (M.D. La. 2019) (where it was unclear whether the original ESI search contained certain bidders, the Court ordered plaintiffs, if terms were omitted, to run an additional ESI search and make a supplemental production); Flynn v. FCA US LLC, 2019 WL 1746266, at *3 (S.D. Ill. 2019) (ordering Defendants to provide all relevant communications after a responsiveness review that omitted certain relevant communications); In re Arby's Restaurant Group Inc. Litig., 2018 WL 8666473, at *3 (N.D. Ga., 2018) (ordering defendant Arby's to produce relevant results of ESI searches for two additional custodians); Digital Ally, Inc. v. TASER Int'l, Inc., 2018 WL 4334297, at *2–3 (D. Kan. 2018) (modifying an ESI search in response to plaintiff's argument that the search was too broad and defendant's argument that the counterproposal was too narrow); Fenerjian v. Nong Shim Co., Ltd, 2016 WL 1019669, at *6 (N.D. Cal. 2016) (granting Defendants' motion to compel an additional ESI search with five new search terms); Westdale Recap Properties, Ltd. v. NP/I & G Wakefield Commons, L.L.C., 2013 WL 5424844, at *5–6 (E.D.N.C. 2013) (plaintiffs showed good cause for ordering supplemental

### V.   **CONCLUSION**

For the reasons stated above, Plaintiffs' objections to the Magistrate's September 9, 2019 order denying Plaintiffs' letter motion should be sustained.  This Court should also order that the Letter Motion should be granted, or, in the alternative, that the Magistrate's order be vacated and this matter remanded to the Magistrate for him to reconsider Plaintiffs' Letter Motion and provide detailed reasons for any conclusion, including whether he believes Defendants have met their burden of showing that they have sufficient cause to refuse production of the over 3000 responsive documents that may be at issue.

Respectfully Submitted,

By /s/ James A. Moore_____
James A. Moore (admitted *Pro Hac Vice*)
**MCTIGUE LAW LLP**
4530 Wisconsin Avenue, NW
Suite 300
Washington, DC  20016
Tel:  (202) 364-6900
Fax: (202) 364-9960
jmoore@mctiguelaw.com

**COHEN MILSTEIN SELLERS & TOLL, PLLC**
Karen L. Handorf (admitted *Pro Hac Vice*)
Scott M. Lempert (admitted *Pro Hac Vice*)
Jamie Bowers (admitted *Pro Hac Vice*)
Douglas J. McNamara (MD Bar #20786)
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
Tel: (202) 408-4600
Fax: (202) 408-4699
khandorf@cohenmilstein.com
slempert@cohenmilstein.com
jbowers@cohenmilstein.com

---

searches and production based on provisions in the ESI protocol); Federal Deposit Ins. Corp. v. Giannoulias, 2013 WL 5762397, at *2 (N.D.Ill., 2013) (Court required FDIC to add additional search terms).

18

DMcNamara@cohenmilstein.com

*Counsel for Plaintiffs and the Class*