IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAVID G. FEINBERG, *et al.*, and all others similarly situated, | * | |
| | * | |
| Plaintiffs | | |
| | * | |
| v. | | Civil Case No. 17-cv-00427-JKB |
| | * | |
| T. ROWE PRICE GROUP, INC., *et al.* | * | |
| | | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Chief Judges James Bredar referred this case to me for discovery and all related scheduling. (ECF No. 75). Now pending before the Court is David Feinberg's (and all others similarly situated) ("Plaintiffs") Motion to Compel Production of Certain Documents Defendants Have Withheld or Redacted on Grounds of Attorney-Client Privilege and/or Attorney Work Product, as well as the T. Rowe Price Defendants' Opposition and Plaintiffs' Reply. (ECF Nos. 121-1, 121-28 & 121-35). This issue is fully briefed pursuant to Local Rule 104(8), and no hearing is necessary. *See* Local Rule 105(6) (2018). Additionally, the Court conducted its own *in camera* review of the disputed documents.[1] For the reasons stated below, Plaintiffs' Motion to Compel is GRANTED in part and DENIED in part.

---

[1] Plaintiffs requested that for "those withheld documents or unredacted text not submitted as exhibits to this filing . . . to the extent that the Court is not prepared to grant Plaintiffs' motion to compel, that it review the disputed documents or text *in camera*. (ECF No. 121-3 at 4). "In assessing whether a privileged document falls within the fiduciary exception, courts appear to favor *in camera* review of at least a sampling of the documents." *In re Northrop Grumman Corp.*, 2010 WL 11468584, at *9 (C.D. Cal. 2010) (citing cases).

1

I.  BACKGROUND

As described in this Court's recent Memorandum, Plaintiffs allege that Defendants violated the Employment Retirement Income Security Act ("ERISA") by limiting the investment options of the T. Rowe Price U.S. Retirement Program ("the Plan") to a range of investment options offered by T. Rowe, to the exclusion of other funds by non-T. Rowe affiliated providers. (ECF No. 125 at 1). In addition, Plaintiffs allege: the Plan's investment options were too expensive; Defendants imprudently failed to remove funds that underperformed; Defendants relied upon improper benchmarks to assess performance; and Defendants used Plan assets to seed new investment vehicles. *Id*. at 2.

During the course of discovery, Defendants withheld (or, in three instances, "clawed back") documents on the grounds of privilege and produced a privilege log outlining the reasons for such assertions. The current dispute involves nineteen logged documents: fourteen are redacted and five are withheld in their entirety. (ECF No. 121-3 at 3). Plaintiffs seek an order compelling Defendants to produce the "withheld documents as well as unredact the redacted documents." *Id*.

II. LAW

Intended to encourage "full and frank communication between attorneys and their clients," the attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Nonetheless, the privilege is not absolute, and within this Circuit, the Court of Appeals has noted that it "is to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 226 (4th Cir. 2011). Accordingly, for this privilege to apply, the party claiming its protection bears the burden of demonstrating its

applicability. *In re Grand Jury Proceedings*, 33 F.3d 342, 353 (4th Cir. 1994). A party must satisfy procedural and substantive criteria to effectively establish a claim of privilege. Procedurally, the party must "expressly make the claim" and "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(a)(5)(A). Substantively, a party must show:

> (1) the asserted holder of the privilege is or sought to become a client;
>
> (2) the person to whom the communication was made (a) is a member of the bar of a court, or is his subordinate and (b) in connection with this communication is acting as a lawyer;
>
> (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and
>
> (4) the privilege has been (a) claimed and (b) not waived by the client.

*N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501–02 (4th Cir. 2011) (hereinafter "*Interbake*").

