**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

DAVID G. FEINBERG, et al., and all
others similarly situated,

                    Plaintiffs,

vs.

T. ROWE PRICE GROUP, INC., et al.,

                    Defendants.

Case No. 1:17-cv-00427-JKB

REDACTED COPY

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................ 1

    A.   The Parties, the Plan, and the Class ................................................................ 4

    B.   Claims for Relief ............................................................................................ 4

    C.   Plan Governance ............................................................................................ 5

    D.   The Trustees' Deficient Investment Monitoring and Selection Procedures ................... 6

    E.   The Trustees' Failed to Obtain Any Independent or Non-conflicted Advice On Plan Investments ................................................................................................ 8

II. STANDARD FOR GRANTING SUMMARY JUDGMENT ................................................. 8

III. ARGUMENT ............................................................................................................. 9

    A.   ERISA Legal Background:  The Highest Duties Known to the Law ............................. 9

        1.   The Duty of Loyalty .......................................................................... 10

        2.   The Duty of Prudence and the Investment Context ............................... 10

    B.   Defendant Plan Trustees Breached Their ERISA Fiduciary Duties of Loyalty and Prudence by Failing to Take Reasonable Steps to Mitigate Their Conflicts of Interest 11

        1.   ERISA Fiduciaries Have a Duty to Mitigate Conflicts of Interest ....................... 11

        2.   There is No Dispute of Material Fact That Defendant Trustees were ERISA Fiduciaries and Governed the Plan While Acting under Conflicts of Interest ..... 14

        3.   There is No Dispute of Material Fact That Defendant Trustees Failed to Take Reasonable Steps to Mitigate Their Conflicts of Interest ..................................... 16

        4.   Defendant Trustees Breached Their ERISA Fiduciary Duties of Prudence and Loyalty by Failing to Mitigate Their Conflicts of Interest ..................................... 17

    C.   Defendant Plan Trustees Breached Their ERISA Fiduciary Duties of Loyalty and Prudence by Failing to Investigate the Merits of Nonproprietary Funds for the T. Rowe Price 401(k) Plan ............................................................................................ 18

        1.   ERISA Fiduciaries Have a Duty to Take Reasonable Steps to Investigate the Merits of Potentially Superior Investment Options that Might Benefit Plan Participants .................................................................................... 18

2.   There is No Dispute of Material Fact that Defendant Trustees Took No Steps to Investigate the Merits of Non-Proprietary Investment Options............................ 20

3.   There is No Dispute of Material Fact that There Were Potentially Superior Non-proprietary Investment Options for the Plan........................................................ 20

4.   Defendant Trustees Breached Their ERISA Fiduciary Duties of Prudence and Loyalty by Failing to Investigate Potentially Superior Non-Proprietary Investment Options for the Plan ............................................................................................. 21

D.   Defendant Plan Trustees Breached Their ERISA Fiduciary Duties of Loyalty and Prudence by Simply Adding New T. Rowe Price Funds to the Plan without Investigating Their Merits or the Alternatives ............................................................. 22

IV. CONCLUSION ..................................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**

Acosta v. Chimes D.C., Inc., No. 15-3315, 2019 WL 931710 (D. Md. Feb. 26, 2019) .............. 23

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, S. Ct. 2505, 91 L.Ed.2d 202 (1986) .................. 8

Bancorp v. Dudenhoeffer, 134 S. Ct. 2459 (2014) ................................................................ 18

Bedrick v. Travelers Ins. Co., 93 F.3d 149 (4th Cir. 1996) .................................................... 10

Bouchat v. Baltimore Ravens Football Club, 346 F.3d 514 (4th Cir. 2003) ................................ 8

Bouvy v. Analog Devices, Inc., 2020 WL 3448385 (S.D. Cal. 2020)....................................... 24

Braden v. Wal-Mart Stores, Inc., 588 F.3d 585 (8th Cir. 2009) ............................................... 9

Brink v. DaLesio,  496 F. Supp. 1350 (D. Md.1980) ........................................................ 23, 29

Brink v. DaLesio, 667 F.2d 420 (4th Cir. 1982)................................................................... 9

Brotherston v. Putnam Invs., LLC, No. 15-13825, 2017 WL 1196648
   (D. Mass. March 30, 2017) .......................................................................................... 27, 30

Bussian v. RJR Nabisco, Inc., 223 F.3d 286 (5th Cir. 2000)............................................. 10, 12, 17

Chesemore v. Alliance Holdings, Inc., 886 F. Supp. 2d 1007 (W.D. Wis. 2012) ....................... 22

Coyne & Delany Co. v. Selman, 98 F.3d 1457 (4th Cir. 1996).................................................. 25

Cutaiar v. Marshall, 590 F.2d 523 (3rd Cir.1979) .................................................................. 24

De Simone v. VSL Pharm., Inc., 352 F. Supp. 3d 471, (D. Md. 2018) ...................................... 14

DiFelice v. U.S. Airways, 497 F.3d 410 (4th Cir. 2007) ........................................................9-11

Donovan v. Bierwirth, 680 F.2d 263 (2d Cir.1982),
   cert. denied, 459 U.S. 1069 (1982)..........................................................9-10, 12-13, 17

Fifth Third Bancorp v. Dudenhoeffer, 134 S. Ct. 2459 (2014) ................................................... 6

Firestone Tire & Rubber v. Bruch, 489 U.S. 101 (1989).......................................................... 18

Fleming v. Boston Scientific Corp., 627 F. App'x 231 (4th Cir. 2015) ........................................ 8

Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1 (1987) ..................................................... 9

Gilliam v. Edwards, 492 F. Supp. 1255 (D.N.J.1980)......................................................... 23, 29

Haddock v. Nationwide Fin. Servs., 419 F. Supp. 2d 156 (D. Conn. 2006) ............................... 30

Intel Corp. Inv. Comm. v. Sulyma, 140 S. Ct. 768 (2020) ........................................................ 24

Leigh v. Engle, 727 F.2d 113 (7th Cir. 1984)...........................................................13, 17, 24, 28

Leimkuehler v. American United Life Ins. Co., 752 F. Supp. 2d 974 (S.D. Ind. 2010).............. 30

Lockheed Corp. v. Spink, 517 U.S. 882 (1996)................................................................... 22, 27

Lowen v. Tower Asset Mgmt, Inc., 829 F.2d 1209 (2d Cir. 1987) .................................. 24, 26, 28

<u>Marshall v. Kelly</u>, 465 F. Supp. 341 (W.D. Okl. 1978)........................................................ 24, 29

<u>Martin v. Feilen</u>, 965 F.2d 660 (8th Cir. 1992)............................................................................. 12

<u>Mass. Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134 (1985)..................................................... 22, 27

<u>McMahon v. McDowell</u>, 794 F.2d 100 (3d Cir. 1986)................................................................. 12

<u>Metzler v. Solidarity of Labor Organizations Health & Welfare Fund</u>, No. 95-7247,
    1998 WL 477964 (S.D.N.Y. Aug. 14, 1998)....................................................................... 17, 29

<u>Nat'l Sec. Systems v. Iola</u>, 700 F.3d 65 (3d Cir. 2012) ............................................................... 23

<u>Patelco Credit Union v. Sahni</u>, 262 F.3d 897 (9th Cir. 2001).................................................. 23, 28

<u>Pegram v. Herdrich</u>, 530 U.S. 211 (2000) .................................................................................. 10

<u>Perez v. Ulery</u>, No. 14-185, 2015 WL 7454684 (W.D.N.C. Nov. 23, 2015) ......................... 23, 26

<u>Pipefitters Local 636 Ins. Fund v. Blue Cross and Blue Shield</u>, 722 F.3d 861 (6th Cir. 2013).... 23

<u>Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty.</u>, 673 F.3d 333 (4th Cir.2012)....................... 8

<u>Shirk v. Fifth Third Bancorp</u>, 2008 WL 4449024 (S.D. Ohio Sept. 26, 2008)............................ 28

<u>Strothers v. City of Laurel, Maryland</u>, 895 F.3d 317 (4th Cir. 2018)............................................ 8

<u>Tatum v. RJR Pension Inv. Comm.</u>, 761 F.3d 346 (4th Cir. 2014) ......................................... 9, 19

