# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DAVID G. FEINBERG,** *et al.*, **and all others similarly situated,** | * | |
| **Plaintiffs** | * | |
| v. | * | CIVIL NO. JKB-17-427 |
| **T. ROWE PRICE GROUP, INC.,** *et al.*, | * | |
| | * | |
| **Defendants** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

In this complex class action suit challenging Defendant T. Rowe Price Group, Inc. ("T. Rowe Price")'s administration of the T. Rowe Price U.S. Retirement Program (the "Plan"), Plaintiffs brought various claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The Court recently declined to grant summary judgment on most of these claims, which still present genuine issues of material fact. (*See* ECF No. 200.) Now pending before the Court is Plaintiffs' Motion for Reconsideration of this Court's February 10, 2021 Memorandum and Order that, *inter alia*, denied Plaintiffs' Motion for Summary Judgment (ECF Nos. 200, 201). (ECF No. 205.) Plaintiffs' motion is fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the Court DENIES Plaintiffs' Motion for Reconsideration.

### I.   *Brief Factual Background*

As described in greater detail in the Court's recent Memorandum (ECF No. 200), the Plan is a defined contribution 401(k) "employee pension benefit plan" within the meaning of 29

1

U.S.C. § 1002(2)(A). (Pl. Statement of Material Facts ¶¶ 1–2, ECF No. 145-2 ["PSMF"].) Plaintiffs are, with limited exclusions, all of the Plan participants "who had a balance in their plan account at any time" during the time period at issue (*see* ECF No. 83), and Defendants include T. Rowe Price, individuals who served as trustees of the Plan from February 14, 2011 through the date of judgment (the "Trustees") (*see* PSMF ¶¶ 4–18), and other groups affiliated with T. Rowe Price.

The Plan's total assets under management included contributions from both employees and T. Rowe Price. (Def. Statement of Undisputed Material Facts ¶¶ 10–23, ECF No. 154 ["DSMF"].) The Trustees decided which universe of investment options to include in the Plan, and the Plan's participants decided in which options they would invest their retirement funds. (*Id.* ¶ 24.) The Trustees regularly reviewed the Plan's performance, determining whether poorly-performing "exception" funds should be retained as Plan options. (*Id.* ¶ 200; PSMF ¶¶ 45–46.) From January 31, 2011 to January 31, 2020, the Plan's total assets under management increased from approximately $980 million to $3.12 billion. (DSMF ¶¶ 10–23.) This lawsuit centers on the Trustees' practice of solely offering Plan participants T. Rowe Price investment options, a constraint that has been explicitly written into the Plan document through what Plaintiffs call a "hardwiring provision." (*See* PSMF ¶ 33.)

## II.  *Legal Standard*

Under Federal Rule of Civil Procedure 54(b), a district court may revise any decision before an entry of final judgment. Motions for reconsideration of interlocutory orders "are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003). "In considering whether to revise interlocutory decisions, district courts in this Circuit have looked to whether

2

movants presented new arguments or evidence, or whether the court has obviously misapprehended a party's position or the facts or applicable law." *Cohens v. Md. Dep't of Human Res.*, 933 F. Supp. 2d 735, 742–43 (D. Md. 2013) (internal quotation marks and citations omitted).

## *III. Analysis*

In their Motion for Reconsideration, Plaintiffs argue this Court should have held that certain provisions of the Plan document are void under ERISA, and Plaintiffs take issue with several general statements in the Court's introduction to its opinion on summary judgment (ECF No. 200). (*See* Mot. Reconsider Mem. Supp. at 1, ECF No. 205-1.) The Court will briefly discuss each of Plaintiffs' arguments and explain why none warrants reconsideration of the Court's earlier conclusions of law.

### *A. Whether Plan Provisions are Void*

Plaintiffs first ask the Court to reconsider its implicit determination that the Plan's "hardwiring" language is legally valid. (Mot. Reconsider Mem. Supp. at 2–5.) Although Plaintiffs only mentioned their argument that the "hardwiring" provisions are void under ERISA in one footnote of the legal memorandum supporting their Motion for Partial Summary Judgment (*See* Pl. Mot. Part. Summ. J. Mem. Supp. at 6 n.3, ECF No. 142-1), Plaintiffs fault the Court for implicitly dismissing that argument by relying on the "hardwiring" language in its analysis. (Mot. Reconsider Mem. Supp. at 3 (noting that the Court "consider[ed] the existence of the hardwiring language as a relevant factor in determining whether Defendants are liable for ERISA fiduciary breaches").)

The Court's view on the Plan's "hardwiring" language falls somewhere in between the parties' diametrically opposed views on this matter. In its memorandum of law denying

3

Defendants' motion to dismiss, the Court rejected Defendants' attempt to use the "hardwiring" language as a blanket defense that would shield them from all liability, because a trustee's fiduciary duties trump the requirements set forth in the Plan document. (*See* ECF No. 58 at 12); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 568 (1985) ("[T]rust documents cannot excuse trustees from their duties under ERISA."). While the Court has given the "hardwiring" language less effect than Defendants desired, the Court does not agree with Plaintiffs' contention that this language should receive no effect.

