**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

---

DAVID G. FEINBERG, et al., and all
others similarly situated,

                    Plaintiffs,

vs.

T. ROWE PRICE GROUP, INC., et al.,

                Defendants.

---

Case No. 1:17-cv-00427-JKB

**PLAINTIFFS' BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS AND LIST OF EXHIBITS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND .......................................... 2

        A.      The Parties and the Class ......................................................................... 2

        B.      Claims for Relief ..................................................................................... 3

        C.      Procedural History ................................................................................... 3

        D.      The Proposed Settlement ......................................................................... 5

                1.      $7 Million Cash Payment to be Distributed According to the Plan of
                        Allocation ................................................................................... 5

                2.      Addition of a Brokerage Window ............................................... 6

                3.      $6.6 Million Already Paid to Class Members ............................ 6

        E.      Distribution of Class Notice, Creation of Settlement Website, and
                Establishment of Toll-Free Information Telephone Line ...................... 7

        F.      Lack of Objections ................................................................................... 8

        G.      Approval by Independent Fiduciary ........................................................ 8

        H.      Delivery of CAFA Notice ......................................................................... 9

III.    THE PROPOSED SETTLEMENT SATISFIES THE STANDARD FOR FINAL
        APPROVAL ..................................................................................................... 9

        A.      The Standard for Approval for a Class Action Settlement ...................... 9

        B.      The Settlement is the Product of Good Faith Bargaining at Arm's Length ....... 10

        C.      The Relative Strength of Plaintiffs' Case on the Merits Supports Final
                Approval ................................................................................................. 11

        D.      The Existence of Strong Defenses the Plaintiffs are Likely to Encounter if the
                Case Goes to Trial Supports Final Approval ......................................... 12

        E.      The Cost of Additional Litigation Supports Final Approval ................. 13

        F.      There is No Evidence Defendants Would be Unlikely to Satisfy any

Judgment ........................................................................................................... 13

G.    The Absence of Opposition to the Settlement Supports Final Approval ........... 13

H.    The Independent Fiduciary's Approval of the Settlement Supports Final
Approval ........................................................................................................... 13

I.    The Additional Fed. R. Civ. P. 23(e)(2) Factors are Met .................................. 14

IV.    CONCLUSION ......................................................................................................... 15

**Exhibits to Motion**

1.  Plan of Allocation (all information filled in)

2.  Declaration of Settlement Administrator, Rust Consulting

3.  Proposed Final Approval Order

4.  Defense Counsel Declaration regarding Service of CAFA Notice

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

Boyd v. Coventry Health Care Inc., 299 F.R.D. 451 (D. Md. 2014)............................................ 10

Brown v. Prince George's Cnty. Bd. of Educ., No. 05-114-RWT, 2006 WL 4888940 (D. Md. Nov. 6, 2006)........................................................................................................................... 9

Crandell v. United States, 703 F.2d 74 (4th Cir. 1983) ................................................................ 9

Hutton v. Nat'l Bd. of Exam'rs in Optometry, No. JKB-16-3025, 2019 WL 3183651, 2019 U.S. Dist. LEXIS 120558 (D. Md. July 15, 2019) (Bredar, J.) ................................................ 11

In re Healthsouth Corp. ERISA Litig., 2006 WL 2109484 (N.D. Ala. June 28, 2006)................ 14

In re Jiffy Lube Sec. Litig., 927 F.2d 155 (4th Cir. 1991) ....................................................... 9, 12

In re U.S. Sugar, Corp. Litig., 2010 WL 11505541 (S.D. Fla. Jan. 8, 2010) .............................. 14

S.C. Nat'l Bank v. Stone, 749 F. Supp. 1419 (D.S.C. 1990) ........................................................ 9

**Statutes**

28 U.S.C. §1715............................................................................................................................ 9

29 U.S.C. §1106..................................................................................................................... 3, 12

29 U.S.C. §1108(b)(8................................................................................................................. 12

