**IN UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

|  |  |
|---|---|
| DAVID G. FEINBERG, et al., and all others similarly situated,<br><br>                  Plaintiffs,<br><br>vs.<br><br>T. ROWE PRICE GROUP, INC., et al.,<br><br>                Defendants. | Case No. 1:17-cv-00427-JKB |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF**
**ATTORNEYS' FEES, REIMBURSEMENT OF**
**EXPENSES, AND SERVICE AWARDS TO CLASS REPRESENTATIVES**

## **TABLE OF CONTENTS**

I.   INTRODUCTION AND BACKGROUND ........................................................................ 1

    A.   Relevant Procedural History ................................................................................. 2

    B.   Settlement Negotiations ........................................................................................ 4

    C.   Preliminary Approval of the Proposed Settlement and the Fees, Expenses and
         Service Awards Sought ......................................................................................... 5

    D.   Work Related to Settlement Approval and Administration .................................... 5

II.   THE FEES REQUESTED ARE FAIR AND REASONABLE AND SHOULD BE
     APPROVED .................................................................................................................. 6

    A.   The Percentage of Recovery Method With a Lodestar Cross-Check is an
         Appropriate Approach to Evaluating an Attorneys' Fees Request in this Case ....... 6

    B.   The Seven Factors All Support the Fee Request ...................................................... 7

        1.   The Results Obtained for the Class............................................................. 7

        2.   The Quality, Skill, and Efficiency of the Attorneys Involved ...................... 9

        3.   The Risk of Nonpayment ........................................................................... 11

        4.   There Have Been no Objections by Class Members to the Settlement
            Terms, Fees or Expenses Requested by Counsel, or Proposed Service
            Awards ..................................................................................................... 12

        5.   Awards in Similar Cases............................................................................ 12

        6.   The Complexity and Duration of the Case ................................................. 13

        7.   Public Policy ............................................................................................ 15

    C.   A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fees .... 15

III.   CLASS COUNSEL'S OUT-OF-POCKET LITIGATION EXPENSES SHOULD BE
      REIMBURSED.............................................................................................................. 18

IV.   SERVICE AWARDS SHOULD BE GRANTED TO THE CLASS
      REPRESENTATIVES ................................................................................................... 21

## LIST OF EXHIBITS TO THE MOTION

A.  Declaration of J. Brian McTigue, Esq.

    1.   McTigue Law LLP Firm Resume

B.  Declaration of Mary Bortscheller, Esq.

    1.   Cohen Milstein Sellers & Toll PLLC Firm Resume

C.  Declaration of Matthew Fenton, Esq.

D.  Declaration of Class Representative David Feinberg

E.  Declaration of Class Representative James Collins

F.  Declaration of Class Representative Sital Jani

G.  Declaration of Class Representative Farrah Qureshi

H.  Declaration of Class Representative Maria Stanton

I.   Declaration of Class Representative Regina Widderich

J.   Declaration of Class Representative Michelle Bourque

K.  Declaration of Class Representative Daniel Fialkoff

L.  Declaration of Class Representative Thomas Henry

M. Declaration of Class Representative Jitesh Jani

N.  Declaration of Class Representative Daniel Newman

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Abbott v. Lockheed Martin Corp.,
  2015 WL 4398475 (S.D. Ill. July 17, 2015)...................................................................... 12, 21

Abbott v. Lockheed Martin Corp.,
  No. 06-701 (S.D. Ill. Apr. 14, 2015) ....................................................................................... 9

Beesley v. Int'l Paper Co.,
  2014 WL 375432 (S.D. Ill. Jan. 31, 2014) .............................................................................. 21

Braden v. Wal-Mart Stores, Inc.,
  588 F.3d 585 (8th Cir. 2009)................................................................................................. 15

Brotherston v. Putnam Inv.,
  No. 15-13825, 2017 WL 2634361 (D. Mass. June 19, 2017) ................................................ 11

Brotherton v. Cleveland,
  141 F. Supp. 2d 907 (S.D. Ohio 2001).................................................................................. 13

Bussie v. Allmerica Fin. Corp.,
  1999 U.S. Dist. LEXIS 7793 (D. Mass. May 19, 1999) ........................................................ 22

Chado v. Nat'l Auto Insps.,
  No. JKB-17-2945, 2020 U.S. Dist. LEXIS 135472 (D. Md. July 29, 2020) .......................... 13

David v. Alphin,
  C-06-04763-WHA (N. D. Cal. Aug. 7, 2006).......................................................................... 10

deMunecas v. Bold Food,
  2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ....................................................................... 15

George v. Kraft Foods Glob., Inc.,
  2012 WL 13089487 (N.D. Ill. June 26, 2012) ....................................................................... 21

Godshall v. Franklin Mint Co.,
  2004 WL 2745890 (E.D. Pa. Dec. 1, 2004) ........................................................................... 22

Goldberger v. Integrated Res. Inc.,
  209 F.3d 43 (2d Cir. 2000)................................................................................................... 16

Hutton v. Nat'l Bd. of Exam'rs in Optometry,
  No. JKB-16-3025, 2019 U.S. Dist. LEXIS 120558 (D. Md. July 15, 2019) ..................... 7, 13

Kelly v. Johns Hopkins Univ.,
  No. 1:16-cv-2835-GLR, 2020 U.S. Dist. LEXIS 14772 (D. Md. Jan. 28, 2020)............. *passim*

Krueger v. Ameriprise Financial, Inc.,
 No. 11-2781, 2015 WL 4246879 (D. Minn. July 13, 2015)........................................ 11, 12, 23

Kruger v. Novant Health, Inc,
 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ......................................................... 15, 18, 21

Lunsford v. Woodforest Nat'l Bank,
 2014 WL 12740375 (N.D. Ga. May 19, 2014) ........................................................................ 22

McCullough v. Aegon USA, Inc.,
 2:05-cv-07215 (C. D. Cal. Oct. 5, 2005).............................................................................. 10

In re Mid-Atlantic Toyota Antitrust Litig.,
 605 F. Supp. 440 (D. Md. 1984) .......................................................................................... 19

Morgan v. Public Storage,
 301 F. Supp. 3d 1237 (S.D. Fla. 2016).................................................................................. 22

Presley v. CHH, et al.,
 97-cv-04316 (SC) (N.D. Cal.)................................................................................................ 9

