UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| DAVID G. FEINBERG, et al., and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>T. ROWE PRICE GROUP, INC., et al.,<br><br>Defendants. | Case No. 1:17-cv-00427-JKB |

**DECLARATION OF J. BRIAN MCTIGUE IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES,
AND SERVICE AWARDS TO CLASS REPRESENTATIVES**

I, J. Brian McTigue, declare under penalty of perjury of the laws of the United States:

1. I am the founder and managing partner of McTigue Law LLP ("McTigue Law" or "Firm"). McTigue Law is a law firm that focuses its practice on the representation of private pension plans qualified under the Employee Retirement Income Security Act of 1974 ("ERISA"), their trustees, participants, and beneficiaries in class actions—principally involving allegations of improper investment of those ERISA plans' assets.

2. I am a member in good standing of the District of Columbia bar.

3. I am more than 18 years of age.

4. Unless otherwise stated herein, I have personal knowledge of the facts set forth herein and, if called upon to testify, could and would testify competently thereto.

5. I submit this declaration in support of Plaintiffs' Motion for an Award of Attorneys' Fees and Costs, Reimbursement of Expenses, and Service Awards to Class Representatives.

6. From its founding, McTigue Law focused on identifying inequities in the 401(k) plan investments and has been a pioneer developing litigation as a countervailing and corrective

1

measure to those inequities and inefficiencies.

7.     More than 20 years ago, the firm filed some of the first "Employer Stock" lawsuits, recognizing the need for a Plaintiffs' litigation bar to protect participants in 401(k) plans, which do not enjoy certain protections afforded by ERISA to traditional defined benefit pension plans.

8.     McTigue Law attorneys have more than 60 years of years of experience litigating ERISA class actions and have recovered, with other firms, nearly a quarter billion dollars on behalf of participants in employee benefit plans. See Exhibit 1. showing a history of the Firm and biographies of the Firm's partners. McTigue Law has been appointed class counsel, lead counsel or co-lead counsel in numerous class and ERISA actions dating back more than a decade.

### McTigue Law's Efforts in This Litigation

9.     After filing the Action, the staff of McTigue Law litigated the clients' and later the Class's claims. A summary of the work McTigue Law performed and/or participated in during the Action is as follows.

10.    I along with James A. Moore of McTigue Law was appointed Class Counsel for Plaintiffs by the Court in this litigation against T. Rowe Price Defendants (the "Action") as to the T. Rowe Price U.S. Retirement Program (the "401(k) Plan"). Also appointed as a Class Counsel is Cohen Milstein Sellers & Toll PLLC (Cohen Milstein) partner Ms. Mary J. Bortscheller.

11.    Ms. Bortscheller was appointed on January 13, 2022 (ECF 239).  Earlier Class Counsel at Cohen Milstein, Ms. Karen Handorf and Mr. Scott Lempert, filed motions to withdraw on November 5, 2021 (ECF 230) and on January 14, 2022 (ECF 237), respectively. Earlier their principal associate, Ms. Jamie L. Bowers, filed a similar motion on August 20, 2021 (ECF 222).

12.    The leaving of three Cohen Milstein staff left McTigue Law with the historical knowledge of a complex case at a critical time.  Consequently, McTigue Law assumed more work than expected and to which McTigue Law was not committed under the Association of

Counsel Agreement. In the interests of the Class, we assumed it without complaint.

13. James A. Moore and I coordinated and supervised the activity carried out by the McTigue Law attorneys and professional staff in this Action. I believe that McTigue Law and its attorneys and staff performed valuable work on behalf of and for the benefit of the Class. We sought efficiency by assigning appropriate tasks to staff and by minimizing duplication.

14. McTigue Law contributed considerable time and attention to the prosecution of the claims from the preparation and filing of the first ERISA Claims by my Firm and Cohen Milstein on February 14, 2017 through March 31, 2022 (the "Time Period"). I support the awards requested for all Class Representatives.

15. McTigue Law identified the cause of action in this matter. McTigue Law researched, drafted and developed the ERISA legal theories and facts in the initial complaint filed February 14, 2017. The Firm conducted the initial representation conference with, and drafted the attorney-client agreement with plaintiff Feinberg, who records show has been a participant in the T. Rowe Price Retirement Plan for the entire Class Period. McTigue Law recruited Cohen Milstein as a co-counsel.

