## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DAVID G. FEINBERG, et al., and all others similarly situated,** | * | |
| | * | |
| **Plaintiff,** | | |
| | * | |
| **v.** | * | **CIVIL NO. JKB-17-0427** |
| | * | |
| **T. ROWE PRICE GROUP, INC., et al.,** | * | |
| | * | |
| **Defendants.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM

Now pending before the Court is Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards to Class Representatives.[1] (ECF Nos. 242, 243.) The Court held a Fairness Hearing on June 10, 2022. (ECF No. 256.) For the reasons set forth below, the Court will grant both Motions.

### I.   Background

This case involves a challenge to the administration of the T. Rowe Price U.S. Retirement Program (the "Plan") and was brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiffs alleged violations of ERISA's fiduciary duties and prohibited transactions provisions stemming from the practice wherein financial services organizations' 401(k) plans offer the organizations' own proprietary investment vehicles. (*See generally* Sec. Am. Compl., ECF No. 84.) In essence, Plaintiffs alleged that Defendants favored the economic

---

[1] Defendants advised that they "take no position on the ultimate reasonableness of the amount of attorneys' fees and expenses." (ECF No. 246 at 1.)

interests of T. Rowe Price over the interests of their employees and of the Plan by offering only in-house investment funds in the Plan, despite such funds allegedly having higher fees and poorer performance than non-T. Rowe Price funds. (*Id.*)

Plaintiff Feinberg filed the original complaint on February 14, 2017, (ECF No. 1), and Defendants filed a motion to dismiss. (ECF No. 27.)  Plaintiffs thereafter filed an amended complaint, adding ten additional named plaintiffs, (ECF No. 32), and Defendants filed another motion to dismiss, (ECF No. 35), which the Court denied. (ECF Nos. 58, 59.) The Court certified the class on May 17, 2019 pursuant to Federal Rule of Civil Procedure 23(b)(1).[2]  (ECF No. 83.)

Following extensive fact discovery,[3] the parties prepared summary judgment motions accompanied by voluminous records. (*See* ECF Nos. 142–86.) On February 10, 2021, the Court largely denied those motions,[4] but expressed skepticism regarding Plaintiffs' ability to recover at trial. (ECF No. 200 at 2–3, 17.) The Court set a trial date, with trial anticipated to last two and a half weeks. (ECF No. 206.)

The parties participated in settlement negotiations before Magistrate Judge Copperthite, reached a tentative agreement to settle the case on July 23, 2021, and continued to exchange settlement papers into October 2021. (ECF No. 225.) Further mediation—both before Judge

---

[2] The Court also approved minor changes to the class definition in preliminarily approving the settlement agreement. (ECF No. 239 at 2–3.) The class is defined as: "All participants and beneficiaries in the T. Rowe Price U.S. Retirement Program who had a balance in their plan account at any time from February 14, 2011 through the date of entry of the order preliminarily approving the settlement. Any individual Defendants, any members of the T. Rowe Price Board of Directors, the Management Committee, the Management Compensation Committee, and their beneficiaries and immediate families are excluded from the class." (*Id.*)

[3] During discovery, "Class Counsel propounded 52 requests for production of documents, 22 requests for admission, and 17 interrogatories; Defense Counsel propounded 22 document requests and 14 interrogatories"; there was discovery-related motions practice; Class Counsel and Defense Counsel deposed a total of 16 individuals; and "Plaintiffs' three proposed expert witnesses submitted initial and reply expert reports, Defendants' three experts submitted rebuttal reports, and each side deposed the other side's three experts." (ECF No. 234-1 at 9.)

[4] The Court granted Defendants' Cross-Motion for Summary Judgment only as to Count III (Imprudent Investment Advice) and denied it in all other respects. (ECF No. 201.)

Copperthite and a private mediator—was necessary to fully resolve the remaining disagreements between the parties, and a full settlement agreement was ultimately finalized on December 16, 2021. (ECF No. 242-1 at 8.)