When information is withheld by claiming privilege, and this is attempted via the production of a privilege log, a sufficient one identifies: each document withheld, information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter. *Maryland Restorative Justice Initiative v. Hogan*, 2018 WL 5295825, at *4 (D. Md. Oct. 25, 2018) (referencing Discovery Guideline 10.d. and Paul W. Grimm, Charles S. Fax, & Paul Mark Sandler, Discovery Problems and Their Solutions 62–64 (2005)).[2] If a satisfactory privilege log is produced, and subsequently the requesting party challenges the sufficiency of the proclaimed privilege/protection, the asserting party may no longer rely on the privilege log, but bears the

---

[2] *See also Clark v. Unum Life Ins. Co*, 799 F. Supp. 2d 527, 536 (D. Md. 2011) ("A privilege log meets this standard, even if not detailed, if it identifies 'the nature of each document, the date of its transmission or creation, the author and recipients, the subject, and the privilege asserted.'") (quoting *Interbake*, 637 F.3d at 502)).

3

burden of establishing an evidentiary basis (by affidavit, deposition transcript, or other evidence) for each element of each privilege/protection claimed for each documents or category of document. *See Charter Oak Fire Ins. Co. v. American Capital, Ltd.*, 2013 WL 6844359, at *7. (D. Md. Dec. 24, 2013).

The attorney-client privilege applies in a corporate setting. In the corporate context, the attorney-client privilege is applicable if "the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents." *Krueger v. Ameriprise Fin., Inc., LLC*, 2014 WL 12597432, at *10 (D. Minn. May 7, 2014).[3] However, because the modern-day in-house counsel has increased participation in the day-to-day operations of many corporations, the scope of such privilege becomes harder to define. The attorney-client privilege can extend to communications involving third-parties whom, by virtue of their relationship to a party in the litigation, necessitate an attorney to communicate with the third-party in order to know all that relates to the client's reasons for seeking representation.[4] See *In re Bieter Co.*, 16 F.3d 929, 937–38 (8th Cir. 1994); *SmithKline Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476 (E.D. Pa. 2005) (recognizing attorney-client privilege may be waived in the corporate context "if the communications are disclosed to employees who did not need access to them").

In the ERISA context, courts have recognized an exception to the attorney-client privilege, known as the "fiduciary exception," when the client procuring the legal advice is acting as a fiduciary for another. *Peters v. Aetna Inc.*, 2018 WL 3616923, at *3–4 (W.D.N.C. July 27, 2018).

---

[3] *See Scholtisek v. Eldre Corp.*, 441 F. Supp. 2d 459, 464 (W.D. N.Y. 2007) ("The 'need to know' must be analyzed from two perspectives: (1) the role in the corporation of the employee or agent who receives the communication; and (2) the nature of the communication, that is, whether it necessarily incorporates legal advice. To the extent that the recipient of the information is a policymaker generally or is responsible for the specific subject matter at issue in a way that depends upon legal advice, then the communication is more likely privileged.").

[4] The Restatement (Third) of the Law Governing Lawyers § 123(4) takes the position that a corporate attorney-client communication retains its confidential character when shared with agents of the corporation who need to know the content of the communication in order to perform their corporate duties. 27 A.L.R. 5th 76 (2019).

As the Fourth Circuit explained in *Solis v. Food Employers Labor Relations Association*, the fiduciary exception is "[r]ooted in the common law of trusts" and "is based on the rationale that the benefit of any legal advice obtained by a trustee regarding matters of trust administration runs to the beneficiaries." 644 F.3d at 226. The fiduciary exception applies where this duty of disclosure overrides the attorney-client privilege. See *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 184 (2011). "Consequently, trustees cannot subordinate the fiduciary obligations owed to the beneficiaries to their own private interests under the guise of attorney-client privilege." *Solis*, 644 F.3d at 226–27.

The ERISA fiduciary exception, however, is not without its limits.[5] For example, the exception does not apply to a fiduciary's communications with an attorney regarding her personal defense in an action for breach of fiduciary duty. *Peters*, 2018 WL 3616923, at *4. Similarly, "communications between ERISA fiduciaries and plan attorneys regarding non-fiduciary matters, such as adopting, amending, or terminating an ERISA plan, are not subject to the fiduciary exception." *Solis*, 644 F.3d at 228; *Clark*, 799 F. Supp. 2d at 537. Significantly, some courts determined that "advice that a fiduciary obtains to protect itself from liability" does not fall within the fiduciary exception. *Fischel v. Equitable Life Assurance*, 191 F.R.D. 606, 609 (N.D. Ca. 2000) ("[T]he use of a fiduciary-nonfiduciary activity distinction as the touchstone for privilege is awkward at best, simply because the existence of a fiduciary duty may be an ultimate issue that simply cannot be resolved in the course of discovery disputes."); *Hudson v. Gen'l. Dynamics*, 73 F. Supp. 2d 201, 203 (D. Conn. 1999). Ultimately, determining whether communications relate

---

[5] The fiduciary exception applies where this duty of disclosure overrides the attorney-client privilege. *See United States v. Jicarilla Apache Nation*, 564 U.S. 162, 184 (2011).