<u>Teamsters Joint Council No. 83 v. Centra, Inc.</u>,
    947 F.2d 115 (4th Cir. 1991) ............................................................................................. 9

<u>Thompson v. Potomac Elec. Power Co.</u>, 312 F.3d 645 (4th Cir. 2002) ....................................... 9

<u>Tibble v. Edison Int'l</u>, 135 S.Ct. 1823 (2015) ............................................................................ 10

<u>Tibble v. Edison Int'l</u>, 135 S. Ct. 1823 (2015) ........................................................................... 18

<u>Wildman v. Am. Century Serv.</u>, 2018 WL 2326627 (W.D. Mo. May 22, 2018)........................ 27

**Statutes**

29 U.S.C. §1002(21)(A)............................................................................................................. 25

29 U.S.C. §1002(a) ..................................................................................................................... 9

29 U.S.C. §1103 ........................................................................................................................ 18

29 U.S.C. §1104........................................................................................................................ 6, 10

29 U.S.C. §1104(a)(1)(B) ........................................................................................................ 10, 11

29 U.S.C. §1104(a)(1)(D) .......................................................................................................... 6

29 U.S.C. §1106........................................................................................................ 5, 12, 22

29 U.S.C. §1106(b)(1) ...................................................................................................... 4, 23, 26

29 U.S.C. §1106(b)(3) ........................................................................................................ 4, 30

29 U.S.C. §1110(a) ..................................................................................................................... 6

29 U.S.C. §1132(a) .................................................................................................... 1, 5

ERISA §406(a) ............................................................................................................ 24

ERISA §406(b) ........................................................................................................ 22-24

ERISA §406(b)(1) ......................................................................................... 23, 26-27, 29

ERISA §406(b)(3) ....................................................................................................... 30

ERISA §408 ............................................................................................................... 23

**Regulations**

29 C.F.R. §§2550.408b-2(a), 2550.408c-2(a) ................................................................ 23

29 C.F.R. §2550.404a–1(b)(1)(i) (2020) .................................................................... 18

**Rules**

Fed. R. Civ. P. 56(e) .................................................................................................... 8

**Treatises**

*Restatement (Third) of Trusts* (Am. Law Inst. 2007) ................................................... 19

# I. <u>INTRODUCTION</u>

Plaintiffs in this action are all participants in the T. Rowe Price U.S. Retirement Program ( "Plan"), which currently has over $3 billion in assets.  (PSMF ¶¶3, 30).[1]  Defendants are the Plan fiduciaries, including the Plan Trustees, who were all T. Rowe Price officers and executives, and had exclusive authority with respect to Plan investments. (PSMF ¶¶6-14).  The Trustees included two portfolio managers of T. Rowe Price funds offered in the Plan, Larry Puglia and Preston Athey; Puglia was chair of the Trustee committee and both were the Trustees with primary responsibility with respect to investment matters, and Puglia referred to them as the Trustees' "Investment Representatives."  (PSMF ¶¶6, 12, 17).

Plaintiffs have brought this ERISA civil enforcement action pursuant to 29 U.S.C. §1132(a), on behalf of the Plan, to recover losses to the Plan resulting from Defendants' self-dealing, prohibited transactions, and breaches of their fiduciary duties of loyalty and prudence. (Second Am. Compl., Dkt. No. 84 ("SAC") ¶1).  All Plaintiffs' claims concern Defendants' conduct as Plan fiduciaries in favoring T. Rowe Price proprietary investments as Plan investments and thereby enriching T. Rowe Price with Plan assets in the form of fees.  (SAC ¶3). It is undisputed that the high fees from these funds enriched T. Rowe Price by over $85 million during the Class Period.  (Ex. 11 at 18; Ex. 5 at 258).[2]  Plaintiffs also allege that Defendants breached their duties and favored in-house funds despite knowing that, in many cases, there were

---

[1] "PSMF" refers to "Plaintiffs' Statement of Material Facts in Support of Motion for Partial Summary Judgment," filed herewith.  All factual claims necessary to Plaintiffs' motion are contained within this brief; but the PSMF includes specific record cites and additional context and facts to assist the Court.

[2] "Ex." refers to exhibits submitted as an attachment to the *Declaration of Scott M. Lempert in support of Plaintiffs' Motion for Partial Summary Judgment*, filed herewith.

alternative funds with lower fees and better performance.  (E.g. SAC ¶98).  Plan participants could have earned over $110 million more for their retirement savings if these alternative funds had been offered in the Plan instead.  (Ex. 11 at 10).

After engaging in fact discovery, exchanging expert reports, and engaging in expert discovery, Plaintiffs now move for summary judgment on the issues of whether (i) the Trustee Defendants breached their ERISA fiduciary duties of prudence and loyalty in failing to take reasonable steps to mitigate their conflict of interest in making decisions regarding selecting and retaining T. Rowe Price funds in the T. Rowe Price U.S. Retirement Program ("Plan"); (ii) the Trustee Defendants breached their ERISA fiduciary duties of prudence and loyalty by failing to investigate potentially superior non-proprietary investment options for the Plan; (iii) the Trustee Defendants breached their ERISA fiduciary duties of prudence and loyalty by simply adding new T. Rowe Price funds to the Plan without performing any investigation into their merits; and (iv) the Trustee Defendants, Defendants T. Rowe Price Associates and T. Rowe Price Trust, Inc. ("TRP Investment Affiliates") and T. Rowe Price Group violated ERISA's prohibitions against self-dealing transactions by utilizing T. Rowe Price funds that systematically pay direct and indirect fees to these fiduciary Defendants.  Plaintiffs are not seeking summary judgment with respect to issues of loss or causation.

As discussed further below, Plaintiffs are entitled to summary judgment on the first issue because courts, including the Fourth Circuit, have held that ERISA fiduciaries have a duty to mitigate potential conflicts of interest, and there is no dispute of material fact that the Trustees in this case made no effort at all to mitigate the clear conflicts of interest they had in making decisions about offering T. Rowe Price funds in the Plan.  They failed to obtain any independent advice or input on Plan investments – despite the fact that the two Trustees with primary

2

responsibility for investment decisions were themselves portfolio managers of some of the funds offered to participants as investments.  The Trustees' conflicts derived from two sources: the fact that they were also executives and officers of T. Rowe Price and owed a duty to the company that conflicted with their duty to Plan participants when making decisions about T. Rowe Price funds; and the fact that the portfolio manager Trustees stood to benefit financially from offering T. Rowe Price funds in the Plan.

Plaintiffs are entitled to summary judgment on the second issue because ERISA fiduciaries have a duty to investigate the merits of Plan investments and make reasonable efforts to seek the lowest cost and highest returning investments available for given levels of risk.  The Trustee Defendants clearly breached this duty because they made no effort at all to identify or evaluate nonproprietary alternatives to the in-house funds — despite the fact that there is no dispute of material fact that there were many attractive and lower cost nonproprietary funds that were potentially superior choices to several of the in-house funds.

Plaintiffs are entitled to summary judgment on the third issue because the Trustees themselves, in internal documents, admitted that they ██████████████████████████████ ████████████████████████████████████████████. Yet they failed to take any steps to remedy this breach.

Plaintiffs are entitled to summary judgment on the fourth issue because it is undisputed that the Trustees, T. Rowe Price Investment Affiliates and T. Rowe Price Group dealt with the assets of the Plan in their own interest by selecting proprietary T. Rowe Price funds that would increase their own compensation and the profits of T. Rowe Price through receipt of fees earned on the Plan's investments.  This form of fiduciary self-dealing is per se violative of ERISA's

prohibited transaction provisions, 29 U.S.C. §§1106(b)(1) and 1106(b)(3), and, as the Court has already ruled, no statutory exemption is applicable in this case, (Dkt. No. 58 at 19).

## II. SUMMARY OF FACTS AND CLAIMS

### A.   The Parties, the Plan, and the Class

The Plan is an ERISA defined contribution or "401(k)" plan.  (PSMF ¶1).  Defendants are (i) T. Rowe Price Group, Inc. ("T. Rowe Price"); (ii) T. Rowe Price Associates, Inc.; (iii) T. Rowe Price Trust Company; (iv) the T. Rowe Price Group, Inc. Management Committee; (v) T. Rowe Price Group, Inc. Management Compensation Committee, (vi) T. Rowe Price Group Inc. Board of Directors, and (vii) Plan Trustees Preston Athey, Steve Banks, Cynthia Crocker, Celine Dufetel, Eric Gee, Michael McGonigle, Kenneth Moreland, Larry Puglia, and Meredith Stewart, and (viii) Defendant Does 1-30.  (SAC ¶¶30-38.  All Defendants are alleged to be Plan fiduciaries. (SAC ¶¶30-44).