Section 410(a) of ERISA provides that "any provision in an agreement or instrument which *purports to relieve a fiduciary from responsibility or liability* for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a) (emphasis added). In other words, this "anti-exculpation provision" of ERISA ensures that, "[i]f a fiduciary 'writes words in an instrument exonerating itself of fiduciary responsibility, the words, even if agreed upon, are generally without effect.'" *Solis v. Plan Benefit Servs., Inc.*, 620 F. Supp. 2d 131, 134–35 (D. Mass. 2005) (quoting *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1418 (9th Cir. 1997)).

The Court disagrees with Plaintiffs' view that the "hardwiring" language is essentially a means of impermissibly relieving Defendants from liability under ERISA. Plan language limiting the universe of Defendants' investment options is not equivalent to language that requires fiduciaries to take actions that clearly violate ERISA, or language that directly states that trustees' liability under ERISA is limited. Plaintiffs cite several precedents discussing retirement plan language that fits into the latter two categories, and is thereby distinguishable from the language in the Plan at issue. *See, e.g., Chi. Bd. Options Exch. v. Conn. Gen. Life Ins.*, 713 F.2d 254, 259 (7th Cir. 1983) (holding that plan language explicitly stating, "the Insurance

4

Company's liability as a Fiduciary is limited to that arising from its management of any assets of the Plan held in its separate account" is void under ERISA); *Solis*, 620 F. Supp. 2d at 134–35 (holding that a plan that removed a trustee's obligation to collect employers' contributions to a retirement plan was void because it directly contradicted ERISA's mandate that a trustee must hold plan assets in trust).

Plaintiffs alternatively argue that the drafters of the "hardwiring" language *intended* for it to shield Defendants from liability under ERISA. (Mot. Reconsider Mem. Supp. at 3.) This Court will follow the above precedents' approach of limiting its analysis to the explicit language in documents governing retirement plans, rather than their drafters' possible intent. Moreover, Plaintiffs' view is inconsistent with section 410(a) of ERISA, which regulates written "provision[s]" in retirement plans, without mentioning their drafters' intent. *See* 29 U.S.C. § 1110(a). Accordingly, the Court declines to view the hardwiring provision as being void under § 410(a) of ERISA, or as being a complete defense to Defendants' decision to select only T. Rowe Price investment options for the Plan. The parties will have an opportunity to further address the significance of the hardwiring provision at trial.

### B. Plaintiffs' Concerns Over the Court's Phraseology

Plaintiffs next argue that several broad statements in the Court's introduction to its opinion conflict with the legal standards governing ERISA cases. (Mot. Reconsider Mem. Supp. at 5–10.) These statements include the Court's general observations that Defendants' in-house funds have "generally performed well," that Plaintiffs have not identified "egregious improprieties" on the part of Defendants, and that the Plan's assets have, by one measure, "more than tripled in value in the relevant period."[1] (*See* ECF No. 200 at 2.) In response, Defendants

---

[1] To contest the Court's characterization of the Plan assets as performing well over the relevant time period, Plaintiffs submit an expert report from Dr. Steve Pomerantz, in which Dr. Pomerantz attests that the Plan's return would have

5

argue that the Plan's "strong collective performance" does have legal relevance, and that the Court's introductory statements "reflect nothing more than its conclusion that Plaintiffs are highly unlikely to be able to prove" their case. (Opp'n Mot. Reconsider at 15, ECF No. 208.)

The statements highlighted by Plaintiffs appeared in the introduction to the Court's opinion, not its legal analysis. The Court emphasizes that these statements were simply characterizations of the evidence presented by both parties, rather than findings of fact or conclusions of law. Thus, these statements are not grounds for reconsideration. Accordingly, in their response to Plaintiffs' motion, Defendants have likewise misconstrued the Court's introductory statements as having legal significance and constituting a judgment on the merits of Plaintiffs' case. In sharing its preliminary impressions of the evidence in the introduction to its opinion, this Court in no way foreclosed the facts that the parties may prove at trial. At trial, the parties will have an opportunity to fully present their evidence on the key remaining factual disputes in this case.

## *IV.   Conclusion*

For the foregoing reasons, Plaintiffs' Motion for Reconsideration (ECF No. 205) is hereby DENIED.

---

been higher if its assets were instead invested in Vanguard index funds. (Steve Pomerantz Decl., Mot. Reconsider Ex. A, ECF No. 205-2.) Because Defendants do not object to Plaintiffs' introduction of new evidence, but instead submit a declaration from their own expert witness (*see* Jennifer Conrad Decl., ECF No. 208-1), the Court will not, at this time, consider the appropriateness of introducing this new evidence after the close of discovery.

6

DATED this 22 day of March, 2021.

BY THE COURT:

_____
James K. Bredar
Chief Judge