29 U.S.C. §1132(a) .................................................................................................................. 1, 3

**Rules**

Fed. R. Civ. P. 23(e)(2)...................................................................................................... 10, 14-15

**Treatises**

Newberg on Class Actions (3d ed. 1992) ...................................................................................... 9

# I.      INTRODUCTION

This class action lawsuit is an ERISA civil enforcement action brought pursuant to 29 U.S.C. §1132(a) on behalf of the T. Rowe Price U.S. Retirement Program ("Plan"), a defined contribution 401(k) plan.  Plaintiffs are Plan participants who seek to recover losses to the Plan that Plaintiffs allege resulted from Defendants' corporate self-dealing and breaches of their fiduciary duties of loyalty and prudence related to the offering of T. Rowe Price's own in-house funds in the Plan.

The Parties have agreed to a settlement which the Court preliminarily approved by order entered January 18, 2022, (ECF No. 239), which was subsequently amended to correct a typographical error, (ECF No. 241).  The proposed settlement provides significant relief to the Class, including (i) a cash payment of $7,000,000 (the "Settlement Amount"), and (ii) the addition of a Brokerage Window feature which will allow Plan participants, for the first time, to invest in funds other than T. Rowe Price Funds.[1]  The litigation also resulted, as this Court acknowledged in its summary judgment opinion, in a payment by T. Rowe Price of $6.6 million in 2019 to many Class members.  The Parties agreed to the settlement only after arms-length negotiations, which were conducted by highly experienced Class Counsel and Defense Counsel who have litigated many similar cases. The principal settlement negotiations were mediated by U.S. Magistrate Judge

---

[1] The Settlement Agreement is filed at ECF No. 234-4, and a subsequent amendment approved by the Court at ECF No. 240-1.  The provisions of the Settlement Agreement, as amended, including all definitions and defined terms, are incorporated by reference. Thus, capitalized terms not otherwise defined herein have the same meaning as in the Settlement Agreement.

A. David Copperthite of this Court; Robert Meyer of JAMS mediated a dispute regarding one issue.

Plaintiffs believe the proposed Settlement is a good result under the circumstances, which includes a summary judgment opinion in which the Court expressed skepticism regarding whether Plaintiffs' claims could succeed at trial. The Settlement provides for a substantial, immediate payment to Class members, greater and unprecedented investment flexibility for Plan participants, and eliminates the risk and cost of trial, which could have resulted in no relief at all. As set forth below, the settlement is fair, reasonable, and adequate under governing law, and meets all requirements for final approval.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Parties and the Class

The Named Plaintiffs and Class Representatives are Michelle Bourque, James Collins, David G. Feinberg, Daniel Fialkoff, Thomas Henry, Jitesh Jani, Sital Jani, Daniel Newman, Farrah Qureshi, Maria Stanton, and Regina Widderich. Defendants are alleged to be Plan fiduciaries and include (i) T. Rowe Price Group, Inc.; (ii) T. Rowe Price Associates, Inc.; (iii) T. Rowe Price Trust Company; (iv) the T. Rowe Price Group, Inc. Management Committee; (v) T. Rowe Price Group, Inc. Management Compensation Committee; (vi) T. Rowe Price Group Inc. Board of Directors; and (vii) Plan Trustees Preston Athey, Steve Banks, Cynthia Crocker, Celine Dufetel, Eric Gee, Michael McGonigle, Kenneth Moreland, Larry Puglia, and Meredith Stewart.

As modified in the Court's preliminary approval order, the Class in this case is defined as follows:

> All participants and beneficiaries in the T. Rowe Price U.S. Retirement Program who had a balance in their plan account at any time from February 14, 2011 through the date of entry of the order preliminarily approving the settlement. [January 18, 2022.] Any individual Defendants, any members of the T. Rowe Price Board of

Directors, the Management Committee, the Management Compensation Committee, and their beneficiaries and immediate families are excluded from the class.

(ECF No. 239 ¶3).  There are 16,217 Class members.  (Ex. 2 ¶4).