Reed v. Big Water Resort, LLC,
 No. 2:14-cv-01583-DCN, 2016 U.S. Dist. LEXIS 187745 (D.S.C. May 26, 2016).............. 13

Savani v. URS Prof'l Solutions LLC,
 121 F.Supp.3d 564 (D.S.C. 2015)..................................................................................... 18, 21

Sims v. BB&T Corp.,
 No. 1:15-CV-732, 2019 U.S. Dist. LEXIS 75839 (M.D.N.C. May 6, 2019) ............. 12, 17, 23

Singleton v. Domino's Pizza, LLC,
 976 F. Supp. 2d 665 (D. Md. 2013) ................................................................................ 6, 7, 17

Spano v. Boeing Co.,
 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016)........................................................................ 20

In re SunTrust Banks, Inc. 401(k) Plan Affiliated Funds ERISA Litigation,
 Case No. 1:11-cv-784 (N. D. Ga.)..................................................................................... 10, 12

In re The Mills Corp. Sec. Litig.,
 265 F.R.D. 246 (E.D. Va. 2009) ........................................................................................... 15

In re Tyco Int'l, Ltd.,
 535 F. Supp. 2d 249 (D.N.H. 2007) ...................................................................................... 15

In re Wachovia Corp. ERISA Litig.,
 No. 09-262, 2011 U.S. Dist. LEXIS 123109 (W.D.N.C. Oct. 24, 2011)................................ 14

Wildman v. Am. Century Servs.,
 362 F.Supp. 3d 685 (W.D. Mo. 2019)................................................................................... 11

<u>Zilhaver v. UnitedHealth Grp.</u>,
  646 F. Supp. 2d 1075 (D. Minn. 2009) ................................................................. 23

**Other Authorities**

Fed. R. Civ. P. 23(h) .............................................................................................. 18

https://www.groom.com/wp-content/uploads/2019/10/Proprietary-Funds-Litigation-
  Chart-updated-June-2019.pdf .............................................................................. 10

https://www.law360.com/articles/1232627/benefits-group-of-the-year-cohen-
  milstein ................................................................................................................ 10

*Tax Deferral,* Investment Company Institute, Sept. 17, 2013, available at
  http://www.ici.org/viewpoints/view_13_marginal_tax_and_deferral; .................... 8

Plaintiffs file this memorandum in support of their motion for awards of attorneys' fees and reimbursement of expenses to Class Counsel – attorneys J. Brian McTigue and James A. Moore of McTigue Law, LLP ("McTigue Law") and Mary J. Bortscheller of Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein").   They also seek approval of service awards to the eleven Class Representatives.[1]

## I.       INTRODUCTION AND BACKGROUND

After over five years of litigation the Parties reached a proposed settlement, resolving all Class claims, that provides substantial relief to the Class.  The settlement provides for (i) a cash payment of $7,000,000; and (ii) addition of a Brokerage Window feature which will allow Plan participants, for the first time, to invest in non-T. Rowe Price funds.[2]  Furthermore, as this Court acknowledged in its summary judgment opinion, this litigation was the catalyst for a 2019 Special Payment by T. Rowe Price of $6.6 million to over six thousand Class members.  (ECF No. 200 at 21-22).

Class Counsel worked over 12,000 hours and expended $707,908.79 in unreimbursed costs and expenses reasonably incurred in successfully prosecuting the Action.  (Exs. A ¶¶33-40 & B ¶¶5, 24-25).  Another firm representing Plaintiffs, Wenzel, Fenton, & Cabassa, P.A. ("Wenzel Fenton")

---

[1] Plaintiffs are concurrently filing a motion and supporting brief for final approval of the settlement; the three Plaintiffs counsel firms are submitting declarations in support of their request for attorneys fees and expenses.  All Class Representatives are submitting declarations in support of this motion.

[2] The Settlement Agreement is filed at ECF No. 234-4, and a subsequent amendment approved by the Court at ECF No. 240-1.  The provisions of the Settlement Agreement, as amended, including all definitions and defined terms, are incorporated by reference. Thus, capitalized terms not otherwise defined herein have the same meaning as in the Settlement Agreement.

based in Florida, also performed work in this case under Class Counsel's direction.[3]  (Ex. C).  The Class Representatives also spent considerable time representing the Class, including producing documents, answering interrogatories, traveling to and sitting for lengthy depositions taken by aggressive defense counsel, and attending the motion to dismiss hearing and settlement conference. (Exs. D-N).

Plaintiffs are thus seeking $3,500,000 in attorneys fees and $707,908.79 in reimbursement of expenses.  As further discussed below, the attorneys fee request represents 25.7% of the $13.6 million of total cash payments achieved for the Class and a lodestar multiplier of .42, indicating that if the request is granted, the Class will have received Class Counsel's services at a significant discount. (Time spent on this fee petition has been excluded from this lodestar calculation.)  Plaintiffs also seek service awards to each of the Class Representatives in the following amounts:  $15,000 to David G. Feinberg; $12,500 each to James Collins, Sital Jani, Farrah Qureshi, Maria Stanton, and Regina Widderich; and $10,000 each to Michelle Bourque, Daniel Fialkoff, Thomas Henry, Jitesh Jani, and Daniel Newman.

### A.    Relevant Procedural History

After Class Counsel's investigation and development of the claims and causes of action asserted, Plaintiff David G. Feinberg filed the original complaint in this case on February 14, 2017. Defendants filed a motion to dismiss, contending, *inter alia*, that Plaintiff lacked standing with

---

[3] Wenzel Fenton's principal role in this case was in referring the original Plaintiff, David G. Feinberg, to McTigue Law.  Plaintiffs' request for an award of fees covers work performed by Class Counsel and Wenzel Fenton.

respect to some of his claims.  (ECF No. 27).  Plaintiff filed an amended complaint adding ten additional named Plaintiffs who invested in different T. Rowe Price funds, and Defendants dropped their standing objections which had been effectively mooted.  (ECF No. 32).  Defendants moved to dismiss again.  (ECF No. 35).  After the second motion to dismiss was fully briefed, oral argument was held before the Hon. Judge Garbis.  (ECF No. 50).  Judge Garbis subsequently retired; Chief U.S. District Judge James K. Bredar was assigned to the case.  Judge Bredar listened to the recording of the oral argument and denied Defendants' motion to dismiss.  (ECF Nos. 58-59).