16. I personally advised Class Representative David G. Feinberg in the Action, starting before the first complaint was filed. I supervised Mr. Feinberg's production of documents, reviewed them before they were produced, and assisted him in answering Defendant's interrogatories. I prepared and defended Mr. Feinberg's deposition as well as prepared and defended Class Representative Regina Widderich for her deposition.

17. During the Time Period, McTigue Law was instrumental in most aspects of the litigation, including obtaining and analyzing each of the Plan's annual reports during the proposed Class Period for the 401(k) Plan; overseeing a review of the 114,000 pages of documents Defendants produced in discovery, which were loaded into an electronic document database and coded and reviewed by a team of reviewers that included attorneys and support staff at McTigue Law. McTigue Law staff also reviewed the documents produced by many Plaintiffs, in particular Plaintiffs Feinberg and Widderich, who was recruited by Cohen Milstein.

18. McTigue Law and Cohen Milstein propounded 52 document requests, 22 requests for admission, and 17 interrogatories. The firms responded to Defendants' 22 document requests and 14 interrogatories.

19. McTigue Law attorneys deposed five of the ten fact witnesses called by Plaintiffs in the Action, including the 30(b)(6) deposition of the representative of Defendant T. Rowe Price Group.

20. McTigue Law and Cohen Milstein staff negotiated a protective order; filed and defended several motions to compel; and actively participated in other motion practice, including writing and filing:

- Plaintiffs' opposition to Defendants' motion to dismiss, with McTigue Law partner James Moore serving as the lead attorney at oral argument;
- Plaintiffs' unopposed omnibus motion for class certification, amendment of complaint, and approval of joint stipulation to class certification, amendment of complaint, and dismissal of certain individual defendants;
- Plaintiffs' motion for summary judgment and responding to Defendants' cross motion for summary judgment;
- Plaintiffs' motion to reconsider the Court's summary judgment decision; and
- Plaintiffs' motion to amend the court's memorandum and order denying Plaintiffs' motion for reconsideration, to certify for interlocutory appeal.

21. McTigue Law kept Class Representative Feinberg apprised of the litigation through more than a hundred phone calls, emails and meetings in Florida and District of Columbia and attended the multiple mediation sessions, first with the Magistrate Judge Copperthite, and, when that proved unsuccessful, with a private mediator, Robert A. Meyer.

22. McTigue Law and co-counsel Cohen Milstein identified and worked with three experts in support of the Action. The two firms worked together to respond to the three experts presented by Defendants. The Parties' experts focused on fiduciary process, accounting, losses, investment performance and T. Rowe Price's profits resulting from offering its own funds in its

401(k) Plan. Each Plaintiffs' expert submitted an initial and a reply report. Defendants' experts submitted rebuttal reports. Each side deposed the experts of the other side. McTigue Law was instrumental in all Plaintiff's actions and responses regarding these experts.

23. McTigue Law counsel participated in dozens of telephone calls and video conferences with co-counsel Cohen Milstein and others to fulfill its duty its duty to the Class.

24. McTigue Law attorneys drafted, reviewed, revised settlement documents, filings, and agreements. McTigue Law recruited and negotiated with settlement service providers, including the settlement administrator and the escrow bank.

### McTigue Law's Efforts Specific to Class Representative Feinberg

25. Class Representative Feinberg is not an official of the plan, such as a plan trustee or plan administrator. He is a lay person who has volunteered to take responsibility as Class Representative beyond that required of an ordinary participant. Participants are not required by law, as trustees and fiduciaries are, to represent the plan. However, under §502(a) of ERISA, ordinary plan participants and their beneficiaries, may offer to represent their plan as a plaintiff and Class Representative in ERISA litigation. In my experience, they are at some risk in doing so for possible adverse consequences of their actions.

26. Before representing Feinberg in the Action, McTigue Law did not have any prior relationship with Mr. Feinberg, or with any of the Class Representatives. Mr. Feinberg was introduced by his prior counsel, Wenzel, Fenton & Cabassa, P.A. of Tampa, Florida, to McTigue Law. McTigue Law and Wenzel Fenton entered into a co-counsel agreement with Mr. Feinberg to represent Mr. Feinberg before the original complaint was filed. Later McTigue Law negotiated and entered into an Association of Counsel Agreement with Cohen Milstein to represent Mr. Feinberg.