The Court preliminarily approved the proposed settlement agreement on January 18, 2022. (ECF No. 239.) The proposed settlement agreement was amended to correct non-substantive items, (ECF Nos. 240, 241), and to revise the release language. (ECF No. 255.) The proposed settlement agreement provides for a cash payment of $7 million and for the addition of a feature that will allow Plan participants to invest in non-T. Rowe Price funds for the first time (the "Brokerage Window"). (ECF No. 240-1 at 6, 9.) It also describes a $6.6 million payment (the "Special Payment") made in 2019 by Defendants to certain class members. (*Id.* at 12.)

The $7 million will be allocated to class members pursuant to a plan of allocation. (ECF No. 242-2.) Each class member will receive a $20 minimum payment and a *pro rata* amount based on the class members' quarterly balances in the 39 challenged funds between 2011 and 2022. (*Id.*) To the extent that a class member received a portion of the Special Payment, the *pro rata* share attributable to quarterly balances from 2011 to 2013 will be reduced. (*Id.*) This reduction will then in turn be divided *pro rata* to those class members who did not receive the Special Payment. (*Id.*) The Brokerage Window will allow Plan participants to invest in non-T. Rowe Price investment funds. (ECF No. 240-1 at 24–25.) Defendants will be required to offer this feature for at least ten years unless (1) "upon the determination by an experienced, competent, and professional independent fiduciary . . . that there has been a change in circumstances and it would violate ERISA's duty of prudence to continue to offer such a Brokerage Window to participants under such circumstances" or (2) "if Defendants reasonably conclude that there has been a change in law or regulation relating to fiduciary monitoring or reporting requirements for investment

offerings available through the Brokerage Window that makes such monitoring or reporting materially more burdensome or costly than it is today." (*Id.* at 24.) The Special Payment was paid to Plan participants who had a balance in their Plan accounts and were T. Rowe Price employees at the end of the years 2011, 2012, or 2013. (ECF No. 200 at 21–22.) Over 6,000 class members were eligible for, and received, distributions from the Special Payment. (ECF No. 234-1 at 7.) The purpose of the Special Payment was to retroactively provide the benefit of certain payments T. Rowe Price has made beginning in 2014. (ECF No. 200 at 21–22.)[5] As this Court explained in a prior Memorandum—and as the parties agreed during the Fairness Hearing—the Special Payment was "a discretionary 2019 payment made in response to the initiation of litigation." (*Id.* at 22.)

Plaintiffs filed the instant Motion for Final Approval of Class Action Settlement and Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards to Class Representatives. (ECF Nos. 242, 243.) The Court held a Fairness Hearing on June 10, 2022. (ECF No. 256.) No class members have objected to the proposed settlement.

## II.   Motion for Final Approval of Class Action Settlement

Plaintiffs' Motion for Final Approval of Class Action Settlement, (ECF No. 242), seeks final approval of the proposed settlement agreement. Because the proposed settlement meets the requirements under Federal Rule of Civil Procedure 23, the Court will approve the proposed settlement.

### A. Notice

Federal Rule of Civil Procedure 23(e)(1) requires that the Court "direct notice in a

---

[5] T. Rowe Price provided credits or rebates to retirement plans that were recordkept by T. Rowe Price. (ECF No. 200 at 21.) This allegedly had the result of Plan participants bearing higher costs than non-Plan investors. (*Id.*) Therefore, beginning in 2014, T. Rowe Price began making contributions to the Plan equivalent to those credits or rebates. (*Id.* at 21–22.) The Special Payment retroactively applied this contribution to 2011-2013 Plan participants. (*Id.* at 22.)

reasonable manner to all class members who would be bound by the proposal." In addition, Federal Rule of Civil Procedure 23(h)(1) states that "[n]otice of the motion [for an award of attorney fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Notice "need only 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *McAdams v. Robinson*, 26 F.4th 149, 158 (4th Cir. 2022) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)). Further, to satisfy due process, notice "must be 'reasonably calculated, under all the circumstances, to apprise [absent class members] of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 157–58 (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

Here, notice was issued in the manner outlined in the preliminary approval order, (ECF No. 239 at 10–12), and was reasonably calculated to afford interested parties an opportunity to present their objections. The notice was either mailed or emailed to each class member, and the administrator also set up a dedicated website and toll-free number for class members to access or call. (*See* ECF No. 242-3 at 2–3 (explaining that 2,516 notices were sent by U.S. Mail and 13,701 notices were sent via email, that follow up mailings and tracing has been conducted on any undeliverable notices, and that there has been a 99.9% delivery success rate, with only a total of nine notices remaining undeliverable).) The Court finds that the notice was reasonably calculated to apprise absent class members of the action and provide them an opportunity to present their objections. *In re Mut. Funds Inv. Litig.*, Civ. No. 04-15863, 2011 WL 1102999, at *1 (D. Md. Mar. 23, 2011) ("Notice need not be perfect, and all class members do not have to actually receive

notice in order to satisfy the requirements of Rule 23 and due process.").