5

to fiduciary matters (such that the fiduciary exception applies) is a matter of context and content. *Tatum v. R.J. Reynolds Tobacco Co.*, 247 F.R.D. 488, 495 (M.D.N.C. 2008).

While the *Solis* Court did not explicitly state which party bears the burden of proving the applicability of the fiduciary exception, the Fourth Circuit has held (with respect to other exceptions to the attorney-client privilege) that the party seeking to overcome the privilege bears the burden of establishing that an exception applies. *Peters*, 2018 WL 3616923, at *4 (citing cases).

### III. ANALYSIS

#### 1. Redacted Versions of Minutes of Plan Trustee Committee Meeting

Twelve of the disputed documents[6] are redacted versions of minutes from the October 10, 2010 401(k) Plan Trustee meeting. (ECF No. 121-3 at 7). Defendants contend these are privileged because they contain "redacted confidential document containing legal advice from in-house Counsel regarding 401(k) plan design." (ECF No. 121-28 at 9). Plaintiffs challenge the privilege log's sufficiency to effectively support the attorney-client privilege, and, in the alternative, argue that these documents should be produced under the fiduciary exception.

Plaintiffs' argument that a privilege log must detail all senders, recipients, and dates of privileged documents (or be legally insufficient) is too stringent of an application of Discovery Guideline 10. (ECF No. 121-3 at 9). Here, Defendants produced a log that identifies the "production begin bates," the custodians, and the privilege asserted. *Id.* at 6. The Court finds that the failure to include a date, or a document's author or receiver is not *per se* insufficient. Although Defendants did not provide the Court with this information within the majority of the entries it appears that this information is unknown or not reasonably available. *Id.* Further, although the

---

[6] TRP-PRIV numbers 54–65. (ECF No. 123-1 at 8).

privilege log does not indicate who the contested correspondence was between, the minutes indicate that the attendees included five trustees and a few individuals who regularly assisted the Trustees in Plan Administration: Gretchen Park (Director of Human Resources and a named Plan Administrator), Francisco Negron (then-Regional Client Manager for T. Rowe Price Retirement Plan Services, Barbara O'Connor (Senior Finance Manager), and in-house counsel Nancy Maitland. I am satisfied that the privilege log meets this standard.

As this privilege log has been produced, and the Plaintiffs challenge the sufficiency of such, the Defendants cannot rest solely on the privilege log. Rather, the asserting party (here, the Defendants) bear the burden of establishing an evidentiary basis — via affidavit, deposition transcript, or other evidence — for the applicability of the attorney-client privilege as to each document. *See Charter Oak*, 2013 WL 6844359, at *7. In sum, we are at the third step of the attorney-client inquiry.

In this case, the Court conducted its own *in camera* review and is satisfied that the attorney-privilege applies to the redacted information within these twelve documents. The redaction concerns legal advice given to the senior level attendees (identified in the minutes) by in-house counsel, coming squarely within the privilege. Moreover, the Court finds that the fiduciary exception does not apply as the advice concerns potential plan amendments, in light of changes in law (rather than plan administration).

2. Redacted Document TRP-PRIV-0036

Defendants redacted a portion of an email exchange between non-attorney T. Rowe senior employees. According to Defendants' log, "[t]he redacted portion of this email chain discusses next-steps strategy for a project analyzing possible changes to Plan structure, initiated and executed at the direction of counsel." (ECF No. 123-1 at 11). Further, by correspondence to the

Court dated December 9, 2019 and copied to all counsel of record, Defendants state that the redaction "contains a code word for a privileged project that was designed and run by in-house counsel" and "[w]hen combined with other materials produced to Plaintiffs and described on our privilege log . . . might enable Plaintiffs to impermissible understand the substance of legal advice provided in connection with that project."