In May 2019, this Court granted Plaintiffs' motion for class certification for the following class:

> All participants in the T. Rowe Price U.S. Retirement Program who had a balance in their plan account at any time from February 14, 2011 through the date of judgment.  Any individual Defendants, any members of the T. Rowe Price Board of Directors, the Management Committee, the Management Compensation Committee, and their beneficiaries and immediate families are excluded from the class.

 (Dkt. No. 83).

### B.   Claims for Relief

 All Plaintiffs' claims concern Defendants' conduct as Plan fiduciaries in favoring T. Rowe Price proprietary investments as Plan investments and thereby enriching T. Rowe Price with Plan assets in the form of fees.  The Claims alleged in the SAC are (those at issue in this motion are in bold):

**COUNT I: Breach of Duties of Loyalty and Prudence for Imprudent and Disloyal Monitoring and Selection of 401(k) Plan Investments during the Class Period, which Caused Losses to the 401(k) Plan**

COUNT II: The Appointing Fiduciary Defendants Breached their ERISA Fiduciary Duties by Failing to Remove and Prudently Monitor the 401(k) Plan Trustees

**COUNT III: Breach of Duties of Loyalty and Prudence by Providing Imprudent and Self-Interested Investment Advice to Committee Defendants**

COUNT IV: Liability for Breach of Co-Fiduciary

COUNT V: Liability for Failing to Remedy Breach of Predecessor Fiduciaries

**COUNT VI: Liability for Committing Prohibited Transactions in Violation of ERISA, 29 U.S.C. §1106**

COUNT VII: Other Equitable Relief Based on Ill-Gotten Proceeds in Violation of ERISA, 29 U.S.C. §1132(a)(3)

(SAC ¶¶120-163).

C.     **Plan Governance**

During the relevant period, the Plan Trustees were the fiduciaries with exclusive investment authority with respect to the Plan.  (PSMF ¶14).  Their powers included retaining professionals to assist them in performing their duties, including non-T. Rowe Price investment advisors or managers with or without fiduciary responsibility.  *Id.*

Prior to February 18, 2010, the Plan document placed no restrictions on the Plan investment options the Trustees could offer to participants.  (PSMF ¶56).  Effective February 18, 2010, the Plan Document was amended with language purporting to limit the funds offered in the Plan to T. Rowe Price funds only, stating that

> The Trustees shall determine and monitor the investment options under the Plan among any investment company registered under the Investment Company Act of 1940 sponsored by T. Rowe Price Associates, Inc. or any affiliate or (provided that the applicable trust criteria is met) any common, collective or group trust the advisor of which is any affiliate of the Company, except where such funds do not meet the investment needs of Plan participants as determined by the Trustees pursuant to the requirements of the Plan.

(PSMF ¶57).  Subsequently, effective July 2014, the Plan Document was amended with language

5

purporting to further limit the Trustees' discretion by identifying by categories the T. Rowe Price

funds to be offered in the Plan and limiting Plan investment to those proprietary funds.  (PSMF

¶60).  ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████  ████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

**D.      The Trustees' Deficient Investment Monitoring and Selection Procedures**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

---

[3] In denying Defendants' motion to dismiss, this Court has already rejected Defendants'
argument that these amendments insulate the Trustees from liability for improperly favoring the
in-house funds.  (Dkt. No. 58).  And as Plaintiffs noted in their opposition to that motion, ERISA
provides that any provision in an instrument or agreement that "purports to relieve a fiduciary
from responsibility or liability for any responsibility, obligation, or duty…" under ERISA shall
be "void as against public policy."  29 U.S.C. §1110(a).  Plaintiffs also noted that ERISA limits
the obligation to follow plan documents to provisions that are consistent with fiduciary
obligations.  29 U.S.C. §1104(a)(1)(D).  The Supreme Court has thus made clear that ERISA's
fiduciary duties "trump" any language in a Plan Document, including language requiring a
preference for employer-affiliated investments.  Fifth Third Bancorp v. Dudenhoeffer, 134 S. Ct.
2459, 2468 (2014) ("the duty of prudence trumps the instructions of a plan document, such as an
instruction to invest exclusively in employer stock").

███████████████████████████████████████████████████████

████████████████████  Hence, the amendments to the Plan discussed above purporting to limit choices to the in-house funds, far from constraining the Trustees' practices, simply codified what they had been doing all along.

When it came to selecting funds, the Trustees, in the words of an email sent to the Plan trustees in June 2011 by then-Trustee Ken Moreland, who was also T. Rowe Price CFO, and Gretchen Park, head of human resources:

████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████.

(PSMF ¶¶38-39 (quoting Ex. 33; emphasis added)).  However, there is no evidence of any material improvement in the process for adding new funds subsequent to this date ████████

█████████████████████████████████████████████████████████

██████████████

As for monitoring Plan investment options, during the Class Period the Trustees' process essentially involved two steps. ████████████████████████████████

█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████████████████████████████

██████████████████████████████████.  Once Mr. Athey retired from T. Rowe Price and resigned as Trustee in 2016, (PSMF ¶6), Trustee Michael McGonigle assumed his role, (PSMF ¶18). ████████████████████████████████████████████

████████████████████████████████████████ (PSMF ¶51).

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████

### E. The Trustees' Failed to Obtain Any Independent or Non-conflicted Advice On Plan Investments

Though, as discussed above, the Trustees had authority to engage an independent investment advisor, the Trustees never did so; nor did they obtain or review any independent assessment of the in-house funds offered in the Plan.  (PSMF ¶70).

## II. STANDARD FOR GRANTING SUMMARY JUDGMENT

Summary judgment is proper when the moving party shows that there is "no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fleming v. Boston Scientific Corp., 627 F. App'x 231, 232 (4th Cir. 2015) (citing Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty., 673 F.3d 333, 336 (4th Cir.2012)).  A fact is material when it "might affect the outcome of the suit under the governing law." Strothers v. City of Laurel, Maryland, 895 F.3d 317, 326 (4th Cir. 2018) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).  A genuine dispute over an issue of material fact arises when "the evidence is such that such a reasonable jury could return a verdict for the non-moving party." Id. (quoting Anderson, 477 U.S. at 248).  To oppose summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." Bouchat v. Baltimore Ravens Football Club, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).  "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the

non-moving party's] case."  Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir.

2002) (internal quotation marks omitted)).

### III. ARGUMENT

### A.  ERISA Legal Background:  The Highest Duties Known to the Law

A core purpose of ERISA is to protect employees' retirement security and benefits.  29

U.S.C. §1001(a).  "ERISA is, of course, a remedial statute and should be given a liberal

construction in order to carry out the vitally important public policies of protecting the integrity

of employee benefit plan assets and of deterring fiduciary violations."  Brink v. DaLesio, 667

F.2d 420, 427 (4th Cir.1982)[4]; Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 123

(4th Cir. 1991) (same).  "Congress intended that private individuals would play an important role

in enforcing ERISA's fiduciary duties...."  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 598

(8th Cir. 2009) (quotation marks omitted).  Thus, ERISA empowers participants to sue for relief

to their plan.  29 U.S.C. §1132(a).

To achieve these purposes, ERISA imposes strict fiduciary duties to "prevent abuses of

the special responsibilities borne by those dealing with plans," such as "self-dealing" and

"misappropriation of plan funds." Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 15

(1987).  These "fiduciary obligations of the trustees to the participants and beneficiaries of [an

ERISA] plan are ... the highest known to the law."  Tatum v. RJR Pension Inv. Comm., 761 F.3d

346, 356 (4th Cir. 2014) (quoting Donovan v. Bierwirth, 680 F.2d 263, 272 n. 8 (2d Cir.1982),

cert. denied, 459 U.S. 1069 (1982) (alteration in original)).

---

[4] According to Westlaw, the Brink v. DaLesio, 667 F.2d 420 (4th Cir.1982) opinion was
"Modified and Superseded on Denial of Rehearing," but the modifying opinion is not available
on Westlaw or Lexis.