### B.    Claims for Relief

Plaintiffs' claims concern Defendants' conduct as Plan fiduciaries in favoring T. Rowe Price proprietary investments for the Plan. The claims alleged in the operative complaint are:

| | |
|---|---|
| COUNT I: | Breach of Duties of Loyalty and Prudence for Imprudent and Disloyal Monitoring and Selection of 401(k) Plan Investments during the Class Period, which Caused Losses to the 401(k) Plan |
| COUNT II: | The Appointing Fiduciary Defendants Breached their ERISA Fiduciary Duties by Failing to Remove and Prudently Monitor the 401(k) Plan Trustees |
| COUNT III: | Breach of Duties of Loyalty and Prudence by Providing Imprudent and Self-Interested Investment Advice to Committee Defendants |
| COUNT IV: | Liability for Breach of Co-Fiduciary |
| COUNT V: | Liability for Failing to Remedy Breach of Predecessor Fiduciaries |
| COUNT VI: | Liability for Committing Prohibited Transactions in Violation of ERISA, 29 U.S.C. §1106 |
| COUNT VII: | Other Equitable Relief Based on Ill-Gotten Proceeds In Violation of ERISA, 29 U.S.C. §1132(a)(3) |

(Second Amended Class Action Complaint (ECF No. 84) ¶¶120-63).

### C.    Procedural History

After Class Counsel's investigation and development of the claims and causes of action asserted, Plaintiff David G. Feinberg filed the original complaint in this case on February 14, 2017. Defendants filed a motion to dismiss, contending, *inter alia*, that Plaintiff lacked standing with respect to some of his claims.  (ECF No. 27).  Plaintiff filed an amended complaint adding ten additional named Plaintiffs.  (ECF No. 32).  Defendants moved to dismiss again, but dropped their standing objections.  (ECF No. 35).  One of Defendants' principal arguments for dismissal was that their actions as fiduciaries with respect to offering T. Rowe Price's own funds in the Plan were

mandated by the governing Plan document.  After the Defendants' second motion to dismiss was fully briefed, oral argument was held before the Hon. Judge Garbis.  (ECF No. 50).  Judge Garbis subsequently retired; Chief U.S. District Judge James K. Bredar was assigned to the case.  Judge Bredar listened to the recording of the oral argument and denied Defendants' motion to dismiss. (ECF Nos. 58, 59).

Following discovery, each side prepared voluminous summary judgment motions in the hope of resolving the case in their favor prior to trial.  (ECF Nos. 142-86).  Each motion was accompanied by more than 200 exhibits and statements of material facts spanning hundreds of pages.  *Id.*  On February 10, 2021, the Court denied in large part the Parties' motions for summary judgment. (ECF No. 200).  However, the Court expressed skepticism regarding Plaintiffs' claims, e.g. indicating that on the record before it, it believed it "likely" that a fact-finder would find facts favorable to Defendants' position.  *Id.* at 17.  Plaintiffs subsequently filed a motion for reconsideration, and a motion for certification for interlocutory appeal to the United States Court of Appeals for the Fourth Circuit.  Both motions were denied.  (ECF Nos. 209, 219).

The Court set a trial date of September 13, 2021.  (ECF No. 206).  The trial was subsequently postponed in light of the Parties' agreement on a Settlement in principle on July 23, 2021.  (ECF No. 221).  Defendants subsequently provided Plaintiffs data necessary to implement the settlement and the Parties exchanged numerous drafts of settlement papers.  Further mediation before Judge Copperthite, as well as a private JAMS mediator, Robert Meyer, was necessary to fully resolve remaining disagreements between the Parties.  A full Settlement Agreement was finalized on December 16, 2021.

The Court granted Plaintiffs' unopposed motion for preliminary approval of the settlement by order dated January 18, 2022.  (ECF No. 239).  *Inter alia*, that order set May 24, 2022 for a

Fairness Hearing to consider final settlement approval.  *Id.* at 5.  The Court also approved a technical amendment to the Settlement Agreement, as well as a technical amendment to its preliminary approval order, on February 23, 2022.  (ECF No. 241).