Following the denial of Defendants' motion to dismiss, the litigation entered the discovery phase.  Class Counsel propounded 52 requests for production of documents, 22 requests for admission, and 17 interrogatories; Defense Counsel propounded 22 document requests and 14 interrogatories.  (Moore Decl. (ECF No. 234-2) ¶¶3-4).  Class Counsel and their staff had the over 114,000 pages of documents produced by Defendants loaded into an electronic document database and coded and reviewed them.  *Id*. ¶2.  There was also discovery-related motion practice, with Plaintiffs filing two motions to compel, and Defendants one.  (ECF Nos. 74, 120, 121).  Class Counsel deposed ten fact witnesses, and Defense Counsel deposed six Class Representatives.  Each of Plaintiffs' experts submitted initial and reply expert reports; each defense expert submitted a rebuttal report; and each side deposed the other side's three experts.  *Id.* ¶¶5-6.

Subsequently, each side prepared voluminous summary judgment motions in the hope of resolving the case in their favor prior to trial.  (ECF Nos. 142-186).  Each motion was accompanied by more than 200 exhibits and statements of material facts spanning hundreds of pages.  *Id.* On February 10, 2021, the Court denied in large part the Parties' motions for summary judgment.  (ECF

No. 200).  Plaintiffs subsequently filed a motion for reconsideration, and a motion for certification for interlocutory appeal to the United States Court of Appeals for the Fourth Circuit.  Both motions were denied.  (ECF Nos. 209 & 219).

A trial date of September 13, 2021 was set by the Court.  (ECF No. 206).  The trial was subsequently postponed in light of the Parties' agreement on a Settlement in principle.  (ECF No. 221).

### B.   Settlement Negotiations

The parties agreed to settle this case only upon the brink of trial.  On January 9, 2020, the Court referred the case to Magistrate Judge A. David Copperthite for a Settlement Conference.  (ECF No. 133).  Plaintiffs did not believe settlement discussions would be productive at that time because they were too far apart, so Judge Copperthite canceled the Settlement Conference in June.  (ECF No. 141).  After the Court's February 10, 2021 summary judgment opinion, (ECF No. 200), the parties decided settlement discussions might be productive, and Judge Copperthite scheduled a Settlement Conference for April 13, 2021.  (ECF No. 207).  That Settlement Conference took place and was mediated by Judge Copperthite; however, the parties did not agree on a settlement.  As trial approached, the parties revisited settlement discussions and, again with the mediation assistance of Judge Copperthite, agreed to a settlement in principle on July 23, 2021.  Judge Copperthite subsequently stayed associated deadlines, and postponed the trial scheduled to begin September 13, 2021.  (ECF No. 221).

Defendants subsequently provided Plaintiffs data necessary to implement the settlement and the Parties exchanged numerous drafts of settlement papers.  Further mediation before Judge

4

Copperthite, as well as a private JAMS mediator, Robert Meyer, was necessary to fully resolve remaining disagreements between the Parties.  A full settlement agreement was finalized on December 16, 2021.  (ECF No. 234-4).

### C. Preliminary Approval of the Proposed Settlement and the Fees, Expenses and Service Awards Sought

On January 18, 2022 the Court granted Plaintiffs' motion for preliminary approval of the settlement.  (ECF No. 239).  The Court also preliminarily approved the requested attorneys fees and estimated expenses, noting that the "Court [preliminarily] finds that this is appropriate, given the complexity of the case and given that [the requested] percentage is in line with prior ERISA cases." *Id.* at 4.  The Court also preliminarily approved service awards of "up to $15,000 to each of the eleven Class Representatives" noting that the awards are "in line with prior awards approved in this Circuit." *Id.* at 5.

### D. Work Related to Settlement Approval and Administration

Class Counsel have spent considerable time in the settlement approval process, including drafting briefs and supporting documents for the preliminary and final approval motions.

Class Counsel have also already spent considerable time related to settlement administration even though the Settlement has only been preliminarily approved.  They have selected an escrow agent and set up the account for the Settlement Fund.  They solicited proposals and bids from several administrators and selected Rust Consulting, Inc. as Settlement Administrator.  As required by §3.3 of the Settlement Agreement, they agreed to and negotiated a data security protocol with the Settlement Administrator and with Defendants.  Class Counsel have also supervised and assisted the

Settlement Administrator in drafting text and selecting documents to be uploaded to the settlement website for the benefit of Class members, as well as text for the Interactive Voice Response telephone system.   Further, they have supervised the Settlement Administrator and communicated with Defendants to finalize the list of Class members to be sent the Class Notice, to test delivery of emailed notices, and to finalize the Class Notice itself.

Going forward, to facilitate the settlement administration process, they expect to be assisting Class members with inquiries, implementing and supervising the distribution of the Settlement Fund, and wrapping up the settlement administration process at the appropriate time.   They will also of course have to prepare for and attend the final approval hearing.

## II.   THE FEES REQUESTED ARE FAIR AND REASONABLE AND SHOULD BE APPROVED

### A.   The Percentage of Recovery Method With a Lodestar Cross-Check is an Appropriate Approach to Evaluating an Attorneys' Fees Request in this Case

In a case such as this where a common fund has been created, district courts in this Circuit generally employ the percentage-of-recovery method with a lodestar cross-check.  Singleton v. Domino's Pizza, LLC, 976 F. Supp. 2d 665, 681 & n. 6 (D. Md. 2013) ("[u]sing the percentage method, cross-checked by the lodestar method reduces the risk that the amount of the fee award either overcompensates counsel in relation to the class benefits obtained or undercompensates counsel for their work" (internal quotation marks and citations omitted)); Kelly v. Johns Hopkins Univ., No. 1:16-cv-2835-GLR, 2020 U.S. Dist. LEXIS 14772, at *7 (D. Md. Jan. 28, 2020) (applying percentage-of-recovery method and lodestar cross-check in similar ERISA class action brought on behalf of defined contribution plan participants).

6

District courts have analyzed the following seven factors to determine the reasonableness of a percentage-of-recovery fee request:

> (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy.