27. From extensive interactions with Mr. Feinberg, I believe Mr. Feinberg took seriously his duty to act in the best interests of the Class, and was not acting primarily for his own personal interest. He set aside time to participate in more than a hundred communications

with McTigue Law staff over the course of the litigation. Feinberg reviewed the original Complaint before it was filed on February 14, 2017 and subsequently reviewed the Defendants' motion to dismiss that original complaint. He reviewed the first Amended Complaint before it was filed on July 20, 2017. Thereafter he reviewed many of the filings in the case and posed many questions about them to McTigue Law.

28. In response to Defendants' discovery request, and following my direction, Feinberg provided McTigue Law documents in electronic and paper form and other information. McTigue Law produced responsive documents to Defendants.

29. I prepared Feinberg for his deposition by Defendants, which occurred in-person in Washington, DC. Feinberg flew from his home in Tampa, Florida to the District of Columbia for that deposition.

30. McTigue Law had scores of phone calls with Feinberg regarding the Action. These involved various stages of the litigation, from the initial and amended complaints, discovery requests, the Court's orders, mediation and settlement. Feinberg was engaged, interested, and in my view, clearly understood his duty to the Class.

31. Feinberg attended the mediation presided over by Magistrate Judge A. David Copperthite on April 13, 2021. Prior the mediation, I discussed the tactics and strategy and potential for settlement with Mr. Feinberg. I furnished him the Court's order on the competing motions for summary judgement, and we discussed at length the risks involved in this litigation and possible outcomes if we proceeded to trial.

32. In summary, Feinberg was competent Plan representative and appeared genuinely concerned about the Class as a whole and federal pension law and civil procedure be utilized and enforced. I am proud to represent him.

### **Billing and Lodestar Details**

33. The schedule below in Table 1 is a summary representing the amount of time spent by each attorney and professional support staff member of the McTigue Law firm

involved in the prosecution of the Action, and the lodestar calculation based on my Firm's current billing rates recently submitted in class action ERISA cases. For McTigue Law personnel who are no longer employed by my Firm, the lodestar calculation was frozen, based upon their rate in their final year of employment. Table 1 was prepared from contemporaneous daily time records regularly prepared and maintained by my Firm, which are available at the request of the Court.

**Table 1: McTigue Law LLP Lodestar at Current Rates**
**Inception, August 31, 2016 thru March 31, 2022**

| Name | Total | Rate | Lodestar |
|---|---|---|---|
| **Attorneys** | | | |
| J. Brian McTigue, Esq. | 568.69 | $795.00 | $452,109 |
| James Moore, Esq. | 4360.12 | $795.00 | $3,466,295 |
| Regina Markey, Esq. | 434.76 | $695.00 | $302,158 |
| Brooke Edwards, Esq. | 31.08 | $325.00 | $10,101 |
| John Bellassai, Esq. | 125.4 | $325.00 | $40,755 |
| Mikael Neville, Esq. | 192 | $325.00 | $62,400 |
| | | | |
| **Attorney Total** | 5712.05 | | $4,333,318 |
| | | | |
| **Staff** | | | |
| David T. Bond, Case Manager | 1092.74 | $335.00 | $366,068 |
| Summer Hesami, Law Clerk | 217.40 | $335.00 | $72,829 |
| Miyuki Britton, MBA | 18.96 | $325.00 | $6,162 |
| Michele Chasse, Paralegal | 49.53 | $325.00 | $16,097 |
| | | | |
| **Staff Total** | 1378.63 | | $461,156 |
| | | | |
| **Firm Total** | 7,090.68 | | $4,794,974 |

34. The total number of hours expended by McTigue Law on this Action during the Time Period is 5,712 hours of attorney time, and 1,378 hours of professional support staff time,

7

for a total of 7,090 hours expended. The total McTigue Law lodestar in this Action during the Time Period based on the Firm's typical rates submitted in ERISA class action settlements, as reflected below, is $4,794,974.

35. In my judgment, having litigated class actions for more than twenty-five years, the number of hours expended and the services performed by the attorneys and staff at McTigue Law in this hard-fought action were reasonable and were expended for the benefit of the class in this Action.