The notice provided class members with, *inter alia*, details regarding the terms of the settlement, the amount that Class Counsel intended to seek with respect to service awards and attorneys' fees and expenses (including that such fees and expenses would come out of the settlement amount), and information regarding objecting to the proposed settlement. (*See* ECF No. 242-3 at 6–13.) The Court therefore finds that the notice "describe[d] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *McAdams*, 26 F.4th at 158 (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015)).

Further, the Class Action Fairness Act ("CAFA"), requires that certain government agencies receive notice of any proposed class action settlement. Defendants have provided such notice. (*See generally* ECF No. 242-5 (declaration from Defendants' counsel describing and attaching CAFA notice).) The Court has reviewed Defendants' notice and finds that it complies with CAFA. *See* 28 U.S.C. § 1715(b) (providing list of information required to be included with the CAFA notice). Further, more than ninety days have elapsed since Defendants provided CAFA notice. *See id.* § 1715(d) ("An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b).").

### B. Settlement Agreement

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval" and Rule 23(e)(2) requires that the Court find that a proposed settlement is "fair, reasonable, and adequate." The primary concern addressed by this requirement is the protection

of class members whose rights may not have been given adequate consideration during the settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). The Fourth Circuit "has developed multifactor standards for assessing whether a class-action settlement is 'fair, reasonable, and adequate' under Rule 23(e)(2)." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020).[6]

### 1. Fairness

In determining a settlement's fairness, the Court considers: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). "The fairness analysis is intended primarily to ensure that a 'settlement [is] reached as a result of good-faith bargaining at arm's length, without collusion.'" *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (citing *Jiffy Lube*, 927 F.2d at 159); *see also Edelen v. Am. Residential Servs., LLC*, Civ. No. DKC 11-2744, 2013 WL 3816986, at *8 (D. Md. July 22, 2013) (citations and quotations omitted) ("The 'fairness' prong is concerned with the procedural propriety of the proposed settlement agreement").

The Court concludes that the settlement is fair, and all of the factors weigh in favor of this

---

[6] The Fourth Circuit has explained that—after Federal Rule of Civil Procedure 23(e)(2) was amended in 2018 to specify factors to assess the fairness, adequacy and reasonableness of a class action settlement—it has "continued to apply [its] own multifactor standards when reviewing settlements approved by district courts prior to the amendments to Rule 23(e)(2)." *Lumber Liquidators*, 952 F.3d at 484 n.8. The Fourth Circuit's "factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors." *Id; see also Herrera v. Charlotte Sch. of L., LLC*, 818 F. App'x 165, 176 n.4 (4th Cir. 2020) (internal citations and quotations omitted) ("Federal Rule of Civil Procedure 23(e)(2) has been amended and now sets forth factors for the district court to assess in evaluating fairness, reasonableness, and adequacy. Recognizing that, this Court continues to apply its own standards as they almost completely overlap with the new Rule 23(e)(2) factors, rendering the analysis the same.").

finding. It was reached as a result of good-faith bargaining at arm's length without collusion; there is nothing in the record to suggest otherwise. The posture of the case and the extent of discovery weigh in favor of this finding: the case was vigorously litigated by the parties, and settled only after extensive discovery was completed, summary judgment motions were largely denied, and trial was set. Further, settlement occurred only with the help of neutral mediators, and only after multiple attempts. Finally, counsel are experienced in the area of ERISA class action litigation.

## 2. Adequacy

In assessing the adequacy of a proposed settlement, the Court must consider: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[ ] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). "The most important factors in this analysis are the relative strength of the plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses." *Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019). The focus of the adequacy prong is "the agreement's substantive propriety." *Edelen*, 2013 WL 3816986, at *8 (citations and quotations omitted).