In the Court's view, these explanations do not justify redacting the document. The project name, even though originating with counsel, clearly, is not shrouded in complete secrecy—as two non-attorney employees mention it. Defendants' additional justification is a double-edged sword. If enough has been disclosed about the project, such that the project name might allow Plaintiffs to draw certain conclusions, then this is further evidence that not every aspect of the project (particularly its name) can be considered protected. Simply because a project originates with, or is managed by in-house counsel, the Court cannot conclude, without more, that the name of the project and all references to it should be protected. The Court's *in camera* review further supports this conclusion. Thus, an unredacted version of the document should be produced.[7]

   3. Redacted Document TRP-PRIV-00108390

This redaction involves a communication from in-house counsel to a senior employee of T. Rowe, with copies sent to others, and discuss the content of communication to fund participants about the implementation of certain changes to the Plan. (ECF No. 123-1 at 11). Although it is not entirely clear to the Court whether this redaction would otherwise be protected, after its *in camera* review, the Court concludes that even if otherwise protected, the redacted portion falls within the fiduciary exception, as it focuses on explaining to fund participants how to navigate the

---

[7] Defendants also argue that the document should have work product protection. However, no information has been provided as to the circumstances of the project name's origination or why that particular moniker somehow betrays counsel's work product. Accordingly, this argument is without support, and non-meritorious.

logistics of upcoming plan changes. *See Cottillion*, 279 F.R.D. at 309 ("Most courts have held that communications with plan beneficiaries concerning plan benefits and modifications fall under the penumbra of fiduciary functions, rather than settlor functions . . . . Accordingly, the draft Summary Plan Descriptions fall within the fiduciary exception to the attorney-client privilege and must be disclosed."). Consequently, an unredacted version of the document should be produced.

4. Clawed Back Documents (TRP-PRIV 1544, 1561 & 1575)

Plaintiffs also seek to compel production of three documents that Defendants inadvertently produced and later clawed back under Sections 14 and 15 of the parties' Stipulated Protective Order. (ECF No. 69). (ECF No. 123-1 at 14–15). These documents include (i) a September 1, 2015 email thread from Francisco Negron to Clay Bowers that includes a request for, and the provision of, legal advice from, in-house attorneys Margaret Raymond and Nancy Maitland "regarding 401(k) plan design" (TRP-PRIV-01544); (ii) an undated document containing "legal advice from the T. Rowe Price Legal Department regarding amendment of 401(k) plan agreement" for which the exact author was originally unknown (TRP-PRIV-01561); and (iii) an undated document containing "legal advice from the T. Rowe Price Legal Department presented to senior management, not Plan fiduciaries, regarding potential Plan amendment" for which the exact author remains unknown (TRP-PRIV-01575). (ECF No. 123-1 at 12–15).

Beginning with document 1544, the crux of the document is legal advice from in-house counsel to T. Rowe management employees, with its focus being risk mitigation involved in potential changes to Plan offerings based on inquiries from the Trustees. This falls squarely within the privilege and outside the fiduciary exception based both on its discussion of risk mitigation and potential changes to the Plan (as opposed to plan administration). It will remain protected.

Undated documents 1561 and 1575 largely address Plan amendments and their impact on litigation risk. Although the recipient, date, and author of document 1561 were originally unknown, by way of affidavit, Defendants established that in-house counsel wrote the letter, on April of 2014, and was directed to the T. Rowe Board of Directors. (ECF No. 123-1 at 15). This document discusses plan amendments and their impact on litigation risk. The supporting affidavit clearly establishes its protection, and it falls outside the fiduciary exception as to both its audience and focus on litigation risk.