The two fundamental ERISA fiduciary duties are the duty of loyalty and the duty of prudence.  DiFelice v. U.S. Airways, 497 F.3d 410, 417-18 (4th Cir. 2007).

    1.    The Duty of Loyalty

"Perhaps the most fundamental duty of a [fiduciary] is that he must display...complete loyalty to the interests of the beneficiary and must exclude all selfish interest and all consideration of the interests of third persons." Pegram v. Herdrich, 530 U.S. 211, 224 (2000) (quotation marks and citations omitted).  ERISA's duty of loyalty requires fiduciaries to act with an "eye single" to the interests of participants.  *Id.* at 235.

"[T]rustees violate their duty of loyalty when they act in the interests of the plan sponsor rather than 'with an eye single to the interests of the participants and beneficiaries of the plan'." *Donovan v. Bierwirth,* 680 F.2d 263, 271 (2d Cir.), *cert. denied,* 459 U.S. 1069 (1982); Bussian v. RJR Nabisco, Inc., 223 F.3d 286, 296 (5th Cir. 2000).  Under ERISA, a corporate officer serving as a fiduciary must "wear only one hat at a time, and wear the fiduciary hat when making fiduciary decisions." Pegram, 530 U.S. at 225.  Indeed, a "fiduciary with a conflict of interest must act as if he is 'free' of such a conflict.  'Free' is an absolute.  There is no balancing of interests; ERISA commands undivided loyalty to the plan participants."  Bedrick v. Travelers Ins. Co., 93 F.3d 149, 154 (4th Cir. 1996) (internal citation omitted).

    2.    The Duty of Prudence and the Investment Context

The duty of prudence requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. §1104(a)(1)(B).

With respect to investment options, a "fiduciary of a defined contribution...plan...who is given discretion to select and maintain specific investment options for participants — must exercise prudence in selecting and retaining available investment options." DiFelice, 497 F.3d at 418.  These fiduciary duties are ongoing, meaning fiduciaries must continue to periodically review plan investments and remove imprudent ones.  Tibble v. Edison Int'l, 135 S.Ct. 1823, 1828–29 (2015); DiFelice, 497 F.3d at 423 (a fiduciary with responsibility for plan investments must "initially determine, and continue to monitor, the prudence of *each* investment option available to plan participants.")

"When deciding whether a plan fiduciary has acted prudently, a '[c]ourt must inquire whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate method to investigate the merits of the investment and to structure the investment.'" DiFelice, 497 F.3d at 420 (citation omitted).  In such a situation the court's "focus is on 'whether the fiduciary engaged in a reasoned decisionmaking process, consistent with that of a 'prudent man acting in [a] like capacity'.' " *Id.* (*quoting* 29 U.S.C. §1104(a)(1)(B)).

**B.  Defendant Plan Trustees Breached Their ERISA Fiduciary Duties of Loyalty and Prudence by Failing to Take Reasonable Steps to Mitigate Their Conflicts of Interest**

    1.    ERISA Fiduciaries Have a Duty to Mitigate Conflicts of Interest

Courts both inside and outside this circuit have made clear that ERISA fiduciaries have a duty to mitigate conflicts of interest, and are liable for breach when they fail to take appropriate steps to do so.  The Fourth Circuit has held that "[c]orporate officers must avoid placing themselves in a position where their acts or interests as officers or directors...prevent their functioning with...complete loyalty to participants...." DiFelice, 497 F.3d at 419 (quotation marks omitted).  DiFelice involved ERISA fiduciaries who were conflicted in making decisions regarding whether to offer the stock of their own company in their 401(k) plan.  While DiFelice

did not find the fiduciaries breached their duties, it emphasized that their mitigation of their conflict of interest by utilizing independent advisers was a key reason they could not be found to have breached their duties:

> Based on these facts, the court correctly concluded that U.S. Airways met its fiduciary duty to engage in a reasoned, "prudent" decisionmaking process, using "appropriate methods to investigate the merits" of retaining the Company Fund as an investment option. **We stress that U.S. Airways *twice* engaged independent advisors**—once during the class period, and once marking its end. *Cf. Armstrong,* 446 F.3d at 734 (questioning whether the fiduciaries ever considered other options). Although plainly independent advice is not a "whitewash," *Bierwirth,* 680 F.2d at 272, it does provide "evidence of a thorough investigation," *Howard,* 100 F.3d at 1489.

Id. at 421 (bold emphasis added).

Outside the Fourth Circuit, courts have also emphasized that ERISA fiduciary duties require fiduciaries to take steps to mitigate conflicts of interest. *See* Bussian v. RJR Nabisco, Inc., 223 F.3d 286, 298 (5th Cir. 2000) (ERISA fiduciary duties require "that fiduciaries keep the interests of beneficiaries foremost in their minds, taking all steps necessary to prevent conflicting interests from entering into the decision-making process"); Donovan v. Bierwirth, 680 F.2d 263, 276 (2d Cir.1982), *cert. denied,* 459 U.S. 1069 (1982) (stating that the conflicted trustees "were bound to take every feasible precaution to see that they had carefully considered the other side...."). And, like DiFelice, they have also emphasized the importance of obtaining independent advice:

> A fiduciary must consider any potential conflict of interest, such as a potential reversion of plan assets, and structure its investigation accordingly. Engaging the services of an independent, outside advisor may serve the dual purposes of increasing the thoroughness and impartiality of the relevant investigation, and of relieving the fiduciary of any taint of a potential conflict.

Bussian, 223 F.3d at 300.[5]

---

[5] *See also* Martin v. Feilen, 965 F.2d 660, 670 (8th Cir. 1992) (ESOP fiduciary must consult with external advisor in potential conflict of interest situation); McMahon v. McDowell, 794 F.2d

Consistent with the requirement to mitigate conflicts of interest, courts have found conflicted ERISA fiduciaries liable for breach where they failed to take steps to mitigate their conflicts of interest.  In <u>Leigh v. Engle</u>, 727 F.2d 113 (7th Cir. 1984) the fiduciaries were conflicted in making investment decisions that caused the plan to invest in companies where they had a personal stake in control contests.  The Seventh Circuit reversed the District Court and found the fiduciaries breached their duties by failing to seek independent advice:

> Because of the other factors present in this case, we need not decide whether the potential conflicts alone amounted to ERISA violations. **Where they faced these clearly conflicting loyalties,** [the fiduciaries] **Dardick and Zuckerman undertook no genuinely independent investigation of the trust's investment options.** At the very least they should have realized that their ties to the Engle group and their interests in the control contests cast serious doubt on their ability to act solely in the interests of the beneficiaries. Yet before the trust purchased the stocks and throughout the several control contests, **Dardick and Zuckerman failed to seek independent advice which might have clarified where the interests of the beneficiaries lay**.

<u>Id.</u> at 129 (bold emphasis added).

Similarly, in affirming a grant of preliminary injunction, the Second Circuit in <u>Donovan v. Bierwirth</u>, 680 F.2d 263 (2d Cir.1982), *cert. denied,* 459 U.S. 1069 (1982), found ERISA plan fiduciaries had, and breached, a duty to mitigate conflicts of interest.  <u>Bierwirth</u> involved a case in which plan fiduciaries had used plan funds to purchase company stock as part of their operation to defeat a hostile takeover attempt.  *Id*. at 271-76.  The <u>Bierwirth</u> court found that the

---

100, 110 (3d Cir. 1986) (ERISA duty of loyalty requires conflicted fiduciary "to step aside in favor of a neutral referee, or at the least, to conduct an explicit inquiry into the potential for a conflict of interest").

"record contains specific instances of the trustees' failure to observe the high standard of duty placed upon them," *id.* at 272, including failing to obtain independent advice, failing to thoroughly investigate the facts to determine what courses of action would benefit participants, failing to take "precaution[s] to see that they had carefully considered the other side," *id.* at 276, and in general failing to take steps to mitigate the clear potential conflict they had between doing what was best for participants versus doing what was best for themselves to save their positions at their company.  *Id.* at 272-76.