    **D.**    **The Proposed Settlement**

    The Action and the proposed settlement will provide (or have provided) significant relief to the Class in three ways:  (i) a cash payment of $7,000,000 (Settlement Agreement §§5-6); (ii) addition of a Brokerage Window feature which will allow Plan participants to invest in non-T. Rowe Price funds, *id.* §7; and (iii) a 2019 payment by T. Rowe Price of $6.6 million to many Class members that resulted from this lawsuit.

    **1.**    **$7 Million Cash Payment to be Distributed According to the Plan of Allocation**

    The $7 million Settlement Amount will be allocated to Class members pursuant to the proposed Plan of Allocation.[2]  Under the Plan of Allocation all Class members will receive a minimum $20 payment from the settlement.  The remaining amount will be allocated pro rata based on the extent of a Class member's investments during the Class Period in the 39 Challenged Funds – T. Rowe Price funds that Plaintiffs contend underperformed.[3]  The amount

---

[2] The Plan of Allocation is Exhibit 1 to the instant motion.

[3] The "Challenged Funds" are defined in §1.10 of the Settlement Agreement, as amended, as:

> Balanced, Corporate Income, Dynamic Global Bond, Emerging Europe, Emerging Markets Bond, Emerging Markets Discovery Stock, Emerging Markets Local Currency Bond, Emerging Markets Stock, Equity Income, Equity Index Trust-C, Extended Equity Market Index, Floating Rate, GNMA, Global Infrastructure, Global Real Estate, Growth and Income, High Yield, Inflation Protected Bond, International Discovery, International Stock, I and nternational Value Equity, Institutional Frontier Markets Equity, Institutional Global Value Equity, International Disciplined Equity, New Income, Overseas Stock, Real Assets, Real Estate, Science and Technology, Short-Term Bond, Spectrum Growth, Spectrum Moderate Allocation, Summit Cash Reserves Fund, Summit GNMA, Total Equity Market Index, U.S. Treasury Intermediate, U.S. Treasury Long-Term, U.S.

of each Class Member's investments in these funds is assessed on a quarterly basis.[4]

### 2.     Addition of a Brokerage Window

Under the Settlement, Defendants are required to begin offering a Brokerage Window feature to all Plan participants within six months of the Settlement's effective date.   Settlement Agreement §7.1.  Since its inception, only T. Rowe Price funds have been offered in the Plan. The Brokerage Window will allow Plan participants, for the first time, to invest in a wide range of non-T. Rowe Price investment funds, including mutual funds and exchange traded funds, offered by other mutual fund families. *Id*. §7.2.  This will allow participants to invest outside of T. Rowe Price in those situations where they believe there are better options elsewhere. Defendants will be required to offer this new feature for at least ten years. *Id.* §1.49.

### 3.     $6.6 Million Already Paid to Class Members

In January 2019, Defendants paid $6.6 million to Plan participants who had a balance in their Plan accounts and were T. Rowe Price employees at the end of the years 2011, 2012, or 2013.  (ECF No. 200 at 21-22).  As this Court recognized in its summary judgment opinion, Defendants made this Special Payment in response to Plaintiffs' lawsuit. *Id.*  It was made in an attempt to mitigate their liability for Plaintiffs' claims that Defendants violated ERISA's self-dealing proscriptions by causing Plan assets to be used to pay fees for the use of T. Rowe Price's

---

Treasury Money Fund, and Value.  (In some cases, these funds include multiple versions or types, e.g. when what was originally offered in the Plan was a mutual fund but was later replaced with a similar collective trust version of the same strategy).