Singleton, 976 F. Supp. 2d at 682 (citations and quotation omitted); and Hutton v. Nat'l Bd. of Exam'rs in Optometry, No. JKB-16-3025, 2019 U.S. Dist. LEXIS 120558, at *23-24 (D. Md. July 15, 2019) (Bredar, J., applying seven factors to evaluate attorneys fees request in a Rule 23 case). "Importantly, fee award reasonableness factors need not be applied in a formulaic way because each case is different, and in certain cases, one factor may outweigh the rest." Singleton, 976 F. Supp. 2d at 682.

### B.    The Seven Factors All Support the Fee Request

#### 1.    The Results Obtained for the Class

The results obtained for the Class are excellent under the circumstances.  As noted in Plaintiffs' brief in support of their motion for final approval, the Court expressed strong skepticism regarding the viability of Plaintiffs' claims in its summary judgment opinion.  Despite this handicap, Class Counsel were able to obtain cash payments having a value of $13.6 million for the Class, as well as additional investment flexibility via a Brokerage Window feature which will allow all Plan participants to invest in non-T. Rowe Price funds for the first time.  The monetary value of the Brokerage Window to the Class is difficult to quantify given the uncertainties of predicting how Class members will use this feature.  However, Plaintiffs' expert determined the Plan had $58.9 million in losses during the Class Period through January 31, 2020 from using the 39 underperforming T. Rowe

Price Challenged Funds compared to widely available Vanguard or Fidelity funds.  (ECF No. 144-11 at 4).  Hence, the Brokerage Window has the potential to be the most valuable feature of the Settlement for Plan participants since they could conceivably utilize it to mitigate or eliminate the large losses from these funds going forward.

Class Counsel achieved this favorable result not only by vigorously litigating the case for over five years as described above, but also by being especially patient in the negotiation process.  The initial Settlement Conference in this case was held in April 2021; Plaintiffs rejected Defendants' offer at that time as insufficient.  Plaintiffs continued to negotiate until December 2021, when they had what they believed was the best deal they could get, to execute the final Settlement Agreement.  To achieve this end, Class Counsel availed themselves of the services of not only Judge Copperthite as mediator, but also a private JAMS mediator, Robert Meyer, with experience in complex litigation and ERISA class actions in particular.

The fact that almost all of the cash payments have been or will be paid to tax deferred accounts is another benefit to the Class.[4]  Kelly v. Johns Hopkins Univ., No. 1:16-cv-2835-GLR, 2020 U.S. Dist. LEXIS 14772 at *13-14 (D. Md. Jan. 28, 2020).  The Investment Company Institute estimates that the benefit of the present value of tax deferral for 20 years is an additional 18.6%.[5]

---

[4] Defendants have informed us that the $6.6 million 2019 payment was distributed on a tax-deferred basis to Plan participant accounts. Much of the net amount of the $7 million settlement fund will also be distributed to Plan participant accounts, and those Class members without a current account have the ability to rollover their distribution to a tax-deferred account.

[5] Peter Brady, *Marginal Tax Rates and the Benefits of Tax Deferral,* Investment Company Institute, Sept. 17, 2013, available at http://www.ici.org/viewpoints/view_13_marginal_tax_and_deferral;

This factor thus supports the requested attorneys fees.

### 2.      The Quality, Skill, and Efficiency of the Attorneys Involved

"It is well-established that complex ERISA litigation, such as this, requires special expertise…." Kelly, 2020 U.S. Dist. LEXIS 14772 at *9-10 (internal quotation marks omitted). Where "an opponent…is a sophisticated corporation with sophisticated counsel, such as here, additional skill is necessary." Id. at *10 (internal quotation marks omitted).

The quality, skill, and efficiency of Class Counsel – both current Class Counsel and former Class Counsel Karen Handorf and Scott Lempert[6] – also supports the requested fee award. Class Counsel are unaware of any group of attorneys with more experience advocating on behalf of plan participants in complex ERISA class actions such as this than the original Class Counsel in this case. (See firm résumés, Exs. A (Ex. 1 thereto) and B (Ex. 1 thereto); and ECF No. 77-7 at 34, 85-86 (biographies of former Class Counsel Karen Handorf and Scott Lempert)). And that experience has produced excellent results. Combined, the two Class Counsel firms have served as Class Counsel in cases that have garnered over $400 million for ERISA plan participants. Id.

Each of the original named Class Counsel has been practicing in this field for more than 20 years. Id. McTigue Law LLP ("McTigue Law") has been a pioneer in the field, being among the first law firms to bring an ERISA class action on behalf of plan participants in 1997 (Presley

---

Abbott v. Lockheed Martin Corp., No. 06-701, Doc. 497 at 37 (ECF 47) (S.D. Ill. Apr. 14, 2015) (Report of the special master (citing ICI report)).

[6] Both Karen Handorf and Scott Lempert served as Class Counsel throughout most of the case, but they withdrew shortly after the case settled because they left Cohen Milstein for other law firms. (See ECF Nos. 232 & 238).

v. CHH, et al., 97-cv-04316 (SC) (N.D. Cal.)), and bringing some of the first cases challenging high investment fees and the use of proprietary funds in 401(k) plans in 2005 and 2006.[7]   The employee benefits litigation group of Cohen Milstein Sellers & Toll LLP ("Cohen Milstein") was recognized as "Benefits Group of the Year" for 2019 (and 2021) by the legal publication *Law360*.[8]

Furthermore, there is likely no group of attorneys with more experience in the particular type of ERISA class action at issue here, referred to in the field as a proprietary fund case.  McTigue Law pioneered this field, and was the first firm to have filed two such cases on behalf of participants.  (*See* n. 7, *supra*).  This is the sixth such case each firm has litigated.  Prior to this case, both firms litigated In re SunTrust Banks, Inc. 401(k) Plan Affiliated Funds ERISA Litigation, Case No. 1:11-cv-784 (N. D. Ga.), which settled for $29 million, (see ECF No. 302 of that case (July 20, 2020)), one of the largest settlements ever for a proprietary fund case.[9]

While Class Counsel have vigorously litigated this case, Class Counsel have also been efficient.  They employed electronic database technology to facilitate the speedy review of thousands of pages of documents Defendants produced, and only lower level attorneys or paralegals were utilized in first level document review.  The amount of attorney time Class Counsel and other Plaintiffs' Counsel have spent – 12,244 hours – is significantly less than that spent by other counsel

---

[7] *See* McCullough v. Aegon USA, Inc., 2:05-cv-07215 (C. D. Cal. Oct. 5, 2005) (on behalf of participants in Transamerica 401(k) Plan); David v. Alphin, C-06-04763-WHA (N. D. Cal. Aug. 7, 2006) (on behalf of participants in Bank of America 401(k) Plan).