36. The attorney hourly rates used in the preparation of Table 1 range from $325 - $795 per hour. These are comparable to the rates that McTigue Law has used for other ERISA class action work on behalf of participants and beneficiaries in employee benefit plans. Such rates have been submitted to and accepted by other courts when McTigue Law was petitioning for attorneys' fees in ERISA class action settlements, including in recent years (shown here unadjusted for inflation): *Arkansas Teachers Retirement System v. State Street Bank and Trust*, C.A. No. 11-10230-MLW; C.A. No. 11-12049-MLW; C.A. No. 12-11698-MLW (D. Ma. January 19, 2021) (ECF No. 663 (final judgment concerning fees and awards), ECF Nos. 102, 103-1 (lead counsel motion and memo for an award of fees, expenses and service awards), ECF No. 104-19 (Decl. of J. Brian McTigue ($325-$725 range)); *In re SunTrust Banks, Inc. 401(k) Plan Affiliated Funds ERISA Litig.*, No. 1:11-cv-00784 (N.D. Ga. Jul. 20, 2020) (ECF No. 302 (order awarding attorney fees), ECF Nos. 296, 296-1 (motion for an award of fees, expenses and service awards), ECF Nos. 295-3, 295-6 (Decl. of J. Moore and S. Lempert ($325-$770 range)); *Carver et al. v. Bank of New York Mellon et al.*, 15-CV-10180 (JPO) (S.D.N.Y. May 23, 2019) (ECF No. 222 (order awarding fees, expenses, service awards), ECF Nos. 202, 203 (motion and memo for award of fees, expenses, and service awards), ECF Nos. 205, 205-2 (Decl. of Brian McTigue) ($325-$725 range)); *Carver et al. v. Bank of New York Mellon et al.*, No. 12-CV-9248 (LAK)/*Fletcher v. Bank of New York Mellon et al.*, No. 14-CV-5496 (LAK) (S.D.N.Y. September 24, 2015) (ECF No. 637 (order awarding fees, expenses, service awards), ECF Nos. 618, 619 (lead counsel motion and memo for award of fees, expenses, and service awards), ECF

8

No. 622-5 (Decl. of Brian McTigue) ($525-$625 range)).[1]

37.     The schedule below in Table 2 shows a summary representing the same hours spent by each attorney and support staff of this Firm as is shown in Table 1 during the Time Period in this Action, but instead it calculates the lodestar by applying the rates listed in the Maryland Local Rules Appendix B: *Rules And Guidelines For Determining Attorneys' Fees in Certain Cases* (July 1, 2021). The total lodestar for my Firm during the Time Period in this Action for those hours based on the rates in the Local Rule Appendix B is $2,859,034.

**Table 2: McTigue Law LLP Lodestar Under MD Rate Guidelines
from Inception, August 31, 2016 thru March 31, 2022**

| Name | Total | Rate | Lodestar |
|---|---|---|---|
| **Attorneys** | | | |
| J. Brian McTigue, Esq. | 568.69 | $475.00 | $270,128 |
| James Moore, Esq. | 4360.12 | $475.00 | $2,071,057 |
| Regina Markey, Esq. | 434.76 | $475.00 | $206,511 |
| Brooke Edwards, Esq. | 31.08 | $300.00 | $9,324 |
| John Bellassai, Esq. | 125.4 | $300.00 | $37,620 |
| Mikael Neville, Esq. | 192 | $300.00 | $57,600 |
| | | | |
| **Attorney Total** | 5712.05 | | $2,652,240 |
| | | | |
| **Staff** | | | |
| David T. Bond, Case Manager | 1092.74 | $150.00 | $163,911 |
| Summer Hesami, Law Clerk | 217.40 | $150.00 | $62,610 |
| Miyuki Britton, MBA | 18.96 | $150.00 | $2,844 |
| Michele Chasse, Paralegal | 49.53 | $150.00 | $7,430 |
| | | | |
| **Staff Total** | 1378.63 | | $206,795 |
| | | | |
| **Firm Total** | 7,090.68 | | $2,859,034 |

---

[1] The top rates shown in these four McTigue Law cases, adjusted for inflation to the February 2022 value using the U.S. Bureau of Labor Statistics inflation converter, are: *Arkansas Teachers*: $851.99/hour; *Suntrust Banks*: $847.42/hour; *Carver* (2019): $804.91/hour ; *Carver* (2015): $744.06/hour. https://www.bls.gov/data/inflation_calculator.htm

38. McTigue Law's lodestar figures do not include expenses incurred by the Firm in the Action. These expense items are summarized separately in Table 3 below. Such charges are neither represented nor duplicated in the Firm's billing rates.