The Court also concludes that the proposed settlement is adequate. The first two factors— the relative strength of Plaintiffs' case on the merits and the existence of any difficulties of proof or strong defenses the Plaintiffs are likely to encounter if the case goes to trial—weigh in favor of such a finding. Although the parties vigorously contested this matter, as the Court explained in its memorandum largely denying the parties' motions for summary judgment, "this Court deems total victory improbable, and recovery on the scale suggested by Plaintiffs *highly* improbable,

8

[however,] Plaintiffs have largely cleared the low bar that avoids summary judgment in favor of their opponent." (ECF No. 200 at 3 (emphasis in original); *see also id.* at 2–3 ("Having reviewed the evidence in this case, the Court does not see the sort of egregious improprieties that would support the nine-figure damages award Plaintiffs seek. . . . Th[e] evidence does not conform with Plaintiffs' allegations of shocking and pervasive mismanagement"); *id.* at 10 (explaining that Plaintiffs identified sufficient evidence to proceed to trial but that "the Court is skeptical of certain of Plaintiffs' arguments regarding alleged breaches of fiduciary duty").)

In addition to these observations about the totality of the evidence, the Court also identified weaknesses with each of Plaintiffs' claims. First, the Court granted summary judgment in favor of Defendants on Count III. (*Id.* at 18.) Second, with respect to Counts I, II, IV, V, and VII, which relate to breaches of fiduciary duty, the Court stated that Defendants were "likely" to prevail at trial. (*Id.* at 17 ("At trial, a fact-finder could very well determine that the Trustees prudently followed the Plan's instructions and showed a reasonable preference for the high-performing investment vehicles that the Trustees and Plan participants knew best—to the benefit of the participants. Indeed, the Court finds that likely on the record before it.").) Last, while the Court did not grant summary judgment to either party on Count VI, which related to prohibited transactions, it noted that at trial, Defendants would "have the opportunity to prove that some affirmative defense—whether PTE 77-3, the statute of repose, § 1108(b)(8), or another § 1108(b) exemption—protects them from liability." (*Id.* at 30.)

The remaining factors—the anticipated duration and expense of additional litigation; Defendants' solvency; and the degree of opposition to the settlement—likewise lead the Court to conclude that the proposed settlement is adequate. The additional litigation required to try this case would have undoubtedly been extremely costly. The trial was scheduled to last two and a

half weeks and such a trial, with the associated preparation and trial time, would have been expensive. Further, as the parties recognize, the risk of appeal—and its attendant costs—was particularly acute in a case, such as this one, that presents a novel question regarding Defendants' offering of its own investment options in the Plan. (ECF No. 242-1 at 17.) Further, although Defendants' solvency is not contested, it does not weigh against approval of the proposed settlement. *See Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 494 (S.D.W. Va. 2002) ("The Court has no doubt [the defendant] would be able to satisfy any judgment entered against it. That consideration, however, is largely beside the point given the other factors weighing in favor of a negotiated resolution.").

Significantly, there have been no objections by class members. *See Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014) ("The fact that no class member objected supports final approval of the Settlement as fair, adequate, and reasonable."). Moreover, an independent fiduciary reviewed the proposed settlement and determined not to object to any portion of it after interviewing counsel for both sides, reviewing filings, and researching the case. (ECF No. 242-1 at 12.) This further confirms the adequacy of the proposed settlement. *See In re Wachovia Corp. ERISA Litig.*, Civ. No. 3-9-262, 2011 WL 13262040, at *4 (W.D.N.C. Oct. 24, 2011) ("The independent fiduciary offers an objective and highly sophisticated perspective concerning the fairness and adequacy of the proposed Settlement. Non-opposition by the independent fiduciary is strong evidence in favor of the Settlement's adequacy."); *Boyd*, 299 F.R.D. at 463 ("The Settlement Agreement was reviewed by an independent fiduciary, who endorsed the settlement, finding it fair given the difficulties Plaintiffs would have faced had litigation gone forward. This fact, combined with the fact that no objections have been filed,

further suggests that the result achieved is a desirable one.").