The author, recipient, and date of document 1575 remain unknown. (ECF No. 123-1 at 15). This does not, by itself, defeat the claim of privilege. *See* D. Md. Discovery Guideline 10(d)(ii) (noting date and author should be provided "if known or reasonably available"); *see also Restorative Justice*, 2018 WL 5295825, at *4 ("[F]ailure to include a document's author or receiver is not *per se* insufficient."). From the Court's review, the body of the document plainly includes legal advice and relates to contemplated plan changes to reduce litigation risk. In this way, it is similar to document 1561, which Defendants established came from in-house counsel. (ECF No. 123-22 at 2). It is also fair to conclude that the document was meant for the Plan settlor (T. Rowe Price Group), the Board of Directors, and the Plan Administrator (who for some purposes is also a fiduciary), and potentially the trustees, all of whom are referenced. Although this document is a closer call than document 1561 (because less is known about it), the Court is convinced that document 1575's similarity to document 1561 in terms of its focus, justifies its protection.

5. Withheld Documents (TRP-PRIV Nos. 1573 &1574)

Plaintiffs also challenge two privilege entries pertaining to documents that Defendants withheld in their entirety, about which, at Plaintiffs' insistence and over Defendants' stated preference to the contrary, the parties have never met and conferred at all. (ECF No. 123-1 at 10;

ECF No. 121-19), *see also* L.R. 104(7) ("Counsel shall confer with one another concerning a discovery dispute and make sincere attempts to resolve the differences between them."). These entries consist of: (i) a January 28, 2014 email from Barbara O'Connor to Clay Bowers containing "legal advice from in-house counsel Margaret Raymond, Esq., regarding 401(k) plan design" (TRP-PRIV-01573); and (ii) a December 10, 2013 email thread from Gretchen Park to Ken Moreland containing "legal advice from in-house counsel . . . regarding amendment of 401(K) plan agreement." (TRP-PRIV-01574). (ECF No. 121-29 at 2). Defendants withheld these two communications from their initial production, but inadvertently failed to include them in their initial privilege log and subsequently corrected the oversight by providing full descriptions. *See* (ECF No. 121-29 at 2; ECF No. 121-33). Defendants withheld these documents because they are suffused with privileged legal advice—including lengthy emails from in-house counsel about Plan amendments and design.

Plaintiffs next articulate that Defendants do not establish the elements of attorney-client privilege because under *Interbake* element two, the log entry should indicate the communication was made to an attorney who was acting in his capacity as a lawyer, and under element 3, the log should illustrate that the communication relates to a fact of which the attorney was informed by his client without the presence of strangers and for the purpose of securing legal advice. (ECF No. 121-35 at 6). Here, the log provided by Defendants indicates the custodians of the document, the author, the recipient, and the date. (ECF No. 123-1 at 12).

The Court completed an *in camera* review of these documents. As to document 1573, the first page of the document contains an email string that neither involves attorneys nor references legal advice. It is not at all clear that the document "forwards" legal advice. As to the second page, the Court agrees that this part of the email string is privileged, and the fiduciary exception

11

does not apply. The communication from counsel concerns legal advice in communicating to senior management the legal implications of contemplated plan changes. Accordingly, the document should be produced in redacted form whereby page one is not redacted and page two is fully redacted. As to document 1574, after the Court's *in camera* review, the court is convinced that the document is privileged and the fiduciary exception does not apply. The email string involves work accomplished by in-house counsel, at the request of senior management, regarding legal implications of contemplated plan changes. Accordingly, it need not be produced.

The undersigned did not endeavor to determine what portions (if any) of this Memorandum Opinion contained information that necessitated filing under seal. Rather, this Memorandum and Opinion were filed under seal, and the parties were directed to review it and suggest jointly any necessary redactions. After conferring, the parties informed the Court that the Order and Opinion could be released on the Docket without any redactions.

IV. CONCLUSION

For the reasons described above, Plaintiffs' Motion to Compel Production of Certain Documents (ECF No. 121) is **GRANTED** in part and **DENIED** in part. Plaintiffs' Motion is **GRANTED** as to:

1. TRP-PRIV-00036 which should be unredacted;
2. TRP-PRIV-00014 which should be unredacted;
3. Page 1 of TRP-PRIV-01573 which should be produced, and Page 2 can be redacted in full.

Plaintiffs' motion is **DENIED** as to the remaining redactions and documents.

Date: December 17, 2019

J. Mark Coulson
United States Magistrate Judge