2.    There is No Dispute of Material Fact That Defendant Trustees were ERISA Fiduciaries and Governed the Plan While Acting under Conflicts of Interest

It is undisputed that the Plan Trustees were named fiduciaries and had responsibility for Plan investments.  (PSMF ¶14.)  It is also undisputed that the Plan Trustees during the Class Period have been or are high-ranking executives and officers of T. Rowe Price Group, Inc. (PSMF ¶¶6-13.)  Moreover, throughout the Class Period the chair of the Trustee Committee has been Defendant Larry Puglia.  (PSMF ¶12.)  Mr. Puglia, as well as his co-Defendant Preston Athey, who served as Trustee from at least December 19, 2006 through November 2016, served as lead portfolio manager of T. Rowe Price funds offered in the Plan, and served on the advisory committees of several more.  (PSMF ¶¶6, 12.)  At all times during the Class Period, the current chief financial officer of T. Rowe Price Group also served as a Plan Trustee; for most of the Class Period this was Ken Moreland, but for the last few years it was Celine Dufetel.  (PSMF ¶¶8, 11.)

Due to the other positions they held, the Trustees labored under three conflicts of interest when making decisions with respect to offering T. Rowe Price's own funds in the Plan.  First, as T. Rowe Price group executives and officers, they of course owed a duty to the company, which

was the Plan sponsor, to do what was in the best interest of the company.[6]  This duty conflicted with their duty as Trustees, as discussed above, to do what was in the best interest of Plan participants.  And this conflict was direct and stark when it came to investment in the in-house funds, since the company directly benefited financially from receiving the fee income Plan participants paid T. Rowe Price when they invested in the T. Rowe Price funds in the Plan. (PSMF ¶29).  It is undisputed that this fee income exceeded $85 million during the Class Period through January 31, 2020 – and that amount is not increased to present value.  (Ex. 11 at 18; Ex. 5 at 258).  On the other hand, it was in the best interest of participants for the Trustees to offer the best funds available regardless of their affiliation with T. Rowe Price.

Second, all Trustees, as high-ranking employees of T. Rowe Price,   Hence, all the Trustees had a conflict between financially benefiting themselves through increased ███ compensation, and offering the best investment options to Plan participants.

Third, the Trustees who were portfolio managers, which included chair Larry Puglia and Preston Athey, had a personal financial interest in having Plan assets invested in the funds they managed that were offered in the Plan.  Their compensation included ████████████

---

[6] *See, e.g.*, <u>De Simone v. VSL Pharm., Inc.</u>, 352 F. Supp. 3d 471, 485–86 (D. Md. 2018).

████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████

██████████████████████████████████████

████████████████████████████ (PSMF ¶79).

There is thus no dispute of material fact that the Trustees were making decisions about Plan investments while they labored under conflicts of interest.

3.      There is No Dispute of Material Fact That Defendant Trustees Failed to Take Reasonable Steps to Mitigate Their Conflicts of Interest

There is also no dispute of material fact that the Trustees failed to take reasonable steps to mitigate their conflict of interest.  These potential mitigation steps included, but were not limited to: (i) engaging an independent investment consultant to advise them on Plan investments, (ii) obtaining and reviewing written evaluations of all the in-house funds from an independent source, (iii) delegating investment authority to an independent investment manager and fiduciary, (iv) evaluating specific non-proprietary funds to see how they compared with the in-house funds, and/or (v) the portfolio manager Trustees could have resigned.

Instead of taking any of these steps, or others, the Trustees did absolutely nothing to materially mitigate their conflict of interest.  All the evaluations and advice regarding Plan investments came from in-house sources, and the Trustees never received any independent guidance.  (PSMF ¶70).  There is no evidence at all that either during or before the Class Period they ever considered or evaluated nonproprietary funds, and no evidence that they considered retaining an independent investment consultant or independent fiduciary.  (PSMF ¶¶67, 70). And they exacerbated the conflict of having portfolio managers of their own funds as Trustees by giving the two portfolio managers ████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

There is thus no dispute of material fact that the Trustees failed to take such reasonable steps to mitigate their conflict of interest.

4.      Defendant Trustees Breached Their ERISA Fiduciary Duties of Prudence and Loyalty by Failing to Mitigate Their Conflicts of Interest

As discussed above, the Fourth Circuit has held that ERISA fiduciaries have an affirmative duty to take steps to mitigate conflicts of interest.  Courts have found that failure to take such steps implicates both the duty of prudence and loyalty, and that what steps are required depends on the circumstances:

> A fiduciary's duty of care overlaps the duty of loyalty. *See Bierwirth,* 680 F.2d at 271. The presence of conflicting interests imposes on fiduciaries the obligation to take precautions to ensure that their duty of loyalty is not compromised. As we have noted, "[t]he level of precaution necessary to relieve a fiduciary of the taint of a potential conflict should depend on the circumstances of the case and the magnitude of the potential conflict." *Metzler,* 112 F.3d at 213. To ensure that actions are in the best interests of plan participants and beneficiaries, fiduciaries under certain circumstances may have to "at a minimum" undertake an "intensive and scrupulous independent investigation of [the fiduciary's] options." *Leigh I,* 727 F.2d at 125–26 (citing *Bierwirth,* 680 F.2d at 272). In some instances, the only open course of action may be to appoint an independent fiduciary. *See Leigh I,* 727 F.2d at 125; *Bierwirth,* 680 F.2d at 271–72.

Bussian v. RJR Nabisco, Inc., 223 F.3d 286, 299 (5th Cir. 2000).

And not only courts, but the procedures the Trustees themselves adopted required them to mitigate conflicts of interest.  Specifically, an Investment Policy Statement the Trustees adopted on March 12, 2010 specifically listed ██████████████████████

████████████     ████████████   The Trustees thus failed to follow their own officially

adopted procedures.[7]

Here, for purposes of summary judgment, the Court need not concern itself with what

precise steps to mitigate their conflicts of interest the Trustees should have taken.  That is

because the record is clear that they took no meaningful steps at all.  The Trustees failure to

obtain advice from an outside investment consultant is particularly notable given that, as

Plaintiffs' expert Samuel Halpern notes, doing so "is one of the most common and

straightforward ways to mitigate conflicts of interest" in the ERISA plan context.  (Ex. 10 at 9).

Hence, Plaintiffs are entitled to summary judgment on this issue.

**C.** **Defendant Plan Trustees Breached Their ERISA Fiduciary Duties of Loyalty and Prudence by Failing to Investigate the Merits of Nonproprietary Funds for the T. Rowe Price 401(k) Plan**

    1.    <u>ERISA Fiduciaries Have a Duty to Take Reasonable Steps to Investigate the Merits of Potentially Superior Investment Options that Might Benefit Plan Participants</u>

As noted above, the Fourth Circuit has emphasized that in determining whether ERISA

fiduciaries have acted appropriately in making an investment decision, the court should examine

whether they "employed the appropriate method to investigate the merits of the investment and

to structure the investment." <u>DiFelice</u>, 497 F.3d at 420 (citation omitted).  Similarly, the U.S.

Department of Labor's regulatory guidance on ERISA investment duties indicates that prudence

requires that the fiduciary give "appropriate consideration to those facts and circumstances that,

given the scope of such fiduciary's investment duties, the fiduciary knows or should know are

relevant to the particular investment or investment course of action involved."  29 C.F.R.

---

[7] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████.

§2550.404a–1(b)(1)(i) (2020).  Furthermore, as courts look to the common law of trusts to provide content to ERISA's fiduciary duties,[8] the Fourth Circuit has looked to the *Restatement (Third) of Trusts* to flesh out ERISA duties in the investment context.  Tatum v. RJR Pens. Inv. Committee, 855 F.3d 553, 566 (4th Cir. 2017).  In particular, Tatum quoted the following provision from the *Restatement*:

> "[F]iduciaries ... ordinarily have a duty to seek ... the lowest level of risk and cost for a particular level of expected return—or, inversely, the highest return for a given level of risk and cost."

*Id.* (quoting *Restatement (Third) of Trusts* §90 cmt. f(1) (Am. Law Inst. 2007)).  This provision, from what is commonly referred to as the "Prudent Investor Rule" section of the *Restatement*,[9] clearly imposes on fiduciaries a duty to take reasonable steps to actively seek superior, low-cost investments – a fiduciary cannot simply look at one or a set of suitable investments and not bother to investigate whether better options might be available.