[4] To the extent a Class member received the Special Payment referenced in §3 *infra*, the amount of that payment will offset any allocation deriving from the Class member's investments in the Challenged Funds from 2011-2013.  This adjustment (i) is appropriately limited to 2011-2013 because the Special Payment was only distributed to Class members who had a balance in their account for those years and was paid by Defendants to offset expenses for those years and (ii) is equitable because those who received a distribution from the Special Payment did not pay attorneys fees or expenses on those distributions.

own mutual funds in the Plan.   The payment was intended to put the Plan on an equal footing, for the years 2011-2013, with other plans offering T. Rowe Price funds that received credit for record-keeping fees.  (See *id.* and sources cited therein for more information).

Over 6,000 Class members were eligible for, and received, distributions from the Special Payment.   Based on data Defendants have provided to Plaintiffs, all of these distributions exceeded $240, and some were as much as $1310.

> **E.**   **Distribution of Class Notice, Creation of Settlement Website, and Establishment of Toll-Free Information Telephone Line**

Pursuant to the Court's preliminary approval order, Class Counsel have implemented the Class Notice plan.  (*See* ECF No. 239 at 10-12).  After a competitive bid process, Class Counsel retained Rust Consulting as Settlement Administrator.   The Settlement Administrator then distributed the approved Class Notice to the Class on March 25, 2022.  (*See* Ex. 2 (declaration of Settlement Administrator including as an exhibit the Class Notice distributed) ¶6).  This involved distributing either by U.S. Mail or email Class Notices to every Class member identified:  2,516 notices were sent by U.S. Mail and 13,701 to email addresses provided by T. Rowe Price.  *Id.* Follow-up mailings and tracing has been conducted for any notices returned as undeliverable.  *Id.* ¶7.  This has resulted in a 99.9% delivery success rate.  *Id.*

The Settlement Administrator also created a Settlement Website and a toll-free phone number for inquiries about the Settlement and both went live on March 24, 2022.  *Id.* ¶8.  The website contains relevant settlement documents including the Second Amended Complaint, Settlement Agreement and the amendment thereto, Proposed Plan of Allocation, Order Granting Preliminary Approval and the amendment thereto, Class Notice, and the Court's Memorandum Opinion Denying (in part) the Parties' Motions for Summary Judgment; it also includes answers

to frequently asked questions about the proposed Settlement.[5]  *Id.*  The toll-free number provides recorded information about the Settlement as well as the opportunity to speak to a customer service representative; questions that cannot be answered by the representative will be referred to Class Counsel.  *Id.* ¶8.  Through April 3 Rust had received a total of 9 calls to the toll free line, and none required referral to Class Counsel.  *Id.*

**F.     Lack of Objections**

The deadline for Class member objections to the proposed Settlement is April 26, 2022. (ECF No. 239 at 13).  To date, Class Counsel have not received any objections, and none have been filed; the Settlement Administrator has not received any objections either.

**G.     Approval by Independent Fiduciary**

As is typical in cases such as this, Defendants retained an independent fiduciary, Fiduciary Counselors of Washington D.C., to render an evaluation of the Settlement.  They were retained pursuant to U.S. Department of Labor Prohibited Transaction Class Exemption 2003-39, as amended, 75 Fed. Reg. 33,830 (June 15, 2010), as a condition for Defendants and the Plan to qualify for that exemption from ERISA's prohibited transaction provisions with respect to settlements involving an ERISA plan.  After interviewing counsel for both sides, reviewing relevant filings, and otherwise researching the case, the Independent Fiduciary has approved the settlement, informing the parties on April 6 that it "(i) authorizes the Settlement in accordance with PTE 2003-39; and (ii) gives a release in its capacity as a fiduciary of the Plan, for and on behalf of the Plan. Fiduciary Counselors [i.e. the independent fiduciary] also has determined not to object to any aspect of the Settlement."

---

[5] McTigue Law and Cohen Milstein also provided relevant information on their firm websites.

H.      **Delivery of CAFA Notice**

Defendants have mailed the Class Action Fairness Act ("CAFA") notices of the proposed

settlement to the requisite officials, 28 U.S.C. §1715.  (See Ex. 4).