[8] https://www.law360.com/articles/1232627/benefits-group-of-the-year-cohen-milstein

[9] A June 2019 compilation of information regarding 59 suits involving proprietary fund claims noted only two higher value settlements.  See https://www.groom.com/wp-content/uploads/2019/10/Proprietary-Funds-Litigation-Chart-updated-June-2019.pdf

litigating similar cases settled, as in the instant case, before trial. See <u>Krueger v. Ameriprise Financial,</u> <u>Inc.</u>, No. 11-2781, 2015 WL 4246879, *2 (D. Minn. July 13, 2015) (noting class counsel spent 27,991 hours of attorney time spent litigating ERISA proprietary fund class action).

### 3.    The Risk of Nonpayment

Class Counsel undertook this Action on a wholly contingent basis and took the risk from the outset that they might spend significant time and money pursuing this Action, yet receive no compensation, and indeed be out of pocket for significant expenses, if the Action ultimately failed.

It is clear that there was significant risk of nonpayment in this case.  First, as noted above, the Court expressed skepticism regarding the viability of Plaintiffs' claims in its summary judgment opinion.  Second, this case involved an issue of first impression regarding the effect of the "hardwiring provision" in the Plan document that required that the Plan offer only T. Rowe Price funds.  (*See, e.g.*, ECF No. 213-1 at 4).  Third, the two recent ERISA proprietary fund cases that tried similar claims both resulted in judgment for Defendants.  *See* <u>Wildman v. Am. Century Servs.</u>, 362 F.Supp. 3d 685 (W.D. Mo. 2019); <u>Brotherston v. Putnam Inv.</u>, No. 15-13825, 2017 WL 2634361 (D. Mass. June 19, 2017).[10]

In the face of this substantial risk of nonpayment, Class Counsel devoted significant time and resources to litigating this case, as described herein.  By taking this matter, Class Counsel also necessarily had to forego working on other cases.  This factor thus supports the requested fee.

---

[10] The <u>Brotherston</u> District Court decision was reversed in part on appeal, 907 F.3d 17 (1st Cir. 2018), and the case eventually settled.

11

**4.** **There Have Been no Objections by Class Members to the Settlement Terms, Fees or Expenses Requested by Counsel, or Proposed Service Awards**

Thus far, there have been no objections to the proposed settlement, the requested attorneys fees, requested expense reimbursements, or proposed service awards from the over 16,000 class members. The deadline for objections is April 26, 2022. (ECF No. 239 at 13).

**5.** **Awards in Similar Cases**

A typical fee percentage awarded in ERISA class actions involving defined contribution plans, including those focusing on the use of proprietary funds is one third of the common fund. Kelly v. Johns Hopkins Univ., No. 1:16-cv-2835-GLR, 2020 U.S. Dist. LEXIS 14772 at *8 (D. Md. Jan. 28, 2020) (awarding one third fee and collecting "excessive fee" ERISA class action cases in string cite); Sims v. BB&T Corp., No. 1:15-CV-732, 2019 U.S. Dist. LEXIS 75839 at *13 (M.D.N.C. May 6, 2019) (in similar proprietary fund case, awarding attorneys' fees of one-third of common fund, holding that "[a] one-third fee is consistent with the market rate in complex ERISA matters such as this and reflects a customary fee for like work").[11]

---

[11] *See also* In re SunTrust Banks, Inc. 401(k) Plan Affiliated Funds ERISA Litigation, Case No. 1:11-cv-784 (N. D. Ga.) (ECF No. 302 ¶21 awarding as attorneys fees one third of $29 million settlement fund); Krueger v. Ameriprise Fin., 2015 WL 4246879, at *1 (D. Minn. July 13, 2015) (awarding a one-third fee in proprietary fund case and finding that "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation"); Abbott v. Lockheed Martin Corp., 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (concluding in ERISA fiduciary breach case, that "[a] one-third fee is consistent with the market rate in settlements concerning this particularly complex area of law").

Combining the amount of the Settlement Fund in this case with the amount of the 2019 Special Payment ($7 million + $6.6 million), the requested attorneys fee is only 25.7% of that combined sum. This is obviously considerably *less than* the one third payment that, as noted above, is the "market rate" for cases such as this.  Further, these percentages do not even take into account the value of the non-monetary relief, i.e. the Brokerage Window feature.  As noted above, that feature could have substantial value.  *See, e.g.*, Hutton v. Nat'l Bd. of Exam'rs in Optometry, 2019 U.S. Dist. LEXIS 120558 at *22 (D. Md. July 15, 2019) (Bredar, J.) (evaluating attorneys fee in terms of whether it is "reasonable as a percentage of the benefit conferred on the Settlement Class" in assessing benefits including various types of monetary relief and injunctive relief); Kelly, 2020 U.S. Dist. LEXIS 14772 at *14 (in evaluating the reasonableness of an attorney's fee request "the Court must also consider the value of the non-monetary relief when evaluating the overall benefit to the class").[12]

This factor thus supports the fees requested.

### 6.    The Complexity and Duration of the Case

Courts have recognized that ERISA class actions involving retirement plans are inherently complex, frequently involve novel questions of law, and require devotion of significant resources by Plaintiffs' counsel as well as a high degree of skill.  *See* Kelly v. Johns Hopkins Univ., No. 1:16-cv-

---

[12] Even were the Court to consider the requested award to be 50% of the common fund, i.e. 50% of the $7,000,000 Settlement Fund, it would still be reasonable.  *See* Chado v. Nat'l Auto Insps., No. JKB-17-2945, 2020 U.S. Dist. LEXIS 135472, at *18 (D. Md. July 29, 2020) (Bredar, J., approving 45% fee and noting that courts approve similar high percentages where the lodestar approach supports it); Brotherton v. Cleveland, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) (noting "range of reasonableness" of between twenty to fifty percent of common fund); Reed v. Big Water Resort, LLC, No. 2:14-cv-01583-DCN, 2016 U.S. Dist. LEXIS 187745, at *36 n. 3 (D.S.C. May 26, 2016) (50% held reasonable in appropriate circumstances).