**Table 3: McTigue Law Expense Summary**

| Category | Total |
|---|---|
| Postage & Courier | $ 291.79 |
| Filing Fees | $ 100.00 |
| Photocopies, external vendors | $ 99.55 |
| Photocopies, internal, 20,343 color & black & white pages @ a blended rate of 10 cents/page | $ 2,043.30 |
| Mediation Services | $ 3,975.00 |
| Expert Services | $ 200,566.36 |
| Legal Research | $ - |
| Westlaw/Lexis/EDGAR/PACER databases | $ 59,613.85 |
| Overtime | $ - |
| Document Review Services | $ 29,671.40 |
| Deposition Services | $ - |
| Consultant | $ 86.40 |
| Case Related Out of Town Travel & Meals | $ 878.56 |
| **Firm Total** | **$ 297,326.21** |

39. As set forth in Table 3, McTigue Law has incurred a total of $297,326.21 in incurred and unreimbursed expenses in connection with the prosecution of the Action from the development of the complaint through March 31, 2022. In my judgment, these expenses were reasonable and expended for the benefit of the Class in this Action.

40. These expenses are reflected on the books and records of the McTigue Law firm. It is the Firm's policy and practice to prepare such records from expense vouchers; checking

account records; credit card statements; invoices; receipts and records; and other original source materials. Based on my management of McTigue Law's work in connection with this litigation and my review of these records, I believe they constitute an accurate record of the expenses actually incurred by the Firm in connection with this litigation.

41. McTigue Law's skill and commitment to litigating the Action through to settlement reflect the experience and reputation of our Firm, its attorneys and staff. As a small firm, taking on complex and long-term ERISA litigation involves significant financial risk, including the risk of non-payment. This ERISA class action case involved the expenditure of considerable resources, limiting our ability to take on other paying clients.

42. McTigue Law attorneys and staff have and will incur significant unreimbursed attorney time prior to and after the final approval hearing, and expense, such as supervising the Settlement administration process, responding to inquiries from Class Members regarding the Settlement and legal research using subscriptions to electronic law libraries.

43. In my opinion, based on my experience litigating complex ERISA class action cases such as this, the Settlement is fair, reasonable, and adequate.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 9th day of April 2022.

J. Brian McTigue
Washington, D.C

**EXHIBIT 1**

| MCTIGUE LAW LLP |
|---|

**McTigue Law LLP** represents trustees and participants in traditional pension plans, 401(k) salary deferral plans, savings plans, and Employee Stock Ownership Plans (ESOPs). The firm confines itself to the litigation of complex class actions, the majority of which are brought under the federal Employee Retirement Income Security Act (ERISA). We represent and protect employees in pension plans when those plans have lost assets because the employer-fiduciaries, trustees and investment managers fail to meet their obligations under ERISA.

McTigue Law was likely the first law firm, years before the Enron, WorldCom, and Global Crossing scandals, to recognize the need for lawyers focused on litigation to protect plan participants against the growing risks of imprudently invested 401(k) plans. Participants in these plans directly bear the investment risks of plan investments.

The Firm's representative cases include the following in which the firm served as lead or co-lead class counsel and secured multimillion dollar awards for ERISA plans and participants:

- *In re SunTrust Banks, Inc. 401 (k) Plan Affiliated Funds ERISA Litigation* 1:11-CV-784-ODE (N.D. Ga.). McTigue Law achieved a $29 million settlement in this action, which involved allegations of fiduciary breaches by defendants resulting from the imprudent investment of retirement plan savings in proprietary mutual funds with high fees and poor investment performance.

- *Carver, et al., v. Bank of New York Mellon, et al., Case No. 15-10180-JPO, (S.D.N.Y.).* McTigue Law achieved a $12.5 million settlement in this action, which involved allegations that Bank of New York Mellon (BNYM), in contravention of its fiduciary duties, obtained illegal profits when exchanging currencies for ERISA Entities by converting cash distributions on BNYM ADRs from foreign currencies to U.S. Dollars.