### 3. Reasonableness

The Fourth Circuit has not enumerated factors for assessing reasonableness. *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 527 (4th Cir. 2022). However, it has "suggested that assessing whether a class settlement is 'reasonable' involves examining the amount of the settlement." *Id.* (citing *Sharp Farms*, 917 F.3d at 303–04). "To the extent that reasonableness does any work not already performed by one of the other Rule 23(e)(2) requirements, [] it at least ensures that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *Id.* The Fourth Circuit has "never required [] an estimate" of what the class members would have received had they prevailed at trial. *McAdams*, 26 F.4th at 160. Further, the Court is not required to "decide the merits of the case nor substitute its judgment of what the case might be worth for that of class counsel," rather "the court must at least satisfy itself that the class settlement is within the 'ballpark' of reasonableness." *Id.* (quotations and citations omitted). As already discussed, the Court expressed significant skepticism regarding Plaintiffs' ability to recover the extent of the damages they were seeking or to establish liability at all. Therefore, because the proposed settlement provides for financial recovery for class members as well as the addition of the Brokerage Window, the Court finds that it is reasonable.

### C. Proposed Plan of Allocation

"[T]he plan of allocation must also meet the standards of fairness, reasonableness, and adequacy." *Boyd*, 299 F.R.D. at 461; *see also* Fed. R. Civ. P. 23(e)(2)(D) (requiring that "the proposal treat[] class members equitably relative to each other"). "The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed

11

allocation, the allocation need only have a reasonable and rational basis." *Boyd*, 299 F.R.D. at 461. In general, courts have approved settlements that provide for recovery to class members on a *pro rata* basis. *See, e.g., id.* (approving plan of allocation that provided for *pro rata* recovery based on the decline in value of stock held in each class member's plan during the class member as compared to the decline in value of stock held by other class members); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 669 (E.D. Va. 2001) ("[T]he plan of allocation, as a general matter, fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.").

As described above, the plan of allocation provides that class members will be paid on a *pro rata* basis based on their quarterly balances in the challenged funds between 2011 through 2022, and that the amount will be reduced for those class members who received a portion of the Special Payment. This plan of allocation therefore reasonably takes into account differences between class members (i.e., their balances in the challenged funds and their receipt of the Special Payment). Further, no class member has objected to the settlement agreement or to the plan of allocation. Accordingly, the Court finds that the allocation has "a reasonable and rational basis." *Boyd*, 299 F.R.D. at 461.

### D. Scope of Release

The settlement agreement releases claims "that were asserted in the Complaint or Action or that, whether or not pleaded in the Complaint or Action, could be predicated on the same allegations, acts, omissions, facts, events, matters, conduct, or transactions alleged in the Complaint or Action, including, without limitation, claims that relate to or challenge" certain

12

enumerated categories of claims, such as "the selection, oversight, monitoring, or retention of the Plan's investment options" and "investment advice relating to the Plan, or to its investments or fees." (ECF No. 255-1 at 2.)

Because "[a] court can approve a release of claims that share an 'identical factual predicate' with claims alleged in a case[,]" *McAdams*, 26 F.4th at 160 (citing *Berry*, 807 F.3d at 616), the Court finds that the release—while broad—is appropriate. *See id.* at 160–61 (explaining that a release was appropriate where "nothing on the face of the release purports to apply to cases with a different factual predicate" and noting that the court could not "decide the outer limit of the release's scope [because t]o do so would be advisory").[7]

Accordingly, based on the foregoing, the Court will approve the proposed settlement.

## III.   Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards to Class Representatives

Plaintiffs have also filed a Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards to Class Representatives, seeking $3.5 million in attorneys' fees; reimbursement of litigation expenses in the amount of $707,908.79; and service awards to the eleven class representatives ranging from $10,000 to $15,000. (ECF No. 243.) As described more fully below, the Court will grant this motion and the requested amounts.

### A.   Attorneys' Fees

Class Counsel seeks $3.5 million in attorneys' fees. In a class action, the court may award reasonable attorney's fees and nontaxable costs as authorized by law or by agreement. Fed. R.