The *Restatement* also imposes a greater burden on fiduciaries with more investment sophistication to seek out superior investments.

> if the trustee possesses a degree of skill greater than that of an individual of ordinary intelligence, the trustee is liable for a loss that results from failure to make

---

[8] "ERISA abounds with the language and terminology of trust law.  ERISA's legislative history confirms that the Act's fiduciary responsibility provisions codify and make applicable to ERISA fiduciaries certain principles developed in the evolution of the law of trusts."  Firestone Tire & Rubber v. Bruch, 489 U.S. 101, 110 (1989) (internal quotation marks, citations, and alterations omitted).  Indeed, ERISA expressly requires that the assets of a retirement plan "be held in trust by one or more trustees," 29 U.S.C. §1103.  Recent Supreme Court cases interpreting ERISA have relied heavily on principles of trust law.  *See, e.g.,* Tibble v. Edison Int'l, 135 S. Ct. 1823, 1828 (2015) (vacating Ninth Circuit's ERISA opinion because of its failure to consider trust law); Fifth Third Bancorp v. Dudenhoeffer, 134 S. Ct. 2459, 2465 (2014).

[9] "[T]he prudent investor rule and the Uniform [Prudent Investor] Act [which is based on the prudent investor rule] have met with general acceptance both by widespread adoption (see Forenote to this Chapter) and in commentary."  *Restatement (Third) of Trusts* §90, reporters' note to cmt. a.

reasonably diligent use of that skill. So also,… **if the trustee has** or represents that it has **special facilities for investment management, the trustee is liable for a loss that results from failure to make reasonably diligent use of that skill** or of those special facilities.

*Id.* §90 cmt. d (emphasis added).

    2.    <u>There is No Dispute of Material Fact that Defendant Trustees Took No Steps to Investigate the Merits of Non-Proprietary Investment Options</u>

It is undisputed that the Trustees never considered adding any non-proprietary investment options to the Plan during, or even before, the Class Period.  (PSMF ¶¶33, 36).  Further, the Trustee meeting minutes are utterly devoid of any mention of competing funds or comparison of the T. Rowe Price funds to specific non-proprietary alternatives.

    3.    <u>There is No Dispute of Material Fact that There Were Potentially Superior Non-proprietary Investment Options for the Plan</u>

There is also no reasonable dispute that there were attractive non-proprietary alternatives to many T. Rowe Price funds.

To begin with, Defendants have admitted that other fund companies offered better options in some asset classes, (PSMF ¶34), and that Vanguard offers less costly alternatives to T. Rowe Price *in every fund category*, *id.*  Yet, the Trustees never considered those other funds for the T. Rowe Price 401(k) Plan.

Furthermore, though the Trustees themselves never bothered to identify or evaluate non-proprietary alternatives to the T. Rowe Price funds, Plaintiffs' expert Dr. Steven Pomerantz has developed a scoring system utilizing data similar to what the Trustees relied on in their fund report cards, to monitor the costs and performance of the in-house funds in the Plan.  (Ex. 11 at 4-9).  Plaintiffs have identified 31 in-house funds that they contend should have been removed from the Plan at the start of the Class Period, (Ex. 11, exhibit 7 thereto), and eight funds added to the Plan during the Class Period that they contend should never have been added, (Ex. 11,

exhibit 6 thereto).  Plaintiffs asked Dr. Pomerantz to determine how many funds in one of the

standard mutual-fund databases would have scored higher than the 31 in-house funds at the start

of the Class Period, and the eight additional funds at the time they were added to the Plan.  Dr.

Pomerantz determined that 1450 funds in total, and 43 on average per fund, ranked higher than

each of those funds.  (Ex. 11 at 3).  While Plaintiffs do not contend that funds should be selected

or replaced solely based on the results of Dr. Pomerantz' scoring system, his report clearly shows

that there were attractive alternatives to many of the in-house funds that were never considered

or evaluated by the Trustees.[10]

4.  <u>Defendant Trustees Breached Their ERISA Fiduciary Duties of Prudence and
    Loyalty by Failing to Investigate Potentially Superior Non-Proprietary Investment
    Options for the Plan</u>

As discussed above, ERISA fiduciaries have a duty to investigate the merits of

investments, as well as consider all related and relevant facts and circumstances.  Furthermore,

they have the duty to make reasonable efforts to seek out the lowest costs and highest returns for

the level of risk appropriate for the Plan and its participants.

For purposes of summary judgment, the Court need not determine what constitutes a

"reasonable effort" to seek out the lowest costs and highest returns.  The reason is that in this

case the Trustees made no such effort at all; they simply offered in the Plan the company's own

in-house funds.  Hence, they clearly breached their duty of prudence – they failed to make any

investigation of the merits of alternative investments – and their duty of loyalty – they simply

---

[10] Plaintiffs other expert, Samuel Halpern, reviewed additional data Dr. Pomerantz provided
regarding the funds that scored higher, and has opined that plan fiduciaries following reasonable
standards of investment due diligence likely would have replaced or would have not selected to
begin with the total of 39 T. Rowe Price funds offered in the Plan that Plaintiffs have identified.
(Ex. 10 at 4 ¶¶(C)-(D)).

offered the funds that would be best for the Plan sponsor's bottom line and made no attempt to evaluate whether other funds would be better for Plan participants.

Furthermore, it is undisputed that among the Trustees were at least two individuals, chair Larry Puglia and Trustee Preston Athey, who had extraordinarily high levels of investment expertise.  Both were highly educated and trained, and both managed funds professionally for T. Rowe Price.  (PSMF ¶¶6, 12, 15-16).  Given their high level of expertise, they owed a duty, as discussed above, to employ that expertise to the benefit of Plan participants.  Yet they clearly failed to do so.  They undoubtedly knew of the existence of attractive non-proprietary alternatives to funds offered in the Plan, but failed to undertake any evaluation of non-proprietary alternatives.

**D.  Defendant Plan Trustees Breached Their ERISA Fiduciary Duties of Loyalty and Prudence by Simply Adding New T. Rowe Price Funds to the Plan without Investigating Their Merits or the Alternatives**

As noted in the fact section, *supra*, Defendant Trustees simply added new T. Rowe Price funds to the Plan without investigating their merits or comparing them to the numerous attractive non-proprietary fund alternatives available in the marketplace.  As was also noted above, ERISA fiduciaries have a fundamental duty to investigate the merits of Plan investments.  Hence, by failing to undertake any investigation, the Trustees breached their duties of prudence and loyalty in taking actions that benefited the Plan sponsor without investigating the benefit for Plan participants.

**E.  Plaintiffs are Entitled to Summary Judgment as to Liability on Count VI Because Defendants Engaged in Prohibited Self-Dealing in Violation of ERISA §406(b) (29 U.S.C. §1106(b))**

Section 406 of ERISA (29 U.S.C. §1106) supplements a fiduciary's duty of loyalty by "categorically" barring transactions "likely to injure the pension plan." Lockheed Corp. v. Spink, 517 U.S. 882, 888 (1996) (citation omitted). These "per se" prohibitions have been described as

a "gloss on the duty of loyalty." <u>Chesemore v. Alliance Holdings, Inc.</u>, 886 F. Supp. 2d 1007, 1055 (W.D. Wis. 2012); *see also* <u>Mass. Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134, 142-43, & 143 n.10  (1985). As the Supreme Court has said, each prohibition enumerated in §1106 is aimed at rooting out conflicts of interest and preventing self-dealing. <u>Russell</u>, 473 U.S. at 142-43 & 143 n.10.

Accordingly, to ensure that plans have adequate protection, ERISA precludes self-dealing transactions between a fiduciary and the Plan, including prohibiting a fiduciary from dealing with the assets of the plan in its own interest or receiving any consideration for its own personal account from any party dealing with such plan in connection with a transaction involving plan assets. *See* ERISA §§406(b)(1) & (b)(3), 29 U.S.C. §§1106(b)(1), (b)(3); <u>Pipefitters Local 636 Ins. Fund v. Blue Cross and Blue Shield of Michigan</u>, 722 F.3d 861, 868 (6th Cir. 2013). As this Court has already found, there is no statutory exception to the prohibition on fiduciary self-dealing.  (Dkt. No. 58 at 19); *see also* 29 C.F.R. §§2550.408b-2(a), 2550.408c-2(a); <u>Nat'l Sec. Systems v. Iola</u>, 700 F.3d 65, 94-95 (3d Cir. 2012) (finding ERISA's statutory language "admits of no exceptions" to the "blanket prohibition" on self-dealing); <u>Acosta v. Chimes D.C., Inc.</u>, No. 15-3315, 2019 WL 931710, at *21 (D. Md. Feb. 26, 2019) ("There is no statutory exception to the prohibition on fiduciary self-dealing."); <u>Patelco Credit Union v. Sahni</u>, 262 F.3d 897, 911 (9th Cir. 2001) (summary judgment appropriate on 406(b) claim if undisputed facts established that defendant engaged in self-dealing because exemptions under ERISA §408 do not apply).