### III.     THE PROPOSED SETTLEMENT SATISFIES THE STANDARD FOR FINAL APPROVAL

A.      **The Standard for Approval for a Class Action Settlement**

This Circuit favors resolution of litigation prior to trial.  Crandell v. United States, 703 F.2d

74, 75 (4th Cir. 1983) ("Public policy, of course, favors private settlement of disputes.  A trial

judge if possible should assist parties in their attempts at settlement, even to the point of

encouraging them."); Brown v. Prince George's Cnty. Bd. of Educ., No. 05-114-RWT, 2006 WL

4888940, at *2 (D. Md. Nov. 6, 2006) (same); *see also* S.C. Nat'l Bank v. Stone, 749 F. Supp.

1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly

favored by the courts.").  Settlements in class actions are particularly important because those cases

typically involve complex factual and legal issues, and a settlement relieves the courts of the strain

that such litigation imposes.  S.C. Nat'l Bank, 749 F.Supp. at 1423.

There is a strong presumption that a settlement is fair and reasonable when it is the result

of arm's-length negotiations.  In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158−59 (4th Cir. 1991);

*see also* Newberg on Class Actions §11.41 at 11-88 (3d ed. 1992).  Once this presumption is

established, the Court should consider the following factors in determining whether to finally

approve the settlement: "(1) the relative strength of the plaintiffs' case on the merits, (2) the

existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the

case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency

of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of

opposition to the settlement."  Jiffy Lube, 927 F.2d at 159; Boyd v. Coventry Health Care Inc.,

299 F.R.D. 451, 460 (D. Md. 2014).

Fed. R. Civ. P. 23(e)(2) additionally specifies that the court should consider whether class Representatives and Class Counsel have adequately represented the class, the relief provided for the class is adequate, and the proposal treats class members equitably relative to each other.

As discussed below, and as is also discussed in Plaintiffs' preliminary approval brief, (ECF No. 234-1), all relevant factors support approval.

### B.     The Settlement is the Product of Good Faith Bargaining at Arm's Length

The negotiations here were definitely at arm's length.  This case was vigorously contested and settled only upon the brink of trial.  On January 9, 2020, the Court referred the case to Magistrate Judge A. David Copperthite for a Settlement Conference.  (ECF No. 133). Plaintiffs did not believe settlement discussions would be productive at that time, so Judge Copperthite canceled the Settlement Conference in June.  (ECF No. 141).  After the Court's February 10, 2021 summary judgment opinion, (ECF No. 200), the Parties decided settlement discussions might be productive, and Judge Copperthite scheduled a Settlement Conference for April 13, 2021.  (ECF No. 207).  The settlement negotiations included a Settlement Conference mediated by Judge Copperthite that took place via Zoom.  Both sides provided Judge Copperthite with their respective mediation statements and ex parte letters and exchanged proposals and counter-proposals concerning potential settlement terms.   Despite Judge Copperthite and the Parties' efforts an agreement on settlement was not reached.  As trial approached, at Judge Copperthite's urging, the Parties revisited settlement discussions and agreed to a settlement in principle and term sheet on July 23, 2021.   Judge Copperthite subsequently stayed associated deadlines.  (ECF No. 221).

The Parties encountered some disagreements in attempting to complete a comprehensive Settlement Agreement and ancillary documents.  Pursuant to the Term Sheet, Judge Copperthite

mediated these differences between the Parties in October 2021.  Some differences remained after this mediation, and in November the Parties mediated the remaining differences before a private JAMS mediator, Robert Meyer, who has experience in complex litigation, including ERISA class actions.  The Parties continued to exchange drafts of settlement papers and finalized the Settlement Agreement on December 16, 2021.