2835-GLR, 2020 U.S. Dist. LEXIS 14772 at *8-10 (D. Md. Jan. 28, 2020); In re Wachovia Corp.

ERISA Litig., No. 09-262, 2011 U.S. Dist. LEXIS 123109 at *4 (W.D.N.C. Oct. 24, 2011) ("ERISA

litigation…is a rapidly evolving and demanding area of the law. New precedents are frequently

issued, and the demands on counsel and the Court are complex and require the devotion of significant

resources.")  This case is no exception, and it is reflected not only in the Parties' filings, but also in

the Court's own holdings.  As noted above, the case involved a significant issue of first impression

with respect to the "hardwiring provision," and the Court declined to fully rule on this novel issue

prior to trial.  (ECF No. 209 at 5 ("the Court declines to view the hardwiring provision as being

void…or as being a complete defense….  The parties will have an opportunity to further address the

significance of the hardwiring provision at trial."))  The Court also indicated it had changed its view

regarding another issue relevant to Plaintiffs' prohibited transaction claims in its summary judgment

opinion.  (ECF No. 200 at 24 ("In its prior memorandum, the Court addressed this issue in summary

fashion….  However, having now had the benefit of extensive briefing on the issue, the Court

concludes that the §1108(b)(8) exemption can apply to the §1106(b) prohibitions."))  Each side's

retention of three experts each with advanced degrees is also indicative of the complexity.

This case has been litigated for over five years since the filing of the complaint in February

2017.  Further, Class Counsel's work is not yet done.  They will continue to work, without additional

compensation, to facilitate the settlement administration process, assist Class members with inquiries,

implement and supervise the distribution of the Settlement Fund, and wrap up the settlement

administration process at the appropriate time.  In some similar cases Class Counsel have been

involved with in the past, this process can extend over two years beyond the final approval date.  This

14

commitment provides additional support for Class Counsel's fee request.  *See, e.g.,* deMunecas v. Bold Food, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010).

The complexity and duration of the case thus also support the fees requested.

### 7.  Public Policy

Courts have noted that "Congress intended that private individuals would play an important role in enforcing ERISA's fiduciary duties . . . ."  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 598 (8th Cir. 2009) (quotation marks omitted).  Accordingly, there is a strong public policy interest in encouraging skilled attorneys to bring suits enforcing ERISA's fiduciary requirements.  In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 263 (E.D. Va. 2009) ("The public benefits when capable and seasoned counsel undertake private action to enforce [federal] laws.").

This factor thus supports the fees requested.  *See* In re Tyco Int'l, Ltd., 535 F. Supp. 2d 249, 270 (D.N.H. 2007) (citing In re WorldCom, Inc. Sec. Litig., 388 F. Supp. 2d. 319, 359 (S.D.N.Y. 2005) "[w]ithout a fee that reflects the risk and effort involved in this litigation, future plaintiffs' attorneys might hesitate to be similarly aggressive and persistent….").

### C.  A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fees

"Given that courts in the Fourth Circuit approve of the percentage-of-fund method for awarding fees in common fund cases, '[i]t is not necessary for the Court to conduct a lodestar analysis[.]'" Kruger v. Novant Health, Inc, 2016 WL 6769066, at *4 (M.D.N.C. Sept. 29, 2016) (citation omitted).  However, courts frequently perform a lodestar cross-check in order to "confirm that the percentage award is fair and reasonable by determining the hours reasonably expended and

then multiplying that amount by the reasonable hourly rate."  Kelly v. Johns Hopkins Univ., No.

1:16-cv-2835-GLR, 2020 U.S. Dist. LEXIS 14772 at *17 (D. Md. Jan. 28, 2020).

The lodestar cross-check confirms the reasonableness of Class Counsel's fee request.  Not

including time spent preparing this fee petition, Class Counsel and other Plaintiffs' counsel have

spent a total of 12,244.43 hours developing and prosecuting this case, as is summarized in the table

below:

| Plaintiffs' Counsel Lodestar & Multiplier | | | | |
|---|---|---|---|---|
| **Firm** | **Hours** | **Lodestar** | **Requested Fee Award** | **Lodestar Multiplier** |
| **McTigue Law** | 7,090.68 | $4,794,974.00 | | |
| **Cohen Milstein** | 5,125.40 | $3,520,790.50 | | |
| **Wenzel Fenton** | 27.35 | $10.760.00 | | |
| **Totals** | **12,244.43** | **$8,326,524.50** | $3,500,000 | 0.42 |

(See Exs. A ¶¶33-36, B ¶5, C ¶¶12-13); if the Court would like additional detail or breakdown by

litigation phase, Plaintiffs' Counsel would be happy to provide it).[13]

With respect to hourly rates, "courts have repeatedly recognized [that] complex ERISA class

action litigation, such as this, involves a national market."  Kelly, 2020 U.S. Dist. LEXIS 14772 at

---

[13]  When the lodestar method is used only as a cross-check, a court may rely on summaries and need not "exhaustively scrutinize[]" the hours documented by counsel, and "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." Kelly, 2020 U.S. Dist. LEXIS 14772 at *18; Goldberger v. Integrated Res. Inc., 209 F.3d 43, 50 (2d Cir. 2000).  (Class Counsel are aware of the local rules' general requirement that time records be broken down by "litigation phase." (Local Rules App'x B at §1(b)).  However, since these time summaries are only being presented for purposes of a cross-check, it would appear the exception noted in the initial footnote in that appendix to the local rules applies.)

16

*18; <u>Sims v. BB&T Corp.</u>, No. 1:15-CV-732, 2019 U.S. Dist. LEXIS 75839 at *12 (M.D.N.C. May 6, 2019) ("national market rate is appropriate for matters involving complex issues requiring specialized expertise, such as ERISA class actions").  Class Counsel's then-current rates have been approved by federal courts around the country.  (*See* Exs. A ¶36 & B ¶9).  The reasonableness of Class Counsel's present hourly rates – $325-$795 for McTigue Law and $290-$1025 for Cohen Milstein – is further evidenced by similar ERISA fiduciary breach cases approving similar rates, including one court in this district.  *See, e.g.,* <u>Kelly</u>, 2020 U.S. Dist. LEXIS 14772 at *18 (approving hourly rates from $330 an hour to $1060); <u>Sims</u>, 2019 U.S. Dist. LEXIS 75839, at *15 (same).