- *In re Bank of New York Mellon Corp. Forex Transactions Litigation,* No. 12-md-2335 (S.D.N.Y.). This Multidistrict Litigation case involved allegations that Bank of New York Mellon systematically overcharged custodial bank clients for a type of foreign exchange transactions known as "standing instruction." McTigue Law brought ERISA class claims, and other firms brought non-ERISA claims. Acting as one of three lead settlement counsel and the only ERISA settlement counsel, McTigue Law achieved a $335 million settlement, approximately $70 million of which was allocated to a class of ERISA plans with more than 490,000 participants.

- *Leber v. CitiGroup*, 07-09329 (S.D.N.Y.): McTigue Law achieved a $6.5 million settlement in this case, which alleged breaches of fiduciary duty where defendants invested retirement plan savings in proprietary mutual funds with high fees and inferior investment performance.

- *Henriquez v. State Street Bank and Trust Company et al*, (D. Mass.), Case No. 1:11-cv-12049-MLW. McTigue Law was the first firm to bring ERISA class claims and allege

**MCTIGUE LAW LLP**

breaches of fiduciary duty related to defendants' pricing and execution of foreign exchange transactions for funds invested in by plan participants. The action was consolidated with other non-ERISA actions and resulted a settlement of $60 million for ERISA plaintiffs.

- *Presley v. CHH, et al.*, 97-cv-04316 (SC) (N.D. Cal.) (bankrupt plan sponsor). CHH, was the Los Angeles holding company for the Broadway, Emporium, Capwells, and Weinstocks department stores, with more than 24,000 employees in its 401(k) plan. More than half of the plan's assets were invested in CHH stock when the chain filed for bankruptcy. Nearly $39 million was recovered for the plan from defendants.

- *In re CMS Energy ERISA Litig.*, 02-cv-72834 (GCS) (E.D. Mich.). This litigation, on behalf of more than 10,000 pension plan participants, involves a former Detroit based utility. A $28 million settlement was reached in this litigation.

- *In Re McKesson HBOC, Inc. ERISA Litig.*, C 00-20030 (RMW) (N.D. Cal.). Plan with 8,000 participants. $23 million settlement.

- *Blyler v. Agee, et al.*, CV97-0332-(BLW) (D. Idaho) (bankrupt plan sponsor). This litigation involved pension plans with 8,000 employees sponsored by Morrison Knudsen Corporation which declared bankruptcy in 1996. $21 million settlement obtained.

- *Figas v. Wells Fargo & Co.* (Wells Fargo ERISA Litig.), No. 08-04546 (D. Minn.). This litigation involved allegations of breaches of ERISA fiduciary duties and prohibited transactions where defendants invested retirement plan savings in proprietary mutual funds with high fees and poor performance. $17.5 million was recovered for the plan.

- *Sherrill v. Federal Mogul Corp. Ret. Programs Committee, et al.*, 04072949 (E.D. Mich.) (plan sponsor bankruptcy with asbestos liability). Plan with 12,000 participants. $12.75 million settlement.

- *Koch v. Dwyer, et al.*, 98-cv-5519 (RPP) (S.D.N.Y.) (bankrupt plan sponsor). This litigation involved JWP, Inc., a S&P 500 company that declared bankruptcy. A $6.4 million settlement was reached in 2002 on behalf of JWP's pension plan.

Overall, the firm has prosecuted cases on behalf of hundreds of thousands of plan participants recovering more than $250 million. Many lawsuits involved allegations of fiduciary breaches with respect to a pension plan sponsored by a S&P 500 or similar company.

The firm has cases on behalf of thousands of pension plan participants who have lost retirement assets due to a trustee's or fiduciary's breach of fiduciary duty and whistleblowers before the U.S. Securities & Exchange Commission. These cases include:

| MCTIGUE LAW LLP |
|---|

- *Feinberg, et al., v. T. Rowe Price Group, Inc., et al.,* 17-cv-00427 (D. MD). Alleging breaches of fiduciary duty where defendants invested retirement plan savings in proprietary mutual funds with high fees and poor investment performance.

The Defendants in these cases include fiduciaries and administrators of 401(k) Plans, corporate boards which appointed and failed to monitor their appointed fiduciaries and administrators. The lawsuits allege a variety of federal pension law violations, including fiduciaries of these pension plans failed to perform fiduciary duties to the funds and their pension plan members as required by federal law, participated in others breaches of fiduciary duty, and engaged in prohibited transactions, involving conflicts-of-interest, under federal pension law.