---

[7] The original release language was very broad and purported to release claims in addition to those that "were asserted in the Complaint or Action or that, whether or not pleaded in the Complaint or Action, could be predicated on the same allegations, acts, omissions, facts, events, matters, conduct, or transactions alleged in the Complaint or Action, including, without limitation, claims that relate to or challenge." (ECF No. 240-1 at 10.) Because this original release on its face sought to release claims outside of the factual predicate of the claims in this case, the parties revised the release language. (*See* ECF Nos. 248, 251–55.)

13

Civ. P. 23(h). The Fourth Circuit has explained that "[t]here are two main methods for calculating the reasonableness of attorneys' fees—the lodestar method and the percentage-of-recovery method"—and that a "district court may choose the method it deems appropriate based on its judgment and the facts of the case." *McAdams*, 26 F.4th at 162. "Courts in this circuit generally use a percentage of recovery method and supplement it with the lodestar method as a cross-check." *See Donaldson v. Primary Residential Mortg., Inc.*, Civ. No. ELH-19-1175, 2021 WL 2187013, at *8 (D. Md. May 28, 2021). The Court will therefore determine whether the requested amount is reasonable pursuant to the percentage-of-recovery method and confirm the reasonableness with a lodestar cross-check.

Class Counsel's request of $3.5 million in attorneys' fees represents 25.7% of the $13.6 million total cash payments to the class. District courts in this circuit have analyzed the following seven factors in determining whether a requested percentage is reasonable: "(1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy[.]" *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 682 (D. Md. 2013); *see also Kelly v. Johns Hopkins Univ.*, Civ. No. 16-2835-GLR, 2020 WL 434473, at *2 (D. Md. Jan. 28, 2020) (same); *Donaldson*, 2021 WL 2187013, at *8 (same). Courts need not apply the factors in a "formulaic way" and may weigh the factors as appropriate for a particular case. *Singleton*, 976 F. Supp. 2d at 682. These factors weigh in favor of awarding the requested amount.

The requested amount—approximately 26% of the monetary benefit—is in line with fee awards in other ERISA litigation. *Kelly*, 2020 WL 434473, at *3 (noting that in ERISA excessive fee cases, "district courts have consistently recognized that a one-third fee is the market rate")

14

(collecting cases); *Kruger*, 2016 WL 6769066, at *2 (quotations and citations omitted) ("[C]ourts have found that a one-third fee is consistent with the market rate in a complex ERISA 401(k) fee case such as this matter.").

Class Counsel has achieved good results under the circumstances for the class. While the monetary results to the class will likely ultimately be modest as to each individual class member, Plaintiffs would have faced an uphill battle in establishing liability and obtaining the financial recovery they were seeking. Additionally, the proposed settlement includes the addition of the Brokerage Window, "which will allow all Plan participants to invest in non-T. Rowe Price funds for the first time." (ECF No. 243-1 at 13.) While the Court will not speculate as to the ultimate monetary value of this settlement term, given that the core issue in this matter was Plaintiffs' view that it was improper for Defendants to offer only in-house funds, this is a significant benefit to the class. *See Kruger v. Novant Health, Inc.*, Civ. No. 14-208, 2016 WL 6769066, at *3 (M.D.N.C. Sept. 29, 2016) ("Considering the non-monetary benefits and relief created by counsel's efforts is important because it encourages attorneys to obtain meaningful affirmative relief."). Additionally, that no class members have objected—either to the proposed settlement as a whole or to the requested fees—confirms that, from the class members' perspective, counsel has achieved a good result and the fees are reasonable.

Class Counsel are skilled and experienced in the area of ERISA litigation (*see* ECF No. 243-2 at 13–18; ECF No. 243-3 at 12–19), which likewise supports the requested fee award. "It is well established that complex ERISA litigation, such as this, requires special expertise and class counsel of the highest caliber." *Kelly v. Johns Hopkins Univ.*, No. 1:16-CV-2835-GLR, 2020 WL 434473, at *4 (D. Md. Jan. 28, 2020). Further, the Court appreciates the resources it requires to litigate a novel case such as this, where the law is not only complex, but rapidly evolving, and

where the case settled on the brink of trial and after years of litigation. In addition, Class Counsel took this case on a wholly contingent basis. (*See* ECF No. 243-1 at 17.)   Given the Court's already-described skepticism regarding the likelihood of success at trial, at least to the magnitude proposed by Plaintiffs, the risk of nonpayment was very high.