ERISA Section 406(b) thus "creates a per se ERISA violation; even in the absence of bad faith, or in the presence of a fair and reasonable transaction, [406(b)] establishes a blanket prohibition of certain acts, easily applied, in order to facilitate Congress' remedial interest in protecting employee benefit plans." <u>Perez v. Ulery</u>, No. 14-185, 2015 WL 7454684, at *3

(W.D.N.C. Nov. 23, 2015) (finding that the prohibitions under ERISA §406(b) "are absolute")

(quoting Gilliam v. Edwards, 492 F. Supp. 1255, 1263 (D.N.J.1980); *see also* Brink v. DaLesio,

496 F. Supp. 1350, 1367 (D. Md.1980), *aff'd in part and rev'd in part on other grds.,* 667 F.2d

420 (4th Cir.1982) (transactions under 406(b) are "prohibited per se… a defendant who engages

in a prohibited transaction does not escape liability by showing 'the absence of bad faith, or

…the presence of a fair and reasonable transaction…'") (quoting Gilliam, 492 F. Supp. at

1263).The rules of §406(b) are to be construed broadly, and liability must be imposed even

where there is "no taint of scandal, no hint of self-dealing, no trace of bad faith." Lowen v.

Tower Asset Mgmt, Inc., 829 F.2d 1209, 1213 (2d Cir. 1987) (quoting Cutaiar v. Marshall, 590

F.2d 523, 528 (3rd Cir.1979); *see also* Leigh, 727 F.2d at 126.

Because §406(b) creates a per se prohibition on fiduciary self-dealing, "even in the

presence of a fair and reasonable transaction" – in contrast to the proscriptions subject to ERISA

§406(a)'s liability of fiduciary conduct with parties in interest, with its concomitant exceptions –

Defendants' failure to ignore their personal and corporate interests, resulting in the systematic

receipt of fees earned through their undisputed self-dealing conduct, must be subject to §406(b)

liability.[11]

---

[11] ERISA's limitations provisions do not bar Plaintiffs §406(b) claim.  *See* Intel Corp. Inv. Comm. v. Sulyma, 140 S. Ct. 768 (2020). The Supreme Court in Sulyma found that in order for the limitations period to block a self-dealing claim, a plaintiff "must in fact have become aware of [Defendants' prohibited conduct]" to trigger the shorter three year statute of repose. Defendants can offer no evidence to demonstrate that Plaintiffs were actually aware of Defendants' conduct as being prohibited by ERISA prior to filing this lawsuit; and even if they demonstrate that they sent prospectuses or other plan disclosures revealing the pertinent fact, this does not demonstrate actual knowledge of those facts. *Id.* at 773. District courts considering similar ERISA fiduciary breach and prohibited transaction allegations have adhered to the Court's holding, determining without awareness of the fiduciaries' procedures, the shorter three year limitations period cannot be applied to a prohibited transaction claim. *See, e.g.,* Bouvy v. Analog Devices, Inc., 2020 WL 3448385, at *5 (S.D. Cal. 2020) (evidence of disclosure of fees "insufficient to prove 'actual knowledge' because 'a given plaintiff will not necessarily be aware

1. <u>In addition to Defendant Trustees, Defendant T. Rowe Price Group and its Wholly Owned Subsidiaries T. Rowe Price Associates, Inc. and T. Rowe Price Trust Company, ("TRP Investment Affiliates") are Fiduciaries of the Plan</u>

As noted above, it is undisputed that the Defendant Trustees are all fiduciaries to the Plan.[12] Defendants T. Rowe Price Group (T. Rowe Price) and TRP Investment Affiliates are also fiduciaries of the Plan.  TRP Investment Affiliates are wholly-owned subsidiaries of T. Rowe Price, and operate as part of T. Rowe Price, with their profits being reported on T. Rowe Price consolidated financial statements.  (PSMF ¶¶26-27).  The Defendant Trustees are also all employed by TRP Investment Affiliates.  (PSMF ¶28).  Further, the Plan Document shows that T. Rowe Price has ultimate authority over every aspect of the administration and management of the Plan as plan sponsor, and therefore is a fiduciary of the Plan.  (PSMF ¶¶24-25).  Through its authority to amend Sections 6.5 and 11.4(d) of the Plan Document (through Am. 5 to the 2006 Plan Document and Am's 2 & 3 to the 2012 Plan Document, which required the Plan to offer only T. Rowe Price funds), and TRP Investment Affiliates receiving Plan assets for investment in its funds and setting its own compensation through fees charged to the Plan, T. Rowe Price also has control and authority over management of the Plan's assets.  (PSMF ¶¶24, 29, 57, 60).  Further, through its senior management, TRP has the authority to add and remove members of the Plan Trustees, and also through the senior management has supervisory authority over the

---

of all facts disclosed to him; even a reasonably diligent plaintiff would not know those facts immediately upon receiving the disclosure [and does not show] that Plaintiff had actual knowledge of Defendants' breached duties.") (quoting <u>Sulyma</u>, 140 S. Ct. at 778).

[12] Defendant Trustees satisfy ERISA's definition of a fiduciary, as they "exercise[] any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. §1002(21)(A)(i). As discussed *supra*, the Trustees are responsible for adding and removing investment options from the Plan, monitoring the performance of investment options, and otherwise managing the Plan.

Trustees.  (PSMF ¶¶19-22, 25).  *See* Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1465 (4th Cir. 1996) ("the power … to appoint, retain and remove plan fiduciaries constitutes 'discretionary authority' over the management or administration of a plan within the meaning of §1002(21)(A)").  For all these reasons, T. Rowe Price and TRP Investment Affiliates are functional fiduciaries because they exercise "discretionary authority or discretionary control respecting management" of the Plan, and exercise "authority or control respecting management or disposition of its assets." *See* 29 U.S.C. §1002(21)(A).

2. Defendant Trustees, T. Rowe Price and TRP Investment Affiliates Violated ERISA Section 406(b)(1)

ERISA §406(b)(1) prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account."  29 U.S.C. §1106(b)(1).  Defendant Trustees, T. Rowe Price and TRP Investment Affiliates violated ERISA §406(b)(1) by directing the investment of Plan assets into TRP Investment Affiliate-managed mutual funds and trusts in which they have a financial interest.  It is undisputed that the fees received from participants' investments in T. Rowe Price funds directly contribute to the profitability of the company.  (PSMF ¶29). ████ ███████████████████████████████████████████████ The Plan's investment in those funds caused payments to T. Rowe Price, through fees collected by TRP Investment Affiliates, calculated based on the amount invested in the Plan. But for these investments, T. Rowe Price would not have received those payments ████████████████████████ ████████

In this regard, the circumstances of the instant case are identical to Perez v. City Nat'l Corp., 176 F. Supp. 3d 945 (C.D. Cal. 2016), where the court granted affirmative summary judgment on plaintiffs' §406(b)(1) claim based on City National's self-dealing within its own

defined contribution plan.  *Id.* at 946, 948-49.  In <u>City National</u>, the court held that the plan sponsor and the fiduciary committee members (collectively referred to as "City National") dealt with the assets of the plan in their own interest by selecting funds for the plan that would increase the compensation (and profits) City National would receive for administering the plan, in violation of §406(b)(1).  *Id.; see also* <u>Lowen</u>, 829 F.2d at 1212 (finding that fiduciary investment management firm violated §406(b)(1) by directing the plan to invest in securities that then paid commissions and fees to the firm).  This Court should reach the same result.