The extended settlement negotiations mediated by an impartial U.S. Magistrate Judge and an experienced private mediator make clear that the negotiations were at arm's length.  This factor thus supports preliminary approval.  Hutton v. Nat'l Bd. of Exam'rs in Optometry, No. JKB-16-3025, 2019 WL 3183651, at *5, 2019 U.S. Dist. LEXIS 120558, at *18 (D. Md. July 15, 2019) (Bredar, J.) ("reliance on a neutral mediator experienced in complex litigation [or a court-affiliated mediator], indicate the Settlement is fair and that it should be approved").

## C. The Relative Strength of Plaintiffs' Case on the Merits Supports Final Approval

While Class Counsel believe they have a strong case that Defendants breached their ERISA fiduciary duties and committed self-dealing transactions prohibited by ERISA, the most important opinion for assessing the settlement value of a case is, of course, the opinion of the Court.  As noted above, both sides filed summary judgment motions in this case that were supported by hundreds of exhibits as well as expert reports.  While the Court denied in large part the Parties' motions for summary judgment, the Court indicated that on the record before it at that time, it believed it "likely" that a fact-finder would find facts favorable to Defendants' position that would likely result in judgment in their favor.  (ECF No. 200 at 17).

In its summary judgment opinion, the Court also reversed itself on a key legal issue regarding Plaintiffs' claims that Defendants engaged in self-dealing transactions prohibited by ERISA, which significantly limited the scope of those claims.  (ECF No. 200 at 24 ("…having

11

now had the benefit of extensive briefing on the issue, the Court concludes that the §1108(b)(8) exemption can apply to the §1106(b) prohibitions")).

These findings have an obvious and substantial adverse impact on the settlement value of Plaintiffs' case. Despite this adverse impact, Plaintiffs would achieve, through the litigation and its proposed Settlement, a financial benefit of $13.6 million for the Class as well as significant non-monetary relief.

Consideration of the relative strength of Plaintiffs' case in comparison to the settlement achieved, including the risk that not settling might have resulted in no relief to the Class, supports final approval. Jiffy Lube, 927 F.2d at 158–59.

**D. The Existence of Strong Defenses the Plaintiffs are Likely to Encounter if the Case Goes to Trial Supports Final Approval**

This case involves an issue of first impression regarding the significance of a provision in the Plan Document, which Defendants referred to as the "hardwiring" amendment, that required only T. Rowe Price funds be offered as investment options in the Plan. (*See* ECF No. 213-1). Defendants have argued that this provision effectively immunizes them from liability with respect to offering proprietary funds in the Plan. (*See, e.g.*, ECF No. 35-1 at 8, 11). While not completely accepting Defendants' argument, the Court did state in its summary judgment opinion that "a fact-finder could very well determine that the Trustees prudently followed the Plan's instructions and showed a reasonable preference for" proprietary funds. (ECF No. 200 at 17). Hence, Defendants have a potentially strong defense based on the hardwiring amendment with which the Court apparently has considerable sympathies.

Further, the Court found that Plaintiffs' claims that Defendants committed self-dealing transactions prohibited by ERISA would likely be significantly limited by ERISA's statute of repose. *Id.* at 29 (the Fourth Circuit's decision in "*Alphin* provides strong support for

12

Defendants' position" regarding those claims and the statute of repose).  So this is an additional strong defense that Plaintiffs are likely to encounter a trial.

The existence of strong defenses that Plaintiffs are likely to encounter at trial further supports final approval of the settlement.

### E.  The Cost of Additional Litigation Supports Final Approval

As noted above, the initial agreement to settle the case occurred on the brink of trial. Trial had been projected to last approximately two weeks and would have been expensive. Costs include weeks of preparation and trial time for multiple attorneys and their staff, preparation of evidentiary exhibits, creation of demonstrative exhibits, and preparation, travel, and trial time for the three experts on each side.

Moreover, considering the novel issues involved in the case, it is likely that there would have been an appeal by the losing side.  This would mean more delay and expense.

Avoiding the cost and expense of a lengthy trial and a likely appeal – which might well have resulted in a judgment adverse to, and with no relief awarded to, the Class – also supports preliminary approval.