Accordingly, the lodestar cross-check further confirms the reasonableness of the fees requested.  *See, e.g.,* <u>Kelly</u>, 2020 U.S. Dist. LEXIS 14772 at *20 (approving fees representing a lodestar multiplier of 2.45 in similar case and noting that that multiplier is "well within the range routinely approved in this Circuit"); <u>Singleton v. Domino's Pizza, LLC</u>, 976 F. Supp. 2d 665, 689 (D. Md. 2013) (noting that lodestar multipliers "on large and complicated class actions have ranged from at least 2.26 to 4.5").

The Local Rules in this district provide non-binding "Guidelines Regarding Hourly Rates." (*See* Local Rules, App'x B §3).  While these rates are lower than those employed by Class Counsel here, a recent decision in this very district involving a very similar case, as noted above, has found that the applicable rates for litigation of this type are national rates, and the rates approved in that case are on par with those utilized in the above analysis.  <u>Kelly</u>, 2020 U.S. Dist. LEXIS 14772 at *18 (citing expert opinion and other factors as support).  (Plaintiffs also note that, according to their records, the rates in the Local Rules have been unchanged since at least July 1, 2016; so they have

17

not been adjusted for inflation.)  Finally, the Local Rules emphasize that: "These rates are intended solely to provide practical guidance to lawyers and judges when requesting, challenging, and awarding fees.  The factors established by case law obviously govern over them. …  The Court recognizes that there are attorneys for whom, and cases for which, the market rate differs from these guideline rates." (Local Rules, App'x B §3 n.†)  So the Local Rules themselves envision the use of different rates such as in <u>Kelly</u>.

Nevertheless, Plaintiffs have also undertaken a lodestar analysis using the 2016 rate guidelines suggested in the Local Rules.  Applying the upper end of the rate ranges in the guidelines, the total lodestar would be $4,762,740, making the lodestar multiplier 0.73.  (<em>See</em> Exs. A ¶¶37, B ¶6, C ¶¶12-13).  Hence, even under those lower rates, the lodestar multiplier is below one, indicating Class Counsel are providing their services as a discount.  So under either set of rates, the lodestar cross-check supports an award of the requested attorneys fees.

## III.  CLASS COUNSEL'S OUT-OF-POCKET LITIGATION EXPENSES SHOULD BE REIMBURSED

Under the Federal Rules, a trial court may award nontaxable costs that are authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h).  Reimbursement of reasonable costs and expenses to counsel who create a common fund is both appropriate and routine.  <u>Kelly</u>, 2020 U.S. Dist. LEXIS 14772 at *20-21; <u>Savani v. URS Prof'l Solutions LLC</u>, 121 F.Supp.3d 564, 576 (D.S.C. 2015).  In this case, a cost award is authorized by the common fund doctrine and permitted by the Parties' agreement.  <u>Kelly</u>, 2020 U.S. Dist. LEXIS 14772 at *20-21; <u>Kruger</u>, 2016 U.S. Dist. LEXIS 193107, 2016 WL 6769066, at *6; ECF No. 234-4 §§8.1-8.3.  Reimbursable expenses include court costs,

transcripts, travel, contractual personnel, document duplication, expert witness fees, photocopying, long distance telephone charges, postal fees, and expert witness fees. In re Mid-Atlantic Toyota Antitrust Litig., 605 F. Supp. 440, 448 (D. Md. 1984).

As summarized in the table below, Class Counsel request reimbursement of $707,908.79 in costs and expenses incurred in connection with the litigation.  (Exs. A ¶¶38-40 & B ¶¶24-25).  The submitted expenses were all reasonable, necessary, and directly related to the prosecution of this action.  They include standard litigation-related costs and expenses such as costs for Plaintiffs' three experts who all submitted multiple reports and were deposed, reviewing and coding 114,000 pages of documents Defendants produced in discovery, use of electronic databases for legal research, court reporters for depositions and deposition transcripts, provision of an online database to facilitate coding of discovery documents, court filing fees, and copying and postage.  A summary of the total expenses by category for both Class Counsel firms is presented in the following table:

| | Total Class Counsel Expenses | |
|---|---|---|
| | **Category** | **Total** |
| 1 | Postage & Courier | $ 1,096.17 |
| 2 | Filing Fees | $ 600.00 |
| 3 | Photocopies, external vendors | $ 309.25 |
| 4 | Photocopies, internal 20,343 pages @10 cents/pg | $ 2,043.30 |
| 5 | Process Server Fees | $ 1,176.00 |
| 6 | Telephone | $ 326.86 |
| 7 | Mediation Services | $ 8,450.00 |
| 8 | Expert Services | $ 456,516.75 |
| 9 | E-Discovery Databases | $ 15,469.49 |
| 10 | Westlaw/Lexis/EDGAR/PACER databases | $ 70,601.17 |
| 11 | Overtime | $ 62.60 |
| 12 | Document Review Services | $ 112,775.40 |
| 13 | Deposition Services | $ 33,907.70 |
| 14 | Consultant | $ 86.40 |
| 15 | Case Related Travel & Meals | $ 4,487.70 |
| | **TOTAL** | **$ 707,908.79** |

Here, Class Counsel were motivated to, and did, keep expenditures low since there was a risk they would not be reimbursed.[14]  The costs incurred are significantly lower than those of other firms that have litigated similar cases.  *See* <u>Spano v. Boeing Co.</u>, 2016 WL 3791123, at \*\*1, 4 (S.D. Ill.

---

[14] In their preliminary approval brief and the class notice, Plaintiffs indicated that they anticipated seeking reimbursement of "approximately $565,000" in expenses.  (ECF No. 234-1 at 9).  In preparing this filing, recently appointed Class Counsel for Cohen Milstein, Mary Bortscheller, discovered that her predecessor at Cohen Milstein inadvertently did not include various expenses in this estimate.  (Ex. B ¶26).  That is the reason for the higher total.