The events beginning in late 2001 and the first half of 2002, including the financial collapse and bankruptcy filings by ENRON, WorldCom, and Global Crossing confirmed the risks that participants in defined contribution pension plans are exposed to because of large portfolios of Company Stock. The nature of this risk to 401(k) plan participants was brought to the attention of the United States Department of Labor in 1997 by Mr. McTigue when he was invited to testify before the Department's pension fund Advisory Council.

**PRINCIPAL ATTORNEYS**

*Brian McTigue*

Mr. McTigue founded McTigue Law LLP. Prior to private practice, Mr. McTigue was counsel to committees of the United States House of Representatives and Senate. His legislative work included investigations and legislation on federal pension law and pension fund investment.

As a Senate Legal Counsel for Special Projects, Mr. McTigue was responsible 1996 for initiating the first legislative proposal to reduce the percentage of sponsoring corporation stock allowed in the portfolios of 401(k) and similar defined contribution pension plans. The bill represented the first congressional recognition of problems with the typical pension plan of the baby boom generation. Although opposed by many employers and employer groups, several of the concepts embodied in the bill became law. Since Mr. McTigue has assisted congressional offices with draft legislation which would give ERISA fiduciary breach claims greater protection when companies sponsoring plans file for bankruptcy.

Mr. McTigue's congressional investigation of Michael Milken, Drexel Burnham Lambert and the junk bond market was a basis for *FDIC v. Milken*, *et al*. brought by the Federal Deposit Insurance Corporation and settled for $1.3 billion. His congressional investigations of the funding of pension plans through terminal annuities issued by the Executive Life Insurance Company identified issues which gave rise when Executive Life later became insolvent to a plethora of private class actions and United States Department of Labor litigation alleging

**MCTIGUE LAW LLP**

federal pension law violations, U. S. Labor Department's adoption of new fiduciary standards for pension termination annuities and passage of the Pension Annuitants Protection Act.

Prior to his legislative work, Mr. McTigue was an investigative reporter and television news producer for ABC and NBC News. Before working in television, he reported from Europe and Africa, where he covered revolution and civil war. His investigative reporting on hidden financial dealings resulted in several national political figures resigning their positions. His investigative work has been awarded Emmys and a George Polk Award.

Mr. McTigue is a graduate of Notre Dame and the Golden Gate University Law School, San Francisco, California. Mr. McTigue is a member of the District of Columbia Bar. He is also a member of the bars of the United States District Courts for the District of Columbia, Northern District of California, Central District of California, Eastern District of Michigan and several federal appellate courts.

Mr. McTigue is from Fort Dodge, Iowa.

*James A. Moore*

Mr. Moore is a senior litigation partner with over two decades of experience in class action cases in federal and state courts, including, in particular, ERISA retirement plan, health benefit, insurance, and consumer fraud cases. He is quoted in news articles on cutting-edge ERISA litigation issues.

Mr. Moore has played a major role in securing multimillion dollar awards for 401(k) and pension plan participants in numerous cases. Most recently, he was Class Counsel and a principal attorney representing the plaintiffs in *In re SunTrust Banks 401(k) Plan Affiliated Funds ERISA Litigation*, No. 1:11-cv-784-ODE (N.D. Ga.). This suit, brought on behalf of SunTrust Banks 401(k) plan participants, settled for $29 million in July 2020. Other suits in which he has been a lead attorney or played a major role include *In re Bank of New York Mellon Forex Transactions Litig.*, No. 12-CV-9248 (S.D.N.Y.); *Leber v. Citigroup 401(k) Plan Inv. Committee*, No. 07-cv-9329-SHE (S.D.N.Y.); *Figas v. Wells Fargo & Co.*, No. 08-04546 (D. Minn.); *Dickerson v. Feldman* (Solutia Corp. ERISA Litig.), No. 1:04-CIV-07935 (S.D.N.Y.); *In re RCN Corp. ERISA Litig.*, No. 04-5068 (D.N.J.); *Koch v. Dwyer* (EMCOR Corp. ERISA Litig.), No. 98CIV5519 (S.D.N.Y.); and *Blyler v. Agee* (Morrison Knudsen Corp. ERISA Litig.), No. 97-00332 (D. Idaho).