Finally, public policy supports the award. The Court must strike the balance between promoting the important public policy that attorneys continue litigating class action cases and perpetuating the public perception that class action plaintiffs' lawyers are overcompensated for the work that they do. *Boyd*, 299 F.R.D. at 466. However, this is not a case in which Class Counsel would receive fees that represent some excessive multiple of the actual fees Class Counsel would have received from a paying client. Rather, as discussed in more detail below, this award would actually be a discount from Class Counsel's usual fees, and public policy "supports compensating attorneys for their efforts in prosecuting cases to remedy large-scale problems that would not be financially practicable to litigate on an individual basis." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, Civ. No. JKB-16-3025, 2019 WL 3183651, at *7 (D. Md. July 15, 2019).

"The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." *Singleton*, 976 F. Supp. at 688. Because the Court is using the lodestar method as a cross-check, it need not "exhaustively scrutinize" the hours documented by Class Counsel and "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *See Kelly*, 2020 WL 434473, at *6 (citations and quotations omitted).

Class Counsel has submitted documentation reflecting that it has spent over 12,000 hours on this matter (excluding time relating to the fee petition). (ECF No. 243-1 at 22.) Based on the documentation submitted by Class Counsel—which includes total hours by attorney as well as total hours by litigation phase—the Court finds that the time spent by Class Counsel on the case is reasonable, considering the duration of this case and the posture at the time of settlement, as well as the complexity and the number of contested issues throughout the litigation.

Class Counsel urges the Court to use its hourly rates—rather than the hourly rates provided by the Local Rules—to calculate the lodestar. "[C]ourts have repeatedly recognized [that] complex ERISA class action litigation, such as this, involves a national market" and that "the relevant market rate for [such cases] is a nationwide market rate." *Kelly*, 2020 WL 434473, at *6 (approving the following rates, which are similar to the rates in this case: "for attorneys with at least 25 years of experience, $1,060 per hour; for attorneys with 15–24 years of experience, $900 per hour; for attorneys with 5–14 years of experience, $650 per hour; for attorneys with 2–4 years of experience, $490 per hour; and for Paralegals and Law Clerks, $330 per hour"); *see also Sims v. BB&T Corp.*, Civ. No. 1:15-732, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019) ("[A] national market rate is appropriate for matters involving complex issues requiring specialized expertise, such as ERISA class actions."); *Kruger*, 2016 WL 6769066, at *4 ("This court finds the relevant market rate for cases such as the present case to be a nationwide market rate. This is consistent with the findings of courts in which Class Counsel has litigated similar 401(k) excessive fee cases.").

The Court finds that the lodestar amount is reasonable under either calculation. Using Class Counsels' rates, the lodestar figure is $8,326,524.50 and using the Local Rules' guidelines, the lodestar figure is $4,762,740. (ECF No. 243-1 at 22, 24.) Held in contrast to the $3.5 million

request, these figures represent a negative multiplier of 0.42 and 0.73, respectively. Courts in this Circuit routinely approve lodestar multipliers that are much higher. *Kelly*, 2020 WL 434473, at *7 ("The requested fee would result in a lodestar multiplier of 2.45—well within the range routinely approved in this Circuit."); *Jones*, 601 F. Supp. 2d at 766 ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."); *Kruger*, WL 6769066, at *5 (collecting cases reflecting lodestar multipliers of 2.5 to 8.9). Accordingly, the award of $3.5 million in attorneys' fees is reasonable.

### B. Expenses

Under Federal Rule of Civil Procedure 23(h), the Court may also award reasonable costs. Costs that may be charged include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). "The prevailing view is that expenses are awarded in addition to the fee percentage." *Kelly*, 2020 WL 434473, at *7 (citations and quotations omitted). These expenses include court costs, transcripts, travel, contractual personnel, photocopying, postal fees, telephone costs, and expert witness fees. *Id*; *see also Boyd*, 299 F.R.D. at 468 (approving expense request that included "filing fees, expert and mediation fees, travel costs, computer research, copies, and other miscellaneous costs" and concluding that the expenses were "reasonable and typical"); *Clark v. Duke Univ.*, Civ. No. 16-1044, 2019 WL 2579201, at *4 (M.D.N.C. June 24, 2019) ("Reimbursable expenses include expert fees, travel, conference telephone, postage, delivery services, and computerized legal research.").