In response, Defendants are likely to note how the court in <u>Brotherston</u> interpreted what constitutes "plan assets" under ERISA §406(b)(1), as well as the District of Missouri decision in *Wildman* that followed <u>Brotherston's</u> reasoning.  *See* <u>Brotherston v. Putnam Invs., LLC</u>, No. 15-13825, 2017 WL 1196648, at \*5 (D. Mass. March 30, 2017), *aff'd in part, vacated in part, remanded,* 907 F.3d 17 (1st Cir. 2018); <u>Wildman v. Am. Century Serv.</u>, No. 16-737, 2018 WL 2326627, at \*6-7 (W.D. Mo. May 22, 2018).  In holding that plaintiffs' §406(b)(1) claim failed as a matter of law, the court in <u>Brotherston</u> relied on the First Circuit's admittedly "narrow" interpretation of "plan assets" to find that cash held by mutual funds are not "assets of the plan" because the challenged fees are paid out of mutual fund assets rather than plan assets.  *See* <u>Brotherston</u>, 2017 WL 1196648, at \*5 (holding that only shares of funds owned by a plan are considered plan assets under §406(b)(1)).  <u>Wildman</u> followed <u>Brotherston's</u> reliance on the same narrow definition of plan assets.  <u>Wildman</u>, 2018 WL 2326627, at \*6-7.  Defendants will advocate that although ERISA does not define "plans assets," and this Circuit has not had occasion to delineate the precise boundaries of the term as it is used in §406(b)(1), this Court should likewise determine that mutual fund fees assessed on the Plan's investments in T. Rowe

Price funds are not considered plan assets, and therefore these payments to itself are not prohibited under §406(b)(1).

This approach to the definition of "plan assets," however, is in direct contravention of the very purpose of ERISA's prohibited transaction provisions – to "categorically" bar transactions "likely to injure the pension plan." Lockheed, 517 U.S.at 888; *see also* Russell, 473 U.S. 134, 140 n.8 (ERISA's legislative history makes clear that "the crucible of congressional concern was misuse and mismanagement of plan assets by plan administrators and that ERISA was designed to prevent these abuses in the future")  (citing 120 Cong.Rec. 29,932, 29,951, 29,954, 29,957, 29,961, 29,194, 29,196–97, 29,206 (1974)).  Accordingly, despite, and perhaps because ERISA does not contain a definition of "plan assets," construction of the term is construed broadly to protect participants.  Patelco Credit Union, 262 F.3d at 908; *see also* Lowen, 829 F.2d at 1213, 1215 ("[P]rotection of beneficiaries and notice to fiduciaries requires that [§406(b)] be broadly construed.... [because] Congress was apprehensive that exceptions to the common law rules against self-dealing were unduly eroding the underlying principle and included Section 406 as a barrier to such erosion."); Leigh, 727 F.2d at 126; Shirk v. Fifth Third Bancorp, No. 05-049, 2008 WL 4449024, at *16-17 (S.D. Ohio Sept. 26, 2008).

As a result, in determining whether a particular investment qualifies as a "plan asset," courts have adopted a "functional approach" in which they consider whether the asset "may be used to the benefit (financial or otherwise) of the fiduciary at the expense of plan participants or beneficiaries." Patelco Credit Union, 262 F.3d at 908.  As noted, it is undisputed that the fees earned by TRP Investment Affiliates (and therefore by T. Rowe Price itself) were only received by virtue of Defendants directing the Plan's investment in its proprietary funds.  In other words,

without Defendants' violation of their duty of loyalty to refrain from self-dealing, T. Rowe Price would not have received the more than $85 million in fees challenged as prohibited transactions.

As indicated above, courts following this functional approach to the definition of "plan assets" are aided by ERISA's legislative history and the Supreme Court's admonition that the misuse and mismanagement of plan assets was Congress's paramount concern in enacting ERISA and its prohibited transaction provisions.  *See* Metzler v. Solidarity of Labor Organizations Health & Welfare Fund*, No. 95-7247, 1998 WL 477964, at \*7 (S.D.N.Y. Aug. 14, 1998) (courts using a functional approach in determining whether item constitutes an asset of the plan, "view the congressional imposition [as] a broad duty of loyalty upon fiduciaries of employee benefit plans").  So do courts in this District.  *See, e.g.,* Brink*, 496 F. Supp. at 1367 ("ERISA is a 'comprehensive remedial statute designed to protect the interests of participants in employee benefit plans' and that a broad construction of the statute is therefore appropriate") (quoting Marshall v. Kelly*, 465 F. Supp. 341, 349 (W.D. Okla. 1978)).  The court in Brink held that Congress' intent in enacting ERISA's prohibited transaction provisions was to prevent fiduciaries from engaging in any conduct that might have the potential to cause them to be disloyal to the plan, and that Congress sought to prevent fiduciary breaches by prohibiting transactions between fiduciaries and parties of interest that exude even the appearance of impropriety and allow for the potential of abuse. *Id.* ("the question of whether ERISA has been violated does not depend on whether any harm results from the transaction.  Congress was concerned in ERISA to prevent transactions which offered a high potential for loss of plan assets or for insider abuse.") (quoting Marshall*, 465 F. Supp. at 349).  Accordingly, strictly construing §406(b)(1) in light of Congressional intent and the remedial nature of ERISA as a whole, the court in *Brink* found "it is psychologically unrealistic to expect a trustee to ignore his personal

interests when they are potentially at odds with his fiduciary obligations." *Id.* at 1367-68 (citing Gilliam v. Edwards, 492 F. Supp. 1255 (D.N.J. 1980). This Court should similarly interpret §406(b)(1) broadly to protect T. Rowe Price's Plan participants and find that the term "plan assets" logically encompasses mutual fund assets.

    3.   Defendant Trustees, T. Rowe Price and TRP Investment Affiliates Violated ERISA Section 406(b)(3)

Even if the Court were to rely on the First Circuit's narrow interpretation of "plan assets" in ruling on Plaintiffs' §406(b)(1) claim, this determination cannot affect a decision that T. Rowe Price's receipt of tens of millions of dollars in fees violated §406(b)(3). Section 406(b)(3) of ERISA is broadly written and forbids a fiduciary from "receiv[ing] any consideration for his own personal account from any party dealing with such plan *in connection with* a transaction involving the assets of the plan." 29 U.S.C. §1106(b)(3) (emphasis added). Thus, this provision covers a "broader swath of conduct" than §406(b)(1) because, although "[v]iolations of Section [406(b)(3)] must relate to transactions involving assets of the plan … the consideration received by the fiduciary need not itself constitute plan assets." Haddock v. Nationwide Fin. Servs., 419 F. Supp. 2d 156, 171 (D. Conn. 2006); *see also* Leimkuehler v. American United Life Ins. Co., 752 F. Supp. 2d 974, 986-87 (S.D. Ind. 2010) ("A violation of section 1106(b)(3) can occur in a less direct manner than self-interested dealing with plan assets proscribed in (b)(1)."). Even the court in Brotherston recognized that §406(b)(3) applies to the types of claims at issue. Brotherston, 2017 WL 1196648 at *7. For the reasons discussed *supra*, this Court should grant Plaintiffs' partial motion for summary judgment as to Defendants' violation of §406(b)(3).

## IV. **CONCLUSION**

Plaintiffs respectfully request that their motion for partial summary judgment be granted.

Respectfully submitted,


/s/  Scott M. Lempert
Scott M. Lempert (admitted *Pro Hac Vice*)
**COHEN MILSTEIN SELLERS &
TOLL, PLLC**
Karen L. Handorf (admitted *Pro Hac Vice*)
Jamie Bowers (admitted *Pro Hac Vice*)
Douglas J. McNamara (MD Bar #20786)
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
Tel: (202) 408-4600
Fax: (202) 408-4699
khandorf@cohenmilstein.com
slempert@cohenmilstein.com
jbowers@cohenmilstein.com
dmcnamara@cohenmilstein.com


J. Brian McTigue (*Admitted Pro Hac Vice*)
James A. Moore (*Admitted Pro Hac Vice*)
**MCTIGUE LAW LLP**
4530 Wisconsin Avenue NW
Suite 300
Washington, DC 20016
(202) 364-6900
(202) 364-9960 (facsimile)
bmctigue@ mctiguelaw.com
jmoore@mctiguelaw.com


***Attorneys for Plaintiffs and the Class***

31