### F.  There is No Evidence Defendants Would be Unlikely to Satisfy any Judgment

Defendants include a large corporation that is obviously able to pay any judgment.

### G.  The Absence of Opposition to the Settlement Supports Final Approval

As noted above, to date there have been no objections filed to the proposed Settlement. This factor also supports final approval.

### H.  The Independent Fiduciary's Approval of the Settlement Supports Final Approval

As noted above, an independent fiduciary has approved the proposed settlement.  The independent fiduciary's approval is further evidence supporting final approval of the Settlement

13

as fair, reasonable, and adequate.  *See, e.g.*, In re U.S. Sugar, Corp. Litig., 2010 WL 11505541, at *6 (S.D. Fla. Jan. 8, 2010) (order granting final approval of class action settlement noting fact that the settlement was reviewed by an independent fiduciary and the independent fiduciary "has no objection to the final approval of the Settlement, nor the attorney's fees requested"); In re Healthsouth Corp. ERISA Litig., 2006 WL 2109484, at *1 (N.D. Ala. June 28, 2006) (granting final approval of ERISA class action settlement, noting the independent fiduciary, retained by the Company to approve the settlement on behalf of the Plan, has given its approval to the settlement).

## I.     The Additional Fed. R. Civ. P. 23(e)(2) Factors are Met

Rule 23(e)(2)(A) indicates the court should consider whether "the class representatives and class counsel have adequately represented the class."  As described above and in the accompanying motion for attorneys fees, reimbursement of expenses, and class representative service awards, Class Counsel and the Class Representatives have vigorously litigated this case and obtained a favorable settlement despite the Court's expression of serious doubts about the viability of Plaintiffs' case.  Moreover, far from rushing towards a quick settlement, they demonstrated exceptional patience in the negotiation process, waiting until they had a satisfactory settlement and had obtained Defendants' best offer before agreeing to a settlement. So this factor is met.

Rule 23(e)(2)(C) indicates the court should consider whether "the relief provided for the class is adequate" taking into account the costs and risks of trial, the effectiveness of distributing relief to the class, the terms of any award of attorneys fees, and any agreement made in connection with the proposal.  There are no agreements between the parties made in connection with the Settlement Agreement other than the Settlement Agreement itself.  And for the reasons previously discussed, the settlement is a favorable one for the class under the circumstances of

this case.

Rule 23(e)(2)(D) indicates the court should consider whether "the proposal treats class members equitably relative to each other."  As discussed above and in the Plan of Allocation, all class members receive a minimum distribution of $20.  The remaining amount of the Net Settlement Fund goes to those Class members who were specifically harmed by the alleged misconduct, i.e. those who invested in the funds that Plaintiffs contend underperformed.  There will also be an accommodation for the fact that those who received the Special Payment benefited from Class Counsel's efforts without paying any attorneys fees – in the form of an offset to this distribution.  (*See supra* n. 4).

## IV.    CONCLUSION

Plaintiffs respectfully ask the Court to grant their Motion for Final Approval of Class Action Settlement.  As discussed above, all relevant factors support final approval of the settlement, and the Class notice plan has been successfully implemented as required by the Court's preliminary approval order.

Respectfully submitted,

/s/ James A. Moore
J. Brian McTigue, *admitted pro hac vice*
James A. Moore, *admitted pro hac vice*
**MCTIGUE LAW LLP**
5028 Wisconsin Ave NW
Suite 100
Washington, DC, 20016
Tel: (202) 364-6900
Fax: (202) 364-9960
bmctigue@mctiguelaw.com
jmoore@mctiguelaw.com

Mary J. Bortscheller, *admitted pro hac vice*
Douglas J. McNamara (MD Bar #20786; local
counsel)
**COHEN MILSTEIN SELLERS
  & TOLL, PLLC**
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
Tel: (202) 408-4600
Fax: (202) 408-4699
mbortscheller@cohenmilstein.com
DMcNamara@cohenmilstein.com

***Counsel for Plaintiffs and the Class***