Mar. 31, 2016) (approving reimbursement of $1.8 million in expenses); Abbott v. Lockheed Martin Corp., 2015 WL 4398475, at **1, 4 (S.D. Ill. July 17, 2015) ($1.6 million in expenses); Beesley v. Int'l Paper Co., 2014 WL 375432, at **1, 3 (S.D. Ill. Jan. 31, 2014) ($1.6 million in expenses); George v. Kraft Foods Glob., Inc., 2012 WL 13089487, at **1, 4 (N.D. Ill. June 26, 2012) ($1.5 million in expenses).

As discussed above, Class Counsel will continue to be involved in the settlement administration phase of this case even if the settlement is finally approved, and expect to incur additional expenses as a result. Class Counsel are not seeking an award for these expected future expenses.

Class Counsel's request for reimbursement of expenses should be granted.

## IV.   SERVICE AWARDS SHOULD BE GRANTED TO THE CLASS REPRESENTATIVES

At the conclusion of a successful class action case, it is common for courts, exercising their discretion, to award special compensation to the class representatives in recognition of the time and effort they have invested for the benefit of the Class. Kelly, 2020 U.S. Dist. LEXIS 14772 at *21-22. "A substantial incentive award is appropriate in [a] complex ERISA case given the benefits accruing to the entire class in part resulting from [named plaintiffs'] efforts." Savani v. URS Prof'l Solutions LLC, 121 F.Supp.3d 564, 577 (D.S.C. 2015). Such awards are also warranted in view of the fact that the Class Representatives risked their reputation and alienation from employers or peers "in bringing an action against a prominent company in their community." Kruger, 2016 U.S. Dist. LEXIS 193107, 2016 WL 6769066, at *6. Further, Plaintiffs who undertake litigation against sophisticated defendants also "undert[ake] substantial risk . . . that [the defendant might] pursue[]

21

cost-shifting remedies had a settlement not been reached or Plaintiff[s] not prevailed'." <u>Morgan v. Public Storage</u>, 301 F. Supp. 3d 1237, 1259 (S.D. Fla. 2016). [15]

 The Class Representatives made significant contributions, and spent significant time, in representing the Class in this litigation.  They produced personal documents in response to Defendants' discovery requests, answered Defendants' interrogatories, many sat for lengthy depositions conducted by aggressive defense counsel, several attended the motion to dismiss hearing before Judge Garbis and the first mediation session with Judge Copperthite, and they conferred with Class Counsel and reviewed documents throughout this lengthy litigation.  (Exs. A¶¶25-32, D-N).  All also exposed themselves to the risk of adverse career consequences by being involved in a suit against their former or current employer.  Finally, the relatively high number of Class Representatives was dictated by the circumstances of the case.  As discussed above, it was necessary to get different representatives who invested in different funds in order to moot Defendants' standing objection.

---

[15] In awarding incentive awards to class representatives in class actions, "courts consider not only the efforts of the plaintiffs in pursuing the claims, but also the important public policy of fostering enforcement of laws and rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves." <u>Bussie v. Allmerica Fin. Corp.</u>, 1999 U.S. Dist. LEXIS 7793, at *11-12 (D. Mass. May 19, 1999); *see also* <u>Lunsford v. Woodforest Nat'l Bank</u>, 2014 WL 12740375, at *10 (N.D. Ga. May 19, 2014) ("Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives"); <u>Godshall v. Franklin Mint Co.</u>, 2004 WL 2745890, at *6 (E.D. Pa. Dec. 1, 2004) (awarding $20,000 to each plaintiff and noting, in an ERISA action, "[f]actors to consider when assessing incentive awards are: (a) the risk to the plaintiff in commencing suit, both financially and otherwise; (b) the notoriety and/or personal difficulties encountered by the representative plaintiff; (c) the extent of the plaintiff's personal involvement in the suit in terms of discovery responsibilities and/or testimony at depositions or trial; (d) the duration of the litigation; and (e) the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the class").

Accordingly, Plaintiffs seek service awards for each of the Class Representatives in the following amounts:  $15,000 to the original Plaintiff David G. Feinberg who has served the longest and also flew from Florida for his deposition in Washington D.C. (Ex. A ¶¶25-32, D); $12,500 each to James Collins, Sital Jani, Farrah Qureshi, Maria Stanton, and Regina Widderich who were all deposed (Exs. E-I); and $10,000 each to Michelle Bourque, Daniel Fialkoff, Thomas Henry, Jitesh Jani, and Daniel Newman who were not deposed but were all willing to be deposed (Exs. J-N).

The requested amount for the Class Representatives is in line with or less than amounts which courts have awarded in similar cases.[16]

Respectfully submitted,

/s/ James A. Moore
J. Brian McTigue, *admitted pro hac vice*
James A. Moore, *admitted pro hac vice*
**MCTIGUE LAW LLP**
5028 Wisconsin Ave. NW
Suite 100
Washington, DC  20016
Tel: (202) 364-6900
Fax: (202) 364-9960
bmctigue@mctiguelaw.com
jmoore@mctiguelaw.com

---

[16] *See, e.g.*, Kelly v. Johns Hopkins Univ., 2020 U.S. Dist. LEXIS 14772 at *21 (approving $20,000 service awards to each of eight class representatives in similar ERISA class action); Sims v. BB&T Corp., No. 1:15-CV-732, 2019 U.S. Dist. LEXIS 75839 at *18 (M.D.N.C. May 6, 2019) (approving $20,000 service awards to each of ten class representatives in similar ERISA proprietary fund class action); Krueger v. Ameriprise Fin., 2015 WL 4246879, at *3-4 (D. Minn. 2015) (approving incentive awards of $25,000); Zilhaver v. UnitedHealth Grp., 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009) ("named plaintiffs, they bore the risks of counterclaim or collateral attack, and consulted with class counsel throughout the suit. Individual awards of $15,000 are appropriate").

23

Mary J. Bortscheller, *admitted pro hac vice*
Douglas J. McNamara (MD Bar #20786; local counsel)
 **COHEN MILSTEIN SELLERS**
 **& TOLL, PLLC**
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
Tel: (202) 408-4600
Fax: (202) 408-4699
mbortscheller@cohenmilstein.com
DMcNamara@cohenmilstein.com

*Counsel for Plaintiffs and the Class*