Mr. Moore is a 1994 graduate of the University of Michigan Law School, where he served as an Associate and Article editor for the *Michigan Journal of International Law*. He is admitted to practice in the District of Columbia, Pennsylvania, the United States District Court for the District of Columbia, the U.S. Court of Appeals for the Second Circuit, the U.S. Court of Appeals for the Fourth Circuit, and the U.S. Court of Appeals for the Eleventh Circuit. He

| MCTIGUE LAW LLP |
|---|

serves on the Board of Directors of the Maryland Ornithological Society, and is chair of its investment committee.

Prior to his law career, Mr. Moore earned a Ph.D. in philosophy from the University of Pittsburgh. The Pitt philosophy department has been ranked among the top five in the country. He was awarded the prestigious Mellon Pre-Doctoral Fellowship in his first year of study, and was awarded a Teaching Fellowship to teach logic and philosophy during the remainder of his studies. He earned his Bachelor of Arts from Indiana University-Bloomington, graduating Phi Beta Kappa and with honors.

Prior to joining McTigue Law LLP, Mr. Moore was an attorney with Malakoff, Doyle, & Finberg, P.C., which, together with McTigue Law LLP, pioneered the pursuit of class action suits on behalf of employees who lost retirement savings due to their pension plan fiduciary's imprudent investment in their employer's stock.

Mr. Moore's publications include "Taking Legal Action to Protect Policyholders' Ownership Rights in the Wake of the Continuing Trend Toward Insurance Company Demutualization," ATLA Insurance Law Section Newsletter, Fall 2000 (co-author with Ellen M. Doyle), and publications in scholarly journals including the *Harvard International Law Journal*.

*Regina M. Markey*

Since beginning her law practice in 2001, Ms. Markey has concentrated on employment, employee benefit, and labor law. She has argued as a federal appellate advocate, developed a successful ERISA claim against a National Football League benefit plan, pursued and settled employment claims, represented a prominent environmental whistleblower, advised the U.S. Congress on public safety officer benefit legislation, and was instrumental in a class action charging the U.S. Environmental Protection Agency and its former administrator with Constitutional and statutory violations following 9/11 terrorist attacks on behalf of New York City residents, office workers, and students. Ms. Markey is admitted to practice in the District of Columbia and Pennsylvania, before the United States Court of Appeals for the District of Columbia, the U.S. District Court for the District of Columbia, the U.S. District Court in Maryland, and the U.S. Supreme Court. Ms. Markey is a member of the District of Columbia Bar Association, the American Bar Association, the AFL-CIO Lawyers Coordinating Committee, and the Metropolitan Washington Employment Lawyers Association. She graduated from the Columbus School of Law at Catholic University of America, Washington, D.C., J.D. (1992), and earned a B.A. in Economics from the University of Connecticut.

Prior to private practice, for more than a decade Ms. Markey's primary professional focus was policies to protect ERISA and public employee pension funds, during which time she advised plans, trustees, labor organizations, and financial companies on related governance and programmatic investment issues. For seven years Ms. Markey co-authored the leading labor union publication covering pension participant and investment issues, *Labor and Investments*.

5.

**MCTIGUE LAW LLP**

She analyzed domestic and foreign retirement systems and actively promoted best practices for retirement funds through strategic advice, writing and presentations.

Ms. Markey has served as the AFL-CIO Staff Retirement Plan's representative to the Council of Institutional Investors; as an observer to the National Conference of Commissioners on Uniform State Law Drafting Committee on the Public Employee Retirement Fund Act; as a founder and coordinator of the Industrial Heartland Labor Investment Forum, a grassroots consortium examining private and public sector pension investment practices; and as an advisor in corporate shareholder accountability actions.
Ms. Markey has spoken on retirement funds and ethics before numerous groups, including the National Coalition of Public Safety Officers; the National Association of Public Pension Attorneys; the California Public Employee Retirement System Board of Trustees; the Communications Workers of America; the Connecticut Treasurer's Stakeholders Conference; the AFL-CIO; and the Super 2000 Pension Conference in Sydney, Australia. Ms. Markey was raised in Emerson, New Jersey and Ridgefield, Connecticut as one of eleven siblings.

\*   \*   \*