Here, Class Counsel requests reimbursement of $707,908.79. (ECF No. 243-1 at 26.) The Court has reviewed the expenses and finds them reasonable. The majority of the expenses—$456,516.75—is for expert services. (*Id.*) This expense is "reasonable in light of the reliance

other district courts in similar ERISA excessive fee litigation have placed on expert testimony and the complex nature of ERISA litigation." *Clark*, 2019 WL 2579201, at *4; *see also id.* (finding $822,212 in total fees reasonable where "[a]pproximately 80% of these expenses are related to plaintiffs' expert witnesses); *Jones*, 601 F. Supp. 2d at 767 (finding reasonable expenses where "[a] large portion of the costs in this case were incurred in the retention and compensation of experts and consultants who assisted the evaluation of the leases and the defendants' accounting practices").

### C. Service Awards

Plaintiffs have also seek service awards to the eleven class representatives as follows: $15,000 to David G. Feinberg; $12,500 each to James Collins, Sital Jani, Farrah Qureshi, Maria Stanton, and Regina Widderich; and $10,000 each to Michelle Bourque, Daniel Fialkoff, Thomas Henry, Jitesh Jani, and Daniel Newman. (ECF No. 243-1 at 27–29.) "Incentive awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Berry*, 807 F.3d at 613 (internal quotations and citations omitted). "To determine whether an incentive payment is warranted, the court should consider 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Decohen v. Abbasi*, LLC, 299 F.R.D. 469, 483 (D. Md. 2014) (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

As Plaintiffs note, "[t]he Class Representatives [] spent considerable time representing the Class, including producing documents, answering interrogatories, traveling to and sitting for lengthy depositions taken by aggressive defense counsel, and attending the motion to dismiss

19

hearing and settlement conference." (ECF No. 243-1 at 8.) They also "exposed themselves to risk of adverse career consequences." (*Id.* at 28.) The differential award amounts as to the class representatives are due to their involvement in depositions: Feinburg is the longest-serving named plaintiff and flew from Florida to Washington, D.C. for his deposition; Collins, Sital Jani, Qureshi, Stanton, and Widderich were deposed; and Bourque, Fialkoff, Jenry, Jitesh Jani, and Newman were willing to be deposed. (ECF No. 243-1 at 29.) The declarations submitted by each of the class representatives reflect that they expended significant time and effort with respect to this litigation. (*See* ECF Nos. 243-5–15.) No class members have objected to these awards and, as discussed above, the litigation resulted in monetary benefit to the class, as well as the addition of the Brokerage Window.

Further, the requested awards are in line with those obtained in other ERISA/401(k) litigation in this circuit. *See, e.g., Savani v. URS Pro. Sols. LLC*, 121 F. Supp. 3d 564, 577 (D.S.C. 2015) (explaining that "[a] substantial incentive award is appropriate in this complex ERISA case given the benefits accruing to the entire class in part resulting from [the class representative's] efforts" and approving a $15,000 award); *Kelly*, 2020 WL 434473, at *7–*8 (approving incentive awards of $20,000 each to eight class representatives in an ERISA class action); *Skochin v. Genworth Fin., Inc.*, Civ. No. 19-0049, 2020 WL 6536140, at *11 (E.D. Va. Nov. 5, 2020) (approving $25,000 service award in light of "the time and effort expended by Named Plaintiffs and in perspective of the fact that their efforts helped to secure a settlement that is highly beneficial to the class"); *Clark*, 2019 WL 2579201, at *5 (approving awards of $25,000 and $30,000 for named plaintiffs).

The Court therefore finds that the requested incentive awards are reasonable and approves the incentive awards to these eleven class representatives for their important contributions to this

case.

## IV.    Conclusion

For the foregoing reasons, Plaintiffs' Motion for Final Approval of Class Action Settlement, (ECF No. 242), and Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards to Class Representatives, (ECF No. 243), will be granted and the case will be dismissed.

DATED this _6_ day of July, 2022.

BY THE COURT:

James K. Bredar
